
**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone:  (201) 882-0303
Fax:      (201) 299-2714
E-mail: rwanchoo@wanchoolaw.com

# 08 CV 1659

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

TOTALMAR NAVIGATION CORP.

                        Plaintiff,

           - against -

ATN INDUSTRIES INC.

                    Defendant.

----------------------------------------------------------X



FEB 19 2008

ECF Case

08 CIV _____ (   )

**VERIFIED COMPLAINT**

      Plaintiff, TOTALMAR NAVIGATION CORP. ("Plaintiff"), by its attorneys, LAW

OFFICES OF RAHUL WANCHOO, alleges on information and belief as follows:

## JURISDICTION AND VENUE

     1.     This is a case of admiralty and maritime jurisdiction within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure, and within the admiralty and maritime jurisdiction of

the United States and of this Honorable Court. This case also falls under the Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. §1333. Finally, this Court also has jurisdiction over

this matter because the action also arises under the convention on the Recognition and

Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et. seq.* and/or the Federal

Arbitration Act, 9 U.S.C. §1 *et. seq.*

## THE PARTIES

2.    At all material times, Plaintiff was and now is a foreign corporation organized

under and existing by virtue of the laws of the Republic of Panama, was the disponent Owner of

the M.V. SKALA, M.V. ATLANTICA, M.V. RAINBOW and M.V. GO STAR (the "Vessels"),

bulk carriers ranging from about 39,000 to 53,000 deadweight tons capacity engaged in the

carriage of bulk cargo by water.

3.    Upon information and belief, at all material times, Defendant, ATN INDUSTRIES

INC. ("Defendant") was and now is a foreign corporation organized under and existing by virtue

of the laws of the State of Florida, and was the Charterer of the Vessels.

4.    Plaintiff's claims arise out of and in connection with a contract of affreightment

involving four separate voyages performed for Defendant by the Vessels under four separate

maritime charter party contracts all involving the transportation of large dimensional

polycarbonate steel water pipes from Shanghai, China to Maracaibo, Venezuela.

## M.V. SKALA – Charter Party Dated November 23, 2007

5.    Pursuant to a charter party contract on the GENCON form dated November 23,

2007, Plaintiff, as disponent Owner, voyage chartered the M.V. SKALA to Defendant, as

Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe

berth Maracaibo. A copy of the charter party contract dated November 23, 2007 is annexed as

Exhibit 1 to the Verified Complaint.

2

6.    The charter party provided that the vessel was to load minimum 480 to 500 pieces of pipes up to vessel's maximum capacity at Owner's option, pipes' dimensions guaranteed by Charterer. The charter also provided that freight was payable at $118.00 per cubic meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that Charterer to guarantee that cubic capacity per piece of pipe is 82.4179 and that total cubic capacity for the minimum 480 pipes equals 39,560.592 cubic meters "on which freight to be paid for minimum quantity."

7.    Prior to the vessel's arrival at Shanghai the master notified the shippers/Charterer that the vessel would load 490 pipes. However, the Charterer only delivered 430 pipes, and hence the vessel loaded 60 pipes less than the quantity which had been requested by the master. The master issued a letter of protest to the shippers regarding the short shipment of the pipes and put the Charterer on notice regarding a claim for dead freight for the 60 pieces of steel pipes. A copy of the master's Letter of Protest dated December 8, 2007 is annexed as Exhibit 2 to the Verified Complaint.

8.    Pursuant to the terms of the charter 60 pieces of pipes occupies a volume of 4,945.074 cubic meters (60 x 82.4179 $m^3$), which equates to a dead freight claim of $583,518.73 (4,945.074 $m^3$ x $118 per $m^3$). A copy of Owner's freight and dead freight invoice dated December 10, 2007 is annexed as Exhibit 3 to the Verified Complaint.

9.    Pursuant to the terms of the charter party, Defendant should have paid the dead freight when it received the Owner's freight invoice dated December 10, 2007. However, despite various reminders from Plaintiff to Defendant no dead freight has been received to date.

10.    By reasons of the premises, Plaintiff has sustained damages on the M.V. SKALA voyage in the amount of $583,518.73 as best as can presently be calculated.

### M.V. ATLANTICA – Charter Party Dated November 29, 2007

11.     Pursuant to a charter party contract on the GENCON form dated November 29, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. ATLANTICA to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. A copy of the charter party contract for M.V. GOLDEN WISH, which was later substituted by M.V. ATLANTICA, dated November 29, 2007 is annexed as Exhibit 4 to the Verified Complaint.

12.     The charter party provided that the vessel was to load minimum 435 pieces of pipes up to vessel's maximum capacity at Owner's option. The charter party also provided a total laytime of 4 weather working days for loading, and 4 weather working days for discharging, Sundays and holidays included. Demurrage was payable by Defendant to Plaintiff at the rate of $70,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime. Any demurrage incurred at the loading port was to be paid by Defendant to Plaintiff along with the freight payment.

13.     Pursuant to the charter, the ATLANTICA proceeded to and arrived at Shanghai at 0700 hours on December 10, 2007 and tendered her Notice of Readiness. The vessel completed loading at 1230 hours on December 15, 2007, and sailed for Maracaibo at 1610 hours on the same day.

14.     The vessel was delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 1.229 days which amounts to $86,030.00 (1.229 days x $70,000 per day).

15.     Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $86,030.00. Pursuant to

the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. A copy of Plaintiff's demurrage invoice and laytime calculations dated January 29, 2008 are annexed as Exhibit 5 to the Verified Complaint.

16.    By reasons of the premises, Plaintiff has sustained damages on the M.V. ATLANTICA voyage in the amount of $86,030.00 as best as can presently be calculated.


## M.V. RAINBOW – Charter Party Dated December 6, 2007

17.    Pursuant to a charter party contract on the GENCON form dated December 6, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. RAINBOW to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. A copy of the charter party contract dated December 6, 2007 is annexed as Exhibit 6 to the Verified Complaint.

18.    The charter party provided that the vessel was to load about 350 pieces of steel water pipes dimensions guaranteed by Charterer. The charter party also provided a total laytime of 4 weather working days for loading, and 4 weather working days for discharging, Sundays and holidays included. Demurrage was payable by Defendant to Plaintiff at the rate of $70,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime. Any demurrage incurred at the loading port was to be paid by Defendant to Plaintiff along with the freight payment.

19.    Pursuant to the charter, the RAINBOW proceeded to and arrived at Shanghai at 0812 hours on December 16, 2007 and tendered her Notice of Readiness. The vessel completed

loading at 1100 hours on December 22, 2007, and sailed for Maracaibo at 2224 hours on the same day.

20.      The vessel was delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 2.113 days which amounts to $147,910.00 (2.113 days x $70,000 per day).

21.      Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $147,910.00.  Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice.  However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. A copy of Plaintiff's demurrage invoice and laytime calculations dated January 29, 2008 are annexed as Exhibit 7 to the Verified Complaint.

22.      By reasons of the premises, Plaintiff has sustained damages on the M.V. RAINBOW voyage in the amount of $147,910.00 as best as can presently be calculated.

### M.V. GO STAR – Charter Party Dated December 7, 2007

23.      Pursuant to a charter party contract on the GENCON form dated December 7, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. GO STAR to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. A copy of the charter party contract for M.V. MAIROULI, which was later substituted by M.V. GO STAR, dated December 7, 2007 along with the addendum to the charter party dated December 28, 2007 are annexed as Exhibit 8 to the Verified Complaint.

6

24.    The charter party provided that the vessel was to load minimum 435 pieces of pipes up to vessel's "full" capacity at Owner's option, "pipes' dimensions guaranteed by Charterer." (emphasis added). The charter also provided that freight was payable at $120.50 per cubic meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that Charterer to guarantee that cubic capacity per piece of pipe is 82.4179 and that total cubic capacity for the minimum 435 pieces equals 35,851.7865 cubic meters "on which freight to be paid for minimum quantity." The steel pipes dimensions guaranteed by Charterer were 12.192 meters length and 2.60 meters outside diameter. Pursuant to an addendum to the charter party dated December 28, 2007 it was agreed between the parties that "vessel will only load min 410 pieces of pipes upto vessel's full capacity in Charterer option."

25.    Pursuant to the charter, the GO STAR proceeded to and arrived at Shanghai at 1000 hours on January 20, 2008 and tendered her Notice of Readiness. The vessel completed loading at 1200 hours on January 26, 2008. The Charterer loaded 31 pieces of pipes of outside diameter 2.60 meters; however, it loaded 400 pieces of pipes of outside diameter 2.40 meters or 0.2 meters less than that guaranteed under the charter. The total volume of the 431 pieces of pipes loaded on the vessel was 30,645.324 $m^3$ versus 33,791.35 $m^3$ (410 pieces x 82.4179 $m^3$), which had been guaranteed by the Charterer, or a short shipment of 3,146.0232 $m^3$ (33,791.35 $m^3$ – 30,645.324 $m^3$). Thus, as per the terms of the charter party Charterer is liable for dead freight of $379,095.80 (3,146.0232 $m^3$ x $120.50 per $m^3$). A copy of Owner's dead freight invoice dated February 8, 2008 is annexed as Exhibit 9 to the Verified Complaint. Pursuant to the terms of the charter party, Defendant should have paid the dead freight when it received the Owner's dead freight invoice dated February 8, 2008. However, despite various reminders from Plaintiff to Defendant no dead freight has been received to date.

26.     The vessel was also delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 2.104 days which amounts to $147,280.00 (2.104 days x $70,000 per day).

27.     Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $147,280.00. Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. A copy of Plaintiff's demurrage invoice and laytime calculations dated January 29, 2008 are annexed as Exhibit 10 to the Verified Complaint.

28.     By reasons of the premises, Plaintiff has sustained damages on the M.V. GO STAR voyage in the amount of $526,375.80 as best as can presently be calculated.

## TOTAL PRINCIPAL AMOUNT DUE

29.     The total dead freight due and owing by Defendant under the SKALA and GO STAR charter parties is and continues to be $962,614.53 (paragraphs 10 and 23 of Verified Complaint). The total demurrage due and owing by Defendant under the ATLANTICA, RAINBOW and GO STAR charter parties is and continues to be $381,220.00 (paragraphs 15, 20 and 25 of Verified Complaint). Thus, the total amount due and owing by Defendant under the four charter party contracts is $1,343,834.50.

## TOTAL AMOUNT SOUGHT TO BE ATTACHED

30.     The SKALA and RAINBOW charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in New York while

8

the ATLANTICA and GO STAR charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London and English law to apply.  In addition to the full principal amount of Plaintiff's claim outlined above, Plaintiff also seeks an attachment over an additional sum to cover interest as well as its anticipated attorneys' fees and costs which is recoverable in London arbitration. *(See Winter Storm Shipping, Ltd. v. TPI,* 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

31.     Plaintiff estimates, as best as can be presently calculated, these additional damages and costs to be $369,985.10, comprised of interest in the sum of $169,985.10 (computed on the principal amount of the dead freight and demurrage owed of $1,343,834.50 at a rate of 6% compounded quarterly for a period of 2 years – the estimated time frame within which the arbitration will be completed), and $200,000 estimated English counsel fees and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there.

32.     Plaintiff's total claim against Defendant for which it seeks security herein is $1,713,819.60 ($1,343,834.50 + $369,985.10).

33.     All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

34.     Plaintiff bring this action by seeking an order of seizure of Defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendant to proceed with arbitration of Plaintiff's claim against Defendant and to retain jurisdiction to enter a judgment upon the arbitration award in the New York and London arbitrations.

**WHEREFORE,** the Plaintiff prays the following:

1.      That process in due form of law according to the practice of this Court in causes of admiralty and maritime jurisdiction may issue against Defendant, ATN Industries Inc., that it be personally cited to appear and answer the matters set forth above;

2.      That if the Defendant cannot be found within this District, then that Defendant's goods and chattels, or credits and effects within the hands of garnishees within the jurisdiction of this Court be attached by process pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims and in an amount sufficient to answer Plaintiff's claims of $1,713,819.60, the sum sued for in this Complaint;

3.      That the action thereafter be stayed pending the arbitration award and that a judgment be entered upon the award of the aforesaid arbitration for the amount of any recovery by Plaintiff, together with interest, costs and disbursements of this action; and

4.      That this Court grants to Plaintiff such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
       February 19, 2008

                          **LAW OFFICES OF RAHUL WANCHOO**
                          Attorneys for Plaintiff
                          Totalmar Navigation Corp.

                          By: _Rahul Wanchoo_____
                          Rahul Wanchoo (RW-8725)

STATE OF NEW JERSEY )
                              ss.
COUNTY OF BERGEN    )

I, Rahul Wanchoo, being duly sworn, deposes and says:

I am an attorney at law and a member of the firm of Law Offices of Rahul

Wanchoo, attorneys for Plaintiff.

I have read the foregoing Verified Complaint and know the contents thereof and

the same are true to the best of my knowledge, information and belief.

The reason that this verification is made by me and not by Plaintiff is that Plaintiff

is a foreign corporation and is not within this District.

_Rahul Wanchoo_

Sworn to and subscribed to
before me this 19th day of
February, 2008

_Lila Chin_
_____
Notary Public

LILA CHIN
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 18, 2012

# EXHIBIT 1

ORIGINAL

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON"    Part I |
|---|---|
| | **2. Place and date**<br>Caracas, 23rd November 2007 |

| 3. Owners/Place of business (Cl. 1)<br><br>Totalmar Navigation Corp/agecom<br>As Disponent Owner | 4. Charterers/Place of business (Cl. 1)<br><br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
|---|---|
| **5. Vessel's name (Cl. 1)**<br>MV Skala | **6. GRT/NRT (Cl. 1)**<br>23,144 / 13384 |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**<br>39,207 | **8. Present position (Cl. 1)**<br><br>Trading |
| **9. Expected ready to load (abt.) (Cl. 1)**<br>December 3rd 2007 | |
| **10. Loading port or place (Cl. 1)**<br><br>1 good safe berth Shanghai, China always accessible always afloat | **11. Discharging port or place (Cl. 1)**<br><br>1 good safeberth Maracaibo, Venezuela. Always accessible always afloat |

**12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**

Min 480 to 500 pices of pipes upto vessl's maximu capacity at Owners option of water pipes of policarbonate steel pipes dimensions Guarantee by Charterers. See also clause 22

| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>See clause 35 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>See clause 35 |
|---|---|
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)<br><br>See clause 33 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b) if total laytime for load. and disch., fill in c) only ) (Cl. 6)<br>a) Laytime for loading<br>See Clause 26 |
| 17. Shippers (state name and address) (Cl. 6)<br><br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shanghai, PRC At: Fletcher Xi | b) Laytime for discharging<br>See Clause 26 |
| | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>See Clause 27 | 19. Cancelling date (Cl. 10)<br>December 13th, 2007 |

**20. Brokerage commission and to whom payable (Cl. 14)**

**21. Additional clauses covering special provisions, if agreed.**

Additional clauses 22 to 42 both inclusive to form part of this Charter Party.

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Totalmar Navigation Corp.

| Signature (Owners)<br><br>Totalmar Navigation Corp. | Signature (Charterers)<br><br>ATN Industries Inc. |
|---|---|

Printed and sold by Wyt & Zonen B.V., Rotterdam, by authority of The Baltic and International Maritime Conference, Copenhagen.

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

ORIGINAL

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the
steamer or motor-vessel named in Box 5, of the gross/nett Register
tons indicated in Box 6 and carrying about the number of tons of
deadweight cargo stated in Box 7, now in position as stated in Box 8
and expected ready to load under this Charter about the date in-
dicated in Box 9, and the party mentioned as Charterers in Box 4
that:
The said vessel shall proceed to the loading port or place stated
in Box 10 or so near thereto as she may safely get and lie always
afloat, and there load a full and complete cargo (if shipment of deck
cargo agreed same to be at Charterers' risk) as stated in Box 12
(Charterers to provide all mats and/or wood for dunnage and any
separations required, the Owners allowing the use of any dunnage
wood on board if required) which the Charterers bind themselves to
ship, and being so loaded the vessel shall proceed to the discharg-
ing port or place stated in Box 11 as ordered on signing Bills of
Lading or so near thereto as she may safely get and lie always
afloat and there deliver the cargo on being paid freight on delivered
or intaken quantity as indicated in Box 15 at the rate stated in
Box 13

2. Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods
or for delay in delivery of the goods only in case the loss, damage
or delay has been caused by the improper or negligent stowage of
the goods (unless stowage performed by shippers/Charterers or their
stevedores or servants) or by personal want of due diligence on the
part of the Owners or their Manager to make the vessel in all respects
seaworthy and to secure that she is properly manned, equipped and
supplied or by the personal act or default of the Owners or their
Manager.
And the Owners are responsible for no loss or damage or delay
arising from any other cause whatsoever, even from the neglect or
default of the Captain or crew or some other person employed by the
Owners on board or ashore for whose acts they would but for this
clause, be responsible, or from unseaworthiness of the vessel on
loading or commencement of the voyage or at any time whatsoever.
Damage caused by contact with or leakage, smell or evaporation
from other goods or by the inflammable or explosive nature or in-
sufficient package of other goods not to be considered as caused
by improper or negligent stowage, even if in fact so caused.

3. Deviation Clause
The vessel has liberty to call at any port or ports in any order, for
any purpose to sail without pilots, to tow and/or assist vessels in
all situations, and also to deviate for the purpose of saving life and
or property

4. Payment of Freight        See Clause 35
The freight to be paid in cash without discount on delivery of the cargo
without discount on delivery of the cargo at mean rate of exchange
ruling on day of ship's payment, the receivers of the cargo being
bound to pay freight on account during delivery if required by Cap-
tain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be
advanced by Charterers if required at highest current rate of ex-
change, subject to two per cent to cover insurance and other ex-
penses.

5. Loading Discharging Costs        See Clause 33
(a) Gross Terms
The cargo to be brought alongside in such a manner as to enable
vessel to take the goods with her own tackle. Charterers to procure
and pay the necessary men on shore or on board the lighters to do
the work the vessel using only her own tackle.
If the loading takes place by elevator, cargo to be put free in vessel's
holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be
loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense
alongside the vessel not beyond the reach of her tackle.
(b) F.I.O. and free stowed trimmed
The cargo shall be brought into the holds, loaded, stowed and or
trimmed and taken from the holds and discharged by the Charterers or
their Agents, free of any risk, liability and expense whatsoever to the
Owners.
The Owners shall provide winches, motive power and winchmen from
the Crew if requested and permitted if not, the Charterers shall
provide and pay for winchmen from shore and/or cranes, if any (This
provision shall not apply if vessel is gearless and stated as such in
Box 16)
* Indicate alternative (a) or (b) as agreed in Box 16

6. Laytime        See Clause 26
(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as
indicated in Box 16, weather permitting, Sundays and holidays ex-
cepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running hours
as indicated in Box 16, weather permitting, Sundays and holidays ex-
cepted, unless used, in which event time actually used shall count.
(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total
running hours as indicated in Box 16, weather permitting, Sundays and
holidays excepted, unless used, in which event time actually used
shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 1 p.m. if
notice of readiness is given before noon, and at 6 a.m. next working
day if notice is given during office hours after noon. Notice at loading
port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging
time, as the case may be
* Indicate alternative (a) or (b) as agreed in Box 16

7. Demurrage        See Clause 27
Ten running days on demurrage at the rate stated in Box 18 per
day or pro rata for any part of a day, payable day by day, to be
allowed Merchants altogether at ports of loading and discharging.

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight, and
demurrage and damages for detention. Charterers shall remain re-
sponsible for dead-freight and demurrage (including damages for
detention), incurred at port of loading, Charterers shall also remain
responsible for freight and demurrage (including damages for deten-
tion) incurred at port of discharge, but only to such extent as the
Owners have been unable to obtain payment thereof by exercising
the lien on the cargo

9. Bills of Lading
The Captain to sign Bills of Lading at such rate of freight as
presented without prejudice to this Charterparty, but should the
freight by Bills of Lading amount to less than the total chartered
freight the difference to be paid to the Captain in cash on signing
Bills of Lading

10. Cancelling Clause
Should the vessel not be ready to load (whether in berth or not) on
or before the date indicated in Box 19, Charterers have the option
of cancelling this contract, such option to be declared, if demanded,
at least 48 hours before vessel's expected arrival at port of loading
Should the vessel be delayed on account of average or otherwise,
Charterers to be informed as soon as possible, and if the vessel is
delayed for more than 10 days after the day she is stated to be
expected ready to load, Charterers have the option of cancelling this
contract, unless a cancelling date has been agreed upon.

11. General Average
General average to be settled according to York-Antwerp Rules,
1974. Proprietors of cargo to pay the cargo's share in the general
expenses even if same have been necessitated through neglect or
default of the Owners' servants (see clause 2)

12. Indemnity
Indemnity for non performance of this Charterparty, proved damages,
not exceeding estimated amount of freight

13. Agency
In every case the Owners shall appoint his own Broker or Agent both
at the port of loading and the port of discharge.

14. Brokerage
A brokerage commission at the rate stated in Box 20 on the freight
earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated
amount of freight and dead-freight to be paid by the Owners to the
Brokers as indemnity for the latter's expenses and work. In case of
more voyages the amount of indemnity to be mutually agreed.

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the con-
sequences of any strikes or lock-outs preventing or delaying the
fulfilment of any obligation under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or
any part of it when vessel is ready to proceed from her last port or
at any time during the voyage to the port or ports of loading or
after her arrival there Captain or Owners may ask Charterers to
declare that they agree to reckon the laydays as if there were no
strike or lock-out unless Charterers have given such declaration in
writing (by telegram if necessary) within 24 hours. Owners shall
have the option of cancelling this contract. If part cargo has already
been loaded, Owners must proceed with same (freight payable on
loaded quantity only) having liberty to complete with other cargo on
the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo
on or after vessel's arrival at or off port of discharge and same has not
been settled within 48 hours Receivers shall have the option of keep-
ing vessel waiting until such strike or lock-out is at an end against
paying half demurrage after expiration of the time provided for dis-
charging until the strike or lock-out terminates and thereafter full
demurrage until the cargo has been discharged, or of ordering the
vessel to a safe port where she can safely discharge without risk of
being detained by strike or lock-out. Such orders to be given within
48 hours after Captain or Owners have given notice to Charterers of
the strike or lock-out affecting the discharge. On delivery of the cargo
at such port all conditions of this Charterparty and of the Bill of Lading
shall apply and vessel shall receive the same freight as if she had
discharged at the original port of destination, except that if the dis-
tance to the substituted port exceeds 100 nautical miles, the freight
on the cargo delivered at the substituted port to be increased in
proportion.

16. War Risks ("Voywar 1950")
(1) In these clauses "War Risks" shall include any blockade or any
action which is announced as a blockade by any Government or by any
belligerent or by any organised body, sabotage, piracy, and any actual
or threatened war, hostilities, warlike operations, civil war, civil com-
motion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that
performance of the contract will subject the Vessel or her Master and
crew or her cargo to war risks at any stage of the adventure, the Owners
shall be entitled by letter or telegram despatched to the Charterers to
cancel this Charter.
(3) The Master shall not be required to load cargo or to continue
loading or to proceed on or to sign Bills of Lading for any adventure, or
on any or on any port at which it appears that the Vessel, her Master
and crew or her cargo will be subjected to war risks. In the event of
the exercise by the Master of his right under this Clause after part or all
of the cargo has been loaded, the Master shall be at liberty either to
discharge such cargo at the loading port or to proceed therewith. In
the latter event the Vessel shall have liberty to carry other cargo for
the Owners' benefit and accordingly to proceed to and load or dis-
charge such other cargo at any other port or ports whatsoever,
backwards or forwards although in a contrary direction to or out of or
beyond the ordinary route. In the event of the Master electing to
proceed with part cargo under this Clause freight shall in any case
be payable on the quantity delivered.
(4) If at any time the Master elects to proceed with part or full cargo
under Clause 3 or after the Vessel has left the loading port, or the

# PART II

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have dispatched a request by telegram to the Charterers for the nomination of a substitute discharging port the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other way whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations. If by reason of or in compliance with any such direction or recommendation, anything is done or is not done such shall not be deemed a deviation.

(b) If by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any safe port which the Master or Owners in his or their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

## 17. GENERAL ICE CLAUSE

**Port of loading**

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

**Port of discharge**

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where he can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 480 TO 500 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL´S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL´S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 03 / 13 NOVEMBER 2007.

ETA TO LOAD PORT DECEMBER 03 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER´S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL´S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL´S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR
DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT
THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS
ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS
INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH
SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE
FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED,
FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS
OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR
CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN
NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01)
ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH
AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH
PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF
ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW
ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF
SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY
HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT
WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN
ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE
REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN
APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR  OWNERSHIP TO BE FOR
CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS
INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR
CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES
TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER
SHALL BE FOR OWNERS ACCOUNT.

**CLAUSE 33: COST OF LOADING AND DISCHARGE**

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL.

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA
LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION
CORP. CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH
OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING
ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR
SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR
TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR
CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION /
SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO
BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND
EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER´S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER
HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS,
SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR
ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER
VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY
OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO
RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE
VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN
(15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER
DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE
INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD  118 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED /
DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING
/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO
OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED)
CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL
CUBIC FOR MINIMUM 480 PIECES EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED
ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE
VESSEL A/O CARGO LOST OR NOT LOST.

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV
SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT:
MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS.
TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:      **JPMORGAN CHASE NEW YORK**

Address Bank:           **345 PARK AVENUE**

                        **NEW YORK – NY 10154**

ABA:                    **021000021**
SWIFT:                  **CHASUS33**

BENEFICIARY BANK:       **EBNA BANK N.V.**
ADR-BENE-BANK:          **AMACO BUILDING 36-B**
                        **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:      **0011990850**

ULTIMATE BENEFICIARY:   **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:   **201389**

**CLAUSE 36 VESSEL´S DESCRIPTION**
VESSEL´S IS DESCRIBED AS FOLLOWS:
NAME M/V SKALA, PREVIOUS NAME FASSA
    TYPE Well Decker/Log/Bulk carrier, H&M The New India Assurances Company Ltd, India
    P&I The Steamship Mutual, Bermuda, PORT OF REGISTRY Valletta, Malta, OFFICIAL No 6463
    IMO No 8223347, MMSI No 248478000, FLAG Maltese, BUILT Imabari Shipbuilding Co. Ltd.,
    Marugame - Japan. DELIVERED 24/10/1983, SHIP No T-4649 (S-1116), CLASSIFICATION No.
    NK 831303, CLASS / NOTATION NK/NS*(BC,SHC 2, 4 OR 1, 3, 5 E)(ESP) / MNS, CHG, MPP,
    LSA, RCF
    L.O.A 189.98m
    L.B.P 180.00m
    BREADTH (MLD) 28.4m
    DEPTH (MLD) 15.30m
    TPC 43.5 Mt (Light), 46.7 (Loaded)
    FREEBOARD 4337 mm
    FWA 254 mm
    TONNAGE NRT GRT INT 13384 / 23144
    PANAMA 19281 24670, SUEZ 21309,77 23563,15
    DEADWEIGHT
    D/WEIGHT(MT) DRAFT (Meters) TROPICAL FRESH 39.207 11.499
    FRESH WATER 38,158 11.270, TROPICAL 39.228 11.245, SUMMER 38.156 11.016,
    WINTER 37.090 10.787
    CAPACITY
    HATCH DIMENSIONS Meters HOLD DIMENSIONS (L x W x H) Meters GRAIN / BALE
    NO 1 12.8 x 14,4 21,5 x 22.5 x 13.2 229.333,49 / 219.254,24
    NO 2 24,8 x 14,4 32,8 x 22.5 x 13.2 409.280,37 / 391.859,48
    NO 3 19,2 x 14,4 28,0 x 22.5 x 13.2 348.226,74 / 331.466,24
    NO 4 24,8 x 14,4 32,8 x 22.5 x 13.2 409.009,15 / 391.924,46
    NO 5 19,2 x 14,4 28,0 x 12,0 x 13.2 336.396,56 / 325.229,61
        1.732.246,31 / 1.659.734,03 ft3

    TANK CAPACITY (in m3)
    FRESH WATER 350,4
    BALLAST 12.487,90
    HFO(180 CST) 2.084,40
    MDO 238,4

    HEIGHT Keel to Top Mast - 45.83 Mts
    TYPE OF HATCHCOVERS McGregor Folding type, Watertight Steel Hatch Cover

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

Hinged, 4 Panels on each Hatch open 2 Forward & 2 Aft
WW/AUSSIE/CO2/GRAIN FITTED
STRENGHTENED FOR HEAVY CARGOES=HOLD 2÷4 OR 1÷3÷5
VENTILATION SYSTEM: NATURAL VENTILATION
STRENGTH
STRENGHT OF WEATHER DECK 3,3 Meters/Square meters
STRENGTH OF HATCH COVERS 2,4 Meters/Square meters
STRENGHT OF TANK TOP No1-21.48, No2&4-20,97, No3-20,78, No 5-20,50 Meters/Square meters
CARGO GEARS: ELECRTO HYDRAULIC- (Cranes 4 x 25 MT)
LOG DESCRIPTION
1) Fixed Stanchions on Deck P&S in the way of Mast house
2) Stanchions On Board - Permanent: 6 Twin Steel Stanchions Each Side
   - Removable: 64 Pieces. Wooden
Stanchions for Both Sides
3) Type of Stanchions:    Wooden Removable Stanchions
4) Height of Stanchions:  7,90 - 8,10 M Steel Permanent Stanchions
5) Height of Stanchions:  7,80 M except No1-Hold which is 6,80 M - Wooden
6) Loading Height:        No.1 Hold up to 6,70 m, No.2-5 Holds up to 7,80 m
7) Distance between each Removable Stanchion: Varies from 2,4 to 3,0 M
8) Distance between Permanent Stanchions: No,1 ≈ 11,9 Meters  No.2&4 - 29,8 Meters, No.5 ≈ 20,1
   Meters
9) Distance between Hatch cover to resting point of Cranes: 8 M

ENGINE TYPE: Mitsubishi-Sulzer, 7RLB56 (MCR-1)
SPEED & CONSUMPTION ALL ABOUT
LOADED 13.0 Kt & 28.5 Mt IFO 180 CST RME 25 & 1.5 Mt MDO
BALLAST 13.0 Kt & 28.0 Mt IFO 180 CST & 1.5 Mt MDO
PORT CONS IDLE - 1.5 Mt MDO, Gear Working - 3.0 Mt MDO
The above Speed & Consumption is basis good Weather condition, no adverse current,
no negative influence of Swells and not exceeding Beaufort Scale Force - 3
Vessel burns MDO: Maneuvering / Navigating in confined / restricted waters /
Canals / Rivers and in / out of Ports / Locks etc
¬ ALL DETAILS ABOUT +


**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"


**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V SKALA AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE,
 BANK REFERENCES, MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH
COVERS 480 TO 500 PIECES
POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS
12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-
STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE
INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 3/13 DEC 2400HRS
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD
SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO
PAY DETENTION AT US$ 60,000 PER DAY.
-TIME  NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS  BY EMAIL/FAX/CABLE UPON
 ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD  118 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END
OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER
PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL
CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK

-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH
FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL
ADDITIONAL STANTIONS TO BE  FITTED FOR THE SAFE LASHING/SECURING OF
CARGO OR  SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY
CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY
SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS
REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS
APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR
OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND
FREIGHT BENDS  INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING
DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL
TO BE  PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME
EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P

END

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 M/V SKALA LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**FOR CHARTERERS**

ATN INDUSTRIES INC

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.



**ADDENDUM TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

It is this day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that due to the information received from Panama Agents Messrs. Wildford & McKay whom will be acting as vessel's agent through her passage by the Panama Canal, that due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala will only be able to load min 410 pieces of pipes instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Signed in Caracas on the 30th day of December 2007. Two originals have been drawn up one for each party.

Totalmar Navigation Corp.

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC

# EXHIBIT 2

5/8

M.V. S KALA
DECEMBER 8, 2007

<u>LETTER OF PROTEST</u>

THRU: PENAVICO SHANGHAI PUDONG CO., LTD.

TO: SHANGHAI JIFANG STEEL PIPE CO, LTD
CC: TELEDATA MARINE SOLUTIONS LTD
CC: COSMOS VENTURES HELLAS

SUBJECT: DEAD FREIGHT PROTEST FOR SHORT LOADED CARGO

DEAR SIR,

THIS IS TO BRING TO YOUR KIND NOTICE THAT ACCORDING TO THE
CHARTER PARTY THE FINAL QUANTITY TO BE LOADED IS IN MY OPTION.
ACCORDING TO MY STOWAGE PLAN SENT TO YOU REQUESTED 490
PIECES AND WHEREAS SUPPLIED ONLY 430 PIECES. THEREFORE OWNERS
ARE ENTITLED TO CLAIM DEAD FREIGHT.

OWNERS WILL HOLD SHIPPERS/CHARTERERS FULLY RESPONSIBLE FOR
CLAIM ARISING AGAINST DEAD FREIGHT DUE TO SHORT LOADED
CARGO OF 60 PIECES STEEL PIPES.

RESPECTFULLY YOURS,

CAPT. MERCANTES HAYASIN
MASTER, M.V. S KALA

RECEIVED ONLY
AS PENAVICO AGENT

# EXHIBIT 3

# TOTALMAR NAVIGATION CORP.    2/2

CARACAS, DECEMBER 10th  2007

INVOICE # TNC/12-034

MESSRS.
ATN INDUSTRIES INC.

REF:   FREIGHT INVOICE M/V SKALA CP 23/11/07


DEAR SIRS,

FIND HERE BELLOW THE FREIGHT INVOICE FOR REFERRED SHIPMENT


**FREIGHT INVOICE**

- TOTAL NUMBER OF PIPES LOADED UNDER / ON DECK: 430
- TOTAL CBM PER BILL OF LADING: 35,439.697

- FREIGHT: CBM 35,439.697 X US$ 118.00          = US$ 4,181,884.246
- DEAD FREIGHT 60 PIECES X 82.4179 X US$ 118.00     = US$   583,518.732

                              TOTAL FREIGHT    = US$ 4,765,402.978

KINDLY REMIT THE AMOUNT OF US$ 4,765,402.978 BY TELEGRAPHIC TRANSFER TO
OWNERS BANKERS AT:

| | |
|---|---|
| **INTERMEDIARY BANK:** | JPMORGAN CHASE NEW YORK |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

KINDLY ADVISE WHEN FUNDS HAVE BEEN REMITTED.

# EXHIBIT 4

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"

Part I

| 1. Shipbroker | |
|---|---|

| | 2. Place and date |
| | Caracas, December 29th 2007 |

| 3. Owners;/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1) |
|---|---|
| Totalmar Navigation Corp./Agecom<br>As Disponent Owners | ATN Industries Inc.<br>CCCT Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |

| 5. Vessel's name (Cl. 1) | 6. GRT/NRT (Cl. 1) |
|---|---|
| M/V Golden Wish or Sub | 26,058 / 14,872 |

| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
|---|---|
| 45,719 Deadweight | Trading |

| 9. Expected ready to load (abt.) (Cl. 1) |
|---|
| December 8th, 2007 |

| 10. Loading port or place (Cl. 1) | 11. Discharging port or place (Cl. 1) |
|---|---|
| 1 good safe berth Shanghai, China<br>always accessible always afloat | 1 good safe berth Maracaibo, Vene-<br>zuela. Always accessible always<br>afloat. |

| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) |
|---|
| Min 435 pieces of pipes upto vessel's maximum capacity at Owner's<br>option of water pipes of policarbonate steel pipes dimensions Gua-<br>rantee by Charterers. See also Clause 22 |

| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
|---|---|
| See Clause 35 | See Clause 35 |

| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6) |
|---|---|
| See clause 33 | a) Laytime for loading See Clause 26 |
| | b) Laytime for discharging See Clause 26 |

| 17. Shippers (state name and address) (Cl. 6) | |
|---|---|
| Jiafang Steel Pipes Co., Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shangahi, PRC At: Fletcher Xi | c) Total laytime for loading and discharging |

| 18. Demurrage rate (loading and discharging) (Cl. 7) | 19. Cancelling date (Cl. 10) |
|---|---|
| See Clause 27 | December 15th, 2007 |

| 20. Brokerage commission and to whom payable (Cl. 14) |
|---|
| |

| 21. Additional clauses covering special provisions, if agreed. |
|---|
| Additional clauses 22 to 42 both inclusive to form part of this<br>Charter Party |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Totalmar Navigation Corp.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp. | ATN Industries Inc. |

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

1. It is agreed between the party mentioned in Box 3 as Owners of the    1
steamer or motor vessel named in Box 5, of the gross/nett Register    2
tons indicated in Box 6 and carrying about the number of tons of    3
deadweight cargo stated in Box 7, now in position as stated in Box 8    4
and expected ready to load under this Charter about the date in-    5
dicated in Box 9, and the party mentioned as Charterers in Box 4    6
that    7
The said vessel shall proceed to the loading port or place stated    8
in Box 10 or so near thereto as she may safely get and lie always    9
afloat, and there load a full and complete cargo (if shipment of deck    10
cargo agreed same to be at Charterers' risk) as stated in Box 12    11
(Charterers to provide all mats and/or wood for dunnage and any    12
separations required, the Owners allowing the use of any dunnage    13
wood on board if required) which the Charterers bind themselves to    14
ship, and being so loaded the vessel shall proceed to the discharg-    15
ing port or place stated in Box 11, as ordered on signing Bills of    16
Lading or so near thereto as she may safely get and lie always    17
afloat and there deliver the cargo on being paid freight on delivered    18
or intaken quantity as indicated in Box 13 at the rate stated in    19
Box 13    20

2. **Owners' Responsibility Clause**    21
Owners are to be responsible for loss of or damage to the goods    22
or for delay in delivery of the goods only in case the loss, damage    23
or delay has been caused by the improper or negligent stowage of    24
the goods (unless stowage performed by shippers/Charterers or their    25
stevedores or servants) or by personal want of due diligence on the    26
part of the Owners or their Manager to make the vessel in all respects    27
seaworthy and to secure that she is properly manned, equipped and    28
supplied or by the personal act or default of the Owners or their    29
Manager    30
And the Owners are responsible for no loss or damage or delay    31
arising from any other cause whatsoever, even from the neglect or    32
default of the Captain or crew or some other person employed by the    33
Owners on board or ashore for whose acts they would, but for this    34
clause, be responsible, or from unseaworthiness of the vessel on    35
loading or commencement of the voyage or at any time whatsoever.    36
Damage caused by contact with or leakage, smell or evaporation    37
from other goods or by the inflammable or explosive nature or in-    38
sufficient package of other goods not to be considered as caused    39
by improper or negligent stowage, even if in fact so caused    40

3. **Deviation Clause**    41
The vessel has liberty to call at any port or ports in any order, for    42
any purpose, to sail without pilots, to tow and to assist vessels in    43
all situations, and also to deviate for the purpose of saving life and    44
or property    45

4. **Payment of Freight**    46
See clause 35    47
The freight to be paid in the manner prescribed in Box 14 in cash    47
without discount on delivery of the cargo at mean rate of exchange    48
ruling on day or days of payment, the receivers of the cargo being    49
bound to pay freight on account at any moment if required by Cap-    50
tain or Owners    51
Cash for vessel's ordinary disbursements at port of loading to be    52
advanced if required by Charterers at highest current rate of ex-    53
change, subject to two per cent to cover insurance and other ex-    54
penses    55

5. **Loading/Discharging Costs**    56
See clause 33    
(a) **Gross Terms:**    56
The cargo to be brought alongside in such a manner as to enable    57
vessel to take the goods with her own tackle. Charterers to procure    58
and pay the necessary men on shore or on board the lighters to do    59
the work there, (and also to) (to put the cargo on board)    60
if the loading takes place by elevator cargo to be put free in vessel's    61
holds, Owners only paying trimming expenses.    62
Any pieces and/or packages of cargo over two tons weight, shall be    63
loaded, stowed and discharged by Charterers at their risk and expense    64
The cargo to be received by Merchants at their risk and expense    65
alongside the vessel not beyond the reach of her tackle    66
(b) (F.I.O. and free stowed/trimmed)    68
The cargo shall be brought into the holds, loaded, stowed and/or trim-    69
med and taken from the holds and discharged by the Charterers or    70
their Agents, free of any risk, liability and expense whatsoever to the    71
Owners    72
The Owners shall provide winches, motive power and winchmen from    73
the Crew if requested and permitted, if not, the Charterers shall    74
provide and pay for winchmen from shore and or cranes, if any. (This    75
provision shall not apply if vessel is gearless and stated as such in    76
Box 15)    77
*Indicate alternative (a) or (b) as agreed, in Box 15    78

6. **Laytime**    See clause 26    79
*(a) Separate laytime for loading and discharging    80
The cargo shall be loaded within the number of running hours as    81
indicated in Box 16 weather permitting, Sundays and holidays ex-    82
cepted, unless used, in which event time actually used shall count    83
The cargo shall be discharged within the number of running hours as    84
indicated in Box 16 weather permitting, Sundays and holidays ex-    85
cepted, unless used, in which event time actually used shall count    86
*(b) Total laytime for loading and discharging    87
The cargo shall be loaded and discharged within the number of total    88
running hours as indicated in Box 16 weather permitting, Sundays and    89
holidays excepted, unless used, in which event time actually used    90
shall count    91
*(c) Commencement of laytime (loading and discharging)    92
Laytime for loading and discharging shall commence at 1 p.m. if    93
notice of readiness is given before noon, and at 6 a.m. next working    94
day if notice given during office hours after noon. Notice at loading    95
port to be given to the Shippers named in Box 17    96
Time used before commencement of laytime shall count    97
Time lost in waiting for berth to count as loading or discharging    98
time as the case may be    99
*Indicate alternative (a) or (b) as agreed, in Box 16    100

7. **Demurrage**    See clause 27    101
Ten running days on demurrage at the rate stated in Box 18 per    102
day or pro rata for any part of a day, payable day by day, to be    103
allowed Merchants altogether at ports of loading and discharging    104

8. **Lien Clause**    105
Owners shall have a lien on the cargo for freight, dead-freight,    106
demurrage and damages for detention. Charterers shall remain re-    107
sponsible for dead-freight and demurrage (including damages for    108
detention), incurred at port of loading, Charterers shall also remain    109
responsible for freight and demurrage (including damages for deten-    110
tion) incurred at port of discharge, but only to such extent as the    111
Owners have been unable to obtain payment thereof by exercising    112
the lien on the cargo.    113

9. **Bills of Lading**    114
The Captain to sign Bills of Lading at such rate of freight as    115
presented without prejudice to this Charterparty, but should the    116
freight by Bills of Lading amount to less than the total chartered    117
freight the difference to be paid to the Captain in cash on signing    118
Bills of Lading    119

10. **Cancelling Clause**    120
Should the vessel not be ready to load (whether in berth or not) on    121
or before the date indicated in Box 19, Charterers have the option    122
of cancelling this contract, such option to be declared, if demanded,    123
at least 48 hours before vessel's expected arrival at port of loading.    124
Should the vessel be delayed on account of average or otherwise    125
Charterers to be informed as soon as possible, and if the vessel is    126
delayed for more than 10 days after the day she is stated to be    127
expected ready to load, Charterers have the option of cancelling this    128
contract, unless a cancelling date has been agreed upon    129

11. **General Average**    130
General average to be settled according to York-Antwerp Rules,    131
1974. Proprietors of cargo to pay the cargo's share in the general    132
expenses even if same have been necessitated through neglect or    133
default of the Owners' servants (see clause 2)    134

12. **Indemnity**    135
Indemnity for non-performance of this Charterparty, proved damages,    136
not exceeding estimated amount of freight    137

13. **Agency**    138
In every case the Owners shall appoint their own Broker or Agent both    139
at the port of loading and the port of discharge    140

14. **Brokerage**    141
A brokerage commission at the rate stated in Box 20 on the freight    142
earned is due to the party mentioned in Box 20    143
In case of non-execution of least 1/3 of the brokerage on the estimated    144
amount of freight and dead-freight to be paid by the Owners to the    145
Brokers as indemnity for the latter's expenses and work. In case of    146
more voyages the amount of indemnity to be mutually agreed    147

15. **GENERAL STRIKE CLAUSE**    148
Neither Charterers nor Owners shall be responsible for the con-    149
sequences of any strikes or lock-outs preventing or delaying the    150
fulfilment of any obligations under this contract    151
If there is a strike or lock-out affecting the loading of the cargo, or    152
any part of it, when vessel is ready to proceed from her last port    153
or at any time during the voyage to the port or ports of loading or    154
after her arrival there, Captain or Owners may ask Charterers to    155
declare, that they agree to reckon the laydays as if there were no    156
strike or lock-out. Unless Charterers have given such declaration in    157
writing (by telegram, if necessary) within 24 hours, Owners shall    158
have the option of cancelling this contract. If part cargo has already    159
been loaded, Owners must proceed with same (freight payable on    160
loaded quantity only) having liberty to complete with other cargo    161
on the way for their own account.    162
If there is a strike or lock-out affecting the discharge of the cargo    163
on or after vessel's arrival at or off port of discharge and same has    164
not been settled within 48 hours, Receivers shall have the option of    165
keeping vessel waiting until such strike or lock-out is at an end    166
against paying half demurrage after expiration of the time provided    167
for discharging, or of ordering the vessel to a safe port where she    168
can safely discharge without risk of being detained by strike or lock-    169
out. Such orders to be given within 48 hours after Captain or Owners    170
have given notice to Charterers of the strike or lock-out affecting the    171
discharge. On delivery of the cargo at such port, all conditions of    172
this Charterparty and of the Bill of Lading shall apply and vessel    173
shall receive the same freight as if she had discharged at the first    174
original port of destination except that if the distance of the sub-    175
stituted port exceeds 100 nautical miles, the freight on the cargo    176
delivered at the substituted port to be increased in proportion    177

16. **War Risks ("Voywar 1950")**    178
(1) In these clauses "War Risks" shall include any blockade or any    179
action which is announced as a blockade by any Government or by any    180
belligerent or by any organized body, terror, sabotage, piracy, and any actual or    181
threatened war, hostilities, warlike operations, civil war, civil comm-    182
otion or revolution    183
(2) If at any time before the Vessel commences loading, it appears that    184
performance of the contract will subject the Vessel or her Master and/or    185
crew or her cargo to war risks at any stage of the adventure, the Owners    186
shall be entitled by letter or telegram despatched to the Charterers, to    187
cancel this Charter.    188
(3) The Master shall not be required to load cargo or to continue    189
loading or to proceed on or to sign Bills of Lading for any adventure    190
on which any part of which it appears that the Vessel her Master    191
and crew or her cargo will be subjected to war risks. In the event of    192
the exercise by the Master of this right under this Clause after part    193
full cargo has been loaded, the Master shall be at liberty either to dis-    194
discharge such cargo at the loading port or to proceed therewith. In    195
the latter case the Vessel shall have liberty to carry other cargo for    196
for Owners benefit and accordingly to proceed to and load or dis-    197
discharge such other cargo at any other port or ports whatsoever    198
backwards or forwards, although in a contrary direction to or out of or    199
beyond the ordinary route, in the event of the Master electing to pro-    200
proceed with part cargo under this Clause freight shall in any case    201
be payable on the quantity delivered    202
(4) If at the time the Master proceeds to proceed with part or full cargo    203
under Clause 3, or after the Vessel has left the loading port or the    204

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc

last of the loading ports, if more than one, it appears that further 205
performance of the contract will subject the Vessel, her Master and 206
crew or her cargo, to war risks, the cargo shall be discharged, or if 207
the discharge has been commenced shall be completed, at any safe 208
port in vicinity of the port of discharge as may be ordered by the 209
Charterers. If no such orders shall be received from the Charterers 210
within 48 hours after the Owners have despatched a request by 211
telegram to the Charterers for the nomination of a substitute discharg- 212
ing port, the Owners shall be at liberty to discharge the cargo at 213
any safe port which they may, in their discretion, decide on and such 214
discharge shall be deemed to be due fulfilment of the contract of 215
affreightment. In the event of cargo being discharged at any such 216
other port, the Owners shall be entitled to freight as if the discharge 217
had been effected at the port or ports named in the Bill(s) of Lading 218
or to which the Vessel may have been ordered pursuant thereto 219

15. (a) The Vessel shall have liberty to comply with any directions 220
or recommendations as to loading, departure, arrival, routes, ports 221
of call, stoppages, destination, zones, waters, discharge, delivery or 222
in any other way whatsoever (including any direction or recom- 223
mendation not to go to the port of destination or to delay proceeding 224
thereto or to proceed to some other port) given by any Government or 225
by any belligerent or by any organized body engaged in civil war, 226
hostilities or warlike operations or by any person or body acting or 227
purporting to act as or with the authority of any Government or 228
belligerent or of any such committee or body having under the 229
powers having under the terms of the war risks insurance on the 230
Vessel, the right to give any such directions or recommendations. If 231
by reason of or in compliance with any such direction or recom- 232
mendation, anything is done or is not done. Such shall not be deemed 233
a deviation. 234

(b) If, by reason of or in compliance with any such directions or re- 235
commendations, the Vessel does not proceed to the port or ports 236
named in the Bill(s) of Lading or to which she may have been 237
directed to proceed to, the Vessel may proceed to any port as 238
directed or recommended or to any safe port which the Owners in 239
their discretion may decide on and there discharge the cargo. Such 240
discharge shall be deemed to be due fulfilment of the contract of 241
affreightment and the Owners shall be entitled to freight as if 242
discharge had been effected at the port or ports named in the Bill(s) 243
of Lading or to which the Vessel may have been ordered pursuant 244
thereto 245

(c) All extra expenses (including any loss or damage involved in discharge) 246
ing cargo at the loading port or in reaching or discharging the cargo 247
at any port as provided in Clauses 4 and 5 (b) hereof shall be paid 248
by the Charterers and/or cargo owners, and the Owners shall have 249
a lien on the cargo for all moneys due under these Clauses 250

17.  GENERAL ICE CLAUSE

Port of loading

(a) In the event of the loading port being inaccessible by reason of 253
ice when vessel is ready to proceed from her last port or at any 254
time during the voyage or on vessel's arrival or in case frost sets in, 255
the Captain for fear of being frozen in, is at 256
Charterers' approval is risk, the Captain for fear of being frozen in, is at 256
liberty to leave without cargo, and this Charter shall be null and 257
void. 258

(b) If during loading the Captain, for fear of vessel being frozen in, 259
deems it advisable to leave, he has liberty to do so with what cargo 260
he has on board and to proceed to any other port or ports with 261
option of completing cargo for Owners' benefit for any port or ports 262
including port of discharge. Any part cargo thus loaded under this 263
Charter to be forwarded to destination at vessel's expense but 264
against payment of freight, provided that no extra expenses be 265
thereby caused to the Receivers, freight being paid on quantity 266
delivered (in proportion if lumpsum), all other conditions as per 267
Charter 268

(c) In case of more than one loading port, and if one or more of 269
the ports are closed by ice, the Captain or Owners to be at liberty 270
either to load the part cargo at the open port and fill up elsewhere 271
for their own account, as under section (b), or to declare the Charter 272
null and void unless Charterers agree to load full cargo at the open 273
port. 274

(d) This Ice Clause not to apply in the Spring. 275

Port of discharge                                                            276

(a) Should ice (except in the Spring) prevent vessel from reaching 277
port of discharge Receivers shall have the option of keeping vessel 278
waiting until the re-opening of navigation and paying demurrage, or 279
of ordering the vessel to a safe and immediately accessible port 280
where she can safely discharge without risk of detention by ice. 281
Such orders to be given within 48 hours after Captain or Owners 282
have given notice to Charterers of the impossibility of reaching port 283
of destination. 284

(b) If during discharging the Captain for fear of vessel being frozen 285
in deems it advisable to leave, he has liberty to do so with what 286
cargo he has on board and to proceed to the nearest accessible 287
port where she can safely discharge. 288

(c) On delivery of the cargo at such port, all conditions of the Bill 289
of Lading shall apply and vessel shall receive the same freight as if 290
she had discharged at the original port of destination, except that if 291
the distance of the substituted port exceeds 100 nautical miles, the 292
freight on the cargo delivered at the substituted port to be increased 293
in proportion 294

251
252

## RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 22: CARGO DESCRIPTION
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CUBIC PER PIECE 82.4179 AND THAT TOTAL CUBIC METER FOR MIN 435 PIECES EQUALS ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

### CLAUSE 23: LOADING & DISCHARGING PORTS
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

### CLAUSE 24: PRE-ARRIVAL NOTICES
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL`S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL`S ARRIVAL TO DISCHARGE PORT.

### CLAUSE 25: ETA & LAYCAN
LAYCAN: 08 / 15 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 11 2007 WP/AGW.

### CLAUSE 26: LAYTIME
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER`S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL`S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL´S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

DETENTION AT DISCHARGE PORT TO BE PAID AT THE RATE OF US$ 60,000 PER DAY PRORATA.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL`S GEAR**
OWNERS TO GUARANTEE VESSEL`S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW`S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR  OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.





**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV
GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT:
MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR
NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

## CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,
STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH
OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING
ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR
SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR
TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR
CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION /
SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO
BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND
EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER
HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS,
SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR
ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER
VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY
OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO
RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE
VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN
(15) DAYS OF OCCURANCE OF SAID DAMAGE.

## CLAUSE 34: NEW JASON, BOTH TO BLAME ETC

NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER
DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE
INCORPORATED IN THIS CHARTER PARTY.
EXTRA WAR RISK PREMIUM IF ANY TO BE FOR CHARTERERS ACCOUNT BOTH ENDS.

## CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED
/ DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING
/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO
OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED)
CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL
CUBIC FOR MINIMUM 435 PIECES EQUALS 35.851,79 ON WHICH FREIGHT TO BE PAID FOR
MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED
ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE
VESSEL A/O CARGO LOST OR NOT LOST.



**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

<u>INTERMEDIARY BANK:</u>    **JPMORGAN CHASE NEW YORK**

Address Bank:        **345 PARK AVENUE**

               **NEW YORK – NY 10154**

ABA:            **021000021**
SWIFT:           **CHASUS33**

BENEFICIARY BANK:      **EBNA BANK N.V.**
ADR-BENE-BANK:       **AMACO BUILDING 36-B**
               **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:    **0011990850**

ULTIMATE BENEFICIARY:  **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:  **201389**

## CLAUSE 36 VESSEL´S DESCRIPTION

M/V GOLDEN WISH OR SUB, DESCRIPTION IN ATTACHMENT TO THIS CHARTER PARTY.

## CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

## CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"

## CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

## CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

## CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

## CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS

acct ATN Industries Inc.
- A shipment min 435 pieces carriers option upto vsl full , under/on deck cap
of polycarbonate pipes in loose, dims 12,192 m length x 2,6 m dia/12,3 mt
uw each where as chrts grtee 82.4179 cbm per piece
- carriers performer vsl mv golden wish or sub - intake abt 438 pcs -
however performing vsl to be grd si/bc, max 25 years, highest class lloyds or
equivelant
- under/on deck , with max 5 tiers limits upto vessels capacity





**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

- part cgo carriers option but last in first out
- cargo will be loaded under/on deck carriers option cgo on deck bs/l s to be marked "shipped on deck, without any responsibility to owners for loss or damage howsoever caused " same to be  for charters/shippers/receivers risk and account
- loading 1spsb aaaa shanghai / discharging 1spsb aaaa maracaibo , where 8m sw drft
- laycan 8/15 dec 2007 –

-loading 4 days shinc / Liner out end of hook discharge
- demm usd 60.000 pdpr / fd bends, otherwise as per fixture Skala, cp 23/11/07
- frt usd 121,50 per cbm fiost lsd, Liner out end of hook.
- frt payment 100 pct as per cp M/V Skala
- any shifting required to be for acct and time of party ordering same
- nor via cable/radio/vhf w/w/w/w be

- if original bill(s) of lading is not available at discharging port upon  vsl's arrival,the carriers/master to allow discharge of cgo into custody of the port
  against chrts and recvrs "loi" as per ows pandi wording
- overtime, if any, to be paid by ordering party
- taxes and / or dues on cargo/frt if any for charter s account both ends
- taxes and / or dues on vessel's flag /crews /ownership for carriers account both ends
- extra insurance due to vessel's age and/or flag, if any for charters account bends
- carriers performing vsl must be fully certified (ism/doc/smc/isps/p&i,etc)
- carriers/master provide approvex 3/2/1 days eta notice both bends
- extra war risk premium if any to be for chrts acct bends
- arbitration if any in london and english law to apply
- Otherwise terms and conditions as per fixture Cp M/V Skala dd 23/11/07, logically amended as per main terms agreed.

end offer


**Totalmar Navigation Corp.**

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC

**1475M/V "GOLDEN WISH"**

**All figures / details are given in good faith and wog**

**1.General**
1.1 Vessel's name:  MV GOLDEN WISH
1.2 Vessel's previous name:  KEN EXPLORER / BORON EXPLORER
1.3 Flag:  PANAMA
1.4 Month /Year and Where Built:  1997/JAPAN
1.5 Yard name and number:  TSUNEISHI SHIP BUILDING CO LTD
        YARD No.  1090
1.6 Official Class Register / IMO number:      /9146962
1.7 Class of Vessel: KOREAN REGISTER OF SHIPS
1.8 Port of Registry: PANAMA
1.9 Owners:  GOLDEN WISH SHIPPING CO. PANAMA

**2.Particulars of Vessel**
2.1 Type of Vessel: BULK CARRIER  FLUSH DECK WITH F'CASTLE

| 2.2 | Deadweight | Draft | TPI / TPC |
|-----|------------|-------|-----------|
| Summer | 45,719 | 11.62 | 49.83 MT |
| Winter | 44,515 | 11.378 | 49.65 MT |
| Tropical | 46,928 | 11.862 | 49.95 MT |

2.3 Is Vessel fitted for Transit of:
   a) Panama Canal        YES
   b) Suez Canal          YES
   c) St. Lawrence Seaway  NO
   d) Not applicable
2.4 Not applicable .
2.5 Not applicable .
2.6 GT / NT:
2.7  International: 26.058 / 14,872
     Suez      : 26,808 / 24,202.34
     Panama    : 21,673
2.8 Length Overall: 185.74 M
2.9 Length between perpendiculars: 177.00 M
2.10 Extreme breadth and depth moulded: 30.4 M/ 16.50 M
2.11 Distance from waterline to top of hatch coaming (basis full bunkers)
           a.  Fully laden conditions 6.32 M at even keel summer draft
           b.  Full ballast condition (excl. ballast holds) No.1 13.08M No.5 11.25M
               Full ballast condition (incl. Ballast holds) No.1 9.94M No.5 9.29M
2.12 State Vessel's deballasting time in mt / hour: ABOUT 600 M3 / HOUR
2.13 Vessel can accept loading rate of (metric tons per hour): 2,300 MTS/HR
2.14 Distance from Keel to top of hatch coaming: 17.9 M
      No.1 17.9 M     No.2 to No.5 : 17.9 M
      Highest fixed point of Vessel:  45.11 M
2.15 State Capacity of :
      a.  Ballast Tanks: 14,833 M3
      b.  Hold Ballast Capacity:
      c.  Constant excluding Fresh Water: ABOUT 220 MT
      Daily Fresh Water Consumption: ABOUT 12  MT
      Fresh Water Capacity: 389MT
      State Capacity and Daily Production of Evaporators: ABOUT 15.MT
      Normal Fresh Water Reserve: ABOUT 150 MT
2.16 Vessel is fitted with Shaft Generator: NO
2.17 State Vessel's onboard Electrical Supply: 450V/ 60Hz



3.1 Holds
   a. Number of Holds : FIVE (5)
   b. Are Vessels Holds clear and free of any obstructions:
   c. Grain / Bale Capacity in Holds excluding Wing / Topside Tanks:

|      | Grain    | Bale     |
|------|----------|----------|
| No.1 | 9,932.8  | 9,586.3  |
| No.2 | 11,753.5 | 11,396.7 |
| No.3 | 11,285.2 | 10,946.1 |
| No.4 | 11,747.9 | 11,368.1 |
| No.5 | 10,276.6 | 10,053.3 |

   d. Grain / Bale Capacity in Holds including Hatchways:

|      | Grain    | Bale     |
|------|----------|----------|
| No.1 | 10,361.6 | 10,015.1 |
| No.2 | 12,199.4 | 11,844.6 |
| No.3 | 11,731.1 | 11,392.0 |
| No.4 | 12,193.8 | 11,814.0 |
| No.5 | 10,722.5 | 10,499.2 |

   e. Is Vessel strengthened for the carriage of heavy cargoes: YES
      HO #2+4 MAYBE EMPTY
   f. Is Tanktops steel and suitable for grab discharge:  YES
   g. State whether corrugations vertical or horizontal:  VERTICAL
   h. Tanktop Strength:
      No.1 and No.5 : 13,73 MT / M2
      No.2 and No.4 : ......Mt / M2
      No.3 : 21,94 MT / M2
   i. Are Holds $CO_2$ fitted: NO
   j. Are Holds fitted with smoke detection system: NO
   k. Is Vessel fitted with Australian approved Hold ladders: YES
   l. Has Vessel a loadmaster computer / loadicator or other type of mechanical
      stowage calculator:  YES
   m. Are Holds hoppered at:  Hold Side: YES
      Can Vessel's Holds be described as box shaped: NO
   n. Measurement of any Tank Slopes / Hoppering Height: 3,10.M
      Distance from Vessel's Side at Tanktop: 14,69M
   o. Flat floor measurement of cargo Holds at Tanktop:
      No.1 Hold: 27.00 M x (Fore)23.8 M / (Aft)10.90 M
      No.2 Hold: 26.90 M x 23.80 M
      No.3 Hold: 27.00 M x 23.80 M
      No.4 Hold: 26,90 M x 23,80M
      No.5 Hold: 27.00 M x 23.80M (Fore/Aft)
   p. Is Vessel electrical ventilated: NO
3.2 Hatches
   a. Number of Hatches: Five
   b. Make and Type of Hatch covers:  HAKATA MAC CORP/FOLDING TYPE
   c. Hatch sizes
     No.1     20.00 x 15.30M
     No.2/3/4/5  20.80 x 15.30M
   d. Hatch cover strength: NO 1 2.08 MT / M2 NO 2-5 1.75 MT/M2
   e. Distance from Ship's rail to edge of hatch covers / coaming each side:
     No.1 FWD 3.6 M  AFT 6.5 M
     No.2 to No.5 : 6.5 M
   f. Distance from bow to for of 1st hold opening: 5.5  M
   g. Distance from stern to AFT of last hold opening: 3.6 M
   h. Is vessel fitted with cement holes: Yes

11. Cargo Gear
11.1 State make and type: 4 Electro-hydraulic cranes MHI LTD JAPAN
11.2 Number and capacity of cranes and where situated: 4 x 25 T
    No.1 between holds 1 and 2
    No.2 between holds 2 and 3
    No.3 between holds 3 and 4
    No.4 between holds 4 and 5
11.3 Outreach of gear beyond ship's rail: 8M
11.4 Not applicable
11.5 Time needed for full cycle with maximum cargo lift on hook: about .... minutes
11.6 Slewing / luffing / hoisting speeds: .... RPM / ....SECS / ....M PER MIN
11.7 Is gear combinable for heavy lift: NO
11.8 Are winches electro-hydraulic: YES

# EXHIBIT 5

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-08

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V ATLANTICA AT SHANGHAI CP 29/11/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 5.229 DAYS
TOTAL DEMURRAGE AT SHANGHAI 1.229 DAYS

DEMURRAGE DUE BY CHARTERERS   1.229 DAYS x US$ 70,000/DAY = US$ 86,030.00

KINDLY REMIT THE AMOUNT OF US$ 86,030.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V ATLANTICA AT LOAD PORT SHANGHAI DECEMBER 10 2007

**TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC**

| DATE | | |
|------|------|------|
| ARRIVED SHANGHAI | 10/12/07 AT 07:00 HRS | |
| NOR TENDERED | 10/12/07 AT 07:00 HRS | |
| LOADING OPERATION BEGAN | 13/12/07 AT 20:00 HRS | |
| TIME START COUNTING | 10/12/07 AT 00:00 HRS | |
| COMPLETED LOADING/LASHING | 15/12/07 AT 12:30 HRS | . |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|------|-------------|---------------|------------|------------|
| 10/12/07 Mon 07:00 | Laytime commenced | | | |
| 10/12/07 Mon 24:00 | waiting berth | 0 -17 - 00 | 0 - 17 - 00 | |
| 11/12/07 Tue 24:00 | waiting berth | 1 - 00 - 00 | 1 – 00 - 00 | |
| 12/12/07 Wed 24:00 | waiting berth | 1 - 00 – 00 | 1 – 00 - 00 | |
| 13/12/07 Thu 18:20 | Berthed | | | |
| 13/12/07 Thu 20:00 | Commenced loading | | | |
| 13/12/07 Thu 24:00 | | 1 – 00 – 00 | 1 – 00 - 00 | |
| 14/12/07 Fri   07:00 | On demurrage | | | |
| 14/12/07 Fri   24:00 | | 0 – 07 - 00 | 1 – 00 - 00 | 0 - 17 -00 |
| 15/12/07 Sun 06:00 | Completed loading | | | |
| 15/12/07 Sun 12:30 | Completed lashing | | | |
| 15/12/07 Sun Laytime count ended | | | 0 – 12 - 30 | 0 – 12 - 30 |
| 15/12/07 Sun 16:10 sailed | | | | . |
| | Total | 4 – 00 – 00 | 5 – 05 –30 | 1 – 05 -30 |
| | | 4.000 | | 1.229 |

| DEMURRAGE | : 1.229 DAYS x US$ 70,000/DAY |
|-----------|------------------------------|
| DEMURRAGE DUE | : US$ 86,030.00 |

Avda. Francisco de Miranda, Centro Plaza, Torre C, Piso 18, Oficina F, Los Palos Grandes.
Caracas – Venezuela, Tels: +58-212-2868686 - Fax: +58-212-2870115, e-mail: totalmar@cantv.net

# EXHIBIT 6

Adopted by
the Documentary Committee of: General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

**RECOMMENDED**
**THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE**
**UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)**
**INCLUDING "F.I.O." ALTERNATIVE, ETC.**
(To be used for trades for which no approved form is in force)
**CODE NAME: "GENCON"**

ORIGINAL    19-0    Part I

| | |
|---|---|
| 1. Shipbroker | |
| 2. Place and date | Caracas, December 6th 2007 |
| 3. Owners/Place of business (Cl. 1) Totalmar Navigation Corp/Agecom As Disponent Owner | 4. Charterers/Place of business (Cl. 1) ATN Industries Inc. CCCT, Torre A, Piso 8, Oficina 802 Chuao, Caracas 1065, Venezuela |
| 5. Vessel's name (Cl. 1) M/V Rainbow Or Sub Owners option | 6. GRT/NRT (Cl. 1) 25,676 / 13,991 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) 42,529 | 8. Present position (Cl. 1) Trading |
| 9. Expected ready to load (abt.) (Cl. 1) Laycan December 13/20, 2007 | |
| 10. Loading port or place (Cl. 1) 1 good safe berth Shanghai, China always accessible always afloat | 11. Discharging port or place (Cl. 1) 1 good safe berth Maracaibo,Venezuela, always accessible always afloat |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) About 350 pieces of policarbonate steel water pipes dimensions guarantee by Charterers. See also clause 22 | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) See clause 35 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) See clause 35 |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) See clause 33 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6) a) Laytime for loading See clause 26 b) Laytime for discharging See clause 26 c) Total laytime for loading and discharging |
| 17. Shippers (state name and address) (Cl. 6) Jiafang Steel Pipes Co, Ltd. 818 Jianhang Rd., Pudong New District Shanghai. PRC At: Fletcher Xi | |
| 18. Demurrage rate (loading and discharging) (Cl. 7) See clause 27 | 19. Cancelling date (Cl. 10) December 20th 2007 |
| 20. Brokerage commission and to whom payable (Cl. 14) | |
| 21. Additional clauses covering special provisions, if agreed Additional clauses 22 to 42 both inclusive to form part of this Charter Party | |

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp. | ATN Industries Inc. |

Totalmar Navigation Corp.

Printed and sold by ... Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.



1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4, that:

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

3. Deviation Clause
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight    **See clause 35**
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

5. Loading/Discharging Costs    **See clause 33**
*(a) Gross Terms
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, except that Owners have the cargo boards.
If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

(b) F.I.O. and free stowed/trimmed
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if required and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15.)
*Indicate alternative (a) or (b), as agreed, in Box 15.

6. Laytime    **See clause 26**
*(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

*(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count. Time lost in waiting for berth to count as loading or discharging time, as the case may be.
*Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage    **See clause 27**
Ten running days for demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention), incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. Bills of Lading
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. Cancelling Clause
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. General Average
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

12. Indemnity
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. Agency
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

14. Brokerage
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port of call or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way to their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such option to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of the Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. War Risks ("Voywar 1950")
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organised body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.

(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any part at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, notwithstanding that it is a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.

(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the



## PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

ORIGINAL

## RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 22: CARGO DESCRIPTION
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK ABT 357 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

### CLAUSE 23: LOADING & DISCHARGING PORTS
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

### CLAUSE 24: PRE-ARRIVAL NOTICES
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

### CLAUSE 25: ETA & LAYCAN
LAYCAN: 13 / 20 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 15 2007 WP/AGW.

### CLAUSE 26: LAYTIME
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7 DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING ORDER, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER´S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

### CLAUSE 34: NEW JASON, BOTH TO BLAME ETC

NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

### CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR ABOUT 357 PIECES EQUALS 29,423.19 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:      **JPMORGAN CHASE NEW YORK**

Address Bank:            **345 PARK AVENUE**

                         **NEW YORK – NY 10154**

ABA:                     **021000021**
SWIFT:                   **CHASUS33**

BENEFICIARY BANK:        **EBNA BANK N.V.**
ADR-BENE-BANK:           **AMACO BUILDING 36-B**
                         **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:       **0011990850**

ULTIMATE BENEFICIARY:    **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:   **201389**

**CLAUSE 36 VESSEL´S DESCRIPTION**
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE

HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".





## RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

### CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

### CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

### CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

### CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

### CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE
HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS, TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

LAY/CAN: 13TH DEC, 2007 / 20TH DEC, 2007
CARGO&QTY: ABT 357 PCS POLICARBONATE STEEL PIPES
FRT RATE: USD 121.50 PER CBM FREE IN, STWOED L/S/D / LINER OUT END OF HOOK
OTHER TERMS AND CONDITIONS AS PER CP SKALA DATED 23/11/07 AMENDED AS PER
MAIN TERMS AND LOGICAL ALTERATIONS TO RIDER CLAUSES.

STOWAGE:

NO WELDING ON HATCH COVERS POSSIBLE DUE TO TYPE OF HATCOVERS

OWNRS TECHNICAL DEPT CONFIRM CAN LOAD 20 PCS OF PIPES IN EACH HOLD NO.1
AND HOLD NO.8, I.E., TOTAL 40 PCS CAN BE LOADED ADDITIONAL.
HOLD NO.2/3/4/5/6 - 43PCS PER HOLD AND IN HOLD 7 - 42 PCS = TTL 257
ON DECK FOR NO.2/3/4/5/6/7 - 10PCS PER HATCH = TTL 60 PCS
TFORE LOADABLE QTTY IS 357 PCS.- REPEAT 357 PIPES TOTAL

**FOR OWNERS**                           **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.                 ATN INDUSTRIES INC

Totalmar Navigation Corp.

# EXHIBIT 7

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-07

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V RAINBOW AT SHANGHAI CP 06/12/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 6.113 DAYS
TOTAL DEMURRAGE AT SHANGHAI 2.113 DAYS

DEMURRAGE DUE BY CHARTERERS  2.113 DAYS x US$ 70,000/DAY = US$ 147,910.00

KINDLY REMIT THE AMOUNT OF US$ 147,910.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | JPMORGAN CHASE NEW YORK |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V RAINBOW AT LOAD PORT SHANGHAI DECEMBER 16 2008

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|---|---|
| ARRIVED SHANGHAI | 16/12/07 AT 08:12 HRS |
| NOR TENDERED | 16/01/08 AT 08:12 HRS |
| LOADING OPERATION BEGAN | 19/12/07 AT 12:00 HRS |
| TIME START COUNTING | 16/12/07 AT 08:12 HRS |
| COMPLETED LOADING | 22/12/07 AT 11:00 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 16/12/07 Sun 08:12 | Laytime commenced | | | |
| 16/12/07 Sun 24:00 | | 0 - 15 - 44 | 0 - 15 - 44 | |
| 17/12/07 Mon 24:00 | | 1 - 00 - 00 | 1 – 00 - 00 | |
| 18/12/07 Tue 24:00 | | 1 - 00 – 00 | 1 – 00 - 00 | |
| 19/12/07 Wed 10:12 | Berthed | | | |
| 19/12/07 Wed 12:00 | Commenced loading | | | |
| 19/12/07 Wed 24:00 | | 1 – 00 – 00 | 1 – 00 - 00 | |
| 20/12/07 Thu 08:12 | On demurrage | | | |
| 20/12/07 Thu 24:00 | | 0 – 08 - 12 | 1 – 00 - 00 | 0 -15 - 44 |
| 21/12/07 Fri 24:00 | | | 1 – 00 – 00 | 1 – 00 -00 |
| 22/12/07 Sat 01:00 | Completed loading | | | |
| 22/12/07 Sat 11:00 | Completed lashing | | | |
| 22/12/07 Sat Laytime count ended | | | 0 – 11 – 00 | 0 – 11 -00 |
| 22/12/07 Sat 22:24 sailed | | | | |
| | Total | 4 – 00 – 00 | 6 – 02 –00 | 2 – 02 - 44 |
| 4.00 | 2.113 | | | |

| DEMURRAGE | : 2.113 DAYS x US$ 70,000/DAY |
|---|---|
| DEMURRAGE DUE | : US$ 147,910.00 |

# EXHIBIT 8

**19-O**

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON"
Part I

| | |
|---|---|
| 1. Shipbroker | 2. Place and date |
| | Caracas December 7th 2007 |
| 3. Owners/Place of business (Cl. 1)<br>Totalmar Navigation Corp/Agecom<br>As Disponent Owners | 4. Charterers/Place of business (Cl. 1)<br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
| 5. Vessel's name (Cl. 1)<br>M/V Mairouli or Sub in Owners option | 6. GRT/NRT (Cl. 1)<br>30,018 / 18,486 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br><br>53,206 mt deadweight | 8. Present position (Cl. 1)<br><br>Trading |
| 9. Expected ready to load (abt.) (Cl. 1)<br>December 27th 2007 | |
| 10. Loading port or place (Cl. 1)<br>1good safe berth Shanghai, China<br>always accessible always afloat | 11. Discharging port or place (Cl. 1)<br>1 good safe berth Maracaibo, Venezuela, always accessible always afloat |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>Min 435 pieces of pipes upto vessel's full capacity at Owners option of policarbonate steel water pipes dimensions guarantee by Charterers. See also clause 22 | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>See clause 35 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>see clause 35 |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)<br><br>See clause 33 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>     See Clause 26 |
| 17. Shippers (state name and address) (Cl. 6)<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District Shangahi, PRC At Fletcher Xi | b) Laytime for discharging<br>          See clause 26<br>c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>See clause 27 | 19. Cancelling date (Cl. 10)<br>December 31st 2007 |
| 20. Brokerage commission and to whom payable (Cl. 14) | |
| 21. Additional clauses covering special provisions, if agreed.<br><br>Additional clauses 22 to 42 both inclusive to form part of this Charter Party. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br>Totalmar Navigation Corp. | Signature (Charterers)<br>ATN Industries Inc. |
|---|---|

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodvade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen

Adopted by the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo and the Documentary Committee of the General Council of British Shipping, London

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen



PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.



1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or on intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. **Owners' Responsibility Clause**

Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by unproper or negligent stowage, even if in fact so caused.

3. **Deviation Clause**

The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight** See clause 35

The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.

Cash for master's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

5. **Loading/Discharging Costs** See clause 33

(a) **Gross Terms**

The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only hoisting the cargo on board.

If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.

Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense. The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

(b) **F.I.O. and free stowed/trimmed**

The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.

The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).

* Indicate alternative (a) or (b), as agreed, in Box 15.

6. **Laytime** See clause 26

(a) *Separate laytime for loading and discharging*

The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

(b) *Total laytime for loading and discharging*

The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

(c) *Commencement of laytime (loading and discharging)*

Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.

Time actually used before commencement of laytime shall count. Time lost in waiting for berth to count as loading or discharging time, as the case may be.

* Indicate alternative (a) or (b) as agreed, in Box 16.

7. **Demurrage** See clause 27

Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

8. **Lien Clause**

Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. **Bills of Lading**

The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. **Cancelling Clause**

Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. **General Average**

General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

12. **Indemnity**

Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. **Agency**

In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

14. **Brokerage**

A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.

In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. **GENERAL STRIKE CLAUSE**

Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.

If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at her original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. **War Risks ("Voywar 1950")**

(1) In these clause "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and his crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.

(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any part of which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, although backwards or forwards, in the opposite direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.

(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

17. GENERAL ICE CLAUSE.

Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty to either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

Port or discharge

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

18. This Ice Clause not to apply in the Spring.

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 435 PCS EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 26 / 31 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 27TH WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



ORIGINAL

### RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 "MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 27: DEMURRAGE
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

### CLAUSE 28: VESSEL'S GEAR
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

### CLAUSE 29: OVERTIME
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

### CLAUSE 30: ARBITRATION
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

### CLAUSE 31: TAXES AND DUES

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

### CLAUSE 32: VESSEL COMPLIANCE
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,





**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV
MAIROULI LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION
CORP. CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH
OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING
ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR
SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR
TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR
CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION /
SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO
BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND
EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER
HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS,
SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR
ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER
VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY
OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO
RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE
VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN
(15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER
DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE
INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD  120.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED
/ DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING
/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO
OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED)
CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL
CUBIC FOR MINIMUM MIN 435 PIECES EQUALS 35.851.7865 ON WHICH FREIGHT TO BE
PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED
ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE
VESSEL A/O CARGO LOST OR NOT LOST.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:        **JPMORGAN CHASE NEW YORK**

Address Bank:                  **345 PARK AVENUE**

                                       **NEW YORK – NY 10154**

ABA:                              **021000021**
SWIFT:                           **CHASUS33**

BENEFICIARY BANK:         **EBNA BANK N.V.**
ADR-BENE-BANK:              **AMACO BUILDING 36-B**
                                       **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:       **0011990850**

ULTIMATE BENEFICIARY:    **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:   **201389**

**CLAUSE 36 VESSEL´S DESCRIPTION**

VESSEL: M/V MAIROULI   EX SIBULK DEDICATION OR SUB IN OWNERS OPTION
=============
DWT/DRAFT / TPC SUMMER   : 53,206 MT / 12.303 MTRS / 55.30 MT
BUILT JUNE 2005, IMABARI - JAPAN
FLAG/CLASS : PANAMA / N.K.K
GRT/NRT: 30,018 / 18,486
LOA/BREADTH/DEPTH :189.94 MTRS / 32.26 MTRS / 17.30 MTRS
HO / HA : 5 / 5
CARGO GEAR: 4 CRANES ELECTRO HYDRAULIC 30.5 MT SWL EACH
TOTAL GRAIN :   68,927.4 M3 / BALE : 65,526.1 M3
SPEED / CONSUMPTION :
IN GOOD WEATHER CONDITIONS I.E. UPTO BEAUFORT FORCE 4 AND DOUGLAS SEA
STATE 3 AND NO ADVERSE CURRENT.
AT SEA BALLAST : ABT 14.5 KNOTS ON ABT 37.0 MTS IFO AND
ABT 0.3 MTS MDO
AT SEA LADEN   : ABT 14.0 KNOTS ON ABT 37.0 MTS IFO
AND ABT  0.3 MTS MDO
IDLE : ABT 3.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/ DAY
IN PORT WORKING : ABT 6.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/DAY
ALL DETAILS IN GOOD FAITH AND WOG

**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"

**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V MAIROULI AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE, BANK REFERENCES, MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 26/31 DEC 2007
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO PAY DETENTION AT US$ 60,000 PER DAY.
-TIME NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS BY EMAIL/FAX/CABLE UPON ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD 120.50 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK
-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL TO BE PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P. END



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC



## ADDENDUM TO CHARTER PARTY DATED 7TH DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

It is day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that the Laycan for the 5th shipment of pipes loading at Shanghai have been shifted from December 26/31, 2007 to January 26/31st 2008 and vessel will only load min 410 pieces of pipes upto vessel's full capacity in Charter option.

Signed in Caracas on the 28th day of December 2007. Two originals have been drawn up one for each party.

FOR OWNERS                          FOR CHARTERERS

TOTALMAR NAVIGATION CORP.            ATN INDUSTRIES INC

Totalmar Navigation Corp.

# EXHIBIT 9

# TOTALMAR NAVIGATION CORP.

*2/2*

CARACAS, FEBRUARY 8th  2008

INVOICE # TNC/01-011

MESSRS.
ATN INDUSTRIES INC.

REF:   DEAD FREIGHT INVOICE M/V GO STAR CP 07/12/07 5TH SHIPMENT PIPES EX
       SHANGHAI

DEAR SIRS,

FIND HERE BELLOW THE DEAD FREIGHT INVOICE FOR REFERRED SHIPMENT

**DEAD FREIGHT INVOICE**

VESSEL COMPLETED LOADING/LASHING AND SAILED ON JANUARY 26TH 19:30 HRS.

- TOTAL NUMBER OF PIPES LOADED UNDER / ON DECK:
  400 PIECES OF PIPES (DIA 2.40M) = 28,090.368 CBM
   31 PIECES OF PIPES (DIA 2.60 M) =  2,554.956 CBM
          TOTAL                =30,645.324 CBM

AS PER CHARTER PARTY CLAUSE 22 AND ADDENDUM DD 28/12/07 VESSEL SHOULD
HAVE LOADED 410 PIPES OF 2.6 M O.D. x 12.192 M; I.E TOTAL CUBIC 33,791.35

-DEAD FREIGHT DUE TO OWNERS 3,146.0232 X US$ 120.50     = US$ 379,095.80

KINDLY REMIT THE AMOUNT OF US$ 379,095.80 BY TELEGRAPHIC TRANSFER TO
OWNERS BANKERS AT:

| | |
|---|---|
| **INTERMEDIARY BANK:** | JPMORGAN CHASE NEW YORK |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

KINDLY ADVISE WHEN FUNDS HAVE BEEN REMITTED.

# EXHIBIT 10

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-08

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V GO STAR AT SHANGHAI CP 07/12/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 6.104 DAYS
TOTAL DEMURRAGE AT SHANGHAI 2.104 DAYS

DEMURRAGE DUE BY CHARTERERS  2.104 DAYS x US$ 70,000/DAY = US$ 147,280.00

KINDLY REMIT THE AMOUNT OF US$ 147,280.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | JPMORGAN CHASE NEW YORK |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V GO STAR AT LOAD PORT SHANGHAI JAN 20 2008

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | | |
|---|---|---|
| ARRIVED SHANGHAI | | 20/01/08 AT 10:00 HRS |
| NOR TENDERED | | 20/01/08 AT 10:00 HRS |
| LOADING OPERATION BEGAN | | 24/01/08 AT 20:00 HRS |
| TIME START COUNTING | | 20/01/08 AT 10:00 HRS |
| COMPLETED LOADING | | 26/01/08 AT 12:00 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 20/01/08 Sun 10:00 | Laytime commenced | | | |
| 20/01/08 Sun 24:00 | | 0 - 14 - 00 | 0 - 14 - 00 | |
| 21/01/08 Mon 24:00 | Waiting for berth | 1 - 00 - 00 | 1 – 00 - 00 | |
| 22/01/08 Tue 24:00 | Waiting for berth | 1 - 00 – 00 | 1 – 00 - 00 | |
| 23/01/08 Wed 24:00 | Waiting for berth | 1 – 00 – 00 | 1 – 00 - 00 | |
| 24/01/08 Thu 10:00 | On demurrage | | | |
| 24/01/08 Thu 17:50 | Berthed | | | |
| 24/01/08 Thu 20:00 | Commenced loading | | | |
| 24/01/08 Thu 24:00 | | 0 – 10 – 00 | 1 – 00 – 00 | 0   14 - 00 |
| 25/01/08 Fri  24:00 | | | 1 – 00 – 00 | 1 – 00 - 00 |
| 26/01/08 Sat 12:00 | Completed loading | | | |
| 26/01/08 Sat 12:30 | Completed lashing | | | |
| 26/01/08 Sat 12:30 | Laytime count ended | | 0 – 12 - 30 | 0 –12 - 30 |
| 26/01/08 Sat 16:15 sailed | | | | |
| | Total | 4 – 00 – 00  4.00 | 6 – 02 –30 | 2 – 02 - 30  2.104 |

DEMURRAGE        : 2.104 DAYS x US$ 70,000/DAY
DEMURRAGE DUE    : US$ 147,280.00