**HOGAN & HARTSON LLP**
Attorneys for Defendant
875  Third Avenue
New York, NY  10022
Phone (212) 918-3000
Facsimile (212) 918-3100

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------  x
TOTALMAR NAVIGATION CORP.,                              :
                                                        :
                          Plaintiff,                    :    Index No. 08-cv-1659 (HB)
         -against-                                      :    ECF Case
                                                        :
ATN INDUSTRIES INC.,                                    :
                                                        :
                          Defendant.                    :
                                                        :
------------------------------------------------------  x
```

## ANSWER, AFFIRMATIVE DEFENSES AND VERIFIED COUNTERCLAIM

Defendant ATN Industries Inc., a Florida corporation ("ATN"), by and through

undersigned counsel, hereby files its Answer and Affirmative Defenses for the limited purpose of

protecting its property against attachment and to seek security on claims that are being submitted

to binding arbitration, and states as follows:[1]

1.      ATN admits that this purports to be a case of admiralty and maritime jurisdiction

pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, the Convention on the Recognition

and Enforcement of Foreign Arbitral Awards and/or the Federal Arbitration Act, but denies that

Totalmar Navigation Corp., a Panamanian corporation ("Totalmar"), is entitled to relief.  ATN

denies all remaining allegations in paragraph 1.

---

[1]      ATN has filed a motion to compel arbitration concurrently with this answer, affirmative
defenses and counterclaim, filed without waiver of its rights to arbitration.

2.      ATN is without sufficient information or knowledge to admit or deny the truth of the allegations in paragraph 2 of the complaint and, therefore, denies them.

3.      ATN admits it is a corporation organized under the laws of the State of Florida and that it chartered MV Skala, MV Atlantica, MV Rainbow and MV Go Star.  ATN denies all remaining allegations in paragraph 3 of the complaint.

4.      ATN admits the dispute between the parties arises from separate maritime charter party contracts involving the transportation of large dimensional polycarbonate steel water pipes from Shanghai, China to Maracaibo, Venezuela.  ATN denies all remaining allegations in paragraph 4 of the complaint.

5.      ATN admits that it entered into a charter party contract for MV Skala on or about November 23, 2007 with Totalmar.  ATN admits that Totalmar attached what purports to be the charter party contract for MV Skala to the complaint as Exhibit 1.  ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 5 of the complaint.

6.      ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 6 of the complaint.

7.      ATN denies the allegations in the first two sentences of paragraph 7 of the complaint.  ATN admits that Totalmar attached what purports to be a document entitled "Letter of Protest" as Exhibit 2 to the complaint.  ATN denies all remaining allegations in paragraph 7 of the complaint.

8.      As for the first sentence of paragraph 8 of the complaint, ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in the first sentence of paragraph 8.  ATN admits that Totalmar attached

what purports to be a dead freight invoice as Exhibit 3 to the complaint. ATN denies that Totalmar is owed any sums for dead freight and denies all remaining allegations in paragraph 8 of the complaint.

9.      As for the first sentence of paragraph 9 of the complaint, ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in the first sentence of paragraph 9. ATN denies that Totalmar is owed any sums for dead freight and denies all remaining allegations in paragraph 9 of the complaint.

10.     ATN denies the allegations in paragraph 10 of the complaint.

11.     ATN admits that it entered into a charter party contract for MV Atlantica on or about November 29, 2007 with Totalmar. ATN admits that Totalmar attached what purports to be the charter party contract for MV Atlantica to the complaint as Exhibit 4. ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 11 of the complaint.

12.     ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 12 of the complaint.

13.     ATN denies the allegations in paragraph 13 of the complaint.

14.     ATN admits that Totalmar alleges that MV Atlantica was on demurrage at Shanghai for 1.229 days. ATN denies the remaining allegations in paragraph 14 of the complaint.

15.     As for the first sentence of paragraph 15, ATN admits that Totalmar submitted a demurrage invoice to ATN but denies that it owes Totalmar for demurrage in the amount of US $86,030.00. ATN denies the allegations in the second sentence of paragraph 15 of the complaint. ATN admits that Totalmar attached what purports to be a demurrage invoice and

laytime calculations as Exhibit 5 to the complaint but denies that Totalmar is entitled to the demurrage claimed to be owed therein.  ATN denies all remaining allegations in paragraph 15 of the complaint.

16.     ATN denies the allegations in paragraph 16 of the complaint.

17.     ATN admits that it entered into a charter party contract for MV Rainbow on or about December 6, 2007 with Totalmar.  ATN admits that Totalmar attached what purports to be the charter party contract for MV Rainbow to the complaint as Exhibit 4.  ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 17 of the complaint.

18.     ATN respectfully refers the Court to MV Rainbow charter party and its addenda for its full and complete content, and denies all remaining allegations in paragraph 18 of the complaint.

19.     ATN denies the allegations in paragraph 19 of the complaint.

20.     ATN admits that Totalmar alleges that MV Rainbow was on demurrage at Shanghai for 2.113 days.  ATN denies the remaining allegations in paragraph 20 of the complaint.

21.     As for the first sentence of paragraph 21, ATN admits that Totalmar submitted a demurrage invoice to ATN but denies that it owes Totalmar for demurrage in the amount of US $147,910.00.  ATN denies the allegations in the second sentence of paragraph 25 of the complaint.  ATN admits that Totalmar attached what purports to be a demurrage invoice and laytime calculations as Exhibit 7 to the complaint but denies that Totalmar is entitled to the demurrage claimed to be owed therein.  ATN denies all remaining allegations in paragraph 15 of the complaint.

22.    ATN denies the allegations in paragraph 22 of the complaint.

23.    ATN admits that it entered into a charter party contract for MV Go Star on or about December 7, 2007 with Totalmar. ATN admits that Totalmar attached what purports to be the charter party contract for MV Rainbow to the complaint as Exhibit 8. ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 23 of the complaint.

24.    ATN respectfully refers the Court to the contract and its addenda for its full and complete content, and denies all remaining allegations in paragraph 24 of the complaint.

25.    ATM admits the allegations in the first and second sentences of paragraph 25. ATN denies the allegations in the third, fourth, and fifth sentences of paragraph 25. ATN admits that Totalmar attached what purports to be a dead freight invoice as Exhibit 9 to the complaint. ATN denies that Totalmar is owed any sums for dead freight and denies all remaining allegations in paragraph 25 of the complaint.

26.    ATN denies the allegations in paragraph 26 of the complaint.

27.    As for the first sentence of paragraph 27, ATN admits that Totalmar submitted a demurrage invoice to ATN but denies that it owes Totalmar for demurrage in the amount of US $147,280. ATN denies the allegations in the second sentence of paragraph 27 of the complaint. ATN admits that Totalmar attached what purports to be a demurrage invoice and laytime calculations as Exhibit 10 to the complaint but denies that Totalmar is entitled to the demurrage claimed to be owed therein. ATN denies all remaining allegations in paragraph 27 of the complaint.

28.    ATN denies the allegations in paragraph 28 of the complaint.

29.    ATN denies the allegations in paragraph 29 of the complaint.

30.    ATN denies the allegations in paragraph 30 of the complaint.

31.    ATN denies the allegations in paragraph 31 of the complaint.

32.    ATN denies the allegations in paragraph 32 of the complaint.

33.    ATN denies the allegations in paragraph 33 of the complaint.

34.    ATN admits this purports to be an admiralty and maritime claim within the Court's subject matter jurisdiction. ATN, however, denies that Totalmar is entitled to relief and denies all remaining allegations in paragraph 34 of the complaint.

35.    ATN denies that Totalmar is entitled to an order of seizure. ATN admits that the parties' disputes should be adjudicated in arbitration. ATN denies all remaining allegations in paragraph 35 of the complaint.

36.    ATN denies all allegations in the complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Totalmar's claims must be resolved in binding arbitration pursuant to the plain and unambiguous terms of the parties' charter party contracts. This Court, therefore, should stay the action and compel arbitration. ATN is filing a motion to compel arbitration and to stay this action contemporaneously herewith.

### Second Affirmative Defense

Totalmar has failed to state claims for which relief can be granted.

### Third Affirmative Defense

Totalmar is not entitled to a maritime attachment because Totalmar's claims for dead freight and demurrage are grossly overstated and not supported by the plain language of the charter party contracts.

### Fourth Affirmative Defense

Totalmar is not entitled to a maritime attachment because Totalmar failed to submit an affidavit supporting its claim for an attachment.

### Additional Defenses

ATN reserves the right to assert additional defenses.

## VERIFIED COUNTERCLAIM

Defendant/Counter-Plaintiff ATN Industries Inc., a Florida corporation ("ATN"), by and through undersigned counsel, hereby sues Plaintiff/Counter-Defendant Totalmar Navigation Corp. ("Totalmar") for the limited purpose of seeking security on its counterclaims that are being submitted to binding arbitration, and alleges as follows:

1.    ATN brings this action to seek an order requiring Totalmar to post security for ATN's claims for cargo damages pursuant to five separate charter party contracts. ATN has or will be submitting its claims to arbitration. Concurrently herewith, ATN has moved to compel arbitration and to stay this action pending arbitration.

### Jurisdiction and Venue

2.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the action falls within the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1333 and under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. § 201, *et seq.*, and or the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

## The Parties

3.       ATN is a corporation organized under the laws of the State of Florida and was the charterer of MV Skala, MV Atlantica, MV Rainbow, MV Go Star and MV Majartta (the "Vessels").

4.       Upon information and belief, Totalmar is a corporation organized under the laws of the Republic of Panama and was the lessee of the Vessels.

5.       ATN is in the import and export business.  ATN entered into a contract to supply and deliver to Venezuela a certain number of large dimensional polycarbonate steel water pipes. ATN purchased the pipes in China and transported them from China to Venezuela.

6.       ATN's claims arise out of five separate maritime charter party contracts for the transportation of large dimensional polycarbonate steel water pipes from Shanghai, China to Maracaibo, Venezuela by the Vessels.

7.       The charter party contracts for MV Atlantica and MV Go Star provide that if any dispute arises between the parties, the matter in dispute shall be referred to binding arbitration in London, England.

8.       ATN is entitled to security to cover the total amount of its cargo damages.

9.       ATN retained the undersigned attorneys and is obligated to pay them a reasonable fee for their services

10.      All conditions precedent to the filing of this action have been performed, have otherwise occurred, or have been waived.

## COUNT ONE

### (Breach of MV Skala Charter Party)

11.     ATN repeats and realleges the allegations set forth in paragraphs 1 through 10 above, as if fully set forth herein.

12.     On or about November 23, 2007, ATN entered into a charter party contract with Totalmar for MV Skala to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela (the "MV Skala Charter Party"). The MV Skala Charter Party provided: "Owners are to be responsible for loss of or damage to the goods . . . caused by the improper or negligent stowage of the goods (unless stowage performed by shippers, Charterers or their stevedores or servants ) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager." *See* MV Skala Charter Party, Part II, Clause 2. A copy of the MV Skala Charter Party is attached hereto as **Exhibit 1**.

13.     Due to, among other things, the want of due diligence of Totalmar, 31 pipes were permanently damaged during transport. The replacement cost for the 31 pipes totaled $587,630.11.

14.     ATN served a claim for the damaged pipes on Totalmar. A copy of ATN's claim is attached hereto as **Exhibit 2**.[2]

15.     Totalmar refused to accept responsibility for the 31 damaged pipes and breached the MV Skala Charter Party by failing to pay ATN for the cargo damage pursuant to the terms of the contract.

---

[2]     The claims attached hereto as Exhibits 2, 4, 6, 8, and 10 are in Spanish. Translations into English will be filed once available.

16.     ATN has suffered damages as a result.

## COUNT TWO

### (Breach of MV Rainbow Charter Party)

17.     ATN repeats and realleges the allegations set forth in paragraphs 1 through 10 above, as if fully set forth herein.

18.     On or about December 6, 2007, ATN entered into a charter party for MV Rainbow with Totalmar to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela (the "MV Rainbow Charter Party"). A copy of the MV Rainbow Charter Party is attached hereto as **Exhibit 3**.

19.     The MV Rainbow Charter Party provided: "Owners are to be responsible for loss of or damage to the goods . . . caused by the improper or negligent stowage of the goods (unless stowage performed by shippers, Charterers or their stevedores or servants ) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager." *See* MV Rainbow Charter Party, Part II, Clause 2.

20.     Due to, among other things, the want of due diligence of Totalmar, 17 pipes were permanently damaged during transport. The replacement cost for the 17 pipes totaled $322,248.77.

21.     ATN served a claim for the damaged pipes on Totalmar. A copy of ATN's claim is attached hereto as **Exhibit 4**.

22.    Totalmar refused to accept responsibility for the 17 damaged pipes and breached the MV Rainbow Charter Party by failing to pay ATN for the cargo damage pursuant to the terms of the contract.

23.    ATN has suffered damages as a result.

## COUNT THREE

### (Breach of MV Go Star Charter Party)

24.    ATN repeats and realleges the allegations set forth in paragraphs 1 through 10 above, as if fully set forth herein.

25.    On or about December 7, 2007, ATN entered into a charter party with Totalmar for MV Mairouli, which was later substituted by MV Go Star, to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela (the "MV Go Star Charter Party"). A copy of the MV Go Star Charter Party is attached hereto as **Exhibit 5**.

26.    The MV Go Star Charter Party provided: "Owners are to be responsible for loss of or damage to the goods . . . caused by the improper or negligent stowage of the goods (unless stowage performed by shippers, Charterers or their stevedores or servants ) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager." *See* MV Go Star Charter Party, Part II, Clause 2.

27.    Due to, among other things, the want of due diligence of Totalmar, 13 pipes were permanently damaged during transport. The replacement cost for the 13 pipes totaled $222,008.02.

28.    ATN served a claim for the damaged pipes on Totalmar. A copy of ATN's claim is attached hereto as **Exhibit 6**.

29.     Totalmar refused to accept responsibility for the 13 damaged pipes and breached the MV Go Star Charter Party by failing to pay ATN for the cargo damage pursuant to the terms of the contract.

30.     ATN has suffered damages as a result.

## COUNT FOUR

### (Breach of MV Atlantica Charter Party)

31.     ATN repeats and realleges the allegations set forth in paragraphs 1 through 10 above, as if fully set forth herein.

32.     On or about November 29, 2007, ATN entered into a charter party with Totalmar for MV Atlantica, which was later substituted by MV Atlantica, to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela (the "MV Atlantica Charter Party").  A copy of the MV Atlantica Charter Party is attached hereto as **Exhibit 7**.

33.     The MV Atlantica Charter Party provided: "Owners are to be responsible for loss of or damage to the goods . . . caused by the improper or negligent stowage of the goods (unless stowage performed by shippers, Charterers or their stevedores or servants ) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager." *See* MV Atlantica Charter Party, Part II, Clause 2.

34.     Due to, among other things, the want of due diligence of Totalmar, 15 pipes were permanently damaged during transport.  The replacement cost for the 15 pipes totaled $284,337.15.

35.     ATN served a claim for the damaged pipes on Totalmar.  A copy of ATN's claim is attached hereto as **Exhibit 8**.

36.     Totalmar refused to accept responsibility for the 15 damaged pipes and breached the MV Atlantica Charter Party by failing to pay ATN for the cargo damage pursuant to the terms of the contract.

37.     ATN has suffered damages as a result.

## COUNT FIVE

### (Breach of MV Majartta Charter Party)

38.     ATN repeats and realleges the allegations set forth in paragraphs 1 through 10 above, as if fully set forth herein.

39.     On or about December 7, 2007, ATN entered into a charter party with Totalmar for MV Golden Wish, which was later substituted by MV Majartta, to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela (the "MV Majartta Charter Party").  A copy of the MV Majartta Charter Party is attached hereto as **Exhibit 9**.

40.     The MV Majartta Charter Party provided: "Owners are to be responsible for loss of or damage to the goods . . . caused by the improper or negligent stowage of the goods (unless stowage performed by shippers, Charterers or their stevedores or servants ) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager." *See* MV Majartta Charter Party, Part II, Clause 2.

41.     Due to, among other things, the want of due diligence of Totalmar, 16 pipes were permanently damaged during transport.  The replacement cost for the 16 pipes totaled $303,292.96.

42.    ATN served a claim for the damaged pipes on Totalmar.  A copy of ATN's claim is attached hereto as **Exhibit 10**.

43.    Totalmar refused to accept responsibility for the 16 damaged pipes and breached the MV Majartta Charter Party by failing to pay ATN for the cargo damage pursuant to the terms of the contract.

44.    ATN has suffered damages as a result.

WHEREFORE, ATN prays for the following:

(a)    That Totalmar be required to post security in the total amount of US $1,719,517.

(b)    That the action thereafter be stayed pending arbitration and that judgment be entered upon the arbitration awards for the amount of any recovery by ATN, together with interest and costs of this action.

(c)    That the Court grant ATN such other and further relief as may be just and proper under the circumstances.

Dated:  New York, New York
        June 25, 2008

                                    Respectfully submitted,


                                    By:  ___s/_____
                                        George F. Hritz
                                        Hogan & Hartson LLP
                                        875  Third Avenue
                                        New York, NY  10022
                                        Tel: (212) 685-8000
                                        Email: gfhritz@hhlaw.com


                                        John F. O'Sullivan
                                        Hogan & Hartson LLP
                                        Mellon Financial Center
                                        1111 Brickell Avenue, Suite 1900
                                        Miami, FL 33131
                                        Tel:  (212) 918-3000
                                        Fax: 305-459-6550
                                        Email: jfosullivan@hhlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

TOTALMAR NAVIGATION CORP.,

Plaintiff,

v.

ATN INDUSTRIES INC.,

Defendant.

_____x

Honorable Harold Baer

Index No. 08 CV 1659
ECF Case

STATE OF FLORIDA          )
                          ) ss.
COUNTY OF MIAMI-DADE      )

### <u>VERIFICATION OF COUNTERCLAIM</u>

I, José Martín Olivares, being duly sworn, depose and state that I am a

representative of ATN Industries Inc.; that I am authorized by said company to make this

verification in its behalf; that I have read the foregoing Verified Counterclaim; and that I

believe the facts stated in the pleading to be true and correct to the best of my knowledge.

**JOSE MARTIN OLIVARES**

The foregoing instrument was acknowledged before me this 25thth day of
June, 2008, by JOSE MARTIN OLIVARES who is personally known to me and who did
take an oath.

_____
(Notary Signature)

_____
(Print or name stamp notary)
NOTARY PUBLIC
State of Florida at Large

My Commission Expires: Nov 9, 2011.



KRISTINA FORTE
MY COMMISSION # DD 702305
EXPIRES: November 9, 2011

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
TOTALMAR NAVIGATION CORP.,                         :
                                                   :
                                                   :
                          Plaintiff,               :    Index No. 08-cv-1659 (HB)
        -against-                                  :    ECF Case
                                                   :
ATN INDUSTRIES INC.,                               :
                                                   :
                          Defendant.               :
                                                   :
------------------------------------------------- x
```

## <u>AFFIRMATION OF SERVICE</u>

George F. Hritz affirms under penalty of perjury:

I am an attorney admitted to practice in the State of New York and am a partner with the law firm of Hogan & Hartson LLP, attorneys for defendant in the above-captioned matter.

I certify that on June 25, 2008, I electronically filed the Answer, Affirmative Defenses and Verified Counterclaim with the Clerk of Court using CM/ECF, and it is being served this day on all counsel authorized to receive Notices of Electronic Filing generated by CM/ECF, including counsel below:

Rahul Wanchoo, Esq.
Law Offices of Rahul Wanchoo
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
*Attorneys for plaintiff Totalmar Navigation Corp.*

Dated:  June 25, 2008
        New York, New York

_____/s/_____
George F. Hritz

"Copyright", published by The Documentary Committee of the General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

| 1. Shipbroker | RECOMMENDED THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976) INCLUDING "F.I.O." ALTERNATIVE, ETC. (To be used for trades for which no approved form is in force) CODE NAME: "GENCON" |
|---|---|
| TOTALMAR | Part I |

| 2. Place and date |
|---|
| Caracas, 23rd November 2007 |

| 3. Owners/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1) |
|---|---|
| Totalmar Navigation Corp/agecom As Disponent Owner | ATN Industries Inc. CCCT, Torre A, Piso 8, Oficina 802 Chuao, Caracas 1065, Venezuela |

| 5. Vessel's name (Cl. 1) | 6. GRT/NRT (Cl. 1) |
|---|---|
| MV Skala | 23,144 / 13384 |

| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
|---|---|
| 39,207 | Trading |

| 9. Expected ready to load (abt.) (Cl. 1) |
|---|
| December 3rd 2007 |

| 10. Loading port or place (Cl. 1) | 11. Discharging port or place (Cl. 1) |
|---|---|
| 1 good safe berth Shanghai, China always accessible always afloat | 1 good safeberth Maracaibo, Venezuela. Always accessible always afloat |

| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) |
|---|
| Min 480 to 500 pices of pipes upto vessl's maximu capacity at Owners option of water pipes of policarbonate steel pipes dimensions Guarantee by Charterers. See also clause 22 |

| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
|---|---|
| See clause 35 | See clause 35 |

| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b) If total laytime for load. and disch., fill in c) only ) (Cl. 6) |
|---|---|
| See clause 33 | a) Laytime for loading   See Clause 26 |
| 17. Shippers (state name and address) (Cl. 6) | b) Laytime for discharging   See Clause 26 |
| Jiafang Steel Pipes Co, Ltd. 818 Jianhang Rd. Pudong New District Shanghai, PRC At: Fletcher Xi | c) Total laytime for loading and discharging |

| 18. Demurrage rate (loading and discharging) (Cl. 7) | 19. Cancelling date (Cl. 10) |
|---|---|
| See Clause 27 | December 13th, 2007 |

| 20. Brokerage commission and to whom payable (Cl. 14) |
|---|
| |

| 21. Additional clauses covering special provisions, if agreed. |
|---|
| Additional clauses 22 to 42 both inclusive to form part of this Charter Party. |

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Totalmar Navigation Corp.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp. | ATN Industries Inc. |

Printed and sold by Wyt & Zonen B.V., Rotterdam, by authority of The Baltic and International Maritime Conference, Copenhagen.

ORIGINAL  Case 1:08-cv-01659-HB   Document 6-2   Filed 06/25/2008   Page 2 of 11

**PART II** ~otalmar Navigation Corp.

'Gencon' Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative etc.

**1.** It is agreed between the party mentioned in Box 3 as Owners of the
steamer or motor-vessel named in Box 5 of the gross/net Register
tons indicated in Box 6 and carrying about the number of tons of
deadweight cargo stated in Box 7, now in position as stated in Box 8
and expected ready to load under this Charter about the date in-
dicated in Box 9, and the party mentioned as Charterers in Box 4
that:
The said vessel shall proceed to the loading port or place stated
in Box 10 or so near thereto as she may safely get and lie always
afloat, and there load a full and complete cargo (if shipment of dock
cargo agreed same to be at Charterers' risk) as stated in Box 12
(Charterers to provide all mats and/or wood for dunnage and any
separations required, the Owners allowing the use of any dunnage
wood on board if required) which the Charterers bind themselves to
ship, and being so loaded the vessel shall proceed to the discharg-
ing port or place stated in Box 11 as ordered on signing Bills of
Lading or so near thereto as she may safely get and lie always
afloat and there deliver the cargo on being paid freight on delivered
or intaken quantity as indicated in Box 13 at the rate stated in
Box 13

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods
or for delay in delivery of the goods only in case the loss, damage
or delay has been caused by the improper or negligent stowage of
the goods (unless stowage performed by shippers/Charterers or their
stevedores or servants) or by personal want of due diligence on the
part of the Owners or their Manager to make the vessel in all respects
seaworthy and to secure that she is properly manned, equipped and
supplied or by the personal act or default of the Owners or their
Manager.
And the Owners are responsible for no loss or damage or delay
arising from any other cause whatsoever, even from the neglect or
default of the Captain or crew or some other person employed by the
Owners on board or ashore for whose acts they would, but for this
clause, be responsible, or from unseaworthiness of the vessel on
loading or commencement of the voyage or at any time whatsoever.
Damage caused by contact with or leakage, smell or evaporation
from other goods or by the inflammable or explosive nature or in-
sufficient package of other goods not to be considered as caused
by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for
any purpose, to sail without pilots, to tow and/or assist vessels in
all situations, and also to deviate for the purpose of saving life and/
or property.

**4. Payment of Freight**    See Clause 35
The freight to be paid in the manner prescribed in Box 14 in cash
without discount on delivery of the cargo at mean rate of exchange
ruling on day or days of payment, the receivers of the cargo being
bound to pay freight on account during delivery, if required by Cap-
tain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be
advanced by Charterers if required at highest current rate of ex-
change, subject to two per cent. to cover insurance and other ex-
penses.

**5. Loading/Discharging Costs**    See Clause 33
*(a) Gross Terms*
The cargo to be brought alongside in such a manner as to enable
vessel to take the goods with her own tackle. Charterers to procure
and pay the necessary men on shore or on board the lighters to do
the work there vessel only heaving the cargo on board.
If the loading takes place by elevator, cargo to be put free in vessel's
holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be
loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense
alongside the vessel not beyond the reach of her tackle.
*(b) F.i.o. and free stowed/trimmed*
The cargo shall be brought into the holds, loaded, stowed and/or trim-
med and taken from the holds and discharged by the Charterers or
their Agents, free of any risk, liability and expense whatsoever to the
Owners.
The Owners shall provide winches, motive power and winchmen from
the Crew if requested and permitted, if not the Charterers shall
provide and pay for winchmen from shore and/or cranes, if any (This
provision shall not apply if vessel is gearless and stated as such in
Box 12).
*indicate alternative (a) or (b) as agreed, in Box 16*

**6. Laytime**    See Clause 26
*(a) Separate laytime for loading and discharging*
The cargo shall be loaded within the number of running hours as
indicated in Box 16, weather permitting, Sundays and holidays ex-
cepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running hours as
indicated in Box 16, weather permitting, Sundays and holidays ex-
cepted, unless used, in which event time actually used shall count.
*(b) Total laytime for loading and discharging*
The cargo shall be loaded and discharged within the number of total
running hours as indicated in Box 16, weather permitting, Sundays and
holidays excepted, unless used, in which event time actually used
shall count.
*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 1 p.m.
notice of readiness is given before noon, and at 6 a.m. next working
day if notice given during office hours after noon. Notice at loading
port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging
time, as the case may be.
*indicate alternative (a) or this as agreed, in Box 16*

**7. Demurrage**    See Clause 27
Ten running days on demurrage at the rate stated in Box 18 per
day or pro rata for any part of a day payable day by day, to be
allowed Merchants altogether at ports of loading and discharging.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight,
demurrage and damages for detention, Charterers shall remain re-
sponsible for dead-freight and demurrage (including damages for
detention), incurred at port of loading, Charterers shall also remain
responsible for freight and demurrage (including damages for deten-
tion) incurred at port of discharge, but only to such extent as the
Owners have been unable to obtain payment thereof by exercising
the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as
presented without prejudice to this Charterparty, but should the
freight by Bills of Lading amount to less than the total chartered
freight the difference to be paid to the Captain in cash on signing
Bills of Lading.

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on
or before the date indicated in Box 19, Charterers have the option
of cancelling this contract, such option to be declared, if demanded,
at least 48 hours before vessel's expected arrival at port of loading.
Should the vessel be delayed on account of average or otherwise,
Charterers to be informed as soon as possible, and if the vessel is
delayed for more than 10 days after the day she is stated to be
expected ready to load, Charterers have the option of cancelling this
contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules,
1974. Proprietors of cargo to pay the cargo's share in the general
expenses even if same have been necessitated through neglect or
default of the Owners' servants (see clause 2).

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages
not exceeding estimated amount of freight.

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both
at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight
earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated
amount of freight and dead-freight to be paid by the Owners to the
Brokers as indemnity for the latter's expenses and work. In case of
more voyages the amount of indemnity to be mutually agreed.

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the con-
sequences of any strikes or lock-outs preventing or delaying the ful-
filment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or
any part of it when vessel is ready to proceed from her last port
or at any time during the voyage to the port or ports of loading or
after her arrival there, Captain or Owners may ask Charterers to
declare, that they agree to reckon the laydays as if there were no
strike or lock-out. Unless Charterers have given such declaration in
writing (by telegram, if necessary) within 24 hours, Owners shall
have the option of cancelling this contract. If part cargo has already
been loaded, Owners must proceed with same, (freight payable on
loaded quantity only) having liberty to complete with other cargo
on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo
on or after vessel's arrival at or off port of discharge and same has
not been settled within 48 hours, Receivers shall have the option of
keeping vessel waiting until such strike or lock-out is at an end
against paying half demurrage after expiration of the time provided
for discharging, or of ordering the vessel to a safe port where she
can safely discharge without risk of being detained by strike or lock-
out. Such orders to be given within 48 hours after Captain or Owners
have given notice to Charterers of the strike or lock-out affecting
the discharge. On delivery of the cargo at such port, all conditions
of this Charterparty and of the Bill of Lading shall apply and vessel
shall receive the same freight as if she had discharged at the
original port of destination, except that if the distance of the sub-
stituted port exceeds 100 nautical miles, the freight on the cargo
delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any
action which is announced as a blockade by any Government or by any
belligerent or by any organised body, sabotage, piracy, and any actual
or threatened war, hostilities, warlike operations, civil war, civil com-
motion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that
performance of the contract will subject the Vessel or her Master and
crew or her cargo to war risks at any stage of the adventure, the Owners
shall be entitled by letter or telegram despatched to the Charterers, to
cancel this Charter.
(3) The Master shall not be required to load cargo or to continue
loading or to proceed on or to sign Bills of Lading for any adventure
on which or any port at which it appears that the Vessel, her Master and
crew or her cargo will be subjected to war risks. In the event of
the exercise by the Master of his right under this Clause after part or
the cargo has been loaded, the Master shall at liberty either to dis-
charge such cargo at the loading port or to proceed therewith. In
either latter case the Vessel shall have liberty to carry other cargo
for Owners' benefit and accordingly to proceed to and load or dis-
charge such other cargo at any other port or ports whatsoever, not-
withstanding that it was forwards although in a contrary direction to or out of
beyond the ordinary route. In the event of the Master electing to
proceed with part cargo under this Clause freight shall in any case
be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo
under Clause 3 or after the Vessel has left the loading port, or the

# PART II

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.



last of the loading ports, if more than one, it appears that further 205
performance of the contract will subject the Vessel, her Master and 206
crew or cargo to war risks, the cargo shall be discharged, or if 207
the discharge has been commenced shall be completed, at any safe 208
port in vicinity of the port of discharge as may be ordered by the 209
Charterers. If no such orders shall be received from the Owners 210
within 48 hours after Owners have despatched a request by 211
telegram to the Charterers for the nomination of a substitute discharg- 212
ing port, the Owners shall be at liberty to discharge the cargo at 213
any safe port which they may, in their discretion, decide on and such 214
discharge shall be deemed to be due fulfilment of the contract of 215
affreightment. In the event of cargo being discharged at any such 216
other port, the Owners shall be entitled to freight as if the discharge 217
had been effected at the port or ports named in the Bill(s) of Lading 218
or to which the Vessel may have been ordered pursuant thereto. 219

(5) (a) The Vessel shall have liberty to comply with any directions 220
or recommendations as to loading, departure, arrival, routes, ports 221
of call, stoppages, destination, zones, waters, discharge, delivery or 222
in any other wise whatsoever including any direction or recom- 223
mendation not to go to the port of destination or to delay proceeding 224
thereto or to proceed to some other port) given by any Government or 225
by any belligerent or by any organized body engaged in civil war, 226
hostilities or warlike operations or by any person or body acting or 227
purporting to act as or with the authority of any Government or 228
belligerent or of any such organized body or by any committee or 229
person having under the terms of the war risks insurance on the 230
Vessel, the right to give any such directions or recommendations. 231
If by reason of or in compliance with any such direction or recom- 232
mendation anything is done or is not done such shall not be deemed 233
a deviation. 234

(b) If by reason of or in compliance with any such directions or re- 235
commendations, the Vessel does not proceed to the port or ports 236
named in the Bill(s) of Lading or to which she may have been 237
ordered pursuant thereto, the Vessel may proceed to any port as 238
directed or recommended or to any safe port which the Owners in 239
their discretion may decide on and there discharge the cargo. Such 240
discharge shall be deemed to be due fulfilment of the contract of 241
affreightment and the Owners shall be entitled to freight as if 242
discharge had been effected at the port or ports named in the Bill(s) 243
of Lading or to which the Vessel may have been ordered pursuant 244
thereto. 245

(6) All extra expenses (including insurance costs) involved in discharg- 246
ing cargo at the loading port as in authorised under Clauses 247
at any port as is provided in Clauses 4 and 5 (b) hereof shall be paid 248
by the charterers and/or cargo owners, and the Owners shall have 249
a lien on the cargo for all moneys due under these Clauses 250

## 17. GENERAL ICE CLAUSE

Port of loading

(a) In the event of the loading port being inaccessible by reason of 251
ice when Vessel is ready to proceed from her last port or at any 252
time during the voyage or on vessel's arrival or in case frost sets 253
after vessel's arrival, the Captain for fear of being frozen in is at 254
liberty to leave without cargo, and this Charter shall be null and 255
void. 258

(b) If during loading the Captain, for fear of vessel being frozen in, 259
deems it advisable to leave, he has liberty to do so with what cargo 260
he has on board and to proceed to any other port or ports with 261
option of completing cargo for Owners benefit for any port or ports 262
including port of discharge. Any part cargo thus loaded under this 263
Charter to be forwarded to destination at vessel's expense but 264
against payment of freight, provided that no extra expenses be 265
thereby caused to the Receivers, freight being paid on quantity 266
delivered (in proportion if lumpsum), all other conditions as per 267
Charter. 268

(c) In case of more than one loading port, and if one or more of the 269
ports are closed by ice, the Captain or Owners to be at liberty to 270
either to load the part cargo at the open port and sail, 271
declaring his own account as under section (b) or to declare the Charter 272
null and void unless Charterers agree to load full cargo at the open 273
port. 274

(d) This Ice Clause not to apply in the Spring. 275

Port of discharge 276

(a) Should ice (except in the Spring) prevent vessel from reaching 277
port of discharge Receivers shall have the option of keeping vessel 278
waiting until the re-opening of navigation and paying demurrage 279
or of ordering the vessel to a safe and immediately accessible port 280
where she can safely discharge without risk of detention by ice. 281
Such orders to be given within 48 hours after Captain or Owners 282
have given notice to Charterers of the impossibility of reaching port 283
of destination. 284

(b) If during discharging the Captain for fear of vessel being frozen 285
in deems it advisable to leave, he has liberty to do so with what 286
cargo he has on board and to proceed to the nearest accessible 287
port where she can safely discharge. 288

(c) On delivery of the cargo at such port, all conditions of the Bill 289
of Lading shall apply and vessel shall receive the same freight as 290
if she had discharged at the original port of destination, except 291
that if the distance of the substituted port exceeds 100 nautical miles, the 292
freight on the cargo delivered at the substituted port to be increased 293
in proportion. 294

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 480 TO 500 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL´S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL´S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 03 / 13 NOVEMBER 2007.

ETA TO LOAD PORT DECEMBER 03 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER´S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL´S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL´S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKAIA
LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION
CORP, CHARTERERS ATN INDUSTRIES INC.

ORIGINAL

### CLAUSE 27: DEMURRAGE

ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR
DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT
THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS
ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS
INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH
SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

### CLAUSE 28: VESSEL'S GEAR

OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE
FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED,
FREE OF EXPENSES TO THE CHARTERERS.

### CLAUSE 29: OVERTIME

OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS
OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR
CHARTERERS ACCOUNT.

### CLAUSE 30: ARBITRATION

ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN
NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01)
ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH
AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH
PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF
ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW
ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF
SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY
HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT
WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN
ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE
REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN
APPOINTED BY CONSENT.

### CLAUSE 31: TAXES AND DUES

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR
CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS
INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR
CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

### CLAUSE 32: VESSEL COMPLIANCE

OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES
TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER
SHALL BE FOR OWNERS ACCOUNT.

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL.

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER´S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL´HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD 118 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM 480 PIECES EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.

## RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:        JPMORGAN CHASE NEW YORK

Address Bank:             345 PARK AVENUE

                          NEW YORK – NY 10154

ABA:                      021000021
SWIFT:                    CHASUS33

BENEFICIARY BANK:         EBNA BANK N.V.
ADR-BENE-BANK:            AMACO BUILDING 36-B
                          ZEELANDIA CURACAO, NETHERLANDS ANTILLES
ACCOUNT BENE BANK:        0011990850

ULTIMATE BENEFICIARY:     **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:    **201389**

## CLAUSE 36 VESSEL´S DESCRIPTION
VESSEL'S IS DESCRIBED AS FOLLOWS:
NAME M/V SKALA, PREVIOUS NAME FASSA
    TYPE Well Decker/Log/Bulk carrier, H&M  The New India Assurances Company Ltd, India
    P&I The Steamship Mutual, Bermuda, PORT OF REGISTRY  Valletta, Malta, OFFICIAL No  6463
    IMO No  8223347, MMSI No 248478000, FLAG  Maltese, BUILT  Imabari Shipbuilding Co. Ltd.,
    Marugame - Japan. DELIVERED  24/10/1983, SHIP No  T-4649 (S-1116), CLASSIFICATION No.
    NK 831303, CLASS / NOTATION  NK/NS*(BC,SHC 2, 4 OR 1, 3, 5 E)(ESP) / MNS, CHG, MPP,
    LSA, RCF
    L.O.A 189.98m
    L.B.P 180.00m
    BREADTH (MLD) 28.4m
    DEPTH (MLD) 15.30m
    TPC 43.5 Mt (Light), 46.7 (Loaded)
    FREEBOARD 4337 mm
    FWA 254 mm
    TONNAGE NRT GRT  INT 13384 / 23144
    PANAMA 19281 24670, SUEZ 21309,77 23563,15
    DEADWEIGHT
    D/WEIGHT(MT) DRAFT (Meters)  TROPICAL FRESH 39.207 11.499
    FRESH WATER 38,158 11.270, TROPICAL 39.228 11.245, SUMMER 38.156 11.016,
    WINTER 37.090 10.787
    CAPACITY
    HATCH DIMENSIONS Meters HOLD DIMENSIONS (L x W x H) Meters GRAIN / BALE
    NO 1 12.8 x 14,4 21,5 x 22,5 x 13,2 229.333,49 / 219.254,24
    NO 2 24,8 x 14,4 32,8 x 22,5 x 13,2 409.280,37 / 391.859,48
    NO 3 19.2 x 14,4 28,0 x 22,5 x 13,2 348.226,74 / 331.466,24
    NO 4 24.8 x 14,4 32,8 x 22,5 x 13,2 409.009,15 / 391.924,46
    NO 5 19.2 x 14,4 28,0 x 12,0 x 13,2 336.396,56 / 325.229,61
        1.732.246,31 / 1.659.734,03 ft3

    TANK CAPACITY (in m3)
    FRESH WATER 350,4
    BALLAST 12.487,90
    HFO(180 CST) 2.084,40
    MDO 238,4

    HEIGHT  Keel to Top Mast - 45.83 Mts
    TYPE OF HATCHCOVERS McGregor Folding type. Watertight Steel Hatch Cover

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

Hinged. 4 Panels on each Hatch open 2 Forward & 2 Aft
WW/AUSSIE/CO2/GRAIN FITTED
STRENGHTENED FOR HEAVY CARGOES=HOLD 2÷4 OR 1÷3÷5
VENTILATION SYSTEM: NATURAL VENTILATION
STRENGTH
STRENGHT OF WEATHER DECK 3,3 Meters/Square meters
STRENGHT OF HATCH COVERS 2,4 Meters/Square meters
STRENGHT OF TANK TOP No1-21.48. No2&4-20,97, No3-20,78,  No 5-20,50 Meters/Square meters
CARGO GEARS: ELECRTO HYDRAULIC- (Cranes 4 x 25 MT)
LOG DESCRIPTION
1) Fixed Stanchions on Deck P&S in the way of Mast house
2) Stanchions On Board - Permanent:  6 Twin Steel Stanchions Each Side
 - Removable:  64 Pieces. Wooden
Stanchions for Both Sides
3) Type of Stanchions:    Wooden Removable Stanchions
4) Height of Stanchions:  7,90 - 8,10 M Steel Permanent  Stanchions
5) Height of Stanchions:  7,80 M except No1-Hold which is 6,80 M - Wooden
6) Loading Height:       No.1 Hold up to 6,70 m, No.2-5 Holds up to  7.80 m
7) Distance between each Removable Stanchion: Varies from 2,4 to 3,0 M
8) Distance between Permanent Stanchions: No,1 ÷ 11.9 Meters  No.2&4 - 29,8 Meters. No.5 = 20,1 Meters
9) Distance between Hatch cover to resting point of Cranes: 8 M

ENGINE TYPE: Mitsubishi-Sulzer, 7RLB56 (MCR-1)
SPEED & CONSUMPTION ALL ABOUT
LOADED 13.0 Kt & 28.5 Mt IFO 180 CST RME 25 & 1.5 Mt MDO
BALLAST 13.0 Kt & 28.0 Mt IFO 180 CST & 1.5 Mt MDO
PORT CONS IDLE - 1.5 Mt MDO, Gear Working - 3.0 Mt MDO
The above Speed & Consumption is basis good Weather condition, no adverse current,
no negative influence of Swells and not exceeding Beaufort Scale Force - 3
Vessel burns MDO: Maneuvering / Navigating in confined / restricted waters /
Canals / Rivers and in / out of Ports / Locks etc
~ ALL DETAILS ABOUT +

**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"

**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL  MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V SKALA AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE,
 BANK REFERENCES,  MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH
COVERS 480 TO 500 PIECES
POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS
12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-
STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE
INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 3/13 DEC 2400HRS
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD
SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO
PAY DETENTION AT US$ 60,000 PER DAY.
-TIME  NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS  BY EMAIL/FAX/CABLE UPON
 ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD  118 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END
OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER
PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL
CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK

-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH
FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL
ADDITIONAL STANTIONS TO BE  FITTED FOR THE SAFE LASHING/SECURING OF
CARGO OR  SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY
CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY
SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS
REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS
APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR
OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND
FREIGHT BENDS  INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING
DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL
TO BE  PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME
EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P

END

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

ORIGINAL



FOR OWNERS

TOTALMAR NAVIGATION CORP.

FOR CHARTERERS

ATN INDUSTRIES INC



## ADDENDUM TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

It is this day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that due to the information received from Panama Agents Messrs. Wildford & McKay whom will be acting as vessel's agent through her passage by the Panama Canal, that due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala will only be able to load min 410 pieces of pipes instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Signed in Caracas on the 30th day of December 2007. Two originals have been drawn up one for each party.

Totalmar Navigation Corp.

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC

# EXHIBIT 2



**ATN INDUSTRIES, INC.**

Caracas, 06 de Mayo de 2008



Sres.
**Totalmar Navigation Corp  Inc.**
Presente.-

Estimados señores:

Por medio de la presente les solicitamos de manera oportuna el resarcimiento de los daños causados a 31 Tubos Averiados, con las siguiente características: tubería de acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 ò equivalentes con material de características metalúrgicas similares al correspondiente al ASTM A-36 o al API Norma 5L Grado B.; diámetro nominal: 2.600 mm.; espesor mínimo: 15.88 mm.; longitud nominal: 12mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epòxica inerte espesor total de 16 mils.; ò esmalte de alquitrán de hulla (AWWA C-203) correspondiente a la carga del **Buque Skala,** el cual arribo desde Shanghai–China al Pto. Maracaibo-Venezuela el día 16 de enero de 2008 con un total de 430 tubos; según se detalla en cuadro anexo y cuyos daños se generaron durante la travesía marítima.

Por lo que requerimos que nos paguen de inmediato el monto correspondiente a la indemnización de los daños causados.

El monto del presente reclamo es de Quinientos Ochenta y Siete Mil Seiscientos Treinta Dólares con Once Centavos ($.U.S. 587.630,11)

Sin más a que hacer referencia y quedando de ustedes se despide;

Atentamente,

José Martín Olivares.
Presidente

*8401 N.W.53RD Terrace Suite No. 209 • Miami, Florida 33166, U.S.A.*
*Tel (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atnind@bellsouth.net*

# BUQUE   SKALA

| | |
|---|---|
| **Buque:** | Skala |
| **Fecha de Arribo** | 16 ENE 08 |
| **No. Total de Tubos** | 430 |
| **No. Tubos que Presentan Daño** | 31 |
| **Tipo de Tubos** | 2.600mm |
| **Características del Tubo** | Tubería de Acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 o equivalentes con material de características metalúrgicas similares al ASTM A-36 o al API Normal 5L Grado B.; diámetro nominal: 2.600mm.; espesor mínimo: 15.88mm.; longitud nominal: 12 mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epóxica inerte espesor total de 16mils., o esmalte de alquitrán de hulla (AWWA C-203). |
| **Costo por Unidad de los Tubos** | $.U.S. 18.955,81 |
| **Costo Total de Tubos Dañados** | $.U.S. 587.630,11 |



19-0

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"

**1. Shipbroker**

**2. Place and date**
Caracas, December 6th 2007

**3. Owners/Place of business (Cl. 1)**
Totalmar Navigation Corp/Agecom
As Disponent Owner

**4. Charterers/Place of business (Cl. 1)**
ATN Industries Inc.
CCCT, Torre A, Piso 8, Oficina 802
Chuao, Caracas 1065, Venezuela

**5. Vessel's name (Cl. 1)**
M/V Rainbow Or Sub Owners option

**6. GRT/NRT (Cl. 1)**
25,676 / 13,991

**7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**
42,529

**8. Present position (Cl. 1)**
Trading

**9. Expected ready to load (abt.) (Cl. 1)**
Laycan December 13/20, 2007

**10. Loading port or place (Cl. 1)**
1 good safe berth Shanghai, China
always accessible always afloat

**11. Discharging port or place (Cl. 1)**
1 good safe berth Maracaibo, Vene-
zuela, always accessible always
afloat

**12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**
About 350 pieces of policarbonate steel water pipes dimensions guaran-
tee by Charterers. See also clause 22

**13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**
See clause 35

**14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**
See clause 35

**15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)**
See clause 33

**16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)**
a) Laytime for loading
See clause 26
b) Laytime for discharging
See clause 26
c) Total laytime for loading and discharging

**17. Shippers (state name and address) (Cl. 6)**
Jiafang Steel Pipes Co, Ltd.
818 Jianhang Rd., Pudong New Dis-
trict Shanghai. PRC At: Fletcher Xi

**18. Demurrage rate (loading and discharging) (Cl. 7)**
See clause 27

**19. Cancelling date (Cl. 10)**
December 20th 2007

**20. Brokerage commission and to whom payable (Cl. 14)**

**21. Additional clauses covering special provisions, if agreed.**
Additional clauses 22 to 42 both inclusive to form part of this
Charter Party

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

**Signature (Owners)**
Totalmar Navigation Corp.

**Signature (Charterers)**
ATN Industries Inc.

Printed and sold by Fr. G. Knudtzons Bogtrykkeri A/S, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

Totalmar Navigation Corp.

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the
steamer or motor-vessel named in Box 5, of the cargo (or dead-freight), the
long indicated in Box 6 and carrying about the number of tons of
deadweight cargo stated in Box 7, now in position as stated in Box 8
and expected ready to load (unless Charterer about the date in-
dicated in Box 9, and the party mentioned as Charterers in Box 4
and:

2. Owners' Responsibility Clause

3. Deviation Clause

4. Payment of Freight                          See clause 35

5. Loading/Discharging Costs                   See clause 33

6. Laytime                                     See clause 26

7. Demurrage                                   See clause 27

8. Lien Clause

9. Bills of Lading

10. Cancelling Clause

11. General Average

12. Indemnity

13. Agency

14. Brokerage

15. GENERAL STRIKE CLAUSE

16. War Risks ("Voywar 1950")

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including F.I.O. Alternative, etc.

**17. GENERAL ICE CLAUSE**

*Port of loading*

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port, or at any time during the voyage, or on vessel's arrival, or in case frost sets in, after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owner's benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

*Port or discharge*

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge the Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV
RAINBOW LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO,
VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION
CORP. CHARTERERS ATN INDUSTRIES INC.

CLAUSE 22: CARGO DESCRIPTION
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT -
2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX
UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK ABT
357 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480
PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

CLAUSE 23: LOADING & DISCHARGING PORTS
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

CLAUSE 24: PRE-ARRIVAL NOTICES
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS,
SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO
LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO
DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S
ARRIVAL TO DISCHARGE PORT.

CLAUSE 25: ETA & LAYCAN
LAYCAN: 13 / 20 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 15 2007 WP/AGW.

CLAUSE 26: LAYTIME
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY
OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY
SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS /
SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF
READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN
PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT,
WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND
HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT
LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING
PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM
LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING
WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS
INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND
CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM
UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND
HOLIDAYS INCLUDED.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7 DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL`S GEAR**
OWNERS TO GUARANTEE VESSEL`S EQUIPMENT IN GOOD WORKING ORDER, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW`S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**
EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

## CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

## CLAUSE 34: NEW JASON, BOTH TO BLAME ETC

NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

## CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD  121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR ABOUT 357 PIECES EQUALS 29,423.19 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV
RAINBOW LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION
CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:    **JPMORGAN CHASE NEW YORK**

Address Bank:              345 PARK AVENUE

                                    NEW YORK – NY 10154

ABA:                            021000021
SWIFT:                        CHASUS33

BENEFICIARY BANK:      **EBNA BANK N.V.**
ADR-BENE-BANK:            AMACO BUILDING 36-B
                                      ZEELANDIA CURACAO, NETHERLANDS ANTILLES
ACCOUNT BENE BANK:    0011990850

ULTIMATE BENEFICIARY:    **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:    **201389**

CLAUSE 36 VESSEL´S DESCRIPTION
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE

HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV
RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT; MARACAIBO,
VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION
CORP, CHARTERERS ATN INDUSTRIES INC.

CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"


CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL  MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE
HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".

**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

LAY/CAN: 13TH DEC, 2007 / 20TH DEC, 2007
CARGO&QTY: ABT 357 PCS POLICARBONATE STEEL PIPES
FRT RATE: USD 121.50 PER CBM FREE IN, STWOED L/S/D / LINER OUT END OF HOOK
OTHER TERMS AND CONDITIONS AS PER CP SKALA DATED 23/11/07 AMENDED AS PER MAIN TERMS AND LOGICAL ALTERATIONS TO RIDER CLAUSES.

STOWAGE:

NO WELDING ON HATCH COVERS POSSIBLE DUE TO TYPE OF HATCOVERS

OWNRS TECHNICAL DEPT CONFIRM CAN LOAD 20 PCS OF PIPES IN EACH HOLD NO.1 AND HOLD NO.8, I.E., TOTAL 40 PCS CAN BE LOADED ADDITIONAL.
HOLD NO.2/3/4/5/6 - 43PCS PER HOLD AND IN HOLD 7 - 42 PCS = TTL 257
ON DECK FOR NO.2/3/4/5/6/7 - 10PCS PER HATCH = TTL 60 PCS
TFORE LOADABLE QTTY IS 357 PCS.- REPEAT 357 PIPES TOTAL

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC

Totalmar Navigation Corp.

# EXHIBIT 4



Caracas, 06 de Mayo de 2008

Sres.
**Totalmar Navigation Corp  Inc.**
Presente.-



Estimados señores:

Por medio de la presente les solicitamos de manera oportuna el resarcimiento de los daños causados a 17 Tubos Averiados, con las siguiente características: tubería de acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 ò equivalentes con material de características metalúrgicas similares al correspondiente al ASTM A-36 o al API Norma 5L Grado B.; diámetro nominal: 2.600 mm.; espesor mínimo: 15.88 mm.; longitud nominal: 12mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epòxica inerte espesor total de 16 mils.; ò esmalte de alquitrán de hulla (AWWA C-203) correspondiente al **Buque Rainbow**; según se detalla en cuadro anexo y cuyos daños se generaron durante la travesía marítima.

Por lo que requerimos que nos paguen de inmediato el monto correspondiente a la indemnización de los daños causados.

El monto del presente reclamo es de Trescientos Veintidós Mil Doscientos Cuarenta y Ocho con Setenta y Siete Centavos ($.U.S. 322.248,77).

Sin más a que hacer referencia y quedando de ustedes se despide;

Atentamente,

José Martín Olivares.
Presidente

*8401 N.W.53RD Terrace Suite No. 209 • Miami, Florida 33166, U.S.A.*
*Tel (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atnind@bellsouth.net*

# BUQUE  RAINBOW

| | |
|---|---|
| **Buque:** | Rainbow |
| **Fecha de Arribo** | 04 MAR 08 |
| **No. Total de Tubos** | 357 |
| **No. Tubos que Presentan Daño** | 17 |
| **Tipo de Tubos** | 2.600mm |
| **Características del Tubo** | Tubería de Acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 o equivalentes con material de características metalúrgicas similares al ASTM A-36 o al API Normal 5L Grado B.; diámetro nominal: 2.600mm.; espesor mínimo: 15.88mm.; longitud nominal: 12 mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epóxica inerte espesor total de 16mils., o esmalte de alquitrán de hulla (AWWA C-203). |
| **Costo por Unidad de los Tubos** | $.U.S. 18.955,81 |
| **Costo Total de Tubos Dañados** | $.U.S. 322.248,77 |



# EXHIBIT 5

ANNEX 2

**19-O**

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON" Part I |
|---|---|
| 2. Owners/Place of business (Cl. 1)<br>**Totalmar Navigation Corp/Agecom<br>As Disponent Owners** | 3. Place and date<br>**Caracas December 7th 2007**<br>4. Charterers/Place of business (Cl. 1)<br>**ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela** |
| 5. Vessel's name (Cl. 1)<br>**M/V Mairouli or Sub in Owners option** | 6. GRT/NRT (Cl. 1)<br>**30,018 / 18,466** |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br>**53,206 mt deadweight** | 8. Present position (Cl. 1)<br>**Trading** |
| 9. Expected ready to load (abt.) (Cl. 1)<br>**December 27th 2007** | |
| 10. Loading port or place (Cl. 1)<br>**1good safe berth Shanghai, China<br>always accessible always afloat** | 11. Discharging port or place (Cl. 1)<br>**1 good safe berth Maracaibo, Vene-<br>zuela, always accessible always<br>afloat** |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>**Min 435 pieces of pipes upto vessel's full capacity at Owners option<br>of policarbonate steel water pipes dimensions guarantee by Charterers.<br>See also clause 22** | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>**See clause 35** | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>**see clause 35** |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) (Cl. 1)<br><br>**See clause 33** | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>**See Clause 26**<br>b) Laytime for discharging<br>**See Clause 26**<br>c) Total laytime for loading and discharging |
| 17. Shippers (state name and address) (Cl. 6)<br>**Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shanghai, PRC At Fletcher Xi** | |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>**See clause 27** | 19. Cancelling date (Cl. 10)<br>**December 31st 2007** |
| 20. Brokerage commission and to whom payable (Cl. 14) | |

21. Additional clauses covering special provisions, if agreed.

**Additional clauses 22 to 42 both inclusive to form part of this
Charter Party.**

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br>**Totalmar Navigation Corp.**<br>**Totalmar Navigation Corp.** | Signature (Charterers)<br>**ATN Industries Inc.** |
|---|---|



Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodvade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen

PART II

"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

ORIGINAL

1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the grosstons Register tons indicated in Box 5, and carrying about the number of tons of deadweight cargo stated in Box 7, in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 shall:

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same) to be at Charterers' risk as stated in Box 12 (Charterers to provide all made suitable wood for dunnage and any separations required) the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 or so near as she safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or on intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

3. Deviation Clause
The Vessel has liberty to call at any port, in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean risk of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash (a) vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent to cover insurance and other expenses.

5. Loading/Discharging Costs   See clause 33
*(a) Gross Terms
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.
If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.
*(b) F.I.o. and free stowed/trimmed
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted by regulations; if not, the Charterers shall provide and pay for winchmen from shore and/or any. (This provision shall not apply if vessel is gearless and stated as such in Box 16.)
* Indicate alternative (a) or (b), as agreed, in Box 16.

6. Laytime   See clause 26
*(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
*(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging time, as the case may be.
* Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage   See clause 27
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for deadfreight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. Bills of Lading
The Captain to sign Bills of Lading at such rate of freight as presented, without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. Cancelling Clause
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. General Average
General average to be settled, according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 5).

12. Indemnity
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. Agency
In every case the Owners shall appoint own Broker or Agent both at the port of loading and the port of discharge.

14. Brokerage
A brokerage commission of the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 21.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the said Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. War Risks ("Voywar 1950")
(1) In these clauses "the War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organised body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any port it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of (a) the exercise by the Master of his right under this Clause after part of the cargo has been loaded, or (b) a ports under this Clause before loading, the Owners shall be at liberty either to load the part cargo and complete the voyage under the terms of the Bill(s) of Lading and/or port or ports whatsoever, although in a contrary direction to or out of or beyond the ordinary route, in the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the



PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING; PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO: WATER PIPES; OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 435 PCS EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 26 / 31 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 27TH WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.

**CLAUSE 33: COST OF LOADING AND DISCHARGE**

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL.





**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD  120.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT, (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM MIN 435 PIECES EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.



RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:     JPMORGAN CHASE NEW YORK

Address Bank:          345 PARK AVENUE

                       NEW YORK – NY 10154

ABA:                   021000021
SWIFT:                 CHASUS33

BENEFICIARY BANK:      EBNA BANK N.V.
ADR-BENE-BANK:         AMACO BUILDING 36-B
                       ZEELANDIA CURACAO, NETHERLANDS ANTILLES
ACCOUNT BENE BANK:     0011990850

ULTIMATE BENEFICIARY:  Totalmar Navigation Corp.

Account Ultimate Beneficiary:  201389

## CLAUSE 36 VESSEL'S DESCRIPTION

VESSEL: M/V MAIROULI   EX SIBULK DEDICATION OR SUB IN OWNERS OPTION
================
DWT/DRAFT / TPC SUMMER  : 53,206 MT / 12.303 MTRS / 55.30 MT
BUILT JUNE 2005, IMABARI - JAPAN
FLAG/CLASS : PANAMA / N.K.K
GRT/NRT: 30,018 / 18,486
LOA/BREADTH/DEPTH :189.94 MTRS / 32.26 MTRS / 17.30 MTRS
HO / HA : 5 / 5
CARGO GEAR: 4 CRANES ELECTRO HYDRAULIC 30.5 MT SWL EACH
TOTAL GRAIN :   68,927.4 M3 / BALE : 65,526.1 M3
SPEED / CONSUMPTION :
IN GOOD WEATHER CONDITIONS I.E. UPTO BEAUFORT FORCE 4 AND DOUGLAS SEA
STATE 3 AND NO ADVERSE CURRENT.
AT SEA BALLAST : ABT 14.5 KNOTS ON ABT 37.0 MTS IFO AND
ABT 0.3 MTS MDO
AT SEA LADEN   : ABT 14.0 KNOTS ON ABT 37.0 MTS IFO
AND ABT  0.3 MTS MDO
IDLE : ABT 3.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/ DAY
IN PORT WORKING : ABT 6.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/DAY
ALL DETAILS IN GOOD FAITH AND WOG

## CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

## CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

## CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

## CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V MAIROULI AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE, BANK REFERENCES, MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 26/31 DEC 2007
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTERS WILL HAVE MAXIMUM D 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO PAY DETENTION AT US$ 60,000 PER DAY.
-TIME NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS BY EMAIL/FAX/CABLE UPON ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD 120.50 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK
-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL TO BE PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P. END



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV
MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION
CORP. CHARTERERS ATN INDUSTRIES INC.

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC.



## ADDENDUM TO CHARTER PARTY DATED 7TH DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

It is day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that the Laycan for the 5th shipment of pipes loading at Shanghai have been shifted from December 26/31, 2007 to January 26/31st 2008 and vessel will only load min 410 pieces of pipes upto vessel's full capacity in Charter option.

Signed in Caracas on the 28th day of December 2007. Two originals have been drawn up one for each party.

FOR OWNERS                           FOR CHARTERERS

TOTALMAR NAVIGATION CORP.            ATN INDUSTRIES INC

Totalmar Navigation Corp.

# EXHIBIT 6



Caracas, 06 de Mayo de 2008

Sres.
**Totalmar Navigation Corp  Inc.**
Presente.-

Estimados señores:

Por medio de la presente les solicitamos de manera oportuna el resarcimiento de los daños causados a 13 Tubos Averiados, con las siguiente características: tubería de acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 ò equivalentes con material de características metalúrgicas similares al al ASTM A-36 o al API Norma 5L Grado B.; diámetro nominal: 2.400 mm.; espesor mínimo: 14.50 mm.; longitud nominal: 12mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epòxica inerte espesor total de 16 mils.; ò esmalte de alquitrán de hulla (AWWA C-203) correspondiente al **Buque Go Star**; según se detalla en cuadro anexo y cuyos daños se generaron durante la travesía marítima.

Por lo que requerimos que nos paguen de inmediato el monto correspondiente a la indemnización de los daños causados.

El monto del presente reclamo es de Doscientos Veintidós Mil Ocho Dólares con Dos Centavos ($.U.S. 222.008,02)

Sin más a que hacer referencia y quedando de ustedes se despide;

Atentamente,

José Martín Olivares.
Presidente



8401 N.W.53RD Terrace Suite No. 209 • Miami, Florida 33166, U.S.A.
Tel (305) 468-8600 • Fax (305) 468-9080
Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418
e-mail: atnind@bellsouth.net

# BUQUE   GO STAR

| | |
|---|---|
| **Buque:** | Go Star |
| **Fecha de Arribo** | 06 MAR 08 |
| **No. Total de Tubos** | 431 |
| **No. Tubos que Presentan Daño** | 13 |
| **Tipo de Tubos** | 2.400mm |
| **Características del Tubo** | Tubería de Acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 o equivalentes con material de características metalúrgicas similares al ASTM A-36 o al API Normal 5L Grado B.; diámetro nominal: 2.400mm.; espesor mínimo: 14.50mm.; longitud nominal: 12 mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epóxica inerte espesor total de 16mils., o esmalte de alquitrán de hulla (AWWA C-203). |
| **Costo por Unidad de los Tubos** | $.U.S. 17.077,54 |
| **Costo Total de Tubos Dañados** | $.U.S. 222.008,02 |



# EXHIBIT 7

ORIGINAL

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON" | Part I |
|---|---|---|

| 2. Place and date |
|---|
| Caracas, December 29th 2007 |

| 3. Owners/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1) |
|---|---|
| Totalmar Navigation Corp./Agecom<br>As Disponent Owners | ATN Industries Inc.<br>CCCT Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |

| 5. Vessel's name (Cl. 1) | 6. GRT/NRT (Cl. 1) |
|---|---|
| M/V Golden Wish or Sub | 26,058 / 14,872 |

| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
|---|---|
| 45,719 Deadweight | Trading |

| 9. Expected ready to load (abt.) (Cl. 1) |
|---|
| December 8th, 2007 |

| 10. Loading port or place (Cl. 1) | 11. Discharging port or place (Cl. 1) |
|---|---|
| 1 good safe berth Shanghai, China<br>always accessible always afloat | 1 good safe berth Maracaibo, Vene-<br>zuela. Always accessible always<br>afloat. |

| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) |
|---|
| Min 435 pieces of pipes upto vessel's maximum capacity at Owner's<br>option of water pipes of policarbonate steel pipes dimensions Gua-<br>rantee by Charterers. See also Clause 22 |

| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
|---|---|
| See Clause 35 | See Clause 35 |

| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6) |
|---|---|
| See clause 33 | a) Laytime for loading   See Clause 26 |
|  | b) Laytime for discharging   See Clause 26 |

| 17. Shippers (state name and address) (Cl. 6) | c) Total laytime for loading and discharging |
|---|---|
| Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shangahi, PRC At: Fletcher Xi |  |

| 18. Demurrage rate (loading and discharging) (Cl. 7) | 19. Cancelling date (Cl. 10) |
|---|---|
| See Clause 27 | December 15th, 2007 |

| 20. Brokerage commission and to whom payable (Cl. 14) |
|---|
|  |

| 21. Additional clauses covering special provisions, if agreed. |
|---|
| Additional clauses 22 to 42 both inclusive to form part of this<br>Charter Party |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

**Totalmar Navigation Corp.**

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp. | ATN Industries Inc. |

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

Adopted by the Documentary Committee of: General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

PART II

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5 of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that
The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo of shipment of deck cargo agreed same to be at Charterers risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property

**4. Payment of Freight**       *See clause 35*
The freight to be paid in cash ...
without discount on delivery of the cargo at mean rate of exchange ruling on day of payment, the receiver of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs**       *See clause 33*
*(a) Gross Terms*
...

*(b) F.I.O. and free-stowed/trimmed*
...

**6. Laytime**       *See clause 26*
*(a) Separate laytime for loading and discharging*
...
*(b) Total laytime for loading and discharging*
...
*(c) Commencement of laytime (loading and discharging)*
...

**7. Demurrage**       *See clause 27*
...

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for loss of time by indemnity at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2)

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least one-third of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way from their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such option to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at her original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, and any act or threatened war, hostilities, warlike operations, civil war, civil strife, revolution or mutiny.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any part of which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall at his liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3 or after the Vessel has left the loading port or ...

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc

last of the loading ports, if more than one, it appears that further    205
prosecution of the contract will subject the Vessel or her Master and    206
crew or her cargo, to war risks, then the cargo shall be discharged, or if    207
the discharge has been commenced shall be completed, at any safe    208
port in vicinity of the port of discharge as may be ordered by the    209
Charterers. If no such orders shall be received from the Charterers    210
within 48 hours after the Owners have despatched a request by    211
telegram to the Charterers for the nomination of a substitute discharg-    212
ing port, the Owners shall be at liberty to discharge the cargo at    213
any safe port which they may, in their discretion, decide on and such    214
discharge shall be deemed to be due fulfilment of the contract of    215
affreightment. In the event of cargo being discharged at any such    216
other port, the Owners shall be entitled to freight as if the discharge    217
had been effected at the port or ports named in the Bill(s) of Lading    218
or to which the Vessel may have been ordered pursuant thereto.    219

(5) (a) The Vessel shall have liberty to comply with any directions    220
or recommendations as to loading, departure, arrival, routes, ports    221
of call, stoppages, destination, zones, waters, discharge, delivery or    222
in any other wise whatsoever given by any Government or any person    223
or body acting or purporting to act as or with the authority of any    224
Government or any committee or person having under the terms of the    225
war risks insurance on the Vessel, the right to give any such directions    226
or recommendations. If by reason of or in compliance with any such    227
directions or recommendations, anything is done or is not done, such    228
shall not be deemed a deviation.    229

(b) If by reason of or in compliance with any such directions or    230
recommendations the Vessel does not proceed to the port or ports    231
named in the Bill(s) of Lading or to which she may have been    232
ordered pursuant thereto, the Vessel may proceed to any port as    233
directed or recommended or to any safe port which the Owners in    234

                                                                          251
                                                                          252

17.  GENERAL ICE CLAUSE
     Port of loading

     (a) In the event of the loading port being inaccessible by reason of    253
     ice when Vessel is ready to proceed from her last port or at any    254
     time during the voyage or on Vessel's arrival or in case ice sets in    255
     after Vessel's arrival, the Captain for fear of being frozen in is    256
     liberty to leave without cargo, and this Charter shall be null and    257
     void.    258

     (b) If during loading the Captain, for fear of Vessel being frozen in,    259
     deems it advisable to leave, he has liberty to do so with what cargo    260
     he has on board and to proceed to any other port or ports with    261
     option of completing cargo for Owners' benefit for any port or ports    262
     including port of discharge. Any part cargo thus loaded under this    263
     Charter to be forwarded to destination at vessel's expense but    264
     against payment of freight, provided that no extra expenses be    265
     thereby caused to the Receivers, freight being paid on quantity    266
     delivered (in proportion if lumpsum), all other conditions as per    267
     Charter.    268

     (c) In case of more than one loading port, and if one or more of the    269
     ports are closed by ice, the Captain or Owners to be at liberty to    270
     either to load the part cargo at the open port and fill up elsewhere    271
     for their own account as, under section (b) or to declare the Charter    272
     null and void unless Charterers agree to load full cargo at the open    273
     port.    274

     (d) This Ice Clause not to apply in the Spring.    275

     Port of discharge

     (a) Should ice (except in the Spring) prevent vessel from reaching    276
     port of discharge Receivers shall have the option of keeping vessel    277
     waiting until the re-opening of navigation and paying demurrage, or    278
     of ordering the vessel to a safe and immediately accessible port    279
     where she can safely discharge without risk of detention by ice.    280
     Such orders to be given within 48 hours after Captain or Owners    281
     have given notice to Charterers of the impossibility of reaching port    282
     of destination    283
                                                                          284

     (b) If during discharging the Captain for fear of vessel being frozen    285
     in deems it advisable to leave, he has liberty to do so with what    286
     cargo he has on board and to proceed to the nearest accessible    287
     port where she can safely discharge.    288

     (c) On delivery of the cargo at such port, all conditions of the Bill    289
     of Lading shall apply and vessel shall receive the same freight as    290
     if she had discharged at the original port of destination, except that if    291
     the distance of the substituted port exceeds 100 nautical miles, the    292
     freight on the cargo delivered at the substituted port to be increased    293
     in proportion    294

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CUBIC PER PIECE 82.4179 AND THAT TOTAL CUBIC METER FOR MIN 435 PIECES EQUALS ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 08 / 15 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 11 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

DETENTION AT DISCHARGE PORT TO BE PAID AT THE RATE OF US$ 60,000 PER DAY PRORATA.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL`S GEAR**
OWNERS TO GUARANTEE VESSEL`S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW`S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

## CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

## CLAUSE 34: NEW JASON, BOTH TO BLAME ETC

NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.
EXTRA WAR RISK PREMIUM IF ANY TO BE FOR CHARTERERS ACCOUNT BOTH ENDS.

## CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM 435 PIECES EQUALS 35.851,79 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:      **JPMORGAN CHASE NEW YORK**

Address Bank:               **345 PARK AVENUE**

                                   **NEW YORK – NY 10154**

ABA:                           **021000021**
SWIFT:                        **CHASUS33**

BENEFICIARY BANK:      **EBNA BANK N.V.**
ADR-BENE-BANK:           **AMACO BUILDING 36-B**
                                   **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:   **0011990850**

ULTIMATE BENEFICIARY:  **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:  **201389**

**CLAUSE 36 VESSEL´S DESCRIPTION**

M/V GOLDEN WISH OR SUB, DESCRIPTION IN ATTACHMENT TO THIS CHARTER PARTY.

**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"

**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL  MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

   acct ATN Industries Inc.
   - A shipment min 435 pieces carriers option upto vsl full , under/on deck cap
   of polycarbonate pipes in loose, dims 12,192 m length x 2,6 m dia/12,3 mt
   uw each where as chrts grtee 82.4179 cbm per piece
   - carriers performer vsl mv golden wish or sub - intake abt 438 pcs -
   however performing vsl to be grd si/bc, max 25 years, highest class lloyds or
   equivelant
   - under/on deck , with max 5 tiers limits upto vessels capacity



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

- part cgo carriers option but last in first out
- cargo will be loaded under/on deck carriers option cgo on deck bs/l s to be marked "shipped on deck, without any responsibility to owners for loss or damage howsoever caused " same to be  for charters/shippers/receivers risk and account
- loading 1spsb aaaa shanghai / discharging 1spsb aaaa maracaibo , where 8m sw drft
- laycan 8/15 dec 2007 –

   -loading 4 days shinc / Liner out end of hook discharge
   - demm usd 60.000 pdpr / fd bends, otherwise as per fixture Skala, cp 23/11/07
   - frt usd 121,50 per cbm fiost lsd, Liner out end of hook.
   - frt payment 100 pct as per cp M/V Skala
   - any shifting required to be for acct and time of party ordering same
   - nor via cable/radio/vhf w/w/w/w be

- if original bill(s) of lading is not available at discharging port upon  vsl's arrival,the carriers/master to allow discharge of cgo into custody of the port
   against chrts and recvrs "loi" as per ows pandi wording
- overtime, if any, to be paid by ordering party
- taxes and / or dues on cargo/frt if any for charter s account both ends
- taxes and / or dues on vessel's flag /crews /ownership for carriers account both ends
- extra insurance due to vessel's age and/or flag, if any for charters account bends
- carriers performing vsl must be fully certified (ism/doc/smc/isps/p&i,etc)
- carriers/master provide approvex 3/2/1 days eta notice both bends
- extra war risk premium if any to be for chrts acct bends
- arbitration if any in london and english law to apply
- Otherwise terms and conditions as per fixture Cp M/V Skala dd 23/11/07, logically amended as per main terms agreed.

   end offer

**Totalmar Navigation Corp.**

FOR OWNERS                              FOR CHARTERERS

TOTALMAR NAVIGATION CORP.        ATN INDUSTRIES INC

ORIGINAL

**1475M/V ''GOLDEN WISH''**

**All figures / details are given in good faith and wog**

**1.General**
1.1 Vessel's name:  MV GOLDEN WISH
1.2 Vessel's previous name:  KEN EXPLORER / BORON EXPLORER
1.3 Flag:  PANAMA
1.4 Month /Year and Where Built:  1997/JAPAN
1.5 Yard name and number:  TSUNEISHI SHIP BUILDING CO LTD
     YARD No.  1090
1.6 Official Class Register / IMO number:     /9146962
1.7 Class of Vessel: KOREAN REGISTER OF SHIPS
1.8 Port of Registry: PANAMA
1.9 Owners:  GOLDEN WISH SHIPPING CO. PANAMA

**2.Particulars of Vessel**
2.1 Type of Vessel: BULK CARRIER  FLUSH DECK WITH F'CASTLE
2.2

|          | Deadweight | Draft  | TPI / TPC |
|----------|-----------|--------|-----------|
| Summer   | 45,719    | 11.62  | 49.83 MT  |
| Winter   | 44,515    | 11.378 | 49.65 MT  |
| Tropical | 46,928    | 11.862 | 49.95 MT  |

2.3 Is Vessel fitted for Transit of:
   a)  Panama Canal          YES
   b)  Suez Canal            YES
   c)  St. Lawrence Seaway   NO
   d)  Not applicable
2.4 Not applicable
2.5 Not applicable
2.6 GT / NT:
2.7  International: 26.058 / 14,872
     Suez        : 26,808 / 24,202.34
     Panama      : 21,673
2.8 Length Overall: 185.74 M
2.9 Length between perpendiculars: 177.00 M
2.10 Extreme breadth and depth moulded:  30.4 M/ 16.50 M
2.11 Distance from waterline to top of hatch coaming (basis full bunkers)
       a.  Fully laden conditions 6.32 M at even keel summer draft
       b.  Full ballast condition (excl. ballast holds) No.1 13.08M No.5 11.25M
           Full ballast condition (incl. Ballast holds) No.1 9.94M No.5 9.29M
2.12 State Vessel's deballasting time in mt / hour: ABOUT 600 M3 / HOUR
2.13 Vessel can accept loading rate of (metric tons per hour): 2,300 MTS/HR
2.14 Distance from Keel to top of hatch coaming: 17.9 M
     No.1 17.9 M     No.2 to No.5 : 17.9 M
     Highest fixed point of Vessel:  45.11 M
2.15 State Capacity of :
     a.  Ballast Tanks: 14,833 M3
     b.  Hold Ballast Capacity:
     c.  Constant excluding Fresh Water: ABOUT 220 MT
     Daily Fresh Water Consumption: ABOUT 12  MT
     Fresh Water Capacity: 389MT
     State Capacity and Daily Production of Evaporators: ABOUT 15.MT
     Normal Fresh Water Reserve: ABOUT 150 MT
2.16 Vessel is fitted with Shaft Generator: NO
2.17 State Vessel's onboard Electrical Supply: 450V/ 60Hz

ORIGINAL

3.1 Holds
    a.  Number of Holds : FIVE (5)
    b.  Are Vessels Holds clear and free of any obstructions:
    c.  Grain / Bale Capacity in Holds excluding Wing / Topside Tanks:

| | Grain | Bale |
|---|---|---|
| No.1 | 9,932.8 | 9,586.3 |
| No.2 | 11,753.5 | 11,396.7 |
| No.3 | 11,285.2 | 10,946.1 |
| No.4 | 11,747.9 | 11,368.1 |
| No.5 | 10,276.6 | 10,053.3 |

    d.  Grain / Bale Capacity in Holds including Hatchways:

| | Grain | Bale |
|---|---|---|
| No.1 | 10,361.6 | 10,015.1 |
| No.2 | 12,199.4 | 11,844.6 |
| No.3 | 11,731.1 | 11,392.0 |
| No.4 | 12,193.8 | 11,814.0 |
| No.5 | 10,722.5 | 10,499.2 |

    e.  Is Vessel strengthened for the carriage of heavy cargoes: YES
        HO #2+4 MAYBE EMPTY
    f.  Is Tanktops steel and suitable for grab discharge:  YES
    g.  State whether corrugations vertical or horizontal:  VERTICAL
    h.  Tanktop Strength:
        No.1 and No.5 : 13,73 MT / M2
        No.2 and No.4 : ......Mt / M2
        No.3 : 21,94 MT / M2
    i.  Are Holds CO2 fitted: NO
    j.  Are Holds fitted with smoke detection system: NO
    k.  Is Vessel fitted with Australian approved Hold ladders: YES
    l.  Has Vessel a loadmaster computer / loadicator or other type of mechanical
        stowage calculator:  YES
    m.  Are Holds hoppered at:  Hold Side: YES
        Can Vessel's Holds be described as box shaped: NO
    n.  Measurement of any Tank Slopes / Hoppering Height: 3,10.M
        Distance from Vessel's Side at Tanktop: 14,69M
    o.  Flat floor measurement of cargo Holds at Tanktop:
        No.1 Hold: 27.00 M x (Fore)23.8 M / (Aft)10.90 M
        No.2 Hold: 26.90 M x 23.80 M
        No.3 Hold: 27.00 M x 23.80 M
        No.4 Hold: 26,90 M x 23,80M
        No.5 Hold: 27.00 M x 23.80M (Fore/Aft)
    p.  Is Vessel electrical ventilated: NO

3.2 Hatches
    a. Number of Hatches: Five
    b. Make and Type of Hatch covers:  HAKATA MAC CORP/FOLDING TYPE
    c. Hatch sizes
        No.1     20.00 x 15.30M
        No.2/3/4/5  20.80 x 15.30M
    d. Hatch cover strength:NO 1 2.08 MT / M2 NO 2-5 1.75 MT/M2
    e. Distance from Ship's rail to edge of hatch covers / coaming each side:
        No.1 FWD 3.6 M  AFT 6.5 M
        No.2 to No.5 : 6.5 M
    f. Distance from bow to for of 1st hold opening:5.5  M
    g. Distance from stern to AFT of last hold opening:3.6 M
    h. Is vessel fitted with cement holes: Yes

11. Cargo Gear
11.1 State make and type: 4 Electro-hydraulic cranes MHI LTD JAPAN
11.2 Number and capacity of cranes and where situated: 4 x 25 T
    No.1 between holds 1 and 2
    No.2 between holds 2 and 3
    No.3 between holds 3 and 4
    No.4 between holds 4 and 5
11.3 Outreach of gear beyond ship's rail: 8M
11.4 Not applicable
11.5 Time needed for full cycle with maximum cargo lift on hook: about .... minutes
11.6 Slewing / luffing / hoisting speeds: .... RPM / ....SBCS / ....M PER MIN
11.7 Is gear combinable for heavy lift: NO
11.8 Are winches electro-hydraulic: YES

# EXHIBIT 8





ATN INDUSTRIES, INC.

Caracas, 06 de Mayo de 2008

Sres.
**Totalmar Navigation Corp  Inc.**
Presente.-

Estimados señores:

Por medio de la presente les solicitamos de manera oportuna el resarcimiento de los daños causados a 15 Tubos Averiados, con las siguiente características: tubería de acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 ò equivalentes con material de características metalúrgicas similares al correspondiente al ASTM A-36 o al API Norma 5L Grado B.; diámetro nominal: 2.600 mm.; espesor mínimo: 15.88 mm.; longitud nominal: 12mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epòxica inerte espesor total de 16 mils.; ò esmalte de alquitrán de hulla (AWWA C-203) correspondiente al **Buque Atlántica**; según se detalla en cuadro anexo y cuyos daños se generaron durante la travesía marítima.

Por lo que requerimos que nos paguen de inmediato el monto correspondiente a la indemnización de los daños causados.

El monto del presente reclamo es de Doscientos Ochenta y Cuatro Mil Trescientos Treinta y Siete Dólares con Quince Centavos ($. U.S. 284.337,15)

Sin más a que hacer referencia y quedando de ustedes se despide;

Atentamente,

José Martín Olivares.
Prtesidente

8401 N.W.53RD Terrace Suite No. 209 • Miami, Florida 33166, U.S.A.
Tel (305) 468-8600 • Fax (305) 468-9080
Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418
e-mail: atnind@bellsouth.net

# BUQUE  ATLANTICA

| | |
|---|---|
| **Buque:** | Atlántica |
| **Fecha de Arribo** | 20 ENE 08 |
| **No. Total de Tubos** | 435 |
| **No. Tubos que Presentan Daño** | 15 |
| **Tipo de Tubos** | 2.600mm |
| **Características del Tubo** | Tubería de Acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 o equivalentes con material de características metalúrgicas similares al ASTM A-36 o al API Normal 5L Grado B.; diámetro nominal: 2.600mm.; espesor mínimo: 15.88mm.; longitud nominal: 12 mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epóxica inerte espesor total de 16mils., o esmalte de alquitrán de hulla (AWWA C-203). |
| **Costo por Unidad de los Tubos** | $.U.S. 18.955,81 |
| **Costo Total de Tubos Dañados** | $.U.S. 284.337,15 |



# EXHIBIT 9

19-0

<div style="margin-left: auto;">

**RECOMMENDED**
**THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE**
**UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)**
**INCLUDING "F.I.O." ALTERNATIVE, ETC.**
(To be used for trades for which no approved form is in force)
**CODE NAME: "GENCON"**            Part I

</div>

| | |
|---|---|
| 1. Shipbroker | 2. Place and date<br>Caracas, Diciembre 7 2007 |
| 3. Owners/Place of business (Cl. 1)<br>Totalmar Navigation Corp./Agecom<br>As Disponent Owners | 4. Charterers/Place of business (Cl. 1)<br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
| 5. Vessel's name (Cl. 1)<br>Golden Wis or Sub in Owners option | 6. GRT/NRT (Cl. 1)<br>26,058 / 14,872 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br>Dead weight 45,719 | 8. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (abt.) (Cl. 1)<br>December 21st, 2007 | |
| 10. Loading port or place (Cl. 1)<br>1 good safe berth Shangai, China<br>ayways accessible always aflo a | 11. Discharging port or place (Cl. 1)<br>1 good safe berth Maracaibo, Vene-<br>zuela. Always accessible always<br>afloat |
| 12. Cargo (also state quantity and margin in Owners' option. If agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>Min 435 pieces of pipes upto vessel's full capacity at Owners option<br>of policarbonate steel water pipes dimensions guarantee by Charterers.<br>See also clause 22 | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br>See clause 35 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>See clause 35 |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)<br>See clause 33 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b).<br>If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>See clause 26 |
| 17. Shippers (state name and address) (Cl. 6)<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shanghai, PRC At Fletcher Xi | b) Laytime for discharging<br>See clause 26 |
| | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>See clause 27 | 19. Cancelling date (Cl. 10)<br>December 24 2007 |
| 20. Brokerage commission and to whom payable (Cl. 14) | |
| 21. Additional clauses covering special provisions, if agreed.<br>Additional clauses 22 to 42 both inclusive to form part of this<br>Charter Party. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall includ Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br>Totalmar Navigation Corp.<br><br>Totalmar Navigation Corp. | Signature (Charterers)<br><br><br>ATN Industries Inc. |
|---|---|

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen

Adopted by the Documentary Committee of: the Documentary Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen



"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.



It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/nett Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:
The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely got and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight** See clause 35
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs** See clause 33
*(a) Gross Terms
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.
If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.
*(b) F.I.o. and free stowed/trimmed
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).
* Indicate alternative (a) or (b), as agreed, in Box 15.

**6. Laytime** See clause 26
*(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
*(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging time, as the case may be.
* Indicate alternative (a) or (b) as agreed, in Box 16.

**7. Demurrage** See clause 27
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be paid allowed Merchants altogether at ports of loading and discharging.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general average even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least ⅓ of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the said Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that the performance of the contract will subject the Vessel or her Master and/or crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the

# PART II

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

list of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers, if such orders should be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to discharge the cargo at any such port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bills of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port or ports of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such directions or recommendations. If, by reason of or in compliance with any such directions or recommendations, anything is done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(6) All extra expenses (including insurance costs) involved in discharging the cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clauses 4 and 5 (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

## 17. GENERAL ICE CLAUSE

*Port of loading*

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the port cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

*Port of discharge*

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the reopening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.



RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV GOLDEN WISH LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

MAX POSSIBLE INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 20/24 DEC 2007
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD
SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO
PAY DETENTION AT US$ 60,000 PER DAY.
-TIME NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS BY EMAIL/FAX/CABLE UPON
 ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD 120.50 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT
END OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER
PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL
CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK

-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH
FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL
ADDITIONAL STANTIONS TO BE  FITTED FOR THE SAFE LASHING/SECURING OF
CARGO OR  SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY
CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY
SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS
REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS
APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR
OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND
FREIGHT BENDS  INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING
DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL
TO BE  PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME
EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P

    END





**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV GOLDEN WISH LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 435 PCS EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 20 / 24 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 21ST WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV GOLDEN WISH  LOADING:  PORT  OF  SHANGHAI,  CHINA;  DISCHARGE  PORT;  MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.

**CLAUSE 33: COST OF LOADING AND DISCHARGE**

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,



**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV GOLDEN
WISH LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION
CORP, CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH
OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING
ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR
SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR
TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR
CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION /
SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO
BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND
EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER
HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS,
SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR
ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER
VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY
OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO
RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE
VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN
(15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER
DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE
INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD  120.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED
/ DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING
/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO
OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED)
CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL
CUBIC FOR MINIMUM MIN 435 PIECES EQUALS 35.851.7865 ON WHICH FREIGHT TO BE
PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED
ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE
VESSEL A/O CARGO LOST OR NOT LOST.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV GOLDEN WISH LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:      **JPMORGAN CHASE NEW YORK**

Address Bank:                **345 PARK AVENUE**
                                      **NEW YORK – NY 10154**
ABA:                             **021000021**
SWIFT:                          **CHASUS33**

BENEFICIARY BANK:       **EBNA BANK N.V.**
ADR-BENE-BANK:            **AMACO BUILDING 36-B**
                                      **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:    **0011990850**

ULTIMATE BENEFICIARY:  **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:  **201389**

**CLAUSE 36 VESSEL'S DESCRIPTION**

VESSEL'S IS DESCRIBED AS FOLLOWS:
NAME  M/V GOLDEN WISH OR SUB IN OWNERS OPTION
AS DESCRIBED IN ATACHEMENT.

**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V GOLDEN WISH AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE,
  BANK REFERENCES,  MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH
COVERS MIN 435 PIECES POLICARBONATE STEEL PIPES(DIMENSIONS
GUARANTEED BY CHRTS  12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT
WEIGHT PER PIECE-STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**FOR OWNERS**                **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.          ATN INDUSTRIES INC

**1475M/V "GOLDEN WISH"**

All figures / details are given in good faith and wog

**1.General**
1.1 Vessel's name:  MV GOLDEN WISH
1.2 Vessel's previous name:  KEN EXPLORER / BORON EXPLORER
1.3 Flag:  PANAMA
1.4 Month /Year and Where Built:  1997/JAPAN
1.5 Yard name and number: TSUNEISHI SHIP BUILDING CO LTD
      YARD No.  1090
1.6 Official Class Register / IMO number:     /9146962
1.7 Class of Vessel: KOREAN REGISTER OF SHIPS
1.8 Port of Registry: PANAMA
1.9 Owners:  GOLDEN WISH SHIPPING CO. PANAMA

**2.Particulars of Vessel**
2.1 Type of Vessel: BULK CARRIER FLUSH DECK WITH F'CASTLE

| 2.2 | Deadweight | Draft | TPI / TPC |
|---|---|---|---|
| Summer | 45,719 | 11.62 | 49.83 MT |
| Winter | 44,515 | 11.378 | 49.65 MT |
| Tropical | 46,928 | 11.862 | 49.95 MT |

2.3 Is Vessel fitted for Transit of:
  a)  Panama Canal          YES
  b)  Suez Canal            YES
  c)  St. Lawrence Seaway   NO
  d)  Not applicable
2.4 Not applicable
2.5 Not applicable
2.6 GT / NT:
2.7  International: 26.058 / 14,872
     Suez      : 26,808 / 24,202.34
     Panama    : 21,673
2.8 Length Overall: 185.74 M
2.9 Length between perpendiculars: 177.00 M
2.10 Extreme breadth and depth moulded: 30.4 M/ 16.50 M
2.11 Distance from waterline to top of hatch coaming (basis full bunkers)
        a.  Fully laden conditions 6.32 M at even keel summer draft
        b.  Full ballast condition (excl. ballast holds) No.1 13.08M No.5 11.25M
            Full ballast condition (incl. Ballast holds) No.1 9.94M No.5 9.29M
2.12 State Vessel's deballasting time in mt / hour: ABOUT 600 M3 / HOUR
2.13 Vessel can accept loading rate of (metric tons per hour): 2,300 MTS/HR
2.14 Distance from Keel to top of hatch coaming: 17.9 M
     No.1 17.9 M     No.2 to No.5 : 17.9 M
     Highest fixed point of Vessel:  45.11 M
2.15 State Capacity of :
        a.  Ballast Tanks: 14,833 M3
        b.  Hold Ballast Capacity:
        c.  Constant excluding Fresh Water: ABOUT 220 MT
     Daily Fresh Water Consumption: ABOUT 12  MT
     Fresh Water Capacity: 389MT
     State Capacity and Daily Production of Evaporators: ABOUT 15.MT
     Normal Fresh Water Reserve: ABOUT 150 MT
2.16 Vessel is fitted with Shaft Generator: NO
2.17 State Vessel's onboard Electrical Supply: 450V/ 60Hz

ORIGINAL

3.1 Holds
    a.  Number of Holds : FIVE (5)
    b.  Are Vessels Holds clear and free of any obstructions:
    c.  Grain / Bale Capacity in Holds excluding Wing / Topside Tanks:

| | Grain | Bale |
|---|---|---|
| No.1 | 9,932.8 | 9,586.3 |
| No.2 | 11,753.5 | 11,396.7 |
| No.3 | 11,285.2 | 10,946.1 |
| No.4 | 11,747.9 | 11,368.1 |
| No.5 | 10,276.6 | 10,053.3 |

    d.  Grain / Bale Capacity in Holds including Hatchways:

| | Grain | Bale |
|---|---|---|
| No.1 | 10,361.6 | 10,015.1 |
| No.2 | 12,199.4 | 11,844.6 |
| No.3 | 11,731.1 | 11,392.0 |
| No.4 | 12,193.8 | 11,814.0 |
| No.5 | 10,722.5 | 10,499.2 |

    e.  Is Vessel strengthened for the carriage of heavy cargoes: YES
        HO #2+4 MAYBE EMPTY
    f.  Is Tanktops steel and suitable for grab discharge:  YES
    g.  State whether corrugations vertical or horizontal:  VERTICAL
    h.  Tanktop Strength:
        No.1 and No.5 : 13,73 MT / M2
        No.2 and No.4 : ......Mt / M2
        No.3 : 21,94 MT / M2
    i.  Are Holds CO2 fitted: NO
    j.  Are Holds fitted with smoke detection system: NO
    k.  Is Vessel fitted with Australian approved Hold ladders: YES
    l.  Has Vessel a loadmaster computer / loadicator or other type of mechanical
        stowage calculator:  YES
    m.  Are Holds hoppered at:  Hold Side: YES
        Can Vessel's Holds be described as box shaped: NO
    n.  Measurement of any Tank Slopes / Hoppering Height: 3,10.M
        Distance from Vessel's Side at Tanktop: 14,69M
    o.  Flat floor measurement of cargo Holds at Tanktop:
        No.1 Hold: 27.00 M x (Fore)23.8 M / (Aft)10.90 M
        No.2 Hold: 26.90 M x 23.80 M
        No.3 Hold: 27.00 M x 23.80 M
        No.4 Hold: 26,90 M x 23,80M
        No.5 Hold: 27.00 M x 23.80M (Fore/Aft)
    p.  Is Vessel electrical ventilated: NO
3.2 Hatches
    a. Number of Hatches: Five
    b. Make and Type of Hatch covers:  HAKATA MAC CORP/FOLDING TYPE
    c. Hatch sizes
        No.1    20.00 x 15.30M
        No.2/3/4/5 20.80 x 15.30M
    d. Hatch cover strength: NO 1 2.08 MT / M2 NO 2-5 1.75 MT/M2
    e. Distance from Ship's rail to edge of hatch covers / coaming each side:
        No.1 FWD 3.6 M  AFT 6.5 M
        No.2 to No.5 : 6.5 M
    f. Distance from bow to for of 1ˢᵗ hold opening:5.5  M
    g. Distance from stern to AFT of last hold opening:3.6 M
    h. Is vessel fitted with cement holes: Yes
11. Cargo Gear
11.1 State make and type: 4 Electro-hydraulic cranes MHI LTD JAPAN
11.2 Number and capacity of cranes and where situated: 4 x 25 T
    No.1 between holds 1 and 2
    No.2 between holds 2 and 3
    No.3 between holds 3 and 4
    No.4 between holds 4 and 5
11.3 Outreach of gear beyond ship's rail: 8M
11.4 Not applicable
11.5 Time needed for full cycle with maximum cargo lift on hook: about .... minutes
11.6 Slewing / luffing / hoisting speeds: .... RPM / ...SECS / ...M PER MIN
11.7 Is gear combinable for heavy lift: NO
11.8 Are winches electro-hydraulic: YES



# EXHIBIT 10



ATN INDUSTRIES, INC.

Caracas, 06 de Mayo de 2008



Sres.
**Totalmar Navigation Corp Inc.**
Presente.-

Estimados señores:

Por medio de la presente les solicitamos de manera oportuna el resarcimiento de los daños causados a 16 Tubos Averiados, con las siguiente características: tubería de acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 ò equivalentes con material de características metalúrgicas similares al correspondiente al ASTM A-36 o al API Norma 5L Grado B.; diámetro nominal: 2.600 mm.; espesor mínimo: 15.88 mm.; longitud nominal: 12mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epòxica inerte espesor total de 16 mils.; ò esmalte de alquitrán de hulla (AWWA C-203) correspondiente al **Buque Majartta**; según se detalla en cuadro anexo y cuyos daños se generaron durante la travesía marítima.

Por lo que requerimos que nos paguen de inmediato el monto correspondiente a la indemnización de los daños causados.

El monto del presente reclamo es de Trescientos Tres Mil Doscientos Noventa y Dos Dólares con Noventa y Seis Centavos ($.U.S. 303.292,96)

Sin más a que hacer referencia y quedando de ustedes se despide;

Atentamente,

José Martín Olivares.
Presidente

ATN INDUSTRIES, INC.

8401 N.W.53RD Terrace Suite No. 209 • Miami, Florida 33166, U.S.A.
Tel (305) 468-8600 • Fax (305) 468-9080
Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418
e-mail: atnind@bellsouth.net

# BUQUE  MAJARTTA

| Buque: | Majartta |
|---|---|
| **Fecha de Arribo** | 25 FEB 08 |
| **No. Total de Tubos** | 485 |
| **No. Tubos que Presentan Daño** | 16 |
| **Tipo de Tubos** | 2.600mm |
| **Características del Tubo** | Tubería de Acero aliado con extremos biselados para soldar fabricadas según especificaciones AWWA C-200 o equivalentes con material de características metalúrgicas similares al ASTM A-36 o al API Normal 5L Grado B.; diámetro nominal: 2.600mm.; espesor mínimo: 15.88mm.; longitud nominal: 12 mts.; revestimiento exterior: brea epoxi-poliamida con espesor de 16 mils.; revestimiento interior: brea epóxica inerte espesor total de 16mils., o esmalte de alquitrán de hulla (AWWA C-203). |
| **Costo por Unidad de los Tubos** | $.U.S. 18.955,81 |
| **Costo Total de Tubos Dañados** | $.U.S. 303.292,96 |

