**HOGAN & HARTSON LLP**
Attorneys for Defendant
875 Third Avenue
New York, NY 10022
Phone (212) 918-3000
Facsimile (212) 918-3100

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
TOTALMAR NAVIGATION CORP.,                   :
                                             :
                      Plaintiff,             :   Index No. 08-cv-1659 (HB)
     -against-                               :   ECF Case
                                             :
ATN INDUSTRIES INC.,                         :
                                             :
                      Defendant.             :
                                             :
------------------------------------------------------------ x
```

## ATN INDUSTRIES INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE OR REDUCE EX PARTE ORDER OF MARITIME ATTACHMENT

Defendant ATN Industries Inc., a Florida corporation ("ATN"), hereby submits the following Memorandum of Law in Support of Motion to Vacate or Reduce Plaintiff's Ex Parte Order of Maritime Attachment (DE 2), pursuant to Rules B, E(4)(f) and E(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.[1]

### I.    INTRODUCTION

ATN is a Florida corporation in the import and export business. It chartered vessels from Totalmar to transport large, industrial water pipes from Shanghai, China to Maracaibo,

---

[1] ATN is contemporaneously moving to compel binding arbitration and submits this memorandum in support of its motion to vacate or reduce ex parte order of maritime attachment without waiver of its rights to arbitrate.

Venezuela pursuant to separate charter party contracts. Totalmar contends it is entitled to dead freight charges ($962,614.54) and demurrage charges ($381,220.00) in connection with these voyages and charter party agreements.[2] Although the claims are subject to binding arbitration, Totalmar filed a complaint purportedly verified by Totalmar's counsel seeking $1,713,819.60 in damages for the purpose of obtaining an ex parte order of maritime attachment.[3] Compl. ¶¶ 32 & 34. The Court entered an ex parte maritime attachment order permitting Totalmar to attach or garnish up to $1,713,819.60 in tangible or intangible property belonging to ATN. *See* O'Sullivan Dec. ¶ 3 & Ex. B. Totalmar was not entitled to that order.

First, Totalmar failed to meet the procedural requirements for obtaining an ex parte maritime attachment order pursuant to the Supplemental Rules for Admiralty or Maritime Claims. Totalmar failed to aver in its complaint that ATN could not be found within the district, and Totalmar failed to submit an affidavit attesting to this issue altogether.[4]

Second, Totalmar does not have prima facie dead freight claims. This is apparent from charter party contracts attached to the complaint. Totalmar based its two dead freight claims on provisions to the charter party contracts that had been modified by addenda, without citing the addenda to the Court. The addenda (which are part of the charter party contracts attached as exhibits to the complaint) demonstrate that Totalmar has no claims. The Court has the inherent

---

[2] *See generally* Complaint, which is attached to the Declaration of John F. O'Sullivan ("O'Sullivan Dec.") as Exhibit A.

[3] After the complaint was filed, the parties agreed to a stay pending settlement discussions, which concluded following an unsuccessful mediation.

[4] The Ex Parte Order of Maritime Attachment states "the Court has reviewed the Verified Complaint and the supporting affidavit . . . " Order at p. 2. ATN, however, was never served with an affidavit and was unable to locate one in the docket for this case.

authority to vacate an attachment where the plaintiff has engaged in an improper practice or there is a manifest want of equity on the part of the plaintiff. These grounds are met here.

In sum, Totalmar has overstated its claims by $1,198,404.42, which is approximately 69% of the total damages Totalmar sought in its complaint.[5]

## II.  ARGUMENT

The Court's power to grant ex parte maritime attachments arises from Article III of the Constitution and is an inherent component of the Court's admiralty jurisdiction. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437-38 (2d Cir. 2006). The historical purpose of the ex parte maritime attachment procedure was to enable the Court to gain jurisdiction over an absent defendant and to assure the satisfaction of a potential judgment. *See id.* at 443. Due to the ex parte nature of the procedure, a plaintiff seeking a maritime attachment must strictly follow the requirements imposed by the Supplemental Admiralty Rules and must not abuse the process by misleading the Court with meritless allegations and overstated claims. This is what Totalmar has done here.

### A.  Totalmar Was Not Entitled To An Ex Parte Maritime Attachment

It is Totalmar's burden to show that the attachment was properly ordered and that all technical requirements for effective attachment have been met. *See id.* at 445. The technical requirements are set forth in Rules B and E of the Supplemental Rules for Admiralty or Maritime Claims.

Rule B requires a maritime plaintiff to file a verified complaint praying for an attachment and an affidavit stating that "to the affiant's knowledge, or on information and belief, the

---

[5] ATN denies that Totalmar is entitled to any relief. However, a motion to vacate an attachment is not the time or place for adjudicating the disputed facts of the case.

3

defendant cannot be found within the district." Fed. R. Civ. P. Supp. Rule B(1) & (2).[6] Rule E provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. Rule E(4)(f).

In addition, on a motion to vacate an attachment order, the plaintiff has the burden of showing that: (1) it has a valid prima facie admiralty claim; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli*, 460 F.3d at 445.

Totalmar cannot meet its burden.

### 1.   Totalmar Failed To Aver That ATN Was Not Located Within The District

Totalmar failed to file an affidavit with its complaint, averring that "to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district." This makes Totalmar's application for an ex parte attachment order fatally defective. *See Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 422 (5th Cir. 2001) (holding that district court did not err in refusing to order ex parte attachment where plaintiff

---

[6] Specifically, the Rule states:

(a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of the garnishees named in the process.

(b) *The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district.* The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.

Fed. R. Civ. P. Supp. Rule B(1)(a) & (b) (emphasis added).

failed to submit an affidavit with complaint averring that the defendant could not be found within the district, even though defendant was not within the district).

Totalmar not only failed to file a separate affidavit as required by Supplemental Rule B, Totalmar wholly failed to aver in its complaint that ATN could not be located within the district. Instead, in its prayer for relief, Totalmar requested: "That if the Defendant cannot be found within this District, then that Defendant's goods and chattels, or credits and effects within the hands of garnishees within the jurisdiction of this Court be attached by process pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims and in an amount sufficient to answer Plaintiff's claims of $1,713,819.60, the sum sued for in this Complaint." Compl. at p. 10, ¶ 2. This is not an averment that ATN could not be found within the district. For this reason alone, the Ex Parte Order of Maritime Attachment should be vacated.

### 2. Totalmar Has No Prima Facie Case for Dead Freight

Another reason Totalmar was not entitled to an ex parte attachment order is because Totalmar failed to state a prima face claim for dead freight for which relief can be granted. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). This is clear from the four corners of the complaint. The MV Skala and MV Go Star charter parties, attached to the complaint as Exhibits 1 and 8, expressly contradict Totalmar's allegations that it is entitled to dead freight charges from ATN. The addenda to the contracts (which Totalmar attaches to its complaint but fails to bring to the Court's attention in its pleading) evidences a sufficient number of pipes were loaded onto the MV Skala and MV Go Star vessels. This is not a disputed fact; it is an issue of law. The court may construe an unambiguous contract as a matter of law.

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London* 136 F.3d 82, 86 (2d Cir. 1997).

    **(a)** *No Dead Freight on MV Skala – 430 Pipes Loaded Pursuant to Addendum*

In connection with the dead freight claim for the MV Skala, Totalmar alleged "[t]he charter party provided that the vessel was to load minimum 480 to 500 pieces of pipes up to the vessel's maximum capacity at Owner's option, pipes dimensions guaranteed by Charterer", Compl. ¶ 6,. . . . but the "Charterer only delivered 430 pipes, and hence the vessel loaded 60 pipes less than the quantity which had been requested by the master", Compl. ¶ 7. Indeed, part one of the MV Skala charter party contract, attached to the complaint as Exhibit 1, initially provided: "***Min 480 to 500*** pi[e]ces of pipes unto vess[e]l's maximu[m] capacity at Owners option of water pipes of policarbonate steel pipes dimensions Guarantee[d] by Charterers." Compl., Ex. 1 at p.1, § 12 (emphasis added). However, the contract was amended by an addenda dated 30th December, 2007, which provided:

> Due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala *will only be able to load **min 410** pieces of pipes* instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions.

Compl., Ex. 1 (emphasis added). Conveniently, Totalmar ignores this addenda in its complaint. The contract requiring a minimum of 480 to 500 pipes was amended to only require that a minimum of 410 pipes be loaded onto the MV Skala. Accordingly, no dead freight charge is due for the MV Skala.

    **(b)** *No Dead Freight on MV Go Star – 431 Pipes Loaded Pursuant to Addendum*

Similarly, in connection with the dead freight claim for the MV Go Star, Totalmar alleged "[t]he charter party provided that the vessel was to load minimum 435 pieces of pipes up

6

to vessel's "full" capacity at Owner's option, "<u>pipes dimensions guaranteed by Charter</u>er." Compl. ¶ 24 (emphasis in original). Totalmar also alleged that ATN loaded 431 pipes, 31 of which allegedly were "outside diameter 2.60 meters", and 400 of which purportedly were "0.2 meters less than that guaranteed by the Charterer." Compl. ¶ 25. Part one of the MV Go Star charter party contract initially provided: "Min 435 pieces of pipes upto [sic] vessel's full capacity at Owners [sic] option of policarbonate steel water pipes dimensions guarantee[d] by Charterers." Compl., Ex. 8, at p. 1, §12. Like the MV Skala, the MV Go Star contract was amended by an addenda dated December 28, 2007, which provided:

> [V]essel will only load ***min 410 pieces*** of pipes upto [sic] vessel's full capacity ***in Charter* [sic] *option***.

Compl., Ex. 8 (emphasis added). The modification deleted the dimension guarantee by Charterers and the minimum number of pipes to be loaded. Because 431 pipes were loaded, as alleged by Totalmar, there is no dead freight claim for the MV Go Star. Totalmar was compelled to correctly represent to this Court the applicable provisions of the charter party contract, which Totalmar did not, and not rely on contractual terms that had been amended. Totalmar's lack of candor and manipulation of inapplicable contractual provisions to obtain ex parte extraordinary relief cannot be permitted to stand.

### B.   <u>Totalmar Abused the Ex Parte Attachment Proceeding</u>

District courts have an "'inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of plaintiff." *Chiquita Int'l Ltd. v. MV Bosse*, 518 F.Supp.2d 589, 597 (S.D.N.Y. 2007) (vacating attachment order because there was an earlier case filed based on the same transactions and occurrences, which abused the ex parte attachment proceeding because the nature of a Rule B order is to obtain jurisdiction over an absent party and a party participating in a previously filed action in the district is not an absent

7

party); *see also Aqua Stoli*, 460 F.3d at 445, n 5. Thus, it is within this Court's discretion to vacate Totalmar's attachment on ATN's property on equitable grounds. *See Proshipline Inc. v. Aspen Infrastuctures Ltd.*, 533 F.Supp.2d 422, 429 (S.D.N.Y. 2008).

Totalmar's verification of claims that on their face have no merit and are contradicted by the plain terms of the contract attached to the complaint is an abuse of the ex parte attachment proceeding. *See Proshipline, Inc.*, 533 F. Supp.2d at 427-28. In *Proshipline*, the plaintiff swore that a defendant was not found within the district, even though the plaintiff was litigating against the defendant in a previously filed action in the district. *See id.* at 429. The court held that the misrepresentations were an abuse of the ex parte nature of Rule B order and vacated the attachment order. *See id.*

Despite knowing that the charter parties did not warrant any claim for dead freight against ATN, Totalmar asserted baseless dead freight claims totaling $962,614.53, which constitutes a large percentage of Totalmar's claims for dead freight and demurrage damages.[7] Here, Totalmar has not only presented a claim based on the wrong terms of the contract, Totalmar has exaggerated its claim using the wrong terms of the contract to obtain more security than it could ever be entitled to. *See generally Rolls Royce Industrial Power (India) v. M.V. Fratzis M.*, 1995 WL 846690, at **4-5 (S.D.N.Y. July 24, 1995) (examining the issue of whether plaintiffs' actions "warrant the inference . . . that it acted in bad faith by exaggerating their claim at the time of attachment."). This is not a disputed fact requiring the court to look at extrinsic evidence. The components to be used in calculating dead freight and demurrage charges are set forth in the charter parties (attached to the complaint) and are not ambiguous. *See generally Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp.2d

---

[7] If a plaintiff's allegations are contradicted by exhibits attached to the complaint, the exhibits control. *See Reisner v. Stolle*, 51 F.Supp.2d 430, 440 (S.D.N.Y. 1999) .

386, 395 (S.D.N.Y. Jan. 24, 2006) (holding there was good cause to reduce amount of attachment where complaint failed to accurately allege the amount of damages set forth by the plain terms of parties' contract).

### C.  Alternatively, The Ex Parte Maritime Attachment Order Should Be Reduced

In the alternative, pursuant to Rule E(6), if this Court decides not to vacate the attachment in its entirety, it must significantly reduce the amount of funds to be held.  Rule E(6) provides that "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given."  Upon this motion, the Court must determine whether the amount attached is "'excessive' or 'reasonably necessary to secure the plaintiff's claim.'"  *See A.R.A. Anomina Ravannate Di Armamento SPA v. Heidmar Inc.*, 1997 WL 615495, at *1 (S.D.N.Y. Oct. 6, 1997) (*quoting Rolls Royce*, 1995 WL 846690, at *3).  Although this requirement does not require a plaintiff to prove damages with exactitude, the court, however, must be satisfied that the plaintiff's claims are not frivolous.  *See id.*; *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996).  Since Totalmar has no dead freight claims for which relief can be granted, the attachment should be reduced by at least $962,614.53, to exclude amounts claimed for dead freight.  *See Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F.Supp.2d 386, 396 (S.D.N.Y. 2006) (finding good cause to reduce the amount seized under a Rule B attachment, where attachment was overstated and against "the plain terms of the contract" under which the plaintiff sued.).

In addition, Totalmar overstates its demurrage claims.  By way of example, in the complaint, Totalmar alleges that according to the MV Atlantica charter party, "[d]emurrage was payable by Defendant to Plaintiff at the rate of $70,000 per day or pro rata for all time that loading and discharging exceed the allowed laytime."  Compl. ¶ 12.  What Totalmar fails to

bring to the Court's attention is that a rider to the MV Atlantica charter party specified that demurrage was $60,000 (not $70,000) per day or pro rata.  Compl., Ex. 4 ("-demm usd 60.000 pdpr/fd bends . . . .").  Thus, just as Totalmar has overstated it dead freight claims, Totalmar has similarly overstated and misrepresented demurrage claims.

Moreover, Totalmar is not entitled to the full amount of "anticipated damages" to which it claims entitlement.  In its complaint, Totalmar estimated interest at $169,985.10 (based on the amount of dead freight and demurrage charges multiplied at a rate of 6% compounded quarterly for two years).  Given that Totalmar's underlying claims lack merit and/or are exaggerated, Totalmar's anticipated accrued interest is also excessive and subject to reduction.

In addition, Totalmar claimed entitlement to security for anticipated attorneys' fees and costs in the amount of $200,000 for two London arbitrations regarding the MV Atlantica and MV Go Star, one of which pertains to the MV Go Star dead freight claim.  In support of its claim for estimated attorneys' fees and costs in connection with the London arbitrations, Totalmar alleged that "the Atlantica and Go Star charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London <u>and English law to apply</u>. "  Compl. ¶ 30 (emphasis added).   ATN does not dispute that the English Rule permits the prevailing party to recover attorneys fees from the losing party in some circumstances.  *See Katz v. Berisford Int'l PLC*, 2000 WL 959721, at *7  (S.D.N.Y. July 10, 2000).  Totalmar, however, is not entitled to recover any attorneys' fees and costs for the arbitration of claims arising from the MV Go Star charter party because that arbitration is *<u>not</u>* governed by English law.  This false contention by Totalmar, is further evidence of its lack of candor with this Court in an effort to bolster the value of its dubious claims.

The MV Go Star charter party provides: "Any dispute arising under this charter party to be referred to arbitration in London with one (01) arbitrator nominated by owners and one (01) arbitration nominated by charterers, and in case the arbitrators fail to reach an agreement then the decision of an umpire to be final and binding upon both parties. . . ." MV Go Star Charter Party, Clause 30, which is attached to the complaint at Exhibit 8.  Contrary to Totalmar's contention, there is no mention of English law in the arbitration clause or any other clause in the charter party.  Therefore, Totalmar's claim for anticipated damages premised on estimated attorneys' fees and costs in connection with the MV Atlantica and MV Go Star arbitrations in London must be reduced by at least half because Totalmar has no entitlement to attorneys fees in the MV Go Star arbitration, even if it prevails (which it will not).

Furthermore, even if the English Rule applied, because one of Totalmar's baseless dead freight claims arises from the MV Go Star charter party, Totalmar would not be entitled to an attachment for any attorneys' fees and costs Totalmar incurred in prosecuting that claim.

In sum, Totalmar's attachment should be reduced from $1,713,819.60 to no more than **$515,415.18.**

### III.   CONCLUSION

Based on the foregoing, ATN respectfully requests the Court to vacate the Ex Parte Order of Maritime Attachment or to reduce the attachment.  Should the Court decide instead to reduce the $1,713,819.60 attachment, then it should be reduced to no more than **$515,415.18**, and the amount which already has been attached in excess of that amount should be immediately released.  ATN also respectfully requests and other further relief the Court deems just and proper.

Dated:  New York, New York
        June 25, 2008

                                Respectfully submitted,


                              By_____/s/_____
                                 George F. Hritz
                                 Hogan & Hartson LLP
                                 875  Third Avenue
                                 New York, NY  10022
                                 Tel: (212) 685-8000
                                 Email: gfhritz@hhlaw.com


                                 John F. O'Sullivan
                                 Hogan & Hartson LLP
                                 Mellon Financial Center
                                 1111 Brickell Avenue, Suite 1900
                                 Miami, FL 33131
                                 Tel:  (212) 918-3000
                                 Fax: 305-459-6550
                                 Email: jfosullivan@hhlaw.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
TOTALMAR NAVIGATION CORP.,                                   :
                                                             :
                            Plaintiff,                       :   Index No. 08-cv-1659 (HB)
      -against-                                              :   ECF Case
                                                             :
ATN INDUSTRIES INC.,                                         :
                                                             :
                            Defendant.                       :
                                                             :
------------------------------------------------------------ x
```

## AFFIRMATION OF SERVICE

George F. Hritz affirms under penalty of perjury:

I am an attorney admitted to practice in the State of New York and am a partner with the law firm of Hogan & Hartson LLP, attorneys for defendant in the above-captioned matter.

I certify that on June 25, 2008, I electronically filed the Memorandum of Law in Support of Motion to Vacate or Reduce Ex Parte Order of Maritime Attachment with the Clerk of Court using CM/ECF, and it is being served this day on all counsel authorized to receive Notices of Electronic Filing generated by CM/ECF, including counsel below:

Rahul Wanchoo, Esq.
Law Offices of Rahul Wanchoo
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
*Attorneys for plaintiff Totalmar Navigation Corp.*

Dated: June 25, 2008
New York, New York

_____/s/_____
George F. Hritz