**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (201) 882-0303
Fax:    (201) 299-2714
E-mail: rwanchoo@wanchoolaw.com

08 CV 1659

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TOTALMAR NAVIGATION CORP.

                Plaintiff,

- against -

ATN INDUSTRIES INC.
                Defendant.

------------------------------------------------------------X

ECF CASE

08 CV _____ (_____)

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER
OF MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**PRELIMINARY STATEMENT**

Plaintiff, TOTALMAR NAVIGATION CORP. ("Plaintiff"), respectfully submit this

Memorandum of Law in support of its application for an order directing the Clerk of the Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B(1) of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure in connection with Plaintiffs' admiralty and maritime claims in the amount of $1,713,819.60 (U.S. Dollars One Million Seven Hundred and Thirteen Thousand and Eight Hundred and Nineteen and Sixty Cents) resulting from breach of a charter party.

## STATEMENT OF FACTS

At all material times, Plaintiff was and now is a foreign corporation organized under and existing by virtue of the laws of the Republic of Venezuela, was the disponent Owner of the M.V. SKALA, M.V. ATLANTICA, M.V. RAINBOW and M.V. GO STAR (the "Vessels"), bulk carriers ranging from about 39,000 to 53,000 deadweight tons capacity engaged in the carriage of bulk cargo by water. Upon information and belief, at all material times, Defendant, ATN INDUSTRIES INC. ("Defendant") was and now is a foreign corporation organized under and existing by virtue of the laws of the State of Florida, and was the Charterer of the Vessels. Plaintiff's claims arise out of and in connection with a contract of affreightment involving four separate voyages performed for Defendant by the Vessels under four separate maritime charter party contracts all involving the transportation of large dimensional polycarbonate steel water pipes from Shanghai, China to Maracaibo, Venezuela.

### M.V. SKALA – Charter Party Dated November 23, 2007

Pursuant to a charter party contract on the GENCON form dated November 23, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. SKALA to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo.

The charter party provided that the vessel was to load minimum 480 to 500 pieces of pipes up to vessel's maximum capacity at Owner's option, pipes' dimensions guaranteed by

2

Charterer. The charter also provided that freight was payable at $118.00 per cubic meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that Charterer to guarantee that cubic capacity per piece of pipe is 82.4179 and that total cubic capacity for the minimum 480 pipes equals 39,560.592 cubic meters "on which freight to be paid for minimum quantity." Prior to the vessel's arrival at Shanghai the master notified the shippers/Charterer that the vessel would load 490 pipes. However, the Charterer only delivered 430 pipes, and hence the vessel loaded 60 pipes less than the quantity which had been requested by the master. The master issued a letter of protest to the shippers regarding the short shipment of the pipes and put the Charterer on notice regarding a claim for dead freight for the 60 pieces of steel pipes.

Pursuant to the terms of the charter 60 pieces of pipes occupies a volume of 4,945.074 cubic meters (60 x 82.4179 $m^3$), which equates to a dead freight claim of $583,518.73 (4,945.074 $m^3$ x $118 per $m^3$). A copy of Owner's freight and dead freight invoice dated December 10, 2007 is annexed as Exhibit 3 to the Verified Complaint. Pursuant to the terms of the charter party, Defendant should have paid the dead freight when it received the Owner's freight invoice dated December 10, 2007. However, despite various reminders from Plaintiff to Defendant no dead freight has been received to date. By reasons of the premises, Plaintiff has sustained damages on the M.V. SKALA voyage in the amount of $583,518.73 as best as can presently be calculated.

### M.V. ATLANTICA – Charter Party Dated November 29, 2007

Pursuant to a charter party contract on the GENCON form dated November 29, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. ATLANTICA to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. The charter party provided that the vessel was to load minimum 435 pieces of pipes up to vessel's maximum capacity at Owner's option. The charter party also provided a total

laytime of 4 weather working days for loading, and 4 weather working days for discharging, Sundays and holidays included. Demurrage was payable by Defendant to Plaintiff at the rate of $70,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime. Any demurrage incurred at the loading port was to be paid by Defendant to Plaintiff along with the freight payment.

Pursuant to the charter, the ATLANTICA proceeded to and arrived at Shanghai at 0700 hours on December 10, 2007 and tendered her Notice of Readiness. The vessel completed loading at 1230 hours on December 15, 2007, and sailed for Maracaibo at 1610 hours on the same day. The vessel was delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 1.229 days which amounts to $86,030.00 (1.229 days x $70,000 per day). Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $86,030.00. Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date.

By reasons of the premises, Plaintiff has sustained damages on the M.V. ATLANTICA voyage in the amount of $86,030.00 as best as can presently be calculated.

### M.V. RAINBOW – Charter Party Dated December 6, 2007

Pursuant to a charter party contract on the GENCON form dated December 6, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. RAINBOW to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. The charter party provided that the vessel was to load about 350 pieces of steel water

pipes dimensions guaranteed by Charterer. The charter party also provided a total laytime of 4 weather working days for loading, and 4 weather working days for discharging, Sundays and holidays included. Demurrage was payable by Defendant to Plaintiff at the rate of $70,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime. Any demurrage incurred at the loading port was to be paid by Defendant to Plaintiff along with the freight payment.

Pursuant to the charter, the RAINBOW proceeded to and arrived at Shanghai at 0812 hours on December 16, 2007 and tendered her Notice of Readiness. The vessel completed loading at 1100 hours on December 22, 2007, and sailed for Maracaibo at 2224 hours on the same day. The vessel was delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 2.113 days which amounts to $147,910.00 (2.113 days x $70,000 per day). Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $147,910.00. Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date.

By reasons of the premises, Plaintiff has sustained damages on the M.V. RAINBOW voyage in the amount of $147,910.00 as best as can presently be calculated.

### M.V. GO STAR – Charter Party Dated December 7, 2007

Pursuant to a charter party contract on the GENCON form dated December 7, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. GO STAR to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth

Maracaibo. The charter party provided that the vessel was to load minimum 435 pieces of pipes up to vessel's "full" capacity at Owner's option, "<u>pipes' dimensions guaranteed by Charterer</u>." (emphasis added). The charter also provided that freight was payable at $120.50 per cubic meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that Charterer to guarantee that cubic capacity per piece of pipe is <u>82.4179</u> and that total cubic capacity for the minimum 435 pieces equals 35,851.7865 cubic meters "on which freight to be paid for minimum quantity." The steel pipes dimensions guaranteed by Charterer were 12.192 meters length and 2.60 meters outside diameter. Pursuant to an addendum to the charter party dated December 28, 2007 it was agreed between the parties that "vessel will only load min 410 pieces of pipes upto vessel's full capacity in Charterer option."

Pursuant to the charter, the GO STAR proceeded to and arrived at Shanghai at 1000 hours on January 20, 2008 and tendered her Notice of Readiness. The vessel completed loading at 1200 hours on January 26, 2008. The Charterer loaded 31 pieces of pipes of outside diameter 2.60 meters; however, it loaded 400 pieces of pipes of outside diameter 2.40 meters or 0.2 meters less than that guaranteed under the charter. The total volume of the 431 pieces of pipes loaded on the vessel was 30,645.324 $m^3$ versus 33,791.35 $m^3$ (410 pieces x 82.4179 $m^3$), which had been guaranteed by the Charterer, or a short shipment of 3,146.0232 $m^3$ (33,791.35 $m^3$ – 30,645.324 $m^3$). Thus, as per the terms of the charter party Charterer is liable for dead freight of $379,095.80 (3,146.0232 $m^3$ x $120.50 per $m^3$). Pursuant to the terms of the charter party, Defendant should have paid the dead freight when it received the Owner's dead freight invoice dated February 8, 2008. However, despite various reminders from Plaintiff to Defendant no dead freight has been received to date.

The vessel was also delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 2.104 days which amounts to $147,280.00 (2.104 days x $70,000 per day). Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $147,280.00. Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date.

By reasons of the premises, Plaintiff has sustained damages on the M.V. GO STAR voyage in the amount of $526,375.80 as best as can presently be calculated.

## **TOTAL PRINCIPAL AMOUNT DUE**

The total dead freight due and owing by Defendant under the SKALA and GO STAR charter parties is and continues to be $962,614.53. The total demurrage due and owing by Defendant under the ATLANTICA, RAINBOW and GO STAR charter parties is and continues to be $381,220.00. Thus, the total amount due and owing by Defendant under the four charter party contracts is $1,343,834.50.

## **TOTAL AMOUNT SOUGHT TO BE ATTACHED**

The SKALA and RAINBOW charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in New York while the ATLANTICA and GO STAR charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London and English law to apply.

In addition to the full principal amount of Plaintiff's claim outlined above, Plaintiff also seeks an attachment over an additional sum to cover interest as well as its anticipated attorneys' fees and costs which is recoverable in London arbitration. Plaintiff estimates, as best as can be presently calculated, these additional damages and costs to be $369,985.10, comprised of interest in the sum of $169,985.10 (computed on the principal amount of the dead freight and demurrage owed of $1,343,834.50 at a rate of 6% compounded quarterly for a period of 2 years – the estimated time frame within which the arbitration will be completed), and $200,000 estimated English counsel fees and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there. Thus, Plaintiff's total claim against Defendant for which it seeks security herein is $1,713,819.60 ($1,343,834.50 + $369,985.10).

All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court. Plaintiff brings this action by seeking an order of seizure of Defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process, to the amount sued for herein, so that the Court shall have jurisdiction to direct Defendant to proceed with arbitration of Plaintiff's claim against Defendant and retain jurisdiction to enter a judgment upon the arbitration award in the New York and London arbitrations.

As a result of the foregoing, Plaintiff asserts a claim in the amount of $1,713,819.60 for unpaid dead freight and demurrage, attorneys' fees and costs and interest in the London arbitration, as nearly as can be estimated at present.

# ARGUMENT

## POINT I

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD BE GRANTED PURSUANT TO SUPPLEMENTAL RULES B (1) TO ALLOW ATTACHMENT OF DEFENDANT'S ASSETS IN THE HANDS OF NON-PARTIES TO THIS ACTION

Rule B (1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B (1)"), specifically permits prejudgment attachment in admiralty or maritime cases whenever the defendant cannot be "found" with the district:

> With respect to any admiralty or maritime claim *in personam* a verified complaint may contain a prayer for process to attach the defendant's good and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or plaintiff's attorney that, to the affiant's knowledge, or to the best of the affiant's information and belief, the defendant cannot be found within the district. The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue.

Plaintiff's claim arises under a charter party which is a maritime contract and, therefore, is a claim within the admiralty jurisdiction of this Court. G. Gilmore & C. Black, The Law of Admiralty 22, n. 65 (2d ed. 1975); 1 Benedict On Admiralty § 184 at 12-11 (7th rev. ed. 2002). Because Plaintiff possesses a maritime claim, it may secure a maritime attachment pursuant to Supplemental Rule B (1) against all assets and property (up to the amount of the claim) belonging to Defendant which may be situated within the district "if the defendant(s) shall not be found within the district". Supplemental Rule B (1).

9

For purposes of Supplemental Rule B(1), the term "found within the district" presents a two-pronged inquiry. If the defendant cannot be found within the district for jurisdictional purposes and for service of process, an attachment is permissible. See Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); see also 29 Moore's Federal Practice § 705.02 [2][b] (Matthew Bender 3d ed.). As explained in the accompanying Affidavit of Rahul Wanchoo, Defendant cannot be found within this District Court under this analysis. Accordingly, the issuance of an order of maritime attachment is proper.

Rule B attachment is also proper in aid of foreign litigation or arbitration. Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d. 627, 632 (9th Cir. 1982); Staronset Shipping Ltd. v. North Star Navigation Inc., 659 F. Supp. 189, 191 (S.D.N.Y. 1987); Andros Compania Maritima,S.A. v. Andre and Cie, S.A., 430 F. Supp. 88 (S.D.N.Y. 1977). See also Drys Shipping Corp. v. Freight of the M.S. DRYS, 558 F.2d 1050 (2ds Cir. 1977). Maritime attachment and garnishment is available not only against an account maintained by a defendant in New York, but also against any correspondent bank which is used to transfer funds of a defendant in or out of New York. Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002).

### POINT II

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD IN ADDITION TO PLAINTIFF'S PRINCIPAL CLAIM ALSO INCLUDE INTEREST, COSTS AND ATTORNEYS' FEES

Plaintiff seeks to attach Defendant's assets in the hands of non-parties. In order to attach Defendant's assets in the hands of non-parties, an order of attachment and garnishment is required. An Order authorizing the issue of maritime attachment is based not only on the principal amount of the claim but also for interest, attorneys' fees and other taxable costs incurred

or likely to be incurred in bringing this claim in Hong Kong against the Defendant. See, e.g., Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F.Supp.2d 305 (S.D.N.Y. 2007), Sonito Shipping Company Ltd. v. Sun United Maritime Ltd., 478 F.Supp.2d 532 (S.D.N.Y. 2007), and T&O Shipping Ltd. v. Lydia Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006). Plaintiff therefore requests that the Court issue an order authorizing process of maritime attachment and garnishment in order to secure Plaintiff's claims against Defendant in the New York and London arbitrations in the amount of $1,713,819.60 (U.S. Dollars One Million Seven Hundred and Thirteen Thousand and Eight Hundred and Nineteen and Sixty Cents), as nearly as can be estimated at present.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted this Court should issue an Order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B(1) and Plaintiff should have such other and further relief as is just and proper in the circumstances.

Dated: New York, New York
       February 19, 2008

Respectfully submitted,

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
TOTALMAR NAVIGATION CORP.

By: *Rahul Wanchoo*
    Rahul Wanchoo (RW-8725)