UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOTALMAR NAVIGATION CORP.

Plaintiff,

- against –

ATN INDUSTRIES INC.

Defendant.

ECF Case

08 Civ. 1659 (HB)

**DECLARATION OF REYES
HERNANDES IN OPPOSITION TO
DEFENDANT'S MOTION TO
VACATE MARITIME ATTACHMENT
AND FOR COUNTER-SECURITY**

REYES HERNANDEZ, hereby declares pursuant to 28 U.S.C. § 1746:

1.      I am the Vice President of Totalmar Navigation Corp. ("Totalmar"). Totalmar is a

Panamanian corporation with an office and principle place of business at Avda Francisco de

Miranda, Centro Plaza Torre C, Piso 18, Oficina F, Los Palos Grandes, Caracas, Venezuela.

2.      Totalmar is in the business of providing maritime transportation services to

sellers/shippers of cargo. Totalmar charters vessels in from the vessel owners and charters those

vessels out to the sellers/shippers of cargo. Totalmar earns its revenue based on the difference of

the freight it receives from the sellers/shippers of the cargo and the freight or hire it pays to the

vessel owners.

3.      I make this declaration in opposition to ATN Industries Inc.'s ("ATN") motion to vacate

this Court's order of maritime attachment and for counter-security. I make this declaration based

on my knowledge of the case which I have derived from my involvement with the charter of five

different vessels to ATN which were employed for the transportation of steel pipes from China

to Venezuela during the period November 2007 through March 2008, and my review of the

pleadings filed by ATN in connection with its motion which were forwarded to me by Mr. Rahul Wanchoo, Totalmar's attorney.

**Totalmar's Claim for Deadfreight**

M.V. SKALA

4.      Pursuant to a charter party contract on the GENCON form dated November 23, 2007, Totalmar as disponent owner, voyage chartered the M.V. SKALA to ATN, as charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo.  A true and correct copy of the charter party is annexed hereto as **Exhibit 1.** The charter party provided that the vessel was to load minimum 480 to 500 pieces of pipes up to vessel's maximum capacity at Totalmar's option, pipes' dimensions guaranteed by ATN.  The charter also provided that freight was payable at $118.00 per cubic meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that ATN to guarantee that cubic capacity per piece of pipe is 82.4179 and that total cubic capacity for the minimum 480 pipes equals 39,560.592 cubic meters "on which freight to be paid for minimum quantity". The addendum to the Charter Party dated November 23, 2007 provides in pertinent part as follows:

> . . . due to regulations and restrictions on the visibility for cargoes loaded on deck; the M.V. SKALA will only be able to load min 410 pieces of pipes instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Ex. 1 (emphasis added). Prior to the vessel's arrival at Shanghai, the master based on the "visibility restrictions" in the Panama Canal and the safety and stability of the vessel notified the shippers/ATN that the vessel would load 490 pipes.  However, ATN only delivered 430 pipes, and hence the vessel loaded 60 pipes less than the quantity which had been requested by the master. The master issued a letter of protest to the shippers regarding the short shipment of the

2

pipes and put the shippers/charterers on notice regarding a claim for dead freight for the 60

pieces of steel pipes. A true and correct copy of the master's Letter of Protest dated December 8,

2007 is annexed hereto as **Exhibit 2.** Pursuant to the terms of the charter, 60 pieces of pipes

occupies a volume of 4,945.074 cubic meters (60 x 82.4179 m3), which equates to a dead freight

claim $583,518.73 (4,945.074m3 x $118 per m3). A true and correct copy of Totalmar's freight

and dead freight invoice dated December 10, 2007 is annexed hereto as **Exhibit 3.** Pursuant to

the terms of the charter party, ATN should have paid the dead freight when it received the

Totalmar's freight invoice date December 10, 2007. However, despite various reminders from

Totalmar to ATN no dead freight has been received to date.

M.V.GO STAR

5.      Pursuant to a charter party contract on the GENCON form dated December 7, 2007,

Totalmar voyage chartered the M.V. GO STAR to ATN to carry a cargo of steel pipes from one

safe berth Shanghai for discharge at one safe berth Maracaibo. A true and correct copy of the

charter party contract for M.V. MAIROULI, which was later substituted by M.V. GO STAR,

dated December 7, 2007 along with the addendum to the charter party dated December 28, 2007

are annexed hereto as **Exhibit 4.** The charter party provided that the vessel was to load minimum

435 pieces of pipes up to vessel's "full"capacity at Totalmar's option, "pipes' dimensions

guaranteed by [ATN]". The charter also provided that freight was payable at $120.50 per cubic

meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that ATN

to guarantee that cubic capacity per piece of pipe is 82.4179and that total cubic capacity for the

minimum 435 pieces equals 35,851.7865 cubic meters "on which freight to be paid for minimum

quantity". Pursuant to an addendum to the charter party dated December 28, 2007 it was agreed

between the parties that "vessel will only load min 410 pieces of pipes up to vessel's full

3

capacity in Charterer option" <u>without</u> modifying the pipes dimensions guaranteed by ATN of 12.192 meters length and 2.60 meters outside diameter. Pursuant to the charter, the GO STAR proceeded to and arrived at Shanghai at 1000 hours on January 20, 2008 and tendered her Notice of Readiness. The vessel completed loading at 1200 hours on January 26, 2008. ATN loaded 31 pieces of pipes of outside diameter 2.60 meters; however, it loaded 400 pieces of pipes of outside diameter 2.40 meters or <u>0.2 meters less than that guaranteed under the charter</u>. The total volume of the 431 pieces of pipes loaded on the vessel was 30,645.324 m3 versus 33,791.35 m3 (410 pieces x 82.4179m3), which had been guaranteed by ATN or a short shipment of 3,146.0232 m3 (33,791.35m3 – 30,645.324 m3). Thus, as per the terms of the charter party ATN is liable for dead freight of $379,095.80 (3,146.0232m3 x $120.50 per m3). A true and correct copy of the Totalmar's dead freight invoice dated February 8, 2008 is annexed hereto as **Exhibit 5.**

## Totalmar's Claim for Demurrage

M.V. ATLANTICA

6.    Pursuant to a charter party contract on the GENCON form dated November 29, 2007, Totalmar, as disponent owner, voyage chartered the M.V. ATLANTICA to ATN, as charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. A true and correct copy of the charter party contract for M.V. GOLDEN WISH, which was later substituted by M.V. ATLANTICA, dated November 29, 2007 is annexed hereto as **Exhibit 6.** The charter party provided a total laytime of 4 weather working days for loading, and 4 weather working days for discharging, Sundays and holidays included. Rider Clause 27 of the charter party states that demurrage will be paid by ATN to Totalmar at the rate of $70,000 per day or pro rata for "all time used load/discharge/waiting after laytime expires at load port or discharge port". The charter party did not as alleged by ATN fix demurrage at the rate of

4

$60,000 per day (ATN's Memo to Vacate at 10). ATN confuses the demurrage rate with the

"detention at discharge port to be paid at the rate of $60,000 per day pro rata" <u>See</u> Exhibit 6,

Rider Clause27. Pursuant to the charter, the ATLANTICA proceeded to and arrived at Shanghai

at 0700 hours on December 10, 2007 and tendered her notice of Readiness.  The vessel

completed loading at 1230 hours on December 15, 2007, and sailed for Maracaibo at 1610 hours

on the same day.  The vessel was delayed at her load port of Shanghai. According to Totalmar's

laytime calculations, the vessel was on demurrage at Shanghai for 1.229 days which amounts to

$86,030.00 (1.229 days x $70,000 per day). Totalmar submitted its demurrage invoice together

with the laytime statement to ATN on or abut January 29, 2008 for demurrage in the amount of

$86,030.00, which remains unpaid.  A true and correct copy of Totalmar's demurrage invoice is

annexed hereto as **Exhibit 7**.

<u>M.V. RAINBOW</u>

7.      Pursuant to a charter party contract on the GENCON form dated December 6, 2007,

Totalmar voyage chartered the M.V. RAINBOW to ATN to carry a cargo of steel pipes from one

safe berth Shanghai for discharge at one safe berth Maracaibo.  A true and correct copy of the

charter party is annexed hereto as **Exhibit 8.** The charter party provided a total laytime of 4

weather working days for loading, and 4 weather working days for discharging, Sundays and

holidays included. Demurrage once again was payable by ATN to Totalmar at the rate of

$70,000 per day or pro rata for all time that loading and discharging exceeded the allowed

laytime.  Any demurrage incurred at the loading port was to be paid by ATN to Totalmar along

with the freight payment. Pursuant to the charter, the RAINBOW proceeded to and arrived at

Shanghai at 0812 hours on December 16, 2007 and tendered her Notice of Readiness.  The vessel

completed loading at 1100 hours on December 22, 2007 and sailed for Maracaibo at 2224 hours

on the same day. The vessel was delayed at her load port of Shanghai. According to Totalmar's

laytime calculations, the vessel was on demurrage at Shanghai for 2.113 days which amounts to

$147,910.00 (2.113 days x $70,000 per day). A true and correct copy of the Totalmar's

demurrage invoice together with laytime statement dated January 29, 2008 for demurrage in the

amount of $147,910.00 is annexed hereto as **Exhibit 9.** Despite various reminders ATN has

failed to pay this demurrage.

<u>M.V. GO STAR</u>

8.      The GO STAR was also delayed at her load port of Shanghai. According to Totalmar's

laytime calculations, the vessel was on demurrage at Shanghai for 2.104 days which amounts of

$147,280.00 (2.104 days x $70,000 per day). Totalmar submitted its demurrage invoice together

with the laytime statement to ATN on or about January 29, 2008 for demurrage in the amount of

$147,280.00, a true and correct copy of which is annexed hereto as **Exhibit 10.** ATN has

similarly failed to pay the demurrage.

9.      In summary, Totalmar's total claims against ATN for which it has sought security in the

New York proceedings is $1,343,835.50 plus interest of $169,985.10 and estimated legal and

arbitrators' fee of $200,000, totaling $1,713,819.60. (See Plaintiff's Verified Complaints at ¶ 29

– 32.).

**ATN's Counter-Claim for Alleged Cargo Damage**

10.      On or about May 6, 2008, ATN presented Totalmar with its claims for alleged damage to

the shipment of pipes carried on board the five vessels in the amount of $1,719,517.01. Copies of

the English translation of ATN's letters to Totalmar dated May 6, 2008 are annexed hereto as

**Exhibit 11.** This was the first notification which Totalmar received from ATN concerning the

alleged damage to its cargo, which was about four months after the arrival of the first vessel at

the Port of Maracaibo, M.V.SKALA on or about January 16, 2008 and about two months after

the arrival of the last vessel, M.V. GO STAR on or about March 6, 2008.  At no point in time

during the discharge of the cargo from any of the five vessels did ATN complain to Totalmar

about pipe damage.  In fact, it is the standard and customary practice for cargo receivers to

appoint a cargo surveyor to inspect and categorize any damage which is discovered on board the

vessel prior to or during discharge. This was not done by ATN.

11.     ATN refers to clause 2 of the charter party contracts in support of its counter-claims

which provides that "Owners are to be responsible for loss of or damage to the goods . . . caused

by the improper or negligent stowage of the goods (**unless stowage performed by shippers,**

**Charterers or their stevedore's servants**)".  Under Rider clause 33 of the charter parties ATN

was responsible for stowing, lashing, securing the cargo on board the vessel at its time and

expense. Thus, ATN is responsible for any damage that occurred to the pipes on the vessels due

to bad stowage.  In fact, Totalmar has obtained documents and reports from the vessels which

show that the cargo of steel pipes had significant pre-shipment damage at the time they were

loaded on board the vessels at Shanghai.  In this connection, the master of M.V. SKALA issued a

letter of protest to the shippers and stevedores at Shanghai stating that:

> This is to bring to your attention that cargo was loaded/showed/stowed as per
> shipper/stevedore's plan and not as recommended by the master.

The master also observed the following cargo damage:

- Tag welded reinforcements inside the pipes at both ends are broken/bent
- Steel pipe shape outer round/ovalized
- Rusted edges at both ends of the pipe cargo

A true and correct copy of the master's letter of protest dated December 7, 2007 is annexed

hereto as **Exhibit 12.** Similarly, the steel pipes that were loaded on board the GO STAR,

ATLANTICA, RAINBOW and the MARJATTA P had pre-shipment damage comprising of rust,

7

deformed ends, presence of salt, scratches, and bent and broken pipes. True and correct copies of the Cargo Condition Reports for these four vessels are annexed hereto as **Exhibit 13.** The bills of lading for the cargo loaded on the vessels that were issued at Shanghai on behalf of the master had been endorsed to reflect the damage to the pipes noted by the load port surveyors. True and correct copies of the original bills of lading for the GO STAR and the RAINBOW are annexed hereto as **Exhibit 14**. As ATN failed to inspect the cargo at the time it was discharged at Maracaibo, Totalmar submits that the damage to the pipes being claimed by ATN was the **same** damage which was noted by the master as well as the cargo surveyors at the time of loading. Accordingly, Totalmar is not responsible for the damage to the pipes which occurred prior to or during loading which was ATN's responsibility under the terms of the charter.

12.     Rider Clause 33 of the charters also provided that "at discharge port the cargo to be discharged liner out by vessel to under hook at owner's time and expense." Thus, under the terms of the charter Totalmar's responsibility for the cargo ceased once ATN removed the cargo from under the vessels' hooks. At Maracaibo, Totalmar discharged part of the pipes directly on to the trucks arranged by ATN while the remaining pipes were discharged at the pier without any incident. The cargo which was discharged ashore was restacked by ATN and then loaded on the trucks as when the truck became available, and finally transported to its warehouse at La Llovisna, about 180 kilometers distance from the Port of Maracaibo. At La Llovinsa ATN arranged for the discharge of the pipes at its final resting place. This involved multiple handling of the pipes by ATN following the discharge at the Port of Maracaibo. In the circumstances, Totalmar cannot be responsible for any damage to ATN's cargo which occurred some four months after the cargo had been removed from under the "vessel's hook" and handled multiple times by ATN during its transportation to the warehouse.

8

**Totalmar's Financial Capabilities**

13.    Totalmar is a small business firm operating as private limited company. It is not publicly traded. It has only one office and has only 5 employees as the business firm's personnel. It has a current bank account balance of $36,787.17. Annexed as **Exhibit 15** hereto is a true and correct copy of Totalmar's bank account summary as of July 7, 2008.

14.    Totalmar's allowable expenses for the year 2007 were $10,000 per month, which is approximately $120,000 per year.

15.    Totalmar's turnover for the year 2007 was $300,000.

16.    Totalmar's adjusted profit (after capital allowance) for the year 2007 was approximately $180,000.

17.    As the bank account summary shows, Totalmar has virtually no liquid assets by which it could post the security demanded by ATN's counterclaim. If the choice were given to Totalmar whether to post counter-security or surrender its security agent ATN, Totalmar would have to agree to surrendering its security against ATN. This is not because Totalmar wishes to surrender that security, it is because posting security on ATN's counterclaim is financially impossible for our firm.

18.    I declare under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

Reyes Hernandez

Dated: July 7th 2008

9

# EXHIBIT 1

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"

ORIGINAL

Part I

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

| | |
|---|---|
| **1. Shipbroker** | **2. Place and date**<br>Caracas, 23rd November 2007 |
| **3. Owners/Place of business (Cl. 1)**<br>Totalmar Navigation Corp/agecom<br>As Disponent Owner | **4. Charterers/Place of business (Cl. 1)**<br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
| **5. Vessel's name (Cl. 1)**<br>MV Skala | **6. GRT/NRT (Cl. 1)**<br>23,144 / 13384 |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**<br>39,207 | **8. Present position (Cl. 1)**<br>Trading |
| **9. Expected ready to load (abt.) (Cl. 1)**<br>December 3rd 2007 | |
| **10. Loading port or place (Cl. 1)**<br>1 good safe berth Shanghai, China always accessible always afloat | **11. Discharging port or place (Cl. 1)**<br>1 good safeberth Maracaibo, Venezuela. Always accessible always afloat |

**12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**

Min 480 to 500 pices of pipes upto vessl's maximu capacity at Owners option of water pipes of policarbonate steel pipes dimensions Guarantee by Charterers. See also clause 22

| | |
|---|---|
| **13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**<br><br>See clause 35 | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**<br><br>See clause 35 |
| **15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)**<br><br>See clause 33 | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6)** |
| | **a) Laytime for loading**<br>See Clause 26 |
| **17. Shippers (state name and address) (Cl. 6)**<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shanghai, PRC At: Fletcher Xi | **b) Laytime for discharging**<br>See Clause 26 |
| | **c) Total laytime for loading and discharging** |
| **18. Demurrage rate (loading and discharging) (Cl. 7)**<br>See Clause 27 | **19. Cancelling date (Cl. 10)**<br>December 13th, 2007 |

**20. Brokerage commission and to whom payable (Cl. 14)**

**21. Additional clauses covering special provisions, if agreed.**

Additional clauses 22 to 42 both inclusive to form part of this Charter Party.

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Totalmar Navigation Corp.

| **Signature (Owners)**<br><br>Totalmar Navigation Corp. | **Signature (Charterers)**<br><br>ATN Industries Inc. |
|---|---|

Printed and sold by Wvt & Zonen B.V., Rotterdam, by authority of The Baltic and International Maritime Conference, Copenhagen

ORIGINAL

"Gencon" Charter (As Revised 1922 and 1976)
Including 'F.I.O.' Alternative  etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the     1
steamer or motor-vessel named in Box 5, of the gross/net Register        2
tons indicated in Box 6 and carrying about the number of tons of         3
deadweight cargo stated in Box 7, now in position as stated in Box 8     4
and expected ready to load under this Charter about the date in-         5
dicated in Box 9, and the party mentioned as Charterers in Box 4         6
that                                                                     7
The said vessel shall proceed to the loading port or place stated        8
in Box 10 or so near thereto as she may safely get and lie always        9
afloat, and there load a full and complete cargo (if shipment of deck   10
cargo agreed same to be at Charterers' risk) as stated in Box 12        11
(Charterers to provide all mats and/or wood for dunnage and any         12
separations required, the Owners allowing the use of any dunnage        13
wood on board if required) which the Charterers bind themselves to      14
ship, and being so loaded the vessel shall proceed to the discharg-     15
ing port or place stated in Box 11 as ordered on signing Bills of       16
Lading or so near thereto as she may safely get and lie always          17
afloat and there deliver the cargo on being paid freight on delivered   18
or intaken quantity as indicated in Box 15 at the rate stated in        19
Box 13                                                                  20

2. Owners' Responsibility Clause                                        21
Owners are to be responsible for loss of or damage to the goods         22
or for delay in delivery of the goods only in case the loss, damage     23
or delay has been caused by the improper or negligent stowage of        24
the goods (unless stowage performed by shippers/Charterers or their     25
stevedores or servants) or by personal want of due diligence on the     26
part of the Owners or their Manager to make the vessel in all respects  27
seaworthy and to secure that she is properly manned, equipped and       28
supplied or by the personal act or default of the Owners or their       29
Manager.                                                                30
And the Owners are responsible for no loss or damage or delay           31
arising from any other cause whatsoever, even from the neglect or       32
default of the Captain or crew or some other person employed by the     33
Owners on board or ashore for whose acts they would but for this        34
clause be responsible, or from unseaworthiness of the vessel on         35
loading or commencement of the voyage or at any time whatsoever.        36
Damage caused by contact with or leakage, smell or evaporation          37
from other goods or by the inflammable or explosive nature or in-       38
sufficient package of other goods not to be considered as caused        39
by improper or negligent stowage, even if in fact so caused.            40

3. Deviation Clause                                                     41
The vessel has liberty to call at any port or ports in any order, for   42
any purpose, to sail without pilots, to tow and or assist vessels in    43
all situations, and also to deviate for the purpose of saving life and  44
or property                                                             45

4. Payment of Freight     See Clause 35                                 46
The freight to be paid ...                                              47
without discount on delivery of the cargo at mean rate of exchange      48
ruling on day or days of payment, the receivers of the cargo being      49
bound to pay freight on account on ... if required by Cap-              50
tain or Owners.                                                         51
Cash for vessel's ordinary disbursements at port of loading to be       52
advanced by Charterers if required at highest current rate of ex-       53
change subject to two per cent to cover insurance and other ex-         54
penses.                                                                 55

5. Loading/Discharging Costs     See Clause 33                          56
a. Gross terms                                                          57
The cargo to be brought alongside in such a manner as to enable         58
vessel to take the goods with her own tackle. Charterers to procure     59
and pay the necessary men on shore or on board the lighters to do       60
the work (the vessel only heaving the cargo on board).                  61
If the loading takes place by elevator cargo to be put free in vessel's 62
holds Owners only paying trimming expenses.                             63
Any pieces and or packages of cargo over two tons weight, to be         64
landed, stowed and or discharged by Charterers at their risk and expense. 65
The cargo to be received by Merchants at their risk and expense         66
alongside the vessel not beyond the reach of her tackle.                67
(a) F.I.O. and free stowed in trimmed                                   68
The cargo to be brought alongside in such a manner as to enable         69
vessel to take the goods ... and or to be loaded ... at Charterers or   70
their Agents, free of any risk, liability and expense whatsoever to the 71
Owners.                                                                 72
The Owners shall provide winches, motive power and winchmen from        73
the Crew if requested and permitted if not the Charterers shall         74
provide and pay for winchmen from shore and or cranes, if any (This     75
provision shall not apply if vessel is gearless and stated as such in   76
Box ...)                                                                77
*Indicate alternative (a) or (b) as agreed in Box 16                    78

6. Laytime     See Clause 26                                            79
(a) Separate laytime for loading and discharging                        80
The cargo shall be loaded within the number of running hours as         81
indicated in Box 16, weather permitting, Sundays and holidays ex-       82
cepted, unless used in which event time actually used shall count.      83
The cargo shall be discharged within the number of running hours        84
as indicated in Box 16, weather permitting, Sundays and holidays ex-    85
cepted unless used, in which event time actually used shall count.      86
(b) Total laytime for loading and discharging                           87
The cargo shall be loaded and discharged within the number of total     88
running hours as indicated in Box 16 weather permitting, Sundays and    89
holidays excepted unless used, in which event time actually used        90
shall count.                                                            91
c. Commencement of laytime (loading and discharging)                    92
Laytime for loading and discharging shall commence at 1 p.m. if         93
notice of readiness is given before noon, and at 6 a.m. next working    94
day if notice given during office hours after noon. Notice at loading   95
port to be given to the Shippers named in Box 17.                       96
Time actually used before commencement of laytime shall count.          97
Time lost in waiting for berth to count as loading or discharging       98
time as the case may be.                                                99
*Indicate alternative (a) or (b) as agreed in Box 16                   100

7. Demurrage     See Clause 27                                         101
Ten running days ... at the rate stated in Box 18 per day              102
(day or pro rata for any part of a day) payable day by day, to be      103
allowed Merchants altogether at ports of loading and discharging.      104

8. Lien Clause                                                         105
Owners shall have a lien on the cargo for freight, dead-freight,       106
demurrage and damages for detention. Charterers shall remain res-     107
sponsible for dead-freight and demurrage (including damages for        108
detention, incurred at port of loading, Charterers shall also remain   109
responsible for freight and demurrage (including damages for deten-    110
tion) incurred at port of discharge, but only to such extent as the    111
Owners have been unable to obtain payment thereof by exercising        112
the lien on the cargo.                                                 113

9. Bills of Lading                                                     114
The Captain to sign Bills of Lading at such rate of freight as         115
presented without prejudice to this Charterparty, but should the       116
freight by Bills of Lading amount to less than the total chartered     117
freight the difference to be paid to the Captain in cash on signing    118
Bills of Lading                                                        119

10. Cancelling Clause                                                  120
Should the vessel not be ready to load (whether in berth or not) on    121
or before the date indicated in Box 19, Charterers have the option     122
of cancelling this contract, such option to be declared, if demanded,  123
at least 48 hours before vessel's expected arrival at port of loading. 124
Should the vessel be delayed on account of average or otherwise,       125
Charterers to be informed as soon as possible, and if the vessel is    126
delayed for more than 10 days after the day she is stated to be        127
expected ready to load, Charterers have the option of cancelling this  128
contract, unless a cancelling date has been agreed upon.               129

11. General Average                                                    130
General average to be settled according to York-Antwerp Rules,         131
1974. Proprietors of cargo to pay the cargo's share in the general     132
expenses even if same have been necessitated through neglect or        133
default of the Owners' servants (see clause 2)                         134

12. Indemnity                                                          135
Indemnity for non-performance of this Charterparty, proved damages,    136
not exceeding estimated amount of freight.                             137

13. Agency                                                             138
In every case the Owners shall appoint his own Broker or Agent both    139
at the port of loading and the port of discharge.                      140

14. Brokerage                                                          141
A brokerage commission at the rate stated in Box 20 on the freight     142
earned is due to the party mentioned in Box 20.                        143
In case of non-execution at least 1/3 of brokerage on the estimated    144
amount of freight and dead-freight to be paid by the Owners to the     145
Brokers as indemnity for the latter's expenses and work. In case of    146
more voyages the amount of indemnity to be mutually agreed.            147

15. GENERAL STRIKE CLAUSE                                              148
Neither Charterers nor Owners shall be responsible for the con-       149
sequences of any strikes or lock-outs preventing or delaying the       150
fulfilment of any obligation under this contract.                      151
If there is a strike or lock-out affecting the loading of the cargo,   152
or any part of it, when vessel is ready to proceed from her last port  153
or at any time during the voyage to the port or ports of loading or    154
after her arrival there, Captain or Owners may ask Charterers to        155
declare, that they agree to reckon the laydays as if there were no     156
strike or lock-out. Unless Charterers have given such declaration in   157
writing (by telegram, if necessary) within 24 hours, Owners shall      158
have the option of cancelling this contract. If part cargo has already 159
been loaded, Owners must proceed with same, (freight payable on        160
loaded quantity only) having liberty to complete with other cargo      161
on the way for their own account.                                      162
If there is a strike or lock-out affecting the discharge of the cargo  163
on or after vessel's arrival at or off port of discharge and same has  164
not been settled within 48 hours, Receivers shall have the option of   165
keeping vessel waiting until such strike or lock-out is at an end      166
against paying half demurrage after expiration of the time provided    167
for discharging, or of ordering the vessel to a safe port where she    168
can safely discharge without risk of being detained by strike or lock- 169
out. Such orders to be given within 48 hours after Captain or Owners   170
have given notice to Charterers of the strike or lock-out affecting    171
the discharge. On delivery of the cargo at such port, all conditions   172
of this Charterparty and of the Bill of Lading shall apply and vessel  173
shall receive the same freight as if she had discharged at the         174
original port of destination, except that if the distance of the sub-  175
stituted port exceeds 100 nautical miles, the freight on the cargo     176
delivered at the substituted port to be increased in proportion.       177

16. War Risks ("Voywar 1950")                                         178
(1) In these clauses "War Risks" shall include any blockade of any     179
port or any action which is announced as a blockade by any Government, 180
or by any belligerent or by any organized body, sabotage, piracy, and  181
all hostile acts or hostile operations and warlike operations civil war, 182
hostilities, revolution, or rebellion                                  183
(2) If at any time before the vessel commences loading, it appears that 184
performance of the contract will subject the Vessel or her Master and  185
crew or her cargo to war risks at any stage of the adventure, the Owners 186
may give notice to the Charterers cancelling this contract, or may     187
refuse to perform such part of it as may involve ... and in any case   188
cancel this Charter ...                                                189
(3) The Master shall not be required to load cargo or to continue      190
loading or to proceed on or to sign Bills of Lading for any adventure  191
on which or any part of which it appears that the Vessel, her Master   192
and crew or her cargo will be subjected to war risks. In the event of  193
the exercise by the Master of his right under this Clause after part or 194
full cargo has been loaded, the Master shall be at liberty either to   195
discharge such cargo at the loading port or to proceed therewith       196
to the latter case the Owners shall have liberty to carry other cargo  197
for Owners' benefit and accordingly to proceed to and load or dis-     198
charge such other cargo at any other port or ports whatsoever,         199
backwards or forwards although in a contrary direction to or out of or 200
beyond the ordinary route. In the event of the Master electing to pro- 201
ceed with part cargo under this Clause freight shall in any case       202
be payable on the cargo delivered.                                     203
(4) If at any time the Master elects to proceed with part or full cargo 204
under Clause 3, or after the Vessel has left the loading port or the   205

# PART II

## "Gencon" Charter (As Revised 1922 and 1976)

including "F.I.O." Alternative, etc.

last of the loading ports, if more than one, it appears that further 205
performance of the contract will subject the Vessel, her Master and 206
crew or her cargo, to war risks, the cargo shall be discharged, or if 207
the discharge had been commenced shall be completed, at any safe 208
port in vicinity of the port of discharge as may be ordered by the 209
Charterers. If no such orders shall be received from the 210
Charterers within 48 hours after the Owners have despatched a request by 211
telegram to the Charterers for the nomination of a substitute discharg- 212
ing port the Owners shall be at liberty to discharge the cargo at 213
any safe port which they may, in their discretion, decide on and such 214
discharge shall be deemed to be due fulfilment of the contract of 215
affreightment. In the event of cargo being discharged at any such 216
other port, the Owners shall be entitled to freight as if the discharge 217
had been effected at the port or ports named in the Bill(s) of Lading 218
or to which the Vessel may have been ordered pursuant thereto. 219

(5) The Vessel shall have liberty to comply with any directions 220
or recommendations as to loading departure, arrival, routes, ports 221
of call, stoppages, destination, zones, waters, discharge, delivery or 222
in any other wise whatsoever (including any direction or recom- 223
mendation not to go to the port of destination or to delay proceeding 224
thereto or to proceed to some other port) given by any Government or 225
by any belligerent or by any organized body engaged in civil war, 226
hostilities or warlike operations or by any person or body acting or 227
purporting to act as or with the authority of any Government or 228
belligerent or of any such organized body or by any committee or 229
person having under the terms of the war risks insurance on the 230
Vessel, the right to give any such directions or recommendations. If 231
by reason of or in compliance with any such direction or recom- 232
mendation, anything is done or is not done such shall not be deemed 233
a deviation. 234

(b) If by reason of or in compliance with any such directions or re- 235
commendation the Vessel shall not proceed to the port or ports 236
named in the Bill(s) of Lading or to which she may have been 237
ordered pursuant thereto, the Vessel may proceed to any port as 238
directed or recommended or to any safe port which the Owners in 239
their discretion may decide on and there discharge the cargo. Such 240
discharge shall be deemed to be due fulfilment of the contract of 241
affreightment and the Owners shall be entitled to freight as if 242
discharge had been effected at the port or ports named in the Bill(s) 243
of Lading or to which the Vessel may have been ordered pursuant 244
thereto. 245

(6) All extra expenses including insurance costs, involved in discharg- 246
ing cargo at the loading port or any such other discharging ports 247
at any port as provided in Clauses 4 and 5 (b) hereof shall be paid 248
by the Charterers and/or cargo owners, and the Owners shall have a 249
lien on the cargo for all moneys due under these Clauses. 250

## 17. GENERAL ICE CLAUSE

Port of loading

(a) In the event of the loading port being inaccessible by reason of 251
ice when vessel is ready to proceed from her last port or at any 252
time during the voyage or on vessel's arrival or in case frost sets 253
in after vessel's arrival, the Captain for fear of being frozen in is at 254
liberty to leave without cargo, and this Charter shall be null and 255
void. 256

(b) If during loading the Captain, for fear of vessel being frozen in, 257
deems it advisable to leave, he has liberty to do so with what cargo 258
he has on board and to proceed to any other port or ports with 259
option of completing cargo for Owners' benefit for any port or ports 260
including port of discharge. Any part cargo thus loaded under this 261
Charter to be forwarded to destination at vessel's expense but 262
against payment of freight, provided that no extra expenses be 263
thereby caused to the Receivers, freight being paid on quantity 264
delivered (in proportion if lumpsum), all other conditions as per 265
Charter. 266

(c) In case of more than one loading port, and if one or more of 267
the ports are closed by ice, the Captain or Owners to be at liberty 268
either to load the part cargo at the open port and fill up elsewhere 269
for their own account, as under section (b) or to declare the Charter 270
null and void unless Charterers agree to load full cargo at the open 271
port. 272

(d) This Ice Clause not to apply in the Spring. 273

Port of discharge

(a) Should ice (except in the Spring) prevent vessel from reaching 274
port of discharge Receivers shall have the option of keeping vessel 275
waiting until the re-opening of navigation and paying demurrage, or 276
of ordering the vessel to a safe and immediately accessible port 277
where she can safely discharge without risk of detention by ice. 278
Such orders to be given within 48 hours after Captain or Owners 279
have given notice to Charterers of the impossibility of reaching port 280
of destination. 281

(b) If during discharging the Captain for fear of vessel being frozen 282
in deems it advisable to leave, he has liberty to do so with what 283
cargo he has on board and to proceed to the nearest accessible 284
port where she can safely discharge. 285

(c) On delivery of the cargo at such port, all conditions of the Bill 286
of Lading shall apply and vessel shall receive the same freight as if 287
she had discharged at the original port of destination, except that if 288
the distance of the substituted port exceeds 100 nautical miles, the 289
freight on the cargo delivered at the substituted port to be increased 290
in proportion. 291

## RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 22: CARGO DESCRIPTION

POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 480 TO 500 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

### CLAUSE 23: LOADING & DISCHARGING PORTS

LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

### CLAUSE 24: PRE-ARRIVAL NOTICES

OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

### CLAUSE 25: ETA & LAYCAN

LAYCAN: 03 / 13 NOVEMBER 2007.

ETA TO LOAD PORT DECEMBER 03 2007 WP/AGW.

### CLAUSE 26: LAYTIME

UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.

Ca RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKAI

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKAI; LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

## CLAUSE 27: DEMURRAGE

ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

## CLAUSE 28: VESSEL'S GEAR

OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

## CLAUSE 29: OVERTIME

OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

## CLAUSE 30: ARBITRATION

ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

## CLAUSE 31: TAXES AND DUES

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

## CLAUSE 32: VESSEL COMPLIANCE

OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.

## CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER´S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL´HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD 118 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM 480 PIECES EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:       **JPMORGAN CHASE NEW YORK**

Address Bank:                   **345 PARK AVENUE**

                                         **NEW YORK – NY 10154**

ABA:                                 **021000021**
SWIFT:                            **CHASUS33**

BENEFICIARY BANK:       **EBNA BANK N.V.**
ADR-BENE-BANK:             **AMACO BUILDING 36-B**
                                         **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:     **0011990850**

ULTIMATE BENEFICIARY:   **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:   **201389**


**CLAUSE 36 VESSEL´S DESCRIPTION**
VESSEL´S IS DESCRIBED AS FOLLOWS:
NAME  M/V SKALA, PREVIOUS NAME  FASSA
    TYPE  Well Decker/Log/Bulk carrier, H&M  The New India Assurances Company Ltd, India
    P&I  The Steamship Mutual, Bermuda, PORT OF REGISTRY  Valletta, Malta, OFFICIAL No  6463
    IMO No  8223347, MMSI No  248478000, FLAG  Maltese, BUILT  Imabari Shipbuilding Co. Ltd.,
    Marugame - Japan, DELIVERED  24/10/1983, SHIP No  T-4649 (S-1116), CLASSIFICATION No.
    NK 831303, CLASS / NOTATION  NK/NS*(BC,SHC 2, 4 OR 1, 3, 5 E)(ESP) / MNS, CHG, MPP,
    LSA, RCF
    L.O.A  189.98m
    L.B.P  180.00m
    BREADTH (MLD)  28.4m
    DEPTH (MLD)  15.30m
    TPC  43.5 Mt (Light), 46.7 (Loaded)
    FREEBOARD  4337 mm
    FWA  254 mm
    TONNAGE NRT GRT  INT 13384 / 23144
    PANAMA 19281 24670, SUEZ 21309,77 23563,15
    DEADWEIGHT
    D/WEIGHT(MT) DRAFT (Meters) TROPICAL FRESH 39.207 11.499
    FRESH WATER 38,158 11.270, TROPICAL 39.228 11.245, SUMMER 38.156 11.016,
    WINTER 37.090 10.787
    CAPACITY
    HATCH DIMENSIONS Meters HOLD DIMENSIONS (L x W x H) Meters GRAIN / BALE
    NO 1 12.8 x 14.4 21,5 x 22.5 x 13,2 229.333,49 / 219.254,24
    NO 2 24.8 x 14,4 32,8 x 22,5 x 13,2 409.280,37 / 391.859.48
    NO 3 19.2 x 14,4 28,0 x 22,5 x 13,2 348.226.74 / 331.466.24
    NO 4 24.8 x 14,4 32,8 x 22,5 x 13,2 409.009.15 / 391.924.46
    NO 5 19.2 x 14,4 28,0 x 12,0 x 13,2 336.396.56 / 325.229.61
       1.732.246,31 / 1.659.734,03 ft3

    TANK CAPACITY (in m3)
    FRESH WATER 350.4
    BALLAST 12.487,90
    HFO(180 CST) 2.084.40
    MDO 238,4

    HEIGHT  Keel to Top Mast - 45.83 Mts
    TYPE OF HATCHCOVERS McGregor Folding type. Watertight Steel Hatch Cover

ORIGINAL

## RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

Hinged, 4 Panels on each Hatch open 2 Forward & 2 Aft
WW/AUSSIE/CO2/GRAIN FITTED
STRENGTHENED FOR HEAVY CARGOES=HOLD 2+4 OR 1+3+5
VENTILATION SYSTEM: NATURAL VENTILATION
STRENGTH
STRENGHT OF WEATHER DECK 3,3 Meters/Square meters
STRENGTH OF HATCH COVERS 2,4 Meters/Square meters
STRENGHT OF TANK TOP No1-21.48. No2&4-20,97, No3-20,78, No 5-20,50 Meters/Square meters
CARGO GEARS: ELECRTO HYDRAULIC- (Cranes 4 x 25 MT)
LOG DESCRIPTION
 1) Fixed Stanchions on Deck P&S in the way of Mast house
 2) Stanchions On Board - Permanent:  6 Twin Steel Stanchions Each Side
 - Removable:  64 Pieces. Wooden
Stanchions for Both Sides
 3) Type of Stanchions:    Wooden Removable Stanchions
 4) Height of Stanchions:  7,90 - 8,10 M Steel Permanent  Stanchions
 5) Height of Stanchions:  7,80 M except No1-Hold which is 6,80 M - Wooden
 6) Loading Height:        No.1 Hold up to 6,70 m, No.2-5 Holds up to  7,80 m
 7) Distance between each Removable Stanchion: Varies from 2,4 to 3,0 M
 8) Distance between Permanent Stanchions: No,1 = 11.9 Meters  No.2&4 - 29,8 Meters. No.5 = 20,1 Meters
 9) Distance between Hatch cover to resting point of Cranes: 8 M

ENGINE TYPE: Mitsubishi-Sulzer, 7RLB56 (MCR-1)
SPEED & CONSUMPTION ALL ABOUT
LOADED 13.0 Kt & 28.5 Mt IFO 180 CST RME 25 & 1.5 Mt MDO
BALLAST 13.0 Kt & 28.0 Mt IFO 180 CST & 1.5 Mt MDO
PORT CONS IDLE - 1.5 Mt MDO, Gear Working - 3.0 Mt MDO
The above Speed & Consumption is basis good Weather condition, no adverse current,
no negative influence of Swells and not exceeding Beaufort Scale Force - 3
Vessel burns MDO: Maneuvering / Navigating in confined / restricted waters /
Canals / Rivers and in / out of Ports / Locks etc
 = ALL DETAILS ABOUT +


## CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

## CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"


## CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

## CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

## CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL  MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V SKALA AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE,
 BANK REFERENCES,  MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH
COVERS 480 TO 500 PIECES
POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS
12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-
STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE
INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 3/13 DEC 2400HRS
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD
SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO
PAY DETENTION AT US$ 60,000 PER DAY.
-TIME  NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS  BY EMAIL/FAX/CABLE UPON
 ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD  118 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END
OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER
PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL
CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK

-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH
FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL
ADDITIONAL STANTIONS TO BE  FITTED FOR THE SAFE LASHING/SECURING OF
CARGO OR  SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY
CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY
SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS
REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS
APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR
OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND
FREIGHT BENDS  INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING
DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL
TO BE  PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME
EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P

END

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 M.V.
SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT:
MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS.
TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

ORIGINAL

FOR CHARTERERS

ATN INDUSTRIES INC

FOR OWNERS

TOTALMAR NAVIGATION CORP.

~ORIGINAL

### ADDENDUM TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

It is this day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that due to the information received from Panama Agents Messrs. Wildford & McKay whom will be acting as vessel's agent through her passage by the Panama Canal, that due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala will only be able to load min 410 pieces of pipes instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Signed in Caracas on the 30th day of December 2007. Two originals have been drawn up one for each party.

Totalmar Navigation Corp.

**FOR OWNERS**                          **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.              **ATN INDUSTRIES INC**

# EXHIBIT 2

5/8

M.V. S KALA
DECEMBER 8, 2007

<u>LETTER OF PROTEST</u>

THRU: PENAVICO SHANGHAI PUDONG CO., LTD.

TO: SHANGHAI JIFANG STEEL PIPE CO, LTD
CC: TELEDATA MARINE SOLUTIONS LTD
CC: COSMOS VENTURES HELLAS

SUBJECT: DEAD FREIGHT PROTEST FOR SHORT LOADED CARGO

DEAR SIR,

THIS IS TO BRING TO YOUR KIND NOTICE THAT ACCORDING TO THE
CHARTER PARTY THE FINAL QUANTITY TO BE LOADED IS IN MY OPTION.
ACCORDING TO MY STOWAGE PLAN SENT TO YOU REQUESTED 490
PIECES AND WHEREAS SUPPLIED ONLY 430 PIECES. THEREFORE OWNERS
ARE ENTITLED TO CLAIM DEAD FREIGHT.

OWNERS WILL HOLD SHIPPERS/CHARTERERS FULLY RESPONSIBLE FOR
CLAIM ARISING AGAINST DEAD FREIGHT DUE TO SHORT LOADED
CARGO OF 60 PIECES STEEL PIPES.

RESPECTFULLY YOURS,

CAPT. MERCANTE EL HAYASIN
MASTER, M.V. S KALA

RECEIVED ONLY
AS PENAVICO AGENT

# EXHIBIT 3

# TOTALMAR NAVIGATION CORP.

2/2

CARACAS, DECEMBER 10th 2007

INVOICE # TNC/12-034

MESSRS.
ATN INDUSTRIES INC.

REF:   FREIGHT INVOICE M/V SKALA CP 23/11/07

DEAR SIRS,

FIND HERE BELLOW THE FREIGHT INVOICE FOR REFERRED SHIPMENT

**FREIGHT INVOICE**

- TOTAL NUMBER OF PIPES LOADED UNDER / ON DECK: 430
- TOTAL CBM PER BILL OF LADING: 35,439.697

- FREIGHT: CBM 35,439.697 X US$ 118.00                    = US$ 4,181,884.246
- DEAD FREIGHT 60 PIECES X 82.4179 X US$ 118.00     = US$    583,518.732

TOTAL FREIGHT     = US$ 4,765,402.978

KINDLY REMIT THE AMOUNT OF US$ 4,765,402.978 BY TELEGRAPHIC TRANSFER TO
OWNERS BANKERS AT:

| | |
|---|---|
| **INTERMEDIARY BANK:** | JPMORGAN CHASE NEW YORK |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

KINDLY ADVISE WHEN FUNDS HAVE BEEN REMITTED.

# EXHIBIT 4

**19-0**

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"    Part I

Adopted by the Documentary Committee of: General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

| | |
|---|---|
| **1. Shipbroker** | **2. Place and date** Caracas  December 7th 2007 |
| **3. Owners/Place of business (Cl. 1)** Totalmar Navigation Corp/Agecom As Disponent Owners | **4. Charterers/Place of business (Cl. 1)** ATN Industries Inc. CCCT, Torre A, Piso 8, Oficina 802 Chuao, Caracas 1065, Venezuela |
| **5. Vessel's name (Cl. 1)** M/V Mairouli or Sub in Owners option | **6. GRT/NRT (Cl. 1)** 30,018 / 18,486 |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)** 53,206 mt deadweight | **8. Present position (Cl. 1)** Trading |
| **9. Expected ready to load (abt.) (Cl. 1)** December 27th 2007 | |
| **10. Loading port or place (Cl. 1)** 1good safe berth Shanghai, China always accessible always afloat | **11. Discharging port or place (Cl. 1)** 1 good safe berth Maracaibo,Vene- zuela, always accessible always afloat |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)** Min 435 pieces of pipes upto vessel's full capacity at Owners option of policarbonate steel water pipes dimensions guarantee by Charterers. See also clause 22 | |
| **13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)** See clause 35 | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)** see clause 35 |
| **15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)** See clause 33 | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6)** a) Laytime for loading See Clause 26 |
| **17. Shippers (state name and address) (Cl. 6)** Jiafang Steel Pipes Co, Ltd. 818 Jianhang Rd. Pudong New District Shangahi, PRC At Fletcher Xi | b) Laytime for discharging See clause 26 |
| | c) Total laytime for loading and discharging |
| **18. Demurrage rate (loading and discharging) (Cl. 7)** See clause 27 | **19. Cancelling date (Cl. 10)** December 31st 2007 |
| **20. Brokerage commission and to whom payable (Cl. 14)** | |
| **21. Additional clauses covering special provisions, if agreed.** Additional clauses 22 to 42 both inclusive to form part of this Charter Party. | |

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| **Signature (Owners)** Totalmar Navigation Corp. Totalmar Navigation Corp. | **Signature (Charterers)** ATN Industries Inc. |
|---|---|

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen



PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

ORIGINAL

**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 5 and carrying about the number of tons of deadweight cargo stated in Box 7, how in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that: 1-7

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight   See clause 35**
The freight to be paid in the manner prescribed in Box 14 in cash without deduction on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.

Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs   See clause 33**
*(a) Gross Terms*
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.
If the loading takes place by elevator, cargo to be put free in vessel's holes, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

*(b) F.i.o. and free stowed/trimmed*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).
* Indicates alternative (a) or (b), as agreed, in Box 15.

**6. Laytime   See clause 26**
*(a) Separate laytime for loading and discharging*
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

*(b) Total laytime for loading and discharging*
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as laytime or discharging time, as the case may be.
* Indicate alternative (a) or (b) as agreed, in Box 16.

**7. Demurrage   See clause 27**
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least ⅓ of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the said Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out, unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that the performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. (In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the



## PART II

### "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

last of the loading ports, if more than one, it appears that further performance of this charter will subject the Vessel, her Master and crew or her cargo to war, warlike operations, blockade, riot, civil commotions or piracy, or any person on board the Vessel to the risk of loss of life or freedom, or the Vessel to the risk of loss of or damage to the Charterers shall be at liberty to cancel this Charter, and if the cargo has been loaded or partly loaded, any part cargo already loaded on board the Vessel shall be discharged at any safe port at the Charterers' risk and expense, and the contract of affreightment in respect of such cargo shall be deemed to be fulfilled, and the Owners may thereupon demand that any port of discharge where the Vessel may then be ordered or to which the Vessel may have been ordered pursuant thereto have been ordered pursuant thereto.

(3) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such direction or recommendation anything is done or is not done such shall not be deemed a deviation.

(b) If by reason of or in compliance with any such directions or recommendations the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto the Vessel may proceed to any safe port which the Owners or the Master in his or their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(c) All extra expenses (including insurance costs) involved in discharging the cargo at the loading port or in reaching or discharging the cargo at any safe port as provided in Clauses 3 (a) and (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

### 17. GENERAL ICE CLAUSE

**Port of loading**

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case ice sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owner's benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

**Port of discharge**

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.



## RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 22: CARGO DESCRIPTION
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 435 PCS EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

### CLAUSE 23: LOADING & DISCHARGING PORTS
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

### CLAUSE 24: PRE-ARRIVAL NOTICES
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

### CLAUSE 25: ETA & LAYCAN
LAYCAN: 26 / 31 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 27TH WP/AGW.

### CLAUSE 26: LAYTIME
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.

**CLAUSE 33: COST OF LOADING AND DISCHARGE**

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,





**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON, BOTH TO BLAME ETC**
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD 120.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM MIN 435 PIECES EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

<u>INTERMEDIARY BANK:</u>   **JPMORGAN CHASE NEW YORK**

Address Bank:               **345 PARK AVENUE**

                              **NEW YORK -- NY 10154**

ABA:                        **021000021**
SWIFT:                    **CHASUS33**

BENEFICIARY BANK:      **EBNA BANK N.V.**
ADR-BENE-BANK:          **AMACO BUILDING 36-B**
                              **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:    **0011990850**

ULTIMATE BENEFICIARY:   **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:  **201389**

**<u>CLAUSE 36 VESSEL´S DESCRIPTION</u>**

VESSEL: M/V MAIROULI   EX SIBULK DEDICATION OR SUB IN OWNERS OPTION
==============
DWT/DRAFT / TPC SUMMER  : 53,206 MT / 12.303 MTRS / 55.30 MT
BUILT JUNE 2005, IMABARI - JAPAN
FLAG/CLASS / PANAMA / N.K.K
GRT/NRT: 30,018 / 18,486
LOA/BREADTH/DEPTH :189.94 MTRS / 32.26 MTRS / 17.30 MTRS
HO / HA : 5 / 5
CARGO GEAR: 4 CRANES ELECTRO HYDRAULIC 30.5 MT SWL EACH
TOTAL GRAIN :  68,927.4 M3 / BALE : 65,526.1 M3
SPEED / CONSUMPTION :
IN GOOD WEATHER CONDITIONS I.E. UPTO BEAUFORT FORCE 4 AND DOUGLAS SEA
STATE 3 AND NO ADVERSE CURRENT.
AT SEA BALLAST : ABT 14.5 KNOTS ON ABT 37.0 MTS IFO AND
ABT 0.3 MTS MDO
AT SEA LADEN   : ABT 14.0 KNOTS ON ABT 37.0 MTS IFO
AND ABT 0.3 MTS MDO
IDLE : ABT 3.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/ DAY
IN PORT WORKING : ABT 6.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/DAY
ALL DETAILS IN GOOD FAITH AND WOG

**<u>CLAUSE 37: AGENCY</u>**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**<u>CLAUSE 38: MARKING BILL OF LADINGS</u>**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

**<u>CLAUSE 39: LEGAL PRIORITY</u>**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

**<u>CLAUSE 40: CONFIDENTIALITY</u>**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V MAIROULI AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE, BANK REFERENCES, MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 26/31 DEC 2007
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO PAY DETENTION AT US$ 60,000 PER DAY.
-TIME NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS BY EMAIL/FAX/CABLE UPON ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD 120.50 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL CBM FOR MIN 450 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK
-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL TO BE PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P. END



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**FOR OWNERS**                          **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.            ATN INDUSTRIES INC



<u>**ADDENDUM TO CHARTER PARTY DATED 7TH DECEMBER 2007 MV**</u>
<u>**MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT:**</u>
<u>**MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS.**</u>
<u>**TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**</u>

It is day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that the Laycan for the 5th shipment of pipes loading at Shanghai have been shifted from December 26/31, 2007 to January 26/31[st] 2008 and vessel will only load min 410 pieces of pipes upto vessel´s full capacity in Charter option.

Signed in Caracas on the 28th day of December 2007. Two originals have been drawn up one for each party.

<u>**FOR OWNERS**</u>                              <u>**FOR CHARTERERS**</u>

**TOTALMAR NAVIGATION CORP.**          **ATN INDUSTRIES INC**

otalmar **Navigation Corp.**

# EXHIBIT 5

# TOTALMAR NAVIGATION CORP.

2/2

CARACAS, FEBRUARY 8th  2008

INVOICE # TNC/01-011

MESSRS.
ATN INDUSTRIES INC.

REF:   DEAD FREIGHT INVOICE M/V GO STAR CP 07/12/07 5TH SHIPMENT PIPES EX
        SHANGHAI

DEAR SIRS,

FIND HERE BELLOW THE DEAD FREIGHT INVOICE FOR REFERRED SHIPMENT

**DEAD FREIGHT INVOICE**

VESSEL COMPLETED LOADING/LASHING AND SAILED ON JANUARY 26TH 19:30 HRS.

- TOTAL NUMBER OF PIPES LOADED UNDER / ON DECK:
   400 PIECES OF PIPES (DIA 2.40M) = 28,090.368 CBM
    31 PIECES OF PIPES (DIA 2.60 M) = 2,554.956 CBM
          TOTAL                =30,645.324 CBM

AS PER CHARTER PARTY CLAUSE 22 AND ADDENDUM DD 28/12/07 VESSEL SHOULD
HAVE LOADED 410 PIPES OF 2.6 M O.D. x 12.192 M; I.E TOTAL CUBIC 33,791.35

-DEAD FREIGHT DUE TO OWNERS 3,146.0232 X US$ 120.50     = US$ 379,095.80

KINDLY REMIT THE AMOUNT OF US$ 379,095.80 BY TELEGRAPHIC TRANSFER TO
OWNERS BANKERS AT:
**INTERMEDIARY BANK:**     JPMORGAN CHASE NEW YORK
Address Bank:                **345 PARK AVENUE**

                            **NEW YORK – NY 10154**

ABA:                         021000021
SWIFT:                       CHASUS33

BENEFICIARY BANK:            EBNA BANK N.V.
ADR-BENE-BANK:               **AMACO BUILDING 36-B**
                             **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:           0011990850

ULTIMATE BENEFICIARY:        **Totalmar Navigation Corp.**
Account Ultimate Beneficiary: **201389**

KINDLY ADVISE WHEN FUNDS HAVE BEEN REMITTED.

# EXHIBIT 6

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"

Part I

**1. Shipbroker**

**2. Place and date**
Caracas, December 29th 2007

**3. Owners/Place of business (Cl. 1)**
Totalmar Navigation Corp./Agecom
As Disponent Owners

**4. Charterers/Place of business (Cl. 1)**
ATN Industries Inc.
CCCT Torre A, Piso 8, Oficina 802
Chuao, Caracas 1065, Venezuela

**5. Vessel's name (Cl. 1)**
M/V Golden Wish or Sub

**6. GRT/NRT (Cl. 1)**
26,058 / 14,872

**7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**
45,719 Deadweight

**8. Present position (Cl. 1)**
Trading

**9. Expected ready to load (abt.) (Cl. 1)**
December 8th, 2007

**10. Loading port or place (Cl. 1)**
1 good safe berth Shanghai, China
always accessible always afloat

**11. Discharging port or place (Cl. 1)**
1 good safe berth Maracaibo, Vene-
zuela. Always accessible always
afloat.

**12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**
Min 435 pieces of pipes upto vessel's maximum capacity at Owner's
option of water pipes of policarbonate steel pipes dimensions Gua-
rantee by Charterers. See also Clause 22

**13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**
See Clause 35

**14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**
See Clause 35

**15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)**
See clause 33

**16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6)**

**a) Laytime for loading** See Clause 26

**17. Shippers (state name and address) (Cl. 6)**
Jiafang Steel Pipes Co, Ltd.
818 Jianhang Rd. Pudong New District
Shangahi, PRC At: Fletcher Xi

**b) Laytime for discharging** See Clause 26

**c) Total laytime for loading and discharging**

**18. Demurrage rate (loading and discharging) (Cl. 7)**
See Clause 27

**19. Cancelling date (Cl. 10)**
December 15th, 2007

**20. Brokerage commission and to whom payable (Cl. 14)**

**21. Additional clauses covering special provisions, if agreed.**
Additional clauses 22 to 42 both inclusive to form part of this
Charter Party

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

**Signature (Owners)**
Totalmar Navigation Corp.

Totalmar Navigation Corp.

**Signature (Charterers)**
ATN Industries Inc.

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

Adopted by
the Documentary Committee of: Jeneral
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

1. It is agreed between the party mentioned in Box 3 as Owners of the
steamer or motor-vessel named in Box 5, of the gross/nett Register
Tons indicated in Box 6 and carrying about the number of tons of
deadweight cargo stated in Box 7, now in position as stated in Box 8
and expected ready to load under this Charter about the date in-
dicated in Box 9, and the party mentioned as Charterers in Box 4
that
The said vessel shall proceed to the loading port or place stated
in Box 10 or so near thereto as she may safely get and lie always
afloat, and there load a full and complete cargo of shipment of deck
cargo agreed same to be at Charterers' risk as stated in Box 12
(Charterers to provide all mats and/or wood for dunnage and any
separations required, the Owners allowing the use of any dunnage
wood on board if required) which the Charterers bind themselves to
ship, and being so loaded the vessel shall proceed to the discharg-
ing port or place stated in Box 11 as ordered on signing Bills of
Lading or so near thereto as she may safely get and lie always
afloat and there deliver the cargo on being paid freight on delivered
or intaken quantity as indicated in Box 13 at the rate stated in
Box 13.

2. **Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods
or for delay in delivery of the goods only in case the loss, damage
or delay has been caused by the improper or negligent stowage of
the goods (unless stowage performed by shippers/Charterers or their
stevedores or servants) or by personal want of due diligence on the
part of the Owners or their Manager to make the vessel in all respects
seaworthy and to secure that she is properly manned, equipped and
supplied or by the personal act or default of the Owners or their
Manager.
And the Owners are responsible for no loss or damage or delay
arising from any other cause whatsoever, even from the neglect or
default of the Captain or crew or some other person employed by the
Owners on board or ashore for whose acts they would, but for this
clause, be responsible, or from unseaworthiness of the vessel on
loading or commencement of the voyage or at any time whatsoever.
Damage caused by contact with or leakage, smell or evaporation
from other goods or by the inflammable or explosive nature or in-
sufficient package of other goods not to be considered as caused
by improper or negligent stowage, even if in fact so caused.

3. **Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for
any purpose, to sail without pilots, to tow and or assist vessels in
all situations, and also to deviate for the purpose of saving life and
or property.

4. **Payment of Freight** See clause 35
The freight to be paid on ... freight Box 13 in cash
without discount on delivery of the cargo at mean rate of exchange
ruling on day or days of payment, the receivers of the cargo being
bound to pay freight on account during delivery, if required by Cap-
tain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be
advanced by Charterers if required at highest current rate of ex-
change, subject to two per cent. to cover insurance and other ex-
penses.

5. **Loading Discharging Costs** See clause 33
*(a) Gross Terms:*
...
*(b) F.i.o. and free stowed trimmed:*
...

6. **Laytime** See clause 26
*(a) Separate laytime for loading and discharging*
...
*(b) Total laytime for loading and discharging*
...
*(c) Commencement of laytime (loading and discharging)*
...

7. **Demurrage** See clause 27
...

8. **Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight,
demurrage and damages for detention. Charterers shall remain re-
sponsible for dead-freight and demurrage (including damages for
detention), incurred at port of loading. Charterers shall also remain
responsible for freight and demurrage (including damages for deten-
tion) incurred at port of discharge, but only to such extent as the
Owners have been unable to obtain payment thereof by exercising
the lien on the cargo.

9. **Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as
presented without prejudice to this Charterparty, but should the
freight by Bills of Lading amount to less than the total chartered
freight the difference to be paid to the Captain in cash on signing
Bills of Lading.

10. **Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on
or before the date indicated in Box 19, Charterers have the option
of cancelling this contract, such option to be declared, if demanded,
at least 48 hours before vessel's expected arrival at port of loading.
Should the vessel be delayed on account of average or otherwise
Charterers to be informed as soon as possible, and if the vessel is
delayed for more than 10 days after the day she is stated to be
expected ready to load, Charterers have the option of cancelling this
contract, unless a cancelling date has been agreed upon.

11. **General Average**
General average to be settled according to York-Antwerp Rules,
1974. Proprietors of cargo to pay the cargo's share in the general
expenses, even if same have been necessitated through neglect or
default of the Owners' servants (see clause 2).

12. **Indemnity**
Indemnity for non-performance of this Charterparty, proved damages,
not exceeding estimated amount of freight.

13. **Agency**
In every case the Owners shall appoint their own Broker or Agent both
at the port of loading and the port of discharge.

14. **Brokerage**
A brokerage commission of the rate stated in Box 20 on the freight
earned is due to the party mentioned in Box 20.
In case of non-execution at least ... of the brokerage on the estimated
amount of freight and dead-freight to be paid by the Owners to the
Brokers as indemnity for the latter's expenses and work. In case of
...

15. **GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the con-
sequences of any strikes or lock-outs preventing or delaying the
fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo
or any part of it when vessel is ready to proceed from her last port
or at any time during the voyage to the port or ports of loading or
after her arrival there, Captain or Owners may ask Charterers to
declare, that they agree to reckon the laydays as if there were no
strike or lock-out. Unless Charterers have given such declaration in
writing (by telegram, if necessary) within 24 hours Owners shall
have the option of cancelling this contract. If part cargo has already
been loaded, Owners must proceed with same (freight payable on
loaded quantity only) having liberty to complete with other cargo
on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo
on or after vessel's arrival at or off port of discharge and same has not
been settled within 48 hours, Receivers shall have the option of
keeping vessel waiting until such strike or lock-out is at an end
against paying half demurrage after expiration of the time provided
for discharging, or of ordering the vessel to a safe port where she
can safely discharge without risk of being detained by strike or lock-
out. Such orders to be given within 48 hours after Captain or Owners
have given notice to Charterers of the strike or lock-out affecting
the discharge. On delivery of the cargo at such port, all conditions
of this Charterparty and of the Bill of Lading shall apply and vessel
shall receive the same freight as if she had discharged at the first
original port of destination, except that if the distance of the substi-
tuted port exceeds 100 nautical miles, the freight on the cargo
delivered at the substituted port to be increased in proportion.

16. **War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any
action which is announced as a blockade by any Government or by any
belligerent or by any organized body, sabotage, piracy, and any actual
or threatened war, hostilities, warlike operations, civil war, civil com-
motion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that
performance of the contract will subject the Vessel or her Master and
crew or her cargo to war risks at any stage of the adventure, the Owners
shall be entitled by letter or telegram despatched to the Charterers, to
cancel this Charter.
(3) The Master shall not be required to load cargo or to continue
loading or to proceed on or to sign Bills of Lading for any adventure
on which or any part of which it appears that the Vessel, her Master
and crew or her cargo will be subjected to war risks. In the event of
the exercise by the Master of his right under this Clause after part
full cargo has been loaded, the Master shall be at liberty either to
discharge such cargo at the loading port or to proceed therewith. In
the latter case the Vessel shall have liberty to carry other cargo
for Owners' benefit and accordingly to proceed to and load or dis-
charge such other cargo at any other port or ports whatsoever though
backwards or forwards, although in a contrary direction to or out of
beyond the ordinary route. In the event of the Master electing to
proceed with part cargo under this Clause freight shall in any case
be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo
under Clause 3 or after the Vessel has left the loading port or the

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc

list of the loading ports, if more than one, it appears that further  205
performance of the contract will subject the Vessel, her Master and  206
crew or her cargo, to war risks, the cargo shall be discharged, or if  207
the discharge has been commenced shall be completed, at any safe  208
port in vicinity of the port of discharge as may be ordered by the  209
Charterers. If no such orders shall be received from the Charterers  210
within 48 hours after the Owners have despatched a request by  211
telegram to the Charterers for the nomination of a substitute discharg-  212
ing port, the Owners shall be at liberty to discharge the cargo at  213
any safe port which they may, in their discretion, decide on and such  214
discharge shall be deemed to be due fulfilment of the contract of  215
affreightment. In the event of cargo being discharged at any such  216
other port, the Owners shall be entitled to freight as if the discharge  217
had been effected at the port or ports named in the Bill(s) of Lading  218
or to which the Vessel may have been ordered pursuant thereto.  219

(b) (a) The Vessel shall have liberty to comply with any directions or  220
recommendations as to loading, departure, arrival, routes, ports of  221
call, stoppages, destination, zones, waters, discharge, delivery or in  222
any other wise whatsoever (including any direction or recom-  223
mendation not to go to the port of destination or to delay proceeding  224
thereto or to proceed to some other port) given by any Government or  225
by any belligerent or by any organized body engaged in civil war,  226
hostilities or warlike operations or by any person or body acting or  227
purporting to act as or with the authority of any Government or  228
belligerent or of any such organized body or by any committee or  229
person having under the terms of the war risks insurance on the  230
Vessel, the right to give any such directions or recommendations. If  231
by reason of or in compliance with any such direction or recom-  232
mendation anything is done or is not done, such shall not be deemed  233
a deviation  234

(b) If, by reason of or in compliance with any such directions or re-  235
commendations, the Vessel does not proceed to the port or ports  236
named in the Bill(s) of Lading or to which she may have been  237
ordered pursuant thereto, the Vessel may proceed to any port as  238
directed or recommended or to any safe port which the Owners in  239
their discretion may decide on and there discharge the cargo. Such  240
discharge shall be deemed to be due fulfilment of the contract of  241
affreightment and the Owners shall be entitled to freight as if  242
discharge had been effected at the port or ports named in the Bill(s) of  243
Lading or to which the Vessel may have been ordered pursuant  244
thereto.  245

(c) All extra expenses (including insurance costs) involved in discharg-  246
ing cargo at the loading port or in reaching or discharging the cargo at  247
any port as provided in Clauses 4 and 5(b) hereof shall be paid  248
by the Charterers and/or cargo owners and the Owners shall have  249
a lien on the cargo for all moneys due under these Clauses.  250

17. GENERAL ICE CLAUSE  251
Port of loading  252

(a) In the event of the loading port being inaccessible by reason of  253
ice when vessel is ready to proceed from her last port or at any  254
time during the voyage or on vessel's arrival or in case frost sets in  255
after vessel's arrival, the Captain for fear of being frozen in is at  256
liberty to leave without cargo, and this Charter shall be null and  257
void.  258

(b) If during loading the Captain, for fear of vessel being frozen in,  259
deems it advisable to leave, he has liberty to do so with what cargo  260
he has on board and to proceed to any other port or ports with  261
option of completing cargo for Owners' benefit for any port or ports  262
including port of discharge. Any part cargo thus loaded under this  263
Charter to be forwarded to destination at vessel's expense but  264
against payment of freight, provided that no extra expenses be  265
thereby caused to the Receivers, freight being paid on quantity  266
delivered (in proportion if lumpsum), all other conditions as per  267
Charter.  268

(c) In case of more than one loading port, and if one or more of the  269
ports are closed by ice, the Captain or Owners to be at liberty  270
either to load the part cargo at the open port and fill up elsewhere  271
for their own account as under section (b) or to declare the Charter  272
null and void unless Charterers agree to load full cargo at the open  273
port.  274

(d) This Ice Clause not to apply in the Spring.  275

Port of discharge  276

(a) Should ice (except in the Spring) prevent vessel from reaching  277
port of discharge Receivers shall have the option of keeping vessel  278
waiting until the re-opening of navigation and paying demurrage, or  279
of ordering the vessel to a safe and immediately accessible port  280
where she can safely discharge without risk of detention by ice.  281
Such orders to be given within 48 hours after Captain or Owners  282
have given notice to Charterers of the impossibility of reaching port  283
of destination.  284

(b) If during discharging the Captain for fear of vessel being frozen in  285
deems it advisable to leave, he has liberty to do so with what  286
cargo he has on board and to proceed to the nearest accessible port  287
where she can safely discharge.  288

(c) On delivery of the cargo at such port, all conditions of the Bill  289
of Lading shall apply and vessel shall receive the same freight as  290
if she had discharged at the original port of destination, except that  291
if the distance of the substituted port exceeds 100 nautical miles, the  292
freight on the cargo delivered at the substituted port to be increased  293
in proportion  294

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CUBIC PER PIECE 82.4179 AND THAT TOTAL CUBIC METER FOR MIN 435 PIECES EQUALS ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 08 / 15 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 11 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

DETENTION AT DISCHARGE PORT TO BE PAID AT THE RATE OF US$ 60,000 PER DAY PRORATA.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.



**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

### CLAUSE 34: NEW JASON, BOTH TO BLAME ETC
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.
EXTRA WAR RISK PREMIUM IF ANY TO BE FOR CHARTERERS ACCOUNT BOTH ENDS.

### CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD  121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM 435 PIECES EQUALS 35.851,79 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

### CLAUSE 36 VESSEL´S DESCRIPTION

M/V GOLDEN WISH OR SUB, DESCRIPTION IN ATTACHMENT TO THIS CHARTER PARTY.

### CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

### CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

### CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS WHENEVER CONTRADICTORY.

### CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE PARTIES CONCERNED.

### CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

### CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS

acct ATN Industries Inc.
- A shipment min 435 pieces carriers option upto vsl full , under/on deck cap of polycarbonate pipes in loose, dims 12,192 m length x 2,6 m dia/12,3 mt uw each where as chrts grtee 82.4179 cbm per piece
- carriers performer vsl mv golden wish or sub - intake abt 438 pcs - however performing vsl to be grd si/bc, max 25 years, highest class lloyds or equivelant
- under/on deck , with max 5 tiers limits upto vessels capacity





**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

- part cgo carriers option but last in first out
- cargo will be loaded under/on deck carriers option cgo on deck bs/l s to be marked "shipped on deck, without any responsibility to owners for loss or damage howsoever caused " same to be for charters/shippers/receivers risk and account
- loading 1spsb aaaa shanghai / discharging 1spsb aaaa maracaibo , where 8m sw drft
- laycan 8/15 dec 2007 –

    -loading 4 days shinc / Liner out end of hook discharge
- demm usd 60.000 pdpr / fd bends, otherwise as per fixture Skala, cp 23/11/07
- frt usd 121,50 per cbm fiost lsd, Liner out end of hook.
- frt payment 100 pct as per cp M/V Skala
- any shifting required to be for acct and time of party ordering same
- nor via cable/radio/vhf w/w/w/w be

- if original bill(s) of lading is not available at discharging port upon  vsl's arrival,the carriers/master to allow discharge of cgo into custody of the port
  against chrts and recvrs "loi" as per ows pandi wording
- overtime, if any, to be paid by ordering party
- taxes and / or dues on cargo/frt if any for charter s account both ends
- taxes and / or dues on vessel's flag /crews /ownership for carriers account both ends
- extra insurance due to vessel's age and/or flag, if any for charters account bends
- carriers performing vsl must be fully certified (ism/doc/smc/isps/p&i,etc)
- carriers/master provide approvex 3/2/1 days eta notice both bends
- extra war risk premium if any to be for chrts acct bends
- arbitration if any in london and english law to apply
- Otherwise terms and conditions as per fixture Cp M/V Skala dd 23/11/07, logically amended as per main terms agreed.

    end offer

**Totalmar Navigation Corp.**

**FOR OWNERS**                                      **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.            ATN INDUSTRIES INC

**1475M/V "GOLDEN WISH"**

**All figures / details are given in good faith and wog**

**1.General**
1.1 Vessel's name: MV GOLDEN WISH
1.2 Vessel's previous name: KEN EXPLORER / BORON EXPLORER
1.3 Flag: PANAMA
1.4 Month /Year and Where Built: 1997/JAPAN
1.5 Yard name and number: TSUNEISHI SHIP BUILDING CO LTD
   YARD No. 1090
1.6 Official Class Register / IMO number:      /9146962
1.7 Class of Vessel: KOREAN REGISTER OF SHIPS
1.8 Port of Registry: PANAMA
1.9 Owners: GOLDEN WISH SHIPPING CO. PANAMA

**2.Particulars of Vessel**
2.1 Type of Vessel: BULK CARRIER FLUSH DECK WITH F'CASTLE

| 2.2 | Deadweight | Draft | TPI / TPC |
|---|---|---|---|
| Summer | 45,719 | 11.62 | 49.83 MT |
| Winter | 44,515 | 11.378 | 49.65 MT |
| Tropical | 46,928 | 11.862 | 49.95 MT |

2.3 Is Vessel fitted for Transit of:
   a) Panama Canal          YES
   b) Suez Canal            YES
   c) St. Lawrence Seaway   NO
   d) Not applicable
2.4 Not applicable
2.5 Not applicable
2.6 GT / NT:
2.7 International: 26.058 / 14,872
   Suez        : 26,808 / 24,202.34
   Panama      : 21,673
2.8 Length Overall: 185.74 M
2.9 Length between perpendiculars: 177.00 M
2.10 Extreme breadth and depth moulded: 30.4 M/ 16.50 M
2.11 Distance from waterline to top of hatch coaming (basis full bunkers)
       a. Fully laden conditions 6.32 M at even keel summer draft
       b. Full ballast condition (excl. ballast holds) No.1 13.08M No.5 11.25M
          Full ballast condition (incl. Ballast holds) No.1 9.94M No.5 9.29M
2.12 State Vessel's deballasting time in mt / hour: ABOUT 600 M3 / HOUR
2.13 Vessel can accept loading rate of (metric tons per hour): 2,300 MTS/HR
2.14 Distance from Keel to top of hatch coaming: 17.9 M
   No.1 17.9 M      No.2 to No.5 : 17.9 M
   Highest fixed point of Vessel:   45.11 M
2.15 State Capacity of :
   a. Ballast Tanks: 14,833 M3
   b. Hold Ballast Capacity:
   c. Constant excluding Fresh Water: ABOUT 220 MT
   Daily Fresh Water Consumption: ABOUT 12  MT
   Fresh Water Capacity: 389MT
   State Capacity and Daily Production of Evaporators: ABOUT 15.MT
   Normal Fresh Water Reserve: ABOUT 150 MT
2.16 Vessel is fitted with Shaft Generator: NO
2.17 State Vessel's onboard Electrical Supply: 450V/ 60Hz

3.1 Holds
    a.  Number of Holds : FIVE (5)
    b.  Are Vessels Holds clear and free of any obstructions:
    c.  Grain / Bale Capacity in Holds excluding Wing / Topside Tanks:

| | Grain | Bale |
|---|---|---|
| No.1 | 9,932.8 | 9,586.3 |
| No.2 | 11,753.5 | 11,396.7 |
| No.3 | 11,285.2 | 10,946.1 |
| No.4 | 11,747.9 | 11,368.1 |
| No.5 | 10,276.6 | 10,053.3 |

    d.  Grain / Bale Capacity in Holds including Hatchways:

| | Grain | Bale |
|---|---|---|
| No.1 | 10,361.6 | 10,015.1 |
| No.2 | 12,199.4 | 11,844.6 |
| No.3 | 11,731.1 | 11,392.0 |
| No.4 | 12,193.8 | 11,814.0 |
| No.5 | 10,722.5 | 10,499.2 |

    e.  Is Vessel strengthened for the carriage of heavy cargoes: YES
        HO #2+4 MAYBE EMPTY
    f.  Is Tanktops steel and suitable for grab discharge: YES
    g.  State whether corrugations vertical or horizontal: VERTICAL
    h.  Tanktop Strength:
        No.1 and No.5 : 13,73 MT / M2
        No.2 and No.4 : ......Mt / M2
        No.3 : 21,94 MT / M2
    i.  Are Holds CO2 fitted: NO
    j.  Are Holds fitted with smoke detection system: NO
    k.  Is Vessel fitted with Australian approved Hold ladders: YES
    l.  Has Vessel a loadmaster computer / loadicator or other type of mechanical
        stowage calculator: YES
    m.  Are Holds hoppered at: Hold Side: YES
        Can Vessel's Holds be described as box shaped: NO
    n.  Measurement of any Tank Slopes / Hoppering Height: 3,10.M
        Distance from Vessel's Side at Tanktop: 14,69M
    o.  Flat floor measurement of cargo Holds at Tanktop:
        No.1 Hold: 27.00 M x (Fore)23.8 M / (Aft)10.90 M
        No.2 Hold: 26.90 M x 23.80 M
        No.3 Hold: 27.00 M x 23.80 M
        No.4 Hold: 26,90 M x 23,80M
        No.5 Hold: 27.00 M x 23.80M (Fore/Aft)
    p.  Is Vessel electrical ventilated: NO
3.2 Hatches
    a. Number of Hatches: Five
    b. Make and Type of Hatch covers:  HAKATA MAC CORP/FOLDING TYPE
    c. Hatch sizes
        No.1       20.00 x 15.30M
        No.2/3/4/5  20.80 x 15.30M
    d. Hatch cover strength: NO 1 2.08 MT / M2 NO 2-5 1.75 MT/M2
    e. Distance from Ship's rail to edge of hatch covers / coaming each side:
        No.1 FWD 3.6 M  AFT 6.5 M
        No.2 to No.5 : 6.5 M
    f. Distance from bow to for of 1st hold opening:5.5  M
    g. Distance from stern to AFT of last hold opening:3.6 M
    h. Is vessel fitted with cement holes: Yes

11. Cargo Gear
11.1 State make and type: 4 Electro-hydraulic cranes MHI LTD JAPAN
11.2 Number and capacity of cranes and where situated: 4 x 25 T
    No.1 between holds 1 and 2
    No.2 between holds 2 and 3
    No.3 between holds 3 and 4
    No.4 between holds 4 and 5
11.3 Outreach of gear beyond ship's rail: 8M
11.4 Not applicable
11.5 Time needed for full cycle with maximum cargo lift on hook: about .... minutes
11.6 Slewing / luffing / hoisting speeds: .... RPM / ....SECS / ....M PER MIN
11.7 Is gear combinable for heavy lift: NO
11.8 Are winches electro-hydraulic: YES

# EXHIBIT 7

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-08

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V ATLANTICA AT SHANGHAI CP 29/11/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 5.229 DAYS
TOTAL DEMURRAGE AT SHANGHAI 1.229 DAYS

DEMURRAGE DUE BY CHARTERERS   1.229 DAYS x US$ 70,000/DAY = US$ 86,030.00

KINDLY REMIT THE AMOUNT OF US$ 86,030.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V ATLANTICA AT LOAD PORT SHANGHAI DECEMBER 10 2007

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|---|---|
| ARRIVED SHANGHAI | 10/12/07 AT 07:00 HRS |
| NOR TENDERED | 10/12/07 AT 07:00 HRS |
| LOADING OPERATION BEGAN | 13/12/07 AT 20:00 HRS |
| TIME START COUNTING | 10/12/07 AT 00:00 HRS |
| COMPLETED LOADING/LASHING | 15/12/07 AT 12:30 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 10/12/07 Mon 07:00 | Laytime commenced | | | |
| 10/12/07 Mon 24:00 | waiting berth | 0 -17 - 00 | 0 - 17 - 00 | |
| 11/12/07 Tue 24:00 | waiting berth | 1 - 00 - 00 | 1 – 00 - 00 | |
| 12/12/07 Wed 24:00 | waiting berth | 1 - 00 – 00 | 1 – 00 - 00 | |
| 13/12/07 Thu 18:20 | Berthed | | | |
| 13/12/07 Thu 20:00 | Commenced loading | | | |
| 13/12/07 Thu 24:00 | | 1 – 00 – 00 | 1 – 00 - 00 | |
| 14/12/07 Fri  07:00 | On demurrage | | | |
| 14/12/07 Fri  24:00 | | 0 – 07 - 00 | 1 – 00 - 00 | 0 - 17 -00 |
| 15/12/07 Sun 06:00 | Completed loading | | | |
| 15/12/07 Sun 12:30 | Completed lashing | | | |
| 15/12/07 Sun Laytime count ended | | | 0 - 12 - 30 | 0 - 12 -30 |
| 15/12/07 Sun 16:10 sailed | | | | |
| | Total | 4 – 00 – 00 4.000 | 5 – 05 –30 | 1 – 05 -30 1.229 |

DEMURRAGE        : 1.229 DAYS x US$ 70,000/DAY
DEMURRAGE DUE    : US$ 86,030.00

# EXHIBIT 8

**RECOMMENDED**
**THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE**
**UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)**
**INCLUDING "F.I.O." ALTERNATIVE, ETC.**
(To be used for trades for which no approved form is in force)
**CODE NAME: "GENCON"**                                    Part I

**ORIGINAL**                    19-0

| | |
|---|---|
| **1. Shipbroker** | **2. Place and date**<br>Caracas, December 6th 2007 |
| **3. Owners/Place of business (Cl. 1)**<br>Totalmar Navigation Corp/Agecom<br>As Disponent Owner | **4. Charterers/Place of business (Cl. 1)**<br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
| **5. Vessel's name (Cl. 1)**<br>M/V Rainbow Or Sub Owners option | **6. GRT/NRT (Cl. 1)**<br>25,676 / 13,991 |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**<br>42,529 | **8. Present position (Cl. 1)**<br><br>Trading |
| **9. Expected ready to load (abt.) (Cl. 1)**<br>Laycan December 13/20, 2007 | |
| **10. Loading port or place (Cl. 1)**<br>1 good safe berth Shanghai, China<br>always accessible always afloat | **11. Discharging port or place (Cl. 1)**<br>1 good safe berth Maracaibo,Vene-<br>zuela, always accessible always<br>afloat |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**<br>About 350 pieces of policarbonate steel water pipes dimensions guaran-<br>tee by Charterers. See also clause 22 | |
| **13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**<br><br>See clause 35 | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**<br>See clause 35 |
| **15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)**<br><br>See clause 33 | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)**<br>**a) Laytime for loading**<br>          See clause 26<br>**b) Laytime for discharging** See clause 26<br>**c) Total laytime for loading and discharging** |
| **17. Shippers (state name and address) (Cl. 6)**<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd., Pudong New Dis-<br>trict Shanghai. PRC At: Fletcher Xi | |
| **18. Demurrage rate (loading and discharging) (Cl. 7)**<br>See clause 27 | **19. Cancelling date (Cl. 10)**<br>December 20th 2007 |
| **20. Brokerage commission and to whom payable (Cl. 14)** | |
| **21. Additional clauses covering special provisions, if agreed.**<br><br>Additional clauses 22 to 42 both inclusive to form part of this<br>Charter Party | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| **Signature (Owners)**<br>Totalmar Navigation Corp. | **Signature (Charterers)**<br>ATN Industries Inc. |
|---|---|

Printed and sold by Fr. G. Knudtzons Bogtrykkeri A/S, 55 Toldbodgade, DK-1253 Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

Totalmar Navigation Corp.

Adopted by the Documentary Committee of: General Council of British Shipping, London; the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo.

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen.

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.



**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or whose for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight**
### See clause 35
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.

Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs**
**(a) Gross Terms**
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.

If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.

Any pieces and/or packages of cargo over two tons weight, to be loaded, stowed and discharged by Charterers at their risk and expense.

The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

**(b) F.I.O. and free stowed/trimmed**
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.

The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15.)

*Indicate alternative (a) or (b), as agreed, in Box 15.

**6. Laytime**
### See clause 26
**(a) Separate laytime for loading and discharging**
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

**(b) Total laytime for loading and discharging**
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

**(c) Commencement of laytime (loading and discharging)**
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.

Time actually used before commencement of laytime shall count. Time lost in waiting for berth to count as loading or discharging time, as the case may be.

*Indicate alternative (a), (b) or (c) as agreed, in Box 16.

**7. Demurrage**
### See clause 27
Ten running days for loading and discharging at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, if required, to Merchants altogether to cover both in case of loading and discharging.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the proportion due if even have been necessitated through neglect or default of the Owners' servants (see clause 2).

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.

In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.

If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**18. War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organised body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Master shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.

(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of (2) the exercise by the Master of his right under this Clause after part of the cargo has been loaded, the Master shall be at liberty either to the discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for the Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, notwithstanding that it is contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.

(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the

## "Gencon" Charter (As Revised 1922 and 1976)

### PART II

Including "F.I.O." Alternative, etc.



RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK ABT 357 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 13 / 20 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 15 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7 DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING ORDER, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 33: COST OF LOADING AND DISCHARGE**

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

**CLAUSE 34: NEW JASON. BOTH TO BLAME ETC**

NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS**

FREIGHT USD  121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR ABOUT 357 PIECES EQUALS 29,423.19 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

| | |
|---|---|
| INTERMEDIARY BANK: | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |

Account Ultimate Beneficiary: **201389**

**CLAUSE 36 VESSEL´S DESCRIPTION**
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE

HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE PARTIES CONCERNED.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL  MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE
HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".



**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

LAY/CAN: 13TH DEC, 2007 / 20TH DEC, 2007
CARGO&QTY: ABT 357 PCS POLICARBONATE STEEL PIPES
FRT RATE: USD 121.50 PER CBM FREE IN, STWOED L/S/D / LINER OUT END OF HOOK
OTHER TERMS AND CONDITIONS AS PER CP SKALA DATED 23/11/07 AMENDED AS PER
MAIN TERMS AND LOGICAL ALTERATIONS TO RIDER CLAUSES.

STOWAGE:

NO WELDING ON HATCH COVERS POSSIBLE DUE TO TYPE OF HATCOVERS

OWNRS TECHNICAL DEPT CONFIRM CAN LOAD 20 PCS OF PIPES IN EACH HOLD NO.1
AND HOLD NO.8, I.E., TOTAL 40 PCS CAN BE LOADED ADDITIONAL.
HOLD NO.2/3/4/5/6 - 43PCS PER HOLD AND IN HOLD 7 - 42 PCS = TTL 257
ON DECK FOR NO.2/3/4/5/6/7 - 10PCS PER HATCH = TTL 60 PCS
TFORE LOADABLE QTTY IS 357 PCS.- REPEAT 357 PIPES TOTAL

**FOR OWNERS**                                 **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.                    ATN INDUSTRIES INC

**Totalmar Navigation Corp.**

# EXHIBIT 9

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-07

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V RAINBOW AT SHANGHAI CP 06/12/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 6.113 DAYS
TOTAL DEMURRAGE AT SHANGHAI 2.113 DAYS

DEMURRAGE DUE BY CHARTERERS   2.113 DAYS x US$ 70,000/DAY = US$ 147,910.00

KINDLY REMIT THE AMOUNT OF US$ 147,910.00 BY TELEGRAPHIC TRANSFER TO:

**INTERMEDIARY BANK:**        JPMORGAN CHASE NEW YORK
Address Bank:                **345 PARK AVENUE**

                             **NEW YORK – NY 10154**

ABA:                         **021000021**
SWIFT:                       **CHASUS33**

BENEFICIARY BANK:            **EBNA BANK N.V.**
ADR-BENE-BANK:               **AMACO BUILDING 36-B**
                             **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:           **0011990850**

ULTIMATE BENEFICIARY:        **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:   **201389**

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V RAINBOW AT LOAD PORT SHANGHAI DECEMBER 16 2008

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|------|------|
| ARRIVED SHANGHAI | 16/12/07 AT 08:12 HRS |
| NOR TENDERED | 16/01/08 AT 08:12 HRS |
| LOADING OPERATION BEGAN | 19/12/07 AT 12:00 HRS |
| TIME START COUNTING | 16/12/07 AT 08:12 HRS |
| COMPLETED LOADING | 22/12/07 AT 11:00 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|------|-------------|---------------|------------|------------|
| 16/12/07 Sun 08:12 | Laytime commenced | | | |
| 16/12/07 Sun 24:00 | | 0 - 15 - 44 | 0 - 15 - 44 | |
| 17/12/07 Mon 24:00 | | 1 - 00 - 00 | 1 – 00 - 00 | |
| 18/12/07 Tue 24:00 | | 1 - 00 – 00 | 1 – 00 - 00 | |
| 19/12/07 Wed 10:12 | Berthed | | | |
| 19/12/07 Wed 12:00 | Commenced loading | | | |
| 19/12/07 Wed 24:00 | | 1 – 00 – 00 | 1 – 00 - 00 | |
| 20/12/07 Thu 08:12 | On demurrage | | | |
| 20/12/07 Thu 24:00 | | 0 – 08 - 12 | 1 – 00 - 00 | 0 -15 - 44 |
| 21/12/07 Fri 24:00 | | | 1 – 00 – 00 | 1 – 00 -00 |
| 22/12/07 Sat 01:00 | Completed loading | | | |
| 22/12/07 Sat 11:00 | Completed lashing | | | |
| 22/12/07 Sat Laytime count ended | | | 0 – 11 - 00 | 0 – 11 -00 |
| 22/12/07 Sat 22:24 sailed | | | | |
| | Total | 4 – 00 – 00 | 6 – 02 –00 | 2 – 02 - 44 |
| 4.00 | 2.113 | | | |

DEMURRAGE        : 2.113 DAYS x US$ 70,000/DAY
DEMURRAGE DUE    : US$ 147,910.00

# EXHIBIT 10

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-08

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V GO STAR AT SHANGHAI CP 07/12/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 6.104 DAYS
TOTAL DEMURRAGE AT SHANGHAI 2.104 DAYS

DEMURRAGE DUE BY CHARTERERS  2.104 DAYS x US$ 70,000/DAY = US$ 147,280.00

KINDLY REMIT THE AMOUNT OF US$ 147,280.00 BY TELEGRAPHIC TRANSFER TO:

**INTERMEDIARY BANK:**   JPMORGAN CHASE NEW YORK
Address Bank:            **345 PARK AVENUE**

                         **NEW YORK – NY 10154**
ABA:                     **021000021**
SWIFT:                   **CHASUS33**

BENEFICIARY BANK:        **EBNA BANK N.V.**
ADR-BENE-BANK:           **AMACO BUILDING 36-B**
                         **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:       **0011990850**

ULTIMATE BENEFICIARY:    **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:   **201389**

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V GO STAR AT LOAD PORT SHANGHAI JAN 20 2008

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|---|---|
| ARRIVED SHANGHAI | 20/01/08 AT 10:00 HRS |
| NOR TENDERED | 20/01/08 AT 10:00 HRS |
| LOADING OPERATION BEGAN | 24/01/08 AT 20:00 HRS |
| TIME START COUNTING | 20/01/08 AT 10:00 HRS |
| COMPLETED LOADING | 26/01/08 AT 12:00 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 20/01/08 Sun 10:00 | Laytime commenced | | | |
| 20/01/08 Sun 24:00 | | 0 - 14 - 00 | 0 - 14 - 00 | |
| 21/01/08 Mon 24:00 | Waiting for berth | 1 - 00 - 00 | 1 - 00 - 00 | |
| 22/01/08 Tue 24:00 | Waiting for berth | 1 - 00 - 00 | 1 - 00 - 00 | |
| 23/01/08 Wed 24:00 | Waiting for berth | 1 - 00 - 00 | 1 - 00 - 00 | |
| 24/01/08 Thu 10:00 | On demurrage | | | |
| 24/01/08 Thu 17:50 | Berthed | | | |
| 24/01/08 Thu 20:00 | Commenced loading | | | |
| 24/01/08 Thu 24:00 | | 0 - 10 - 00 | 1 - 00 - 00 | 0  14 - 00 |
| 25/01/08 Fri 24:00 | | | 1 - 00 - 00 | 1 - 00 - 00 |
| 26/01/08 Sat 12:00 | Completed loading | | | |
| 26/01/08 Sat 12:30 | Completed lashing | | | |
| 26/01/08 Sat 12:30 | Laytime count ended | | 0 - 12 - 30 | 0 - 12 - 30 |
| 26/01/08 Sat 16:15 sailed | | | | |
| | Total | 4 - 00 - 00 / 4.00 | 6 - 02 - 30 | 2 - 02 - 30 / 2.104 |

DEMURRAGE       : 2.104 DAYS x US$ 70,000/DAY
DEMURRAGE DUE   : US$ 147,280.00

Avda. Francisco de Miranda, Centro Plaza, Torre C, Piso 18, Oficina F, Los Palos Grandes.
Caracas – Venezuela, Tels: +58-212-2868686 - Fax: +58-212-2870115, e-mail: totalmar@cantv.net

# EXHIBIT 11



**ATN INDUSTRIES, INC.**

Caracas, May 06, 2008

**Totalmar Navigation Corp., Inc.**

This city. –

```
PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA
```

Dear Sir or Madame:

The purpose of this letter is to request, in a timely fashion, compensation for the damages caused to 31 broken pipes, described as follows:  steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203) belonging to the cargo of the **ship "Skala,"** which arrived from Shanghai, China, at the Port of Maracaibo, Venezuela, on January 16, 2008, with a total of 430 pipes, as listed in the attached table.  The damages occurred during the maritime crossing.

Therefore, we request that you immediately pay us the corresponding amount as compensation for the damages that were caused.

The amount of this claim is Five Hundred Eighty-Seven Thousand Seven Hundred Thirty Dollars and Eleven Cents (US$ 587,630.11).

As there are no further issues to discuss, we remain at your disposal.

Sincerely,
[illegible signature]
Jose Martin Olivares
President



*8401 N.W. 53rd Terrace, Suite 209 • Miami, Florida 33166, U.S.A.*
*Tel: (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atind@bellsouth.net*

# THE SHIP "SKALA"

| | |
|---|---|
| **Ship:** | Skala |
| **Arrival Date:** | January 16, 2008 |
| **Total No. of Pipes:** | 430 |
| **No. of Pipes that were Damaged:** | 31 |
| **Type of Pipes** | 2,600 mm |
| **Description of Pipes:** | Steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203). |
| **Unit Cost per Pipe:** | US$ 18,955.81 |
| **Total Cost for Damaged Pipes:** | US$ 587,630.11 |

PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202  349.4180
fax    202  349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Claim for cargo damages pertaining to MV Skala dated May 6, 2008**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 26, 2008**.

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: *June 26, 2008*

Signature: _____

Marcela Diaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this ___26th___ day of ___JUNE___ 20_08_, at Washington, DC.

JAMES M. REED
Notary Public District of Columbia
My Commission expires My Commission Expires June 30, 2012
Notary Public



Caracas, May 06, 2008

**Totalmar Navigation Corp., Inc.**

This city. –



PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

Dear Sir or Madame:

The purpose of this letter is to request, in a timely fashion, compensation for the damages caused to 17 broken pipes, described as follows:  steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203) belonging to the cargo of the **ship "Rainbow,"** as listed in the attached table.  The damages occurred during the maritime crossing.

Therefore, we request that you immediately pay us the corresponding amount as compensation for the damages that were caused.

The amount of this claim is Three Hundred Twenty-two Thousand Two Hundred Forty-eight Dollars and Seventy-seven Cents (US$ 332,248.77).

As there are no further issues to discuss, we remain at your disposal.

Sincerely,
[illegible signature]
Jose Martin Olivares
President



*8401 N.W. 53ʳᵈ Terrace, Suite 209 • Miami, Florida 33166, U.S.A.*
*Tel: (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atind@bellsouth.net*

# THE SHIP "RAINBOW"

| Ship: | Rainbow |
|---|---|
| Arrival Date: | March 04, 2008 |
| Total No. of Pipes: | 357 |
| No. of Pipes that were Damaged: | 17 |
| Type of Pipes | 2,600 mm |
| Description of Pipes: | Steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203). |
| Unit Cost per Pipe: | US$ 18,955.81 |
| Total Cost for Damaged Pipes: | US$ 322,248.77 |

PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel     202 349 4180
fax    202 349 4182
email  translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Claim for cargo damages pertaining to MV Rainbow dated May 6, 2008**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 26, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: June 26, 2008

Signature: _____

Mariela Diaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this ___26th___ day of ___June___ 20 08 , at Washington, DC.

JAMES M. REED
Notary Public District of Columbia
My Commission expires: Commission Expires June 30, 2012 Public



**ATN INDUSTRIES, INC.**

Caracas, May 06, 2008



PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

**Totalmar Navigation Corp., Inc.**
This city. –

Dear Sir or Madame:

The purpose of this letter is to request, in a timely fashion, compensation for the damages caused to 13 broken pipes, described as follows:  steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,400 mm; minimum thickness: 14.50 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203) belonging to the **ship "Go Star,"** as listed in the attached table.  The damages occurred during the maritime crossing.

Therefore, we request that you immediately pay us the corresponding amount as compensation for the damages that were caused.

The amount of this claim is Two Hundred Twenty-Two Thousand Eight Dollars and Two Cents (US$222,008.02).

As there are no further issues to discuss, we remain at your disposal.

Sincerely,
[illegible signature]
Jose Martin Olivares
President



*8401 N.W. 53rd Terrace, Suite 209 • Miami, Florida 33166, U.S.A.*
*Tel: (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atind@bellsouth.net*

# THE SHIP "GO STAR"

| | |
|---|---|
| **Ship:** | Go Star |
| **Arrival Date:** | March 06, 2008 |
| **Total No. of Pipes:** | 431 |
| **No. of Pipes that were Damaged:** | 13 |
| **Type of Pipes** | 2,400 mm |
| **Description of Pipes:** | Steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,400 mm; minimum thickness: 14.50 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203). |
| **Unit Cost per Pipe:** | US$ 17,077.54 |
| **Total Cost for Damaged Pipes:** | US$ 222,008.02 |

PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel     202 349 4180
fax     202 349.4182
email   translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Claim for cargo damages pertaining to MV Go Star dated May 6, 2008,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP.** The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 26, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 26, 2008_

Signature: _____

Mariela Diaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this __26th__ day of __June__ 20_08_, at Washington, DC.

JAMES M. REED
Notary Public District of Columbia / Notary Public
My Commission expires My Commission Expires June 30, 2012



**ATN INDUSTRIES, INC.**

Caracas, May 06, 2008

PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

**Totalmar Navigation Corp., Inc.**
This city. –

Dear Sir or Madame:

The purpose of this letter is to request, in a timely fashion, compensation for the damages caused to 15 broken pipes, described as follows: steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203) belonging to the **ship "Atlantica,"** as listed in the attached table. The damages occurred during the maritime crossing.

Therefore, we request that you immediately pay us the corresponding amount as compensation for the damages that were caused.

The amount of this claim is Two Hundred Eighty-four Thousand Three Hundred Thirty-seven Dollars and Fifteen Cents (US $284,337.15).

As there are no further issues to discuss, we remain at your disposal.

Sincerely,
[illegible signature]
Jose Martin Olivares
President



*8401 N.W. 53rd Terrace, Suite 209 • Miami, Florida 33166, U.S.A.*
*Tel: (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atind@bellsouth.net*

# THE SHIP "ATLANTICA"

| | |
|---|---|
| **Ship:** | Atlantica |
| **Arrival Date:** | January 20, 2008 |
| **Total No. of Pipes:** | 435 |
| **No. of Pipes that were Damaged:** | 15 |
| **Type of Pipes** | 2,600 mm |
| **Description of Pipes:** | Steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203). |
| **Unit Cost per Pipe:** | US$ 18,955.81 |
| **Total Cost for Damaged Pipes:** | US$ 284,337.15 |

PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349 4180
fax   202 349 4182
email  translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Claim for cargo damages pertaining to MV Atlantic dated May 6, 2008,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 26, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 26, 2008_

Signature: _____

Mariela Diaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this __26th__ day of __JUNE__ 20 _08_, at Washington, DC.

JAMES M. REED
Notary Public District of Columbia
My Commission Expires June 30, 2012     _James M. Reed_ Public

My Commission expires_____



**ATN INDUSTRIES, INC.**

Caracas, May 06, 2008

**Totalmar Navigation Corp., Inc.**

This city. –



PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

Dear Sir or Madame:

The purpose of this letter is to request, in a timely fashion, compensation for the damages caused to 16 broken pipes, described as follows: steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203) belonging to the **ship "Majartta,"** as listed in the attached table. The damages occurred during the maritime crossing.

Therefore, we request that you immediately pay us the corresponding amount as compensation for the damages that were caused.

The amount of this claim is Three Hundred Three Thousand Two Hundred Ninety-two Dollars and Ninety-six Cents (US $303,292.96).

As there are no further issues to discuss, we remain at your disposal.

Sincerely,
[illegible signature]
Jose Martin Olivares
President



*8401 N.W. 53rd Terrace, Suite 209 • Miami, Florida 33166, U.S.A.*
*Tel: (305) 468-8600 • Fax (305) 468-9080*
*Caracas Office: Tel.: (58-212) 959.6763 Fax: (58-212) 959.8418*
*e-mail: atind@bellsouth.net*

# THE SHIP "MAJARTTA"

| | |
|---|---|
| **Ship:** | Majarrta |
| **Arrival Date:** | February 25, 2008 |
| **Total No. of Pipes:** | 485 |
| **No. of Pipes that were Damaged:** | 16 |
| **Type of Pipes** | 2,600 mm |
| **Description of Pipes:** | Steel alloy pipes with beveled ends for soldering, manufactured per AWWA C-200 specifications or equivalent, made of materials with metallurgical characteristics similar to those for ASTM A-36 or API 5L-B Specifications; with a nominal diameter of 2,600 mm; minimum thickness: 15.88 mm; nominal length: 12m.; exterior coating: coal tar epoxy-polyamide with a thickness of 16 mils; interior coating: inert coal tar epoxy, with a total thickness of 16 mils; or coal tar enamel (AWWA C-203). |
| **Unit Cost per Pipe:** | US$ 18,955.81 |
| **Total Cost for Damaged Pipes:** | US$ 303,292.96 |

PEOPLE'S MINISTRY FOR INTERNAL AFFAIRS AND JUSTICE
44TH NOTARY PUBLIC FOR THE
MUNICIPALITY OF LIBERTADOR

BOLIVARIAN REPUBLIC OF VENEZUELA

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D C 20006

tel    202 349.4126
fax    202 349.4182
email  translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Claim for cargo damages pertaining to MV Majartta dated May 6, 2008**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 26, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _____June 26, 2008_____

Signature: _____
Mariela Diaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this __26th__ day of __JUNE__ 20 08 , at Washington, DC.

JAMES M. REED
Notary Public District of Columbia    Notary Public
My Commission expires My Commission Expires June 30, 2012

# EXHIBIT 12

M.V. S KALA
DECEMBER 7, 2007

### LETTER OF PROTEST

THRU:  PENAVICO SHANGHAI PUDONG CO., LTD.

TO: SHANGHAI JIFANG STEEL PIPE CO, LTD
CC: TELEDATA MARINE SOLUTIONS LTD
CC: COSMOS VENTURES HELLAS

SUBJECT:  PROTEST AGAINST DAMAGED CARGO STEEL PIPES, REG: MV
SKALA/TOTALMAR-CP DD 29/11/07

DEAR SIR,

THIS IS TO BRING TO YOUR ATTENTION THAT CARGO WAS
LOADED/SHORED/STOWED AS PER SHIPPER/STEVEDORES PLAN AND NOT AS
RECOMMENDED BY THE MASTER.

AFTER COMPLETION OF THE HOLD LOADING, INSPECTION WAS CARRIED OUT IN
THE HOLDS / DECK AND THE INSPECTION REPORT IS AS FOLLOWS:

FOLLOWING DAMAGES OBSERVED, AS FAR AS WITHIN THE AVAILABLE ACCESS
TO THE PIPES WITHIN THE HOLDS.

IN CH NO:2  10 PCS ( NO'S 207025-0318; 207025-0384; 207025-1072; 207025-
0003; 207025-0347; 207025-0168; 207025-1079; 207025-0200; 207025-0240;
207025-0216.)
IN CH NO:3  09 PCS ( NO'S 207025-0186; 207025-0220; 207025-1272; 207025-
0176; 207025-1244; 207025-0341; 207025-0027; 207025-0359; 207025-1113)
IN CH. NO:4 10 PCS ( NO'S 207025-1087; 207025-0222; 207025-0190; 207025-
0638; 207025-0313; 207025-0541; 207025-0012; 207025-1055; 207025-0385;
207025-0367.)

NATURE OF PIPES DAMAGES:
- TAG WELDED REINFORCEMENTS INSIDE THE PIPES AT BOTH ENDS ARE
  BROKEN / BENT
- STEEL PIPE SHAPE OUT OF ROUND / OVALIZED
- RUSTED EDGES AT BOTH ENDS OF THE PIPE CARGO.

SHIP DOES NOT GUARANTEE OTHER PIPES, WHOSE REINFORCEMENT TAG
WELDING, FEAR MAY BREAK DURING THE PASSAGE OR WHICH MAY HAVE
BROKEN & NOT OBSERVED DUE TO INACCESSIBILITY IN THE HOLDS DURING &
COMPLETION OF THE LOADING IN ALL HOLDS.

FURTHERMORE VESSEL WAS NOT GIVEN ANY INFORMATION ON THE PROCEDURE
FOR THE PRESERVATION OF THE CARGO ON BOARD, DESPITE REPEATED
REQUESTS AND THUS SHIP / OWNERS NOT RESPONSIBLE FOR THE
PRESERVATION OF THE CARGO ON BOARD THE SHIP.

I HEREBY TENDER THIS LETTER OF PROTEST THAT THE MASTER/OWNERS HOLD
SHIPPER/STEVEDORES FULLY RESPONSIBLE FOR ANY CLAIMS ARISING AGAINST
DAMAGES TO STEEL PIPES.

RESPECTFULLY YOURS,

CAPT. MERCANTE D. GAPASIN
MASTER, M.V. S KALA

AS PENAVICO AGENT

# EXHIBIT 13

5/6

 上海天衡保险公估有限公司
Teamhead Surveyors Co., Ltd. 

QR07-04-A/0-05

## CARGO CONDITION REPORT

<u>We, the undersigned surveyor</u>, acting on behalf of ___Owners & her P & I Club___,
carried out the Pre-Loading Survey of__Steel cargos__ on board M.V." ___GO STAR___ ".

The defects of the cargo were found as follows:

B/L NO. ABS1054SHA001 SPIRAL SUBMERGED ARC WELDED STEEL PIPES:
1. Stowed on open yard without any shelter before shipment.
2. The ends of the pipes were rusty.
3. 3 pieces with the surface of the cargo scratched slightly.
4. Cargo carried on deck without liability for loss or damage howsoever caused and at the charterers' and shipper's risk and expenses.

B/L NO. ABS1054SHA001 SPIRAL SUBMERGED ARC WELDED STEEL PIPES:
1. Stowed on open yard without any shelter before shipment.
2. The ends of the pipes were rusty.
3. 17 pieces of pipe with the ends deformed slight. _(ENFORCEMENT WELDER BOTH FULES BENT)_
4. 6 pieces of pipe with the both ends deformed. _(ALL LENGHT OF PIPE TWISTED)_
5. 20 pieces with the surface of the cargo scratched slightly

### GENERAL REMARKS FOR ALL ABOVE:
1. Charterer loaded and stowed.
2. Quality and weight as per shipper's declaration.
3. Quantity as per SHOST tally.

We recommended the Captain and Chief Officer to put remark on the Mate's Receipt reflecting above condition of the cargo and clause on the Bill of Lading.

Master/Chief Mate

Surveyor
Date:___ 2008.0____

1 of 1

Address: Rm.2106, Dragon Pearl Plaza, No.2123, Pudong Ave. Shanghai, 200135, P. R. China
Tel: +86-21-5860 5151  5860 5252  Fax: +86-21-5860 5353  E-mail: office@teamhead.cn

 上海天衡保险公估有限公司
Teamhead Surveyors Co., Ltd. 

QR07-04-A/0-05

## CARGO CONDITION REPORT

<u>We, the undersigned surveyor</u>, acting on behalf of _ship's owner and her P&I club_
carried out the Pre-Loading Survey of _Steel Product_ on board
M.V." _ATLANTICA_ ".

The defects of the cargo were found as follows:

1. S/O NO. SP80070.
A. OPEN YARD STORAGE WITHOUT COVERING
B. EACH PC WITH END RUST
C. SCRATCH ON SURFACE. AFFECTED 21 PCS
D. SOME STEEL STIFFENERS OF PIPE BENT / BROKEN
E. 8 PCS DECK STORAGE AT SHIPPER'S RISK
F. EDGE OF PIPE BENT LOCALLY. AFFECTED 4 PCS
G. QUANTITY AS PER SHOST TALLY
H. QUALITY AND WEIGHT AS PER SHIPPER

We recommended the Captain and Chief Officer to put remark on the Mate's Receipt
reflecting above condition of the cargo and clause on the Bill of Lading.

Master/Chief Mate

Surveyor
Date

Address: Rm.2106, Dragon Pearl Plaza, No.2123, Pudong Ave. Shanghai, 200135, P. R. China
Tel: +86-21-5860 5151   5860 5252   Fax: +86-21-5860 5353   E-mail: office@teamhead.cn

PAGE 2

 International P & I Services (Shanghai) Ltd.
Independent Marine Surveyors

## CARGO CONDITION REPORT

We, the undersigned surveyor, acting on behalf of Ship owners of M/V "Rainbow" and her P&I Club, carried out the Pre-loading Survey of Steel Pipes on board M.V. "Rainbow" Voyage No. V26 at The Baoshan Terminal, Port of Shanghai, P. R. China. The defects of the cargo were found as follows:

| PORT OF DISCHARGE: MARACAIBO | |
|---|---|
| S/O NUMBER | DESCRIPTION |
| SP80081 | 357PKG, SPIRAL SUBMERGED ARC WELDED STEEL PIPES |

1) Stored at open yard without coverage before shipment.

2) All steel pipes with rust on the edges before shipment.

3) All steel pipes with no any protect on the ends.

4) 158 pkgs pipes in wet condition before shipment.

5) 1-2 rope bands loosen before shipment, affected 83 pkgs.

6) 65 pkgs pipes with scratched before shipment.

7) Few pkg pipe with salt water inside before shipment.

8) Quantity as per SHOST tally, weight as per shipper, quality unknown.

We recommended the Master and Chief Officer to superimpose the remarks on the Mate's Receipt reflecting above condition of the cargo and clause on the Bill of Lading.

International P & I Services (Shanghai) Ltd.
Independent Marine Surveyors

Master/Chief Officer

Date: 22/12/07

Surveyor

Date: 2007-12-22

Address: Room 1001, Shanghai Mansion, No.1478, Pudong Avenue, Shanghai, P.R. China
Tel: +86 -21-58211393,    Fax: +86 -21-58211356    E-Mail: ipis_surveyors@126.com

*Page: 1*

1) Shippers load, stow and count.
2) Said to weigh. said to be. Quality unknown.
3) Stowed at open yard.
4) Wet before shipment.
5) Pipe ends of all pipes rusty.
6) Pipe ends of all pipes have no protective coverings.
7) Pipes tested positive for presence of salt.
8) Most pipes have stains like painting/reconditioning.
9) Most of the pipes have scratch marks.
10) Some pipes external coating has white stains.
11) Cargo on deck loaded at shippers risk.
12) Pipes loaded without any protection from adjacent pipes liable to chaffe.
13) Rope bands of all pipes loose.
14) STOWAGE, LASHING & SECURING ARRANGED BY SHIPPERS STEVEDORE
    AND LASHING GANG.

```
┌─────────────────────────┐
│  M.V.  RAINBOW          │
│                         │
│     MASTER              │
└─────────────────────────┘
```

30/12 2007 12:23 FAX                                                                ☑009/019

Dec 30 07 09:56a      jinfei                    00862165828401                      P.8

 # GARDNER SURVEYING CO., LTD.

### MARINE SURVEYORS & CONSULTANTS
### SHIP & CARGO SURVEYORS

## STEEL CARGO CONDITION REPORT
### M.V "MARJATTA P" LOADING AT SHANGHAI PORT, CHINA

### DISCHARGING PORT OF MARACAIBO

| S/O No. | Cargo Description | Exception Noted |
|---------|-------------------|-----------------|
| SP80082 | Spiral Submerged Arc Welded Steel Pipes | 1. Quantity by SHOST tally, weight by shipper, quality and contents unknown.<br>2. All steel pipes stacked in open storage yard without covering and wet stained before shipment.<br>3. About 10 pieces steel pipe paint lost and slightly rust at both ends.<br>4. About 4 pieces steel pipe protective nylon ropes loosen or missing. |
| SP80083 | Spiral Submerged Arc Welded Steel Pipes | 1. Quantity by SHOST tally, weight by shipper, quality and contents unknown.<br>2. All steel pipes stacked in open storage yard without covering and wet stained before shipment.<br>3. About 32 pieces steel pipe paint lost and slightly rust at both ends.<br>4. 3 pieces steel pipe (No.1620-1504/ No.1539-1505-1507/ No.2070250338) slightly dent damage in 1~2 places during loading.<br>5. About 6 pieces steel pipe protective nylon ropes loosen or missing.<br>6. About 14 pieces steel pipe's protective struts deformed/ open.<br>7. 1 piece steel pipe scratched on surface during loading. |

Master of M.V. "MARJATTA P"                    Surveyor of Gardner
                                               Surveying Co., Ltd.

                        Date: 28/12/2007

                                               Shanghai Port, China

Page 1

MV MARJATTA P.    PORT OF : SHANGHAI
MALTA        DATE: 27TH DECEMBER 2007

### LETTER OF PROTEST FOR DAMAGE CARGO

TO:SHIPPERS/STEVEDORES

Please be informed that today on 27th of December 2007 and after inspection of the
cargo in No.2 c/hold , 2 pieces of steel pipes were found with slightly dents in 1-2 places.
The above damage on the pipes caused by Stevedores during loading operation.
Numbers of damaged pipes : 1620-1504 & 1539-1505-1507

Master/Owners/main charterers/Sub charterers  have not any responsibility for the
above  damaged pipes in No.2 c/hold.

Note: Stevedore's company ,Shippers and Representative of cargo receivers
   Refused to sign the above letter of protest .

Attached  Copies : Photos of Damaged pipes and cargo condition report

Song as agent.

**CHALIKIAS THEODOROS
MASTER**

# EXHIBIT 14

CODE NAME: "CONGENBILL". EDITION 1994

Page 1

| Shipper | |
|---|---|
| SHANGHAI JIAFANG STEEL PIPES CO.,LTD | **BILL OF LADING** |
| NO.818 JINHANG ROAD,PUDONG NEW DISTRICT SHANGHAI CHINA | B/L No. **SP80081** |

**Shipper**

SHANGHAI JIAFANG STEEL PIPES CO.,LTD

NO.818 JINHANG ROAD,PUDONG NEW DISTRICT SHANGHAI CHINA

**Consignee**

TO ORDER OF

MINISTERIO DEL PODER POPULAR PARA EL

AMBIENTECENTRO SIMON BOLIVAR,CARACAS,1010,

VENEZUELA

**Notify address**

ATN INDUSTRIES'S INC.

TEL:011 58 414 259 6860/011 58 212 959 5639

**CARRIER:**

| Vessel | Port of loading |
|---|---|
| RAINBOW V.26 | SHANGHAI, CHINA |

**Port of discharge**

MARACAIBO,VENEZUELA

**ORIGINAL**

| Shipper's description of goods | | Gross weight | | |
|---|---|---|---|---|
| SHIPPING MARKS: | 357PACKAGES | 4407400 | KGS | 29423.94CBM |
| DESTINATION:MARACAIBO | SPIRAL SUBMERGED ARC WELDED | | | |
| SERIAL NO. OF STEEL PIPES | STEEL PIPES | | | |
| WEIGHT: | (OD:2600 MILLIMETERS | | | |
| JIAFANG | THICKNESS: 15.88 MILLIMETERS | | | |
| MADE IN CHINA | LENGTH: 40 FT/12.192 METERS | | | |
| | STEEL STANDARD:API 5L B) | | | |

REMARK:

1) SHIPPERS LOAD,STOW, AND COUNT. 2)SAID TO WEIGH, SAID TO BE QUALITY UNIKNOW. 3) STOWED AT OPEN YARD. 4) WET BEFORE SHIPMENT. 5) PIPE ENDS OF ALL PIPES RUSTY. 6) PIPE ENDS OF ALL PIPES HAVE NO PROTECTIVE COVERINGS. 7)PIPES TESTED POSITIVE FOR PRESENCE OF SALT. 8)MOST PIPES HAVE STAINS LIKE PAINTING/RECONDITIONING. 9)MOST OF THE PIPES HAVE SCRATCH MARKS. 10)SOME PIPES EXTRERNAL COATING HAS WHITE STAINS. 11) CARGO ON DECK LOADED AT SHIPPERS RISK. 12) PIPES LOADED WITHOUT ANY PROTECTION FROM ADJACENT PIPES LIABLE TO CHAFFE. 13) ROPE BANDS OF ALL PIPES LOOSE. 14) STOWAGE, LASHING, SECURING ARRANGED BY SHIPPERS STEVEDORES AND LASHING GANG.

IN TERMS OF CLAUSE 22 OF THE RELEVANT TIME CHARTER PARTY BETWEEN OWNERS, THE SANKO STEMAHIP CO LTD TOKYO AND CHARTERERS, TOTALMAR NAV CORP., PANAMA, MASTER AND OWNERS HEREBY, AND WITHOUT PREJUDICE, PLACE WHOMEVER MAY BE CONCERNED, THAT MASTER AND OWNERS RESERVE THEIR RIGHTS TO CLAIM DAMAGES FOR BREACH OF CONTRACT BY WAY OF DEADFREIGHT FOR CARGO SHORTSHIPPED FROM THE PORT OF SHANGHAI ON THIS BILL OF LADING

SAY THREE HUNDRED FIFTY-SEVEN PACKAGES ONLY.

( of which SIXTY-FIVE shipped on deck at Charterers', Shippers' and Receivers' risk ; Expenses and responsibility, without liability on the part of the vessel or her owners for any loss, damage, expenses or delay howsoever caused)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated 07TH DEC 2007.... | SHIPPED at the Port of loading in apparent good order and Condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods Specified above. Weight, measure, quality, quantity, condition, contents and value unknown. |
| FREIGHT ADVANCE. Received on account of freight: | IN WITNESS whereof Master or Agent of the said Vessel has signed the number of Bill of Lading indicated below all tenor and date, any one of which being accomplished the others shall be void. |
| Time used loading ...................... days ............ hours. | **FOR CONDITIONS OF CARRIAGE SEE OVERLEAF** |
| Freight payable at FREIGHT COLLECT | Place and date of issue SHANGHAI,CHINA, 22ND DEC 2007 |
| Number of original Be/l THREE | Signed SINHR MARINE SHIPPING AGENCY SHANGHAI COMPANY LTD.(G) 徐慧涵 AS AGENT(S) FOR THE CARRIER NAMED ABOVE AS AGENT FOR AND ON BEHALF OF MASTER M/V RAINBOW |

CODE NAME: "CONEGENBILL" EDITION 1994

**Shipper**

SHANGHAI JIAFANG STEEL PIPES CO.,LTD

NO.818 JINHANG ROAD,PUDONG NEW DISTRICT SHANGHAI

CHINA

**Consignee**

CONSORCIO PENTAMAT, C.A.

AV. LA ESTANCIA,C.C.C.T., TORRE A, PISO 8,OFICINA

808, CHUAO,   CARACAS, VENEZUELA

PHONE 58-212-9592131 ATT ANTONIO TIRADO

**Notify address**

ATN INDUSTRIES'S INC.

TEL:011 58 414 259 6860/011 58 212 959 5639

**BILL OF LADING**   B/L No.

TO BE USED WITH CHARTER-PARTIES

Reference No.

B/L No.   **ABS1054SHA001**

**ORIGINAL**

| Vessel | Port of loading |
|---|---|
| GO STAR V.1054 | SHANGHAI, CHINA |

**Port of discharge**

MARACAIBO,VENEZUELA

**Shipper's description of goods**                                                 Gross weight

| | | |
|---|---|---|
| SHIPPING MARKS: | 31PACKAGES | _ 382710 KGS    2555.02CBM |
| DESTINATION:MARACAIBO | SPIRAL SUBMERGED ARC WELDED STEEL PIPES | |
| SERIAL NO. OF STEEL PIPES | (OD:2600 MILLIMETERS | |
| WEIGHT: | THICKNESS: 15.88 MILLIMETERS | |
| JIAFANG | LENGTH: 40 FT/12.192 METERS | |
| MADE IN CHINA | STEEL STANDARD:API 5L B) | |

ON BOARD

2 6 JAN 2008

Remarks:  1. charterer loaded and stowed,quantity as per shost tally,quality and weight as per shipper's declaration.

2. Stowed on open yard without any shelter before shipment.        3. The ends of the pipes were rusty.

4. 3 pieces with the surface of the cargo scratched slightly.

5. Cargo carried on deck without liability for loss or damage howsoever caused and at the charterers' and shipper's

Risk and expenses.

SAY THIRTY-ONE   PACKAGES ONLY.

(Of which **thirty-one pcs shipped** deck at Shipper's risk the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY dated ......07.TH. DECEMBER 2007.........................

FREIGHT ADVANCE.
Received on account of freight.

..................................................................................

Time used for loading ................................days .................................... hours.

**SHIPPED**   at the Port of loading in apparent good order and
condition on board the Vessel for carriage to the port
of Discharge or so near thereto as she may safely get the goods specified
above.
Weight, measure, quality, quantity, condition, contents and value
Unknown.
IN WITNESS  where of the Master or Agent of the said Vessel has signed
the number of Bills of Lading indicated below all of this tenor and date,
any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| **AS PER CP** | SHANGHAI,CHINA, 2 6 JAN 2008 |
| Number of original Bs/L | Signature |
| **THREE** | 上海远东物流国际货运代理有限公司 |
| | AS AGENT FOR AND ON BEHALF |
| | OF MASTER M/V GO STAR |

Printed and sold by
Fr. G. Knudzons Bogtrykkeri A/S, 55 Toldbodgade, Dk-1253 Copenhagen k.
Telefax 45 33 93 1184
by authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

GENERAL MANAGER

# EXHIBIT 15

