UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOTALMAR NAVIGATION CORP.

                    Plaintiff,

    -against-

ATN INDUSTRIES INC.,

            Defendant

ECF CASE
08 CIV 1659 (HB)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE OR REDUCE MARITIME ATTACHMENT AND FOR COUNTER-SECURITY, AND IN SUPPORT OF ITS CROSS-MOTION THAT THE COURT ORDER THE FIRST CHOSEN ARBITRATION PANEL TO DETERMINE WHETHER THE DISPUTES SHALL BE CONSOLIDATED**

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

Of Counsel
Rahul Wanchoo

## TABLE OF CONTENTS

**TABLE OF CONTENTS**………………………………………………… ii

**TABLE OF AUTHORITIES**……………………………………….. iv

**PRELIMINARY STATEMENT**…………………………………… 1

**FACTS**……………………………………………………….. 4

**ARGUMENT**………………………………………………….. 6

**POINT -1**……………………………………………………… 6

PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER
SUPPLEMENTAL ADMIRALTY RULE B AND E(4)(F)………………………... 6

    1.  Totalmar Has Filed an Affidavit with Its Complaint Affirming That ATN
       Cannot be Found Within the District…………………………………….. 10

    2.  Totalmar Has Established Its Prima Facie Claim for Dead Freight…............ 10

    3.  Totalmar Has Not Abused the Ex Parte Attachment Proceedings………….. 11

    4.  Totalmar's Security for Its Dead Freight and Demurrage Claims Should    12
       Not Be Reduced…………………………………………………...

**POINT – II**……………………………………………………… 13

COUNTER-SECURITY IS NOT WARRANTED BECAUSE DEFENDANT'S
COUNTERCLAIMS ARE FRIVOLOUS AND CLEARLY LACKING IN
MERIT……………………………………………………………. 13

    A.     The Standard of Law……………………………………….. 13

    1.  ATN Has Failed To Allege Prima Facie Valid Counterclaims, And In So
       Much As They Have Been Properly Alleged, Which is Denied, They Are
       Entirely Frivolous………………………………………………. 15

**POINT – III**…………………………………………………… 19

AT MOST, DEFENDANT IS ONLY ENTITLED TO RECIPROCAL
SECURITY………………………………………………………. 19

**POINT – IV**…………………………………………………... 20

COUNTER-SECURITY IS NOT WARRANTED BECAUSE PLAINTIFF IS
FINANCIALLY UNABLE TO POST SECURITY....................................    20

**POINT- V**...................................................................................    21

THE COURT SHOULD COMPEL ATN TO PROCEED TO ARBITRATION
FORTHWITH.................................................................................    21

**POINT – VI**.................................................................................    23

THE COURT SHOULD ORDER THE FIRST ARBITRATION PANEL TO
DETERMINE WHETHER THE DISPUTES SHALL BE CONSOLIDATED
BEFORE THAT PANEL....................................................................    23

**CONCLUSION**.............................................................................    24

**TABLE OF AUTHORITIES**

Afram Lines Int'l Inc. v. M/V CAPETAN YIANNIS, 905 F.2d 347, 349 (11th
Cir. 1995)................................................................................  14, 20

Aqua Stoli Shipping Ltd. v. Gardner Smith, 460 F.3d 434 (2d Cir.
2006)......................................................................................  2, 7, 8, 9, 22

Boland Marine & Manufacturing Co. M/V BRIGHT FIELD, Civ A.97-3097,
1999 WL 172940 (E.D. La. Mar 26, 1999)...........................................  20

Compania Sudamericana de Vapores v. Sinochem Tianjan Co., 2007 U.S.
Dist. LEXIS 24737 (2007).............................................................  12

Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A. 06-Civ-15299
(PKL) (S.D.N.Y. February 1\2007)...................................................  19, 20

Expert Diesel, Inc. v. Yacht FISHIN FOOL, 627 F.Supp. 432 (S.D. Fla.
1986).....................................................................................  16

Government of United Kingdom of Great Britain v. Boeing Co., 998 F.2d 68
(2d Cir. 1993)............................................................................  23

Hartford Accident & Indemnity Co. v. Swiss Reinsurance America Corp., 246
F.3d 219 (2d Cir. 2001).................................................................  23

McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858
F.2d 825 (2d Cir. 1988).................................................................  24

North Offshore A.S. v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS
87648......................................................................................  3

Result Shipping Co. v. Ferruzi Trading, USA, 56 F.3d 394 (2d
Cir.1995)..................................................................................  3, 14, 20

Re the Matter of Arbitration between Allstate Ins. Co. and Global Reins. Corp.
U.S., 2006 U.S. Dist. LEXIS 56701(S.D.N.Y., August 2006).....................  23, 24

Thypin Steel Co. v. Certain Bills of Lading, 1996 U.S. Dist. LEXIS 5909
(S.D.N.Y. 1996).........................................................................  12

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870
(S.D.N.Y. 2006).........................................................................  8

Titan Navigation Inc., v.Timsco, Inc., 808 F.2d 400, 403 (5th Cir.
1987)......................................................................................  14, 15, 20

Trinidad Foundry & Fabricating Ltd. v. M/V KAS CAMILLA, 776 F. Supp.
1555, 1558 ( S.D.Fla. 1991)……………………………………………….. 14, 16

U.S. Maritime Services Inc.v. Trade Ventures Inc., 1998 U.S. Dist. LEXIS
10608 (E.D. La. July 8, 1998)………………………………………………... 17

Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat
Co., 23 U.S. 629, 632-36 (1924)……………………………………………….. 14, 21

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir.
2002)……………………………………………………………………………. 7

Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F. Supp. 2d 305 (S.D.N.Y.
2004)……………………………………………………………………………. 15

**STATUTES and RULES**

Fed. R, Civ. P., Supplemental Rules for Certain Admiralty and Maritime
Claims, Rule B

Fed. R, Civ. P., Supplemental Rules for Certain Admiralty and Maritime
Claims, Rule E(4)(f)

**OTHER AUTHORITIES**

7A James W. Moore et al,
        MOORE'S FEDERAL PRACTICES § (E.15) at E-756 (2d ed. 1995)

Plaintiff, Totalmar Navigation Corp. (hereinafter "Totalmar"), by its undersigned counsel, Law Offices of Rahul Wanchoo, respectfully submits the within Memorandum of Law and the accompanying declarations of Rahul Wanchoo ("Wanchoo Decl.") and Reyes Hernandez ("Hernandez Decl.") as a consolidated opposition to the Motion to Vacate Maritime Attachment and for Counter-Security and to compel Arbitration filed by the Defendant, ATN Industries, Inc. (hereinafter "ATN"), and in support of its cross-motion that the Court order an arbitration panel to determine whether the five disputes shall be consolidated.

## PRELIMINARY STATEMENT

Rather than filing one consolidated motion, ATN has burdened this Court by filing three separate motions returnable on the same date. These motions have been filed by the law firm of Hogan & Hartson, LLP. However, Hogan & Hartson has not filed a notice of appearance on behalf of ATN nor has it filed a substitution as counsel. According to the Court's docket, a Notice of Appearance was filed by Mr. Carl E. Person, as counsel for ATN on March 6, 2008. Wanchoo Decl., Ex. 4. In the circumstances, Totalmar respectfully submit that Hogan & Hartson is not entitled to make these motions. Even if the Court permits Hogan & Hartson to file these three motions, Totalmar submits that ATN's motions are entirely frivolous and have absolutely no merit.

ATN's motion to vacate the attachment is premised on the fact that Totalmar failed to file an affidavit with its complaint averring that ATN cannot be found within this District. In fact, Totalmar did submit an affidavit of its counsel, Mr. Rahul Wanchoo along with its Verified Complaint which affirmed that Totalmar could not be found within this district. See Wanchoo Decl. Ex. 2. Considering that counsel for the parties had been talking to each other just prior to ATN's filing of this motion, a phone call or an email from ATN's counsel to the undersigned

1

would have confirmed the fact that Totalmar had submitted an affidavit in support of its Rule B Application and, hence, ATN's motion could have been avoided. Totalmar respectfully submits that its attachment should be sustained because this Court validly issued the attachment order pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure and in accordance with the United States Court of Appeals for the Second Circuit's binding decision in Aqua Stoli Shipping Ltd. v. Gardner Smith, 460 F.3d 434 (2d Cir. 2006). The attachment order was proper because (1) Totalmar has a valid *prima facie* admiralty claim against ATN arising from a breach of charter party contracts; (2) ATN cannot be found within the Southern District of New York; (3) ATN has a property interest in funds attached in the District; and (4) there is no statutory or maritime law bar to the attachment. Id. at 445. Accordingly, for the reasons set forth at length herein, Totalmar has satisfied its burden under Supplemental Admiralty Rule E(4)(f) to show cause why the attachment should not be vacated.

Similarly, ATN's motion for counter-security should be denied because its counterclaims are frivolous and totally lacking in merit. ATN is trying to "game" the system with its motion for counter-security. ATN would have the Court award it over $1,719,517.00 in counter-security on highly speculative and frivolous claims, the sole purpose of which is to vex or harass Totalmar. By raising large (yet legally and factually unsound) counterclaims, ATN is attempting to thwart Totalmar's attachment. In the context of a Rule E(7) application, a grant of counter-security is far from automatic. Rule E(7) limits a counter-security application to counterclaims arising from the same transaction or occurrence that is the subject of the original action. Furthermore, outside of the requirements of Rule E(7), as confirmed by the Second Circuit Court of Appeals, the Court has considerable discretion in deciding whether to order counter-security. In exercising this discretion the Court should be guided by two principles; placing the parties on equal footing

and preventing the imposition of such burdensome costs on a plaintiff that it might prevent it from bringing suit. See Result Shipping Co. v. Ferruzi Trading, USA, 56 F. 3d 394 (2d Cir. 1995); see also North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648, *4 (November 2007). In addition, the Court has the discretion to deny a counter-security application for cause shown, including where the counterclaims is frivolous, speculative, and/or clearly lacking in merit or where the plaintiff financially unable to post counter-security. This principle has been reaffirmed recently in North Offshore v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648, *7(November 2007). In North Offshore, Judge Stein denied an application for counter-security under Rule E(7) stating that the defendant's claim appeared to be frivolous on its face. North Offshore, *supra*. This is true in the present case where ATN notified Totalmar of the alleged cargo damage some **four months** after the cargo had been discharged from the vessel and shortly prior to filing this motion. See Hernandez Decl. ¶ 10. Moreover, there was pre-shipment damage to the pipes at the time of loading which was noted on the bills of lading. Thus, ATN was aware that the cargo it had purchased at Shanghai had pre-shipment damage for which it is now asserting a counterclaim against Totalmar. Accordingly, as ATN has failed to meet the requirement of Rule E(7) and/or good cause has been shown, ATN's motion for counter-security should be denied.

Finally, ATN has filed a motion to stay proceedings and to compel arbitration. Totalmar fails to understand the purpose of this motion as Totalmar was the first party to demand arbitration against ATN, and appointed Mr. A.J. Siciliano as its arbitrator. See Wanchoo Decl. Ex. 9-1. While both ATN and Totalmar had agreed in principle to try and consolidate the five charter party disputes into a single New York based arbitration, ATN now wants its disputes to be resolved in five separate arbitrations. See Wanchoo Decl. Ex. 5. Apart from increasing the

3

costs of the arbitration proceedings and burdening Totalmar with those additional costs,

Totalmar fails to understand ATN's demand for five separate arbitration proceedings with five

separate panels. Be that as it may, Totalmar respectfully requests that this Court compel ATN to

proceed to arbitration forthwith and grant Totalmar's cross-motion and order the first chosen

arbitration panel to determine whether the five charter party disputes shall be consolidated.   For

the reasons set forth herein, ATN's motions should be denied and Totalmar's cross-motion

should be granted.

## FACTS

The background facts are set forth in full in the accompanying declaration of Reyes

Hernandez.  However, a short summary of facts germane to this application is provided below.

In November-December 2007, the parties entered into five separate charter party

agreements by which ATN chartered vessels from Totalmar for the transportation of steel pipes

from Shanghai, China to Port of Maracaibo, Venezuela.  The charter party agreements provided

that ATN would stow, lash, secure, and dunnage the cargo at the port of loading free of expense

to Totalmar and that any cargo loaded on deck was to be at ATN's time, risk and expense. See

Hernandez Decl. ¶ 4, Ex. 1, Clause 33. The charter parties also provided that ATN was to

guarantee the cubic capacity of each pipe and that freight was to be paid on the basis of the

minimum pieces of pipes to be loaded on the vessel by ATN.  Hernandez Decl. ¶  4.  Totalmar

incurred dead freight on two of the vessels, M.V. SKALA and M.V. GO STAR, because ATN

failed to provide the minimum number of pipes and/or the minimum pipe dimensions guaranteed

under the charter which resulted in the dead freight. See Hernandez Decl. ¶4 – 5. Totalmar also

incurred demurrage on three of the vessels as a result of delay during loading at the port of

Shanghai.  See Hernandez Decl. ¶ 6 – 8. Totalmar submitted its dead freight and demurrage

invoices to ATN with respect to these five vessels between December 2007 and January 2008. Notwithstanding the fact that ATN is liable under the terms of the charter parties for the dead freight and demurrage incurred on these five vessels, ATN has refused to pay the claims to date.

On or about February 19, 2008, Totalmar filed an action in the Southern District of New York in connection with its claims against ATN for breach of the charter party agreements and sought security from ATN for its claims in the amount of $1,713,819.60 inclusive of interest, costs and reasonable attorney's fees. See Wanchoo Decl. ¶ 3. Ex.1. Pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B"), Totalmar obtained an Ex Parte Order for Maritime Attachment And Garnishment from this Court on February 19, 2008 and directing the Clerk of this Court to issue a Process of Maritime Attachment And Garnishment ("PMAG") against any funds or other assets of ATN found within this judicial district. In support of Totalmar's application for the Rule B attachment, counsel for Totalmar submitted an affidavit which affirms, *inter alia*, that an online search of the New York Department of State did not find any listings for ATN, and that defendant cannot be found within the district. Wanchoo Decl. Ex. 2 and 3.

On or about March 5, 2008, Mr. Carl E. Person filed an appearance as counsel on behalf of the Defendant, ATN Industries Inc. Wanchoo Decl. Ex. 4. On or about March 20, 2008, Mr. Mark A. Kornfeld of Hogan & Hartson's New York office contacted the undersigned and informed him that his firm would be representing ATN in this action. The parties also agreed to stay ATN's time to answer the complaint while the method and procedures for the arbitration were being discussed and agreed in principle to try and consolidate all four disputes into a single, New York based arbitration. Finally, Mr. Kornfeld agreed that there was no reason for Hogan & Hartson to substitute as counsel or otherwise appear and "that can and will be done when the

security and process issues are finalized in the coming days/weeks etc." Wanchoo Decl. Ex. 5.

Between March 10, and June 23, 2008 Totalmar restrained ATN's property at various New York

banks and pursuant to Local Admiralty Rule B.2 promptly sent ATN three notices of attachment.

See Wanchoo Decl. Ex. 6. As of June 24, 2008, Totalmar was secured up to the full amount of

its claim in the amount of $1,713,819.60 inclusive of interest, costs and attorney's fees. On that

day Totalmar sent a Cease and Desist Notice to all banks advising them that Totalmar was fully

secured and that banks should cease and desist taking any action against ATN. Wanchoo Decl.

Ex. 7. On June 23, 2008 and again on June 27, 2008, Ms. Kristina Forte of ATN contacted the

undersigned to assist ATN in locating certain funds which ATN believed that the banks were

holding pursuant to the writ of attachment. On both occasions, the undersigned assisted Ms.

Forte in resolving this matter expeditiously. Wanchoo Decl. Ex. 9.

On or about May 28, 2008 the parties participate in a non-binding mediation in Miami

Florida. Just prior to the mediation, ATN presented Totalmar with its counterclaims for alleged

cargo damage totaling $1,719,517.01. On or about June 25, 2008, ATN also filed an answer to

the Verified Complaint asserting a counterclaim for the cargo damage. Suffice it to say, ATN's

counterclaim for the alleged cargo damage which it is trying to utilize against Totalmar as a

shield and a sword is frivolous and totally lacking in merit. See Hernandez Decl. ¶ 10 – 12.

## ARGUMENT

## POINT – 1

### PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF
### UNDER SUPPLEMENTAL ADMIRALTY RULE B AND E(4)(F)

Totalmar has carried its burden to demonstrate that this Court's attachment order was

validly issued. Under Supplemental Rule B, an order of maritime attachment must issue upon a

6

minimal *prima facie* showing provided that the defendant cannot be found within the district in

which the assets are sought to be attached. Supplemental Rule B provides, in relevant part:

> If a defendant is not found within the district..., a verified complaint may contain a
> prayer for process to attach the defendant's tangible or intangible personal property – up
> to the amount sued for – in the hands of garnishees named in the process. The plaintiff or
> the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to
> the affiant's knowledge, or on information and belief, the defendant cannot be found
> within the district. The court must review the complaint and affidavit and, if the
> conditions of this Rule B appear to exist, enter an order so stating and authorizing process
> of attachment and garnishment. The clerk may issue supplemental process enforcing the
> court's order upon application without further court order.

Fed. R. Civ. P. Supp. Rule B(1). As recently summarized by the Court of Appeals for the

Second Circuit:

> To begin the process, a plaintiff must file a verified complaint praying for an attachment
> and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot
> be found within the judicial district. [Fed. R. Civ. P. Supp. Rule B(1)]. If the plaintiff's
> filings comply with these conditions, the court must enter an order authorizing the
> attachment, which the plaintiff may then serve on any persons in opposition of the
> defendant's property located within the district. The order of attachment may be
> requested and granted *ex parte*, though notice of the attachment to the defendant via
> appropriate service is required. *Id.* Supp. Rules B(2), E(3)..

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F. 3d 434, 438 (2d Cir. 2006). "The

power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction

given to the federal courts under Article III of the Constitution", and its "historical purpose has

been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure

satisfaction of a judgment." *Id.* Accord Winter Storm Shipping, Ltd. v. TPI, 310 F. 3d 263, 268

(2d Cir. 2002).

Furthermore, in respect of a defendant's right to challenge the validity of a maritime

attachment under Rule E(4)(f), the Second Circuit held in Aqua Stoli that a plaintiff need only

demonstrate that the attachment order was properly issued, i.e., (1) that it has a valid *prima facie*

admiralty claim; (2) the defendant cannot be found within the district; (3) the defendant's

property may be found in the district; and (4) there is no statutory bar. Once the plaintiff has

made such a showing, a properly issued attachment order may be vacated only if the defendant

can prove any of four limited circumstances, none of which ATN has proved in this case. This

standard, first announced by the Second Circuit, was more recently restated and followed by

Chief Judge Wood in Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS

95870 (S.D.N.Y. 2006) where the court held:

> Furthermore, "[w]henever property is arrested or attached, any person claiming an
> interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required
> to show why the arrest or attachment should not be vacated or other relief granted
> consistent with these rules." Rule E(4)(f) of the Supplemental Rules for Certain
> Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Supplemental
> Rule E(4)(f)"). The Court of Appeals for the Second Circuit has recently, for the first
> time, spoken "directly on the showing necessary to vacate a maritime attachment under
> Rule E," Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS
> 19302, at *12 – holding that "once a plaintiff has carried his burden to show that his
> attachment satisfies the requirements of Supplemental Rule B, a district court may vacate
> an attachment only upon [certain] circumstances," which "can occur where 1) the
> defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in
> the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient
> security for a judgment." Id., 2006 WL 2129336, at *1, 2006 U.S. App. LEXIS 19302, at
> *2.

Id. at 8. More specifically, in Aqua Stoli the Court of Appeals held at greater length that while it

is a plaintiff's burden to prove that it has complied with the technical requirements of Rule B, it

is the moving party's burden to prove one of the limited equitable bases for vacatur. The Court

of Appeals held as follows:

> We therefore hold that, in addition to having to meet the filing and service requirements
> of Rule B and E, an attachment should issue if the plaintiff shows that 1) it has a valid
> prima facie admiralty claim against the defendant; 2) the defendant cannot be found
> within the district; 3) the defendant's property may be found within the district; and 4)
> there is no statutory or maritime law bar to the attachment. Conversely, a district
> court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he
> has satisfied the requirements of Rule B and E., We believe vacatur is appropriate in
> other limited circumstances. While, as we have noted, the exact scope of a district
> court's vacatur power is not before us, we believe that a district court may vacate the
> attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to

8

suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. N.5.

n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 require the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

Aqua Stoli, 460 F. 3d at 445. Former Local Rule 12, to which the Second Circuit cited in note 5

of Aqua Stoli, provided as follows:

Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the part of the plaintiff, be entitled to an order requiring that plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with these rules or the supplemental rules.

*Id.*

The Second Circuit emphasized that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." *Id.* at 447. Moreover, the Second Circuit held that upon the plaintiff's showing that the attachment was properly ordered, and that it complied with the requirements of Rule B and E, the "defendant bears the burden of "establish[ing] any equitable grounds for vacatur." *Id.* at 436. As explained above, the Rule (E)(4)(f) hearing is not intended to resolve the dispute between the parties, but merely to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff establishes that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *Id.* at 444. Once a plaintiff has established the technical requirements required by Rule B, the burden then shifts to the defendant to establish the three limited bases for vacatur. *Id.*

9

Totalmar has carried its burden to demonstrate that this Court's attachment order was validly issued because: (1) Plaintiff's Verified Complaint alleges a valid *prima facie* admiralty claim against the Defendant for breach of charter party contracts; (2) it is undisputed that Defendant who is a foreign company cannot be "found" within the Southern District of New York; (3) it is undisputed that Defendant has an interest in the attached funds; and (4) there is no statutory bar to the attachment.

1.  **Totalmar Has Filed an Affidavit With Its Complaint Affirming that ATN Cannot be Found Within the District**

As discussed above, in support of Totalmar's application for the Rule B Attachment, counsel for Totalmar submitted an affidavit which affirms, *inter alia*, that an online search of the New York Department of State did not find any listings for ATN and that Defendant cannot be found within the district. Wanchoo Decl. Ex. 2. In reviewing Totalmar's Verified Complaint and the Affidavit of its counsel affirming that ATN cannot be found within the district, this Court issued an Ex Parte Order of Maritime Attachment dated February 19, 2008. Wanchoo Decl. Ex.3. Accordingly, ATN is wrong when it states that "Totalmar failed to file an affidavit with its complaint" and that this Court's Ex Parte Attachment Order is "fatally defective". ATN's Memo to Vacate at 4.

2.  **Totalmar Has Established Its Prima Facie Claim For Dead Freight**

ATN argues that no dead freight was earned on the M.V. SKALA. ATN's Memo to Vacate 6. In support of its argument that no dead freight was earned on the vessel, ATN relies on the Addendum to the Charter Party dated 23 November, 2007. In quoting the text from this Addendum which states that "M.V. SKALA will only be able to load min 410 pieces of pipes of

10

instead of the minimum 480 pieces contracted for", ATN conveniently omits the last sentence of the Addendum which states:

> **The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and the stability of the vessel.**

In fact, prior to the vessel's arrival at Shanghai, the master based on the Panama Canal visibility restrictions and the safety and the stability of the vessel, notified ATN that the vessel would load the 490 pipes. See, Hernandez Decl. ¶ 4. Totalmar's dead freight claim is based on the difference between the quantity which the master had nominated which the vessel could safely load i.e., 490 pipes versus the quantity loaded by ATN of only 430 pipes. By failing to quote the complete Addendum to the charter party ATN is trying to mislead this Court by asserting that the charter party only required a minimum of 410 pipes to be loaded on the vessel and accordingly no dead freight is payable to Totalmar.

Similarly, while the parties amended the charter of the M.V. GO STAR and agreed that the vessel will only load a minimum of 410 pieces of pieces, the parties did not modify the pipe's dimensions which had been guaranteed by ATN to conform to a particular length and diameter. See Hernandez Decl. ¶ 5.    It is axiomatic that as Totalmar's revenue was based on the cubic capacity of the cargo loaded and not on the total weight any modification of the pipes' dimension would have to be specifically agreed between the parties as that would directly impact on the freight Totalmar would earn on that voyage. No such modification of the pipe's dimension are provided in the Addendum to the charter party and thus ATN's argument that there is no dead freight claim for the M.V. GO STAR has absolutely no merit.

**3.    Totalmar Has Not Abused The Ex Parte Attachment Proceedings**

ATN argues that the Totalmar abused Rule B Maritime proceeding, because allegedly Totalmar's claims have no merit.  ATN's motion to vacate at pages 7 – 8.  None of the cases

relied by ATN in support of its argument present a fact situation which is anything close to the

facts of the present case. As noted by Judge Pauley in Compania Sudamericane de Vapores v.

Sinochem Tianjan Co. , 2007 U.S. Dist. LEXIS 24737 (2007), "in assessing whether a plaintiff

has a valid admiralty claim, courts apply the 'reasonable grounds' tests." "[C]ourts have

compared the showing required under a 'reasonable grounds' analysis to the more familiar

standard of probable cause. Probable cause requires less than a preponderance of the evidence,

but nevertheless calls for a "fair probability" that the asserted facts are true." Id. * 5 (citations

omitted). See also Thypin Steel Co. v. Certain Bills of Lading, 1996 U.S. Dist. LEXIS 5909 at *4

(S.D.N.Y. 1996) (noting that to establish reasonable grounds, plaintiff need not "prove[e] the

merits of its claim.")

      The Declaration of Reyes Hernandez, Totalmar's Vice President establishes that Plaintiff

has a valid maritime claim for the dead freight and demurrage arising under the charter parties.

Thus, ATN's argument that the Court should vacate the attachment because "Totalmar [has]

asserted baseless dead freight claims totaling $962,614.53" has absolutely no merit. ATN's

Memo to Vacate at 8.

4.    **Totalmar's Security For Its Dead Freight And Demurrage Claims Should Not Be Reduced**

      ATN argues that this Court should reduce the attachment order by about $1million since

Totalmar has no dead freight claim. ATN's Memo to Vacate at 9. Totalmar has established that

it has a valid dead freight claim on the M.V. SKALA in the amount of $583,518.73 and on the

M.V. GO STAR in the amount of $379,095.80. Hernandez Decl. ¶4 – 5. Totalmar has also

established that under the terms of the charter party it is owed demurrage on the M.V.

ATLANTICA of $86,030, on the M.V. RAINBOW of $147,910 and on the GO STAR $147,280.

Hernandez Decl. ¶ 6 – 8. Accordingly, Totalmar has valid dead freight and demurrage claims against ATN under the various charter parties for which it has sought security in the New York proceedings in the amount of $1,343,835.50 plus interest of $169,985.10 and estimated legal and arbitrators' fees of $200,000, totaling $1,713,819.60. See Hernandez Decl. at ¶ 9.

ATN does not dispute that the English rule permits prevailing parties to recover the attorney fees from the losing parties. However, with respect to Totalmar's claim for estimated attorneys' fees and costs in connection with the GO STAR arbitration, ATN argues that Totalmar is not entitled to recover these fees because that arbitration is not governed by English law. Notwithstanding the fact that the arbitration clause is silent with regards to the choice of law, as the seat of the arbitration is London, the English Arbitration Act of 1996 will govern the procedure of the arbitration. Under Section 61 of the English Arbitration Act[1], the prevailing party is entitled to recover its attorney's fees and costs of the arbitration. In the circumstances, this Court should deny ATN's request that Totalmar's claim for estimated attorneys fees and costs in connection with the London arbitration must be reduced by at least half. ATN's Motion to Vacate at 11.

## POINT II

### COUNTER-SECURITY IS NOT WARRANTED BECAUSE DEFENDANT'S COUNTERCLAIMS ARE FRIVOLOUS AND CLEARLY LACKING IN MERIT

#### A. The Standard of Law

Rule E(7)(a) provides in relevant part:

---

[1] Section 61 of the Act provides that:

(1)    The tribunal may make an award allocating the costs of the arbitration as between the parties, subject to any agreement of the parties.

(2)    Unless the parties otherwise agree, the tribunal shall award costs on the general principle that costs should follow the event except where it appears to the tribunal that in the circumstances this is not appropriate in relation to the whole or part of the costs.

> When a person has given security for damages in the original action asserts a
> counterclaim that arises from the same transaction or occurrence that is the subject of the
> original action, a plaintiff for whose benefit the security has been given must give
> security for damages demanded in the counterclaim unless the court for cause shown,
> directs otherwise.

Fed.R. Civ. P. Supp. R.E (7)(a).

While this Rules' language makes it appear that the posting of countersecurity is

mandatory whenever its conditions are satisfied, "the final clause of the quoted language makes

clear that the trial court possesses broad discretion in deciding whether to order counter-security

under such conditions." Result Shipping Co. v. Ferruzzi Trading USA Inc.  56 F.3d 394, 399 (2d

Cir. 1995) (citing Afram Lines Int'l Inc. v. M/V CAPETAN YIANNIS, 905 F.2d 347, 349 (11th

Cir. 1990); Titan Navigation Inc., v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987); 7A James

W. Moore Et al., Moore's Federal Practice ¶E.15 at E-756 (2d ed. 1995).

While the purpose of Rule E(7) is to permit a counterclaimant to likewise receive security

in appropriate instances, countersecurity under Rule E(7) is not appropriate where a defendant

asserts a frivolous counterclaim.  See, e.g., Result Shipping, 56 F.3d at 400; see also Titan

Navigation, 808 F.2d at 404; Trinidad Foundry & Fabricating Ltd. v. M/V KAS CAMILLA, 776

F.Supp. 1555, 1558 (S. D. Fla. 1991).  The posting of countersecurity likewise is not appropriate

where the plaintiff is financially unable to post countersecurity.  Result Shipping, 56 F.3d at 400

(citing Titan Navigation,  808 F.2d at 403-405; also citing Washington-Southern Navigation Co.

v. Baltimore & Philadelphia Steamboat Co., 23 U.S. 629, 632-36 ( 1924). In each case, the court

is to use its discretion to determine, based on the totality of circumstances, whether the posing of

countersecurity should be ordered.  Result Shipping, 56 F.3d at 400 (quoting Titan Navigation,

808 F.2d at 404; citing Afram Lines, 905 F.2d at 349-50).

14

As shown by Totalmar's supporting declaration and the documents annexed thereto and as discussed below, ATN's counter-security application should be denied because ATN's "counterclaims" are a manufactured artifice designed to place Totalmar at a tactical advantage, which is the very situation warmed against in numerous decisions. Where a plaintiff must choose between maintaining security for its claims or having to surrender such security in the face of unjustified counterclaims, courts have routinely refused to grant a defendant's demand for countersecurity.

1.      **ATN Has Failed To Allege Prima Facie Valid Counterclaims, And In So Much As They Have Been Properly Alleged, Which Is Denied, They Are Entirely Frivolous**

As stated above, ATN has requested security for counterclaims for alleged cargo damage on all five voyages in this action. All five counterclaims are frivolous, general, speculative, and/or clearly lacking merit.

Rule E(7)(a) should not be permitted to be employed like a bludgeon to eliminate the plaintiff's right to security for well-founded claims through the granting of countersecurity on a defendant's dubious counterclaims:

> [T]he court should not require counter-security where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant.

Titan Navigation, 808 F.2d at 404. Courts in a variety of circumstances have refused to order the posting of counter-security where a counterclaim is frivolous, lacking in merit, or too speculative to be entitled to the normal presumption that counter-security is appropriate. Several representative examples, discussed below, demonstrate how courts have addressed this issue.

In Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F. Supp.2d 305 (S.D.N.Y. 2004), the defendant sought $4.4 million in counter-security on a cargo indemnity claim. *Id* at 309. In

15

denying that portion of the defendant's counter-security request, the court held that the "highly contingent" nature of the defendant's claim made posting of such counter-security inappropriate.

In Trinidad Foundry & Fabricating, Ltd. v. M/V. KAS CAMILLA, 776 F.Supp. 1555 (S.D. Fla. 1991), the plaintiff arrested the defendant's vessel in connection with its claims for repairs and necessaries. *Id.* at 1556. The defendant ship-owner counter-claimed for damage to the vessel due to plaintiff's alleged negligence, breach of warranty, and breach of contract and applied to the court for counter-security under Rule E(7). *Id.* at 1558. In its application, the defendant contended that the plain language of Rule E(7) required the plaintiff to post counter-security. *Id.* The court disagreed and, after examining the facts surrounding defendant's purported "counterclaim" refused to order the posting of counter-security:

> [Defendant] argues that the plain language of Rule E(7) requires Plaintiff to post a bond or other security on the Counterclaims filed in this action. The Court is not persuaded by Defendant's reasoning in this regard. Rule E(7) mandates the posting of counter-security in this instant unless the Court, for cause shown, directs otherwise. In the present case, Defendant's authorized representative executed Plaintiff's Notice of Repairs Satisfactorily Completed, confirming that the repairs performed by Plaintiff to the Vessel has been satisfactorily completed. **The Undersigned believes that this fact alone indicates that Defendants' Counterclaims may be frivolous and constitutes sufficient cause shown to remove the presumption of counter-security dictated by Rule E(7).** The Court would like to note parenthetically that this preliminary determination of the nature of Defendant's Counterclaims is germane only to the instant determination of the posting of counter-security. It in no way speaks to the merits of Defendant's counterclaims and has no res judicata or collateral estoppel effect.

*Id. (emphasis added)*

In Expert Diesel, Inc. v. Yacht FISHIN FOOL, 627 F.Supp. 432 (S.D. Fla. 1986), the court refused to grant the defendants' request for counter-security on counterclaims similar to those asserted by the defendant in KAS CAMILLA. See *Id.* In so holding, it stated "the court is reluctant to compel Plaintiff to post a bond in light of Defendant's damage claims of a general rather than a precisely detailed, nature." *Id.* at 433.

16

In U.S. Maritime Services Inc. v. Trade Ventures Inc., 1998 U.S. Dist. LEXIS 10608

(E.D. La. July 8, 1998), the defendants counterclaimed for damages arising over a lost charter

party. *Id. at *6.* In denying the defendant's motion for counter-security, the court ruled that the

counterclaim was too speculative and insufficiently supported to justify an order directing the

posting of counter-security.

> The defendant's claim for the alleged lost charter is too speculative to sustain an order for
> counter-security. Unlike plaintiff's claim which is based on past events reasonably able
> to be ascertained and quantified, defendant's losses due to a 'road not taken' cannot be so
> readily ascertained and quantified. **The Baldwin affidavit is insufficient by itself to
> determine what the defendants estimated actual loss is after expenses and other
> items are deducted, even assuming the voyage would have occurred but for the
> plaintiff's alleged broken agreement.**

*Id. (emphasis added).*

Here, ATN has offered even less substance than the defendants in the cases cited above.

ATN summarily asserts via its counterclaim based on five self-serving claim letters that it has a

counterclaim for alleged cargo damage of over $1.7 million, but does not produce any survey

reports, sworn witness statements, or other evidence or proof that its claims have any basis in

fact. As the cases cited above make clear, general claims or unsupported allegations are not

given a presumption of validity that a well-supported and documented claim is to receive.

ATN waited some four months after the delivery of its cargo at Port of Maracaibo before

it asserted its counterclaims for the alleged cargo damage and shortly before it filed its motion

for countersecurity. Totalmar submits that this fact alone indicates that ATN's counterclaims are

frivolous and constitutes sufficient cause shown to remove the presumption of the counter-

security dictated by Rule E(7). See M.V. KAS CAMILLA, 76 F. Supp. at 1558. In fact, as

pointed out by Mr. Reyes Hernandez under Rider Clause 33 of the charter parties, ATN was

responsible for stowing, lashing, securing the cargo on board the vessel at its time and expense.

Hernandez Decl. ¶11. Accordingly, ATN was responsible for any damage that occurred to the pipes on the vessels due to bad stowage. In fact, the evidence shows that the pipes had significant pre-shipment damage at the time they were loaded on all five vessels at Shanghai. The bills of lading that were issued by the shippers and which are annexed as Exhibit 14 to the *Hernandez Decl.* had been endorsed to reflect the damage to the pipes noted by the load port surveyors. Hernandez Decl. ¶11. Thus, on receipt of the bills of lading ATN should have been aware of the damage to the pipes noted by the surveyors at the time of loading. Notwithstanding this fact, ATN failed to appoint cargo inspectors to have the cargo inspected at the time it was discharged at Maracaibo. In the circumstances, ATN should now be precluded from asserting its counter-claim against Totalmar in this action. The charter parties also provided that at the discharge port the cargo was to be discharged "liner out" by the vessel to "under hook" at owner's time and expense. Thus, under the terms of the charter, Totalmar's responsibility for the cargo ceased once ATN removed the cargo from under the vessel's hook. Hernandez Decl. ¶12. In the circumstances, Totalmar is not responsible for any damage to ATN's cargo which may have occurred some four months after the cargo had been removed "from under the vessel's hook". *Id.* Thus, this Court should deny ATN's counterclaims as they are entirely frivolous.

There is also another reason to deny ATN's request for security on the alleged cargo claim. Particularly, if the Court were to permit ATN to utilize Supplemental Admiralty Rule E(7) as a shield and a sword, then every time a breach of contract was alleged by a claimant, the respondent would raise a frivolous and concocted counterclaims. The initial claim made would be neutralized by the farfetched and unsupported counterclaim asserted. ATN should not be permitted to seek counter-security for whatever dubious counterclaims it can concoct, especially

where ATN has asserted these claims about four months after it took delivery of the cargo and only after Totalmar had commenced its action in this Court to seek security for its claims.

For these and the reasons set forth above, the Court should decline ATN's request for counter-security as the counterclaims asserted in this action are: (1) fabricated and/or frivolous; or (2) should be precluded under the doctrine of estoppel from consideration in this action as they were not first raised. It would be inequitable to award security for these claims at this point.

**POINT III**

**AT MOST, DEFENDANT IS ONLY ENTITLED
TO RECIPROCAL SECURITY**

It is well-settled principle that where the court finds counter-security to be appropriate it should only be awarded up to the amount the plaintiff has attached. In other words, a defendant's counter-security should be reciprocal to that enjoyed by the plaintiff.

In Clipper Shipping Lines, Ltd. v. Global Transports Oceanico S.A. 2007 U.S. Dist. LEXIS 18827, *4-5 (S.D.N.Y. 2007), Judge Leisure confirms this principle and ordered a plaintiff to post counter-security in such a manner. The Clipper Shipping Lines the court held as follows:

> [Plaintiff] Clipper does not dispute that Rule E(7) entitles [defendant] Global to be secured for the full value of its counterclaim while Clipper is secured only for roughly nine percent of its claim. This position is consistent with the approach Judge Lynch recently took in a similar situation. In that case, as here, the value of the counterclaim that defendant sought to secure exceeded the amount that the plaintiff had managed to attach as security for its original claim. *Judge Lynch ordered the plaintiff to provide security in the same amount that it has succeeded in attaching and that it provide additional security matching any additional property it should subsequently succeed in attaching. Finecom Shipping Ltd. v. Multi trade Enterprises AG,* 2005 U.S. Dist. LEXIS 25761, at *6 WL2838611, at *2 (S.D.N.Y. Oct, 2005).

***

Clipper is ordered to post a bond or other satisfactory security in the sum of $154,647.73…and to provide additional security matching any additional property Clipper has restrained or is able to restrain in the future in any jurisdiction in connection with the underlying arbitration, up to a maximum of $2,077,173.90.

Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A. 06-Civ.-15299 (PKL)

(S.D.N.Y. Feb 2007) at 6 (citation omitted). Consistent with the holdings in Clipper

Shipping Lines and Finecom Shipping, if this Court deems that counter-security should

be awarded, it should order Totalmar to post counter-security in an amount equal or less

than the amount of security that Totalmar has obtained from ATN.

## POINT IV

### COUNTER-SECURITY IS NOT WARRANTED BECAUSE PLAINTIFF IS FINANCIALLY UNABLE TO POST SECURITY

Generally, "when a party is financially unable to post counter-security, courts

often dispense with the requirement of [Rule E(7)(a)]". Titan Navigation, 808 F. 2d at 403

(citing cases), accord Result Shipping, 5 F.3d at 400. Rule E(7) "is not intended to impose

burdensome cost on a plaintiff that might prevent it from bringing suit"). Afram Lines, 905 F. 2d

at 350.

For example, in Boland Marine & Manufacturing Co. M/V BRIGHT FIELD, No. Civ

A.97-3097, 1999 WL 172940 (E.D. La. Mar 26, 1999), the district could held that the defendant

satisfied the elements of Rule E(7). Id. at *1. Nevertheless, in reviewing the position of the

parties, the court refused to grant the motion for counter-security despite prerequisites met where

the "request amount would leave plaintiffs at a distinct disadvantage by tying up a large portion

of its resources." Id.

The accompanying Declaration of Reyes Hernandez shows that Totalmar is a small entity

with only one office and only 5 employees and without resources sufficient to post counter-

security especially of the magnitude sought by ATN. As stated in the Hernandez Declaration, Totalmar's bank account only holds a balance of $36,787.17. Hernandez Decl. ¶ 13, Ex. 15.

Under the well-settled precedent discussed in this section and the previous section, the Rule E(7) inquiry is to be driven by principles of equity and fairness. Here not only is Totalmar financially unable to post counter-security, but it appears ATN is exploiting that fact by raising a large, unfounded counterclaim, in hopes that Totalmar will be stripped of its security obtained pursuant to Rule B. The result is precisely the type that the drafters of Rule E(7) contemplated in leaving in the "for cause" exception to the automatic provision of counter-security, and thus leaving it within the Court's discretion to deny counter-security where the equities favor such denial. See, e.g. Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboard Co. 263 U.S. 629, 631-39 (1924) (discussing predecessor to Rule E(7) under old Admiralty Rules and holding that an automatic granting of counter-security without consideration of the circumstances was not the intention of the rule).

For the foregoing reasons, ATN's request for counter-security should be denied.

## POINT V

### THE COURT SHOULD COMPEL ATN TO
### PROCEED TO ARBITRATION FORTHWITH

ATN's motion to compel is a curious one. It has not asserted that Totalmar has not demanded arbitration of its claims pursuant to the charter parties. To the contrary, it conceded that both Totalmar and ATN have demanded arbitration of their respective claims, as required by the charter parties' arbitration clauses. Nor has ATN asserted that Totalmar has defaulted or otherwise refused to proceed to arbitration. Totalmar stands ready, willing and desiring of putting its claims to arbitration, as evidenced by its March 11, 2008 arbitration demand. See

Wanchoo Decl. Ex. 9-1.  Nonetheless, ATN has filed the current motion to stay the current Rule

B proceedings and compel arbitration pursuant to sections 3 and 4 of the Federal Arbitration Act,

U.S.C.§§ 3, 4 ("FAA").  Simply put, there is absolutely no need for this motion.

      With respect to the motion to compel, Totalmar does not resist arbitration, but want to

proceed.  There is thus, no need to compel Totalmar to proceed to arbitration.  Indeed, but for the

spurious and abusive motion practice by ATN, the arbitration proceedings could have already

commenced.  Perhaps the Court should issue an order compelling ATN to proceed forthwith and

cease this spurious motion practice.

      Further, with respect to the motion to *stay* this Rule B proceedings, it is apparent that

ATN fails to understand the nature of the relief sought in this proceeding. Totalmar has not and

does not seek a ruling on the merits of its charter party claims in this proceeding.[2] The purpose of

obtaining a Rule B maritime attachment is to provide security for its claims to be arbitrated

pursuant to the arbitration clauses.  See Aqua Stoli Shipping, 460 F.3d 434, 438 (2d Cir. 2006)

(Rule B provides a mechanism to ensure satisfaction of a judgment obtained on a maritime

claim)[3].  Totalmar obtained the maritime attachment to provide security for its claims to be

arbitrated pursuant to the charter party arbitration clauses.  But for ATN's assertion of

counterclaims (which should have been raised only before the arbitration panel) and its flurry of

motion, this proceeding would have been complete and the arbitration(s) free to proceed.

      By reason of the foregoing, this motion is moot and must be denied.  In the alternative,

Totalmar respectfully requests that this Court compel ATN to proceed to arbitration forthwith.

---

[2] Rather, as discussed within, by filing substantive (albeit, frivolous) counterclaims in this proceeding, ATN has
improperly put claims referable to arbitration before this Court.
[3] Section 3 of the FAA mandates that the Court stay an action "upon any issue referable to arbitration." The relief
sought by Totalmar, i.e., a maritime attachment, is a unique feature of a federal court's admiralty jurisdiction and not
an "issue referable to arbitration".  As such, there would have been no basis to stay this action.

## POINT VI

### THE COURT SHOULD ORDER THE FIRST ARBITRATION PANEL TO DETERMINE WHETHER THE DISPUTES SHALL BE CONSOLIDATED BEFORE THAT PANEL

Totalmar demanded arbitration of claims under four charter parties between it and ATN. In the interest of economy and to enable a just and efficient resolution of all claims between Totalmar and ATN, Totalmar sought to have these claims heard by a single two person panel in New York. ATN initially agreed in principal to submit all claims to a single panel in New York. See E-mail from Mr. Kornfeld dated March 20, 2008 (Wanchoo Decl. Ex. 5). Indeed, counsel for ATN even drafted a proposed agreement concerning consolidation of all claims before a single panel. See Draft Arbitration Agreement. (Wanchoo Decl. Ex.9-2).

For reason unknown to Totalmar, ATN did a complete about face and has now reneged on its agreement in principal and demanded that all claims be arbitrated before separate panels. In other words, five separate arbitrations before five independent panels in New York and London.

Totalmar recognizes that where, as here, the various arbitration clauses do not specifically provide for consolidation, this Court lacks the power to compel ATN to consolidate claims before a single panel, despite the obvious cost savings and efficiencies. See Government of United Kingdom of Great Britain v. Boeing Co., 998 F.2d 68 (2d Cir. 1993); Hartford Accident & Indemnity Co. v. Swiss Reinsurance America Corp., 246 F.3d 219 (2d Cir. 2001) (consolidation of disputes between the same parties under a series of nearly identical contracts granted because the parties consented to consolidation); In Re the Matter of Arbitration between Allstate Ins. Co. and Global Reins. Corp. U.S., 2006 U.S. Dist. LEXIS 56701 (S.D.N.Y. August 2006). However, consolidation is a procedural issue, which can be made by the arbitrators. See

Allstate Ins., 2006 U.S. Dist. LEXIS 56701 *3.  Indeed, when a contract contains a "broad"

arbitration clause (i.e. a provision that relates to "any dispute", such as in this case), the

construction of the agreement and the parties' rights and obligations under it are within the

jurisdiction of the arbitrator.  McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light

Co., 858 F.2d 825 (2d Cir. 1988).  This would include whether to consolidate claims in a single

proceeding.

As such, Totalmar respectfully submits that this Court enter an order directing the first

chosen arbitration panel to determine whether or not the claims should be consolidated before

that panel. See Allstate Ins., supra.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Totalmar respectfully requests that the Court deny

ATN's motions to vacate the attachment and for counter-security in its entirety and grant

Totalmar's cross-motion to order the first chosen arbitration panel to determine whether the

disputes shall be consolidated.

Dated: New York, New York
       July 10, 2008

Respectfully submitted,

LAW OFFICES OF RAHUL WANCHOO
Attorneys for Plaintiff
Totalmar Navigation Corp.

By:   Rahul Wanchoo
       Rahul Wanchoo (RW-8725)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOTALMAR NAVIGATION CORP.

                          Plaintiff,                          ECF CASE
        -against-                                             08 CIV 1659 (HB)

ATN INDUSTRIES INC.,

                          Defendant

## AFFIRMATION OF SERVICE

Rahul Wanchoo affirms under penalty of perjury:

That I am an attorney admitted to practice in the State of New York and am a principal of
the firm of Law Offices of Rahul Wanchoo, attorneys for Plaintiff in the above captioned matter.

I certify that on July 10, 2008, I electronically filed the Memorandum of Law in
Opposition to Defendant's Motion to Vacate Maritime Attachment and for Counter-Security, and
in Support of its Cross-Motion that the Court Order the first chosen arbitration panel to
determine whether the disputes shall be consolidated, and it is being served this day on all
counsel authorized to receive Notices of Electronic Filing generated by CM/ECF, including
counsel below:

        George F. Hritz
        John F. O' Sullivan
        Hogan and Hartson, LLP.
        875, Third Avenue
        New York, New York 10022
        Attorneys for Defendant, ATN Industries Inc.


Dated: July 10, 2008
        New York, New York


                                        _____
                                                Rahul Wanchoo