IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
TOTALMAR NAVIGATION CORP.,          :
                                    :
                    Plaintiff,      :   Index No. 08-cv-1659 (HB)
       -against-                    :   ECF Case
                                    :
ATN INDUSTRIES INC.,                :
                                    :
                    Defendant.      :
                                    :
---------------------------------------------------------------- x

## DEFENDANT'S CONSOLIDATED REPLY MEMORANDUM

Defendant/Counterclaim-Plaintiff, ATN Industries Inc. ("ATN"), hereby submits its consolidated reply in support of its Motion to Vacate or Reduce *Ex Parte* Order of Maritime Attachment, Motion for Counter-Security Pursuant to Supplemental Rule E(7), and Motion to Stay Proceedings and to Compel Arbitration (collectively, the "Motions"), and states:

### INTRODUCTION

Plaintiff Totalmar Navigation Corp. ("Totalmar") has failed to satisfy its burden that it was entitled to an *ex parte* order of attachment and has failed to show any grounds for denying ATN's request for the imposition of counter-security or a reduction of the amount of the attachment in the amount of the counter-security. Instead, Totalmar has continued to abuse the process and to mislead this Court in its effort to maintain an *ex parte* maritime attachment order. Totalmar's request for *ex parte* relief was premised on representations that turned out to be misleading and untrue -- representations on which the Court relied in entering its order. In its opposition, Totalmar buries its disclosure that it failed to file an affidavit *with* the verified complaint averring that ATN could not be found within the district in a footnote in its counsel's declaration in support of Totalmar's opposition. In addition, Totalmar failed to offer any argument showing its dead freight claims are not frivolous. The explanation, however, seems

clear. In an *ex parte* proceeding, the Court normally relies on the plaintiff's pleading, which in this case was verified by counsel, who is an officer of the Court subject to the provisions of Fed. R. Civ. P. 11 and the Lawyers Code of Professional Responsibility. Now, in opposing ATN's other motions, Totalmar continues to advance baseless interpretations of plain contract language and to give a false impression of the facts. For the reasons advanced in ATN's motions, this Court should vacate the *ex parte* attachment order or reduce the order by the amount Totalmar seeks through its frivolous dead freight and overstated demurrage claims. Further, the Court should order Totalmar to post counter-security because to not do so would place the parties on unequal footing.

Lastly, the Court should compel Totalmar to arbitrate its alleged claims because over four months have passed since Totalmar initiated arbitration, and Totalmar has yet to do anything to advance its arbitral claims. In fact, to date, Totalmar has only initiated two arbitral proceedings when it alleged claims in its complaint that would give rise to four arbitrations.

A. **The *Ex Parte* Attachment Order Should Be Vacated Because Totalmar Failed To File A Verified Complaint *With* An Affidavit.**

The law is well established that a party seeking *quasi in rem* process to attach a defendant's property must file a verified complaint praying for the process <u>with</u> an affidavit stating that the defendant cannot be found within the district. Fed. R. Civ. P. Supp. Rule B(1)(a) & (b); *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 438 (2d Cir. 2006). As evidenced from the Court's docket, it is undisputed that Totalmar failed to comply with this requirement. Totalmar filed an affidavit four months <u>after</u> it filed its verified complaint. "Four months after" does not constitute contemporaneous filing, much less filing within a reasonable time after the complaint, which some courts have allowed. *See Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 320-21 (2d Cir. 1970) (filing of affidavit a couple of days after complaint

2

satisfied Supplemental Rule B because discovery of post-complaint discovery that defendant not in district).

Notably, Totalmar opposes ATN's Motion to Vacate or Reduce by seeking to create the false impression that it timely filed the required affidavit. Totalmar claims it <u>submitted</u> an affidavit in support of the *ex parte* order and even titled a heading in its opposition "Totalmar Has Filed An Affidavit With Its Complaint Affirming That ATN Cannot Be Found Within the District," without disclosing to the Court that the affidavit was not filed until **June 26, 2008** -- almost four months *after* the verified complaint was filed and even after ATN filed its Motions. *See* Opposition at 10. In fact, Totalmar disingenuously buried the disclosure of the late filing in a footnote in its counsel's declaration supporting Totalmar's opposition memorandum. Declaration of Rahul Wanchoo at ¶ 4 n.2 (DE 18).

B.   **The *Ex Parte* Attachment Order Should Be Vacated Because Totalmar Misrepresented Contract Provisions On Which Its Dead Freight Claims Are Based.**

Further, Totalmar was not entitled to an *ex parte* maritime attachment order because it failed to state prima facie dead freight claims. In its verified complaint, Totalmar quoted provisions from the charter party contracts pertaining to dead freight that were later modified by addenda, without referring to or quoting the addenda. In an effort to deflect its lack of disclosure to the Court, Totalmar now argues that ATN failed to quote material provisions of the addenda. The provisions Totalmar cites are immaterial because they do not alter the fact that the addenda lowered the number and volume of pipes ATN was contractually bound to load.

1.   **The MV Skala Charter Party Only Required ATN To Load 410 Pipes.**

Specifically, the MV Skala charter party dated November 23, 2007 provided: "Min 480 to 500 pi[e]ces of pipes unto vess[e]l's maximu[m] capacity at Owners option of water pipes of polycarbonate steel pipes dimensions Guarantee[d] by Charterers." Compl., Ex. 1 at p.1, § 12.

This provision was amended by an addendum to the charter party dated December 30, 2007, which provided:

> Due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala *will only be able to load **min 410** pieces of pipes instead of the minimum 480 pieces contracted for* as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Compl., Ex. 1 (emphasis added). The master's assurance that he would try to load more than 410 pipes did not change the fact that ATN would not be charged for dead freight if it did not load more than 410 pipes. Totalmar filed the master's purported letter of protest dated December 8, 2007, which stated that "according to the charter party the final quantity to be loaded is in my option" and "my stowage plan sent to you requested 490 pieces and whereas supplied only 430 pieces." Declaration of Reyes Hernandez, Ex. 2 (DE 19). Totalmar, however, failed to disclose that Mr. Hernandez advised ATN on November 28, 2007 of the Panama Canal regulations and restrictions requiring the reduction of the minimum pieces of pipe to be loaded to 410. Declaration of Vicente E. Gonzalez De La VEGA ¶ 4. & Ex. A, filed concurrently herewith. Totalmar also failed to disclose that the addendum is dated December 30, 2007 – which was approximately twenty-two days after the pipes were loaded and after the master erroneously claimed that the quantity of pipes to be loaded was left to his discretion. *Id.* ¶ 5 & Ex. B.

### 2. The MV Go Star Charter Party Deleted The Pipe Dimension Guarantee.

Similarly, Totalmar disingenuously argues in support of its MV Go Star dead freight claim that the addenda to the MV Go Star charter party did not amend ATN's guarantee of the pipes dimensions. However, the plain and unambiguous language of the charter party and the addendum confirm that Totalmar's interpretation is wrong. The MV Go Star charter party dated December 7, 20007 provided: "Min 435 pieces of pipes upto [sic] vessel's full capacity at

4

Owners [sic] option of policarbonate steel water pipes dimensions guarantee[d] by Charterers." Compl., Ex. 8, at p.1, § 12. The addendum dated December 28, 2007 provided: "[V]essel will only load *min 410 pieces* of pipes upto [sic] vessel's full capacity *in Charter* [sic] *option*." Compl., Ex. 8 (emphasis added). The addendum deleted any mention of a dimension guarantee.[1]

B.   **ATN Is Entitled To A Reduction Of The Attachment Order Should The Motion to Vacate Be Denied.**

If the Court decides not to vacate the *ex parte* maritime attachment order, the total amount of the maritime attachment order ($ 1,713,819.60) should be reduced to no more than $515,415.18 for the reasons outlined in ATN's Motion to Vacate or Reduce. As demonstrated above, Totalmar's dead freight claims totaling $1,109,893.53 million ($583,518.73 for MV Skala and $526,375.80 for MV Go Star) are fatally defective, and the attachment should be reduced by this amount. In addition, Totalmar overstated the demurrage claim arising from the MV Atlantica charter party by $12,290.00. The attachment order should further be reduced by this amount. Totalmar disingenuously claims that ATN has confused the demurrage rate with the detention at discharge port rate. Hernandez Dec. ¶ 6 (citing MV Atlantica Rider Clause 27). However, the plain terms of the charter party contract show Totalmar is wrong. The MV Atlantica charter party dated December 29, 2007 provided that:

> ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL

---

[1] If there were any question about what the parties intended, even though the contract language is clear and unambiguous, the parties' course of dealing indicates they intended to delete the guarantee. Totalmar failed to disclose to the Court that ATN notified Totalmar on December 20, 2007, prior to the modification of the charter party, that the pipe supplier in Shanghai only had pipes of a smaller diameter than guaranteed. *See* Gonzalez De La VEGA Dec. ¶ 7 & Ex. C. Moreover, Totalmar failed to disclose that before the parties amended the charter party with the December 28, 2007 addendum, the agent for Totalmar stated it erred in using the larger pipe diameter in booking space on the vessel. *Id.* ¶ 8. It was only after these exchanges that the parties amended the charter party with the December 28, 2007 addendum.

5

> BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

MV Atlantica charter party, clause 27 (attached to Compl., Ex. 4). A rider to the MV Atlantica charter party, also dated December 29, 2007 and attached as the signature page to Part II of the contract, provided: "-demm usd 60.000 pdpr." Again, Totalmar has overlooked the pertinent provisions that set forth the terms the parties were bound by in the last page of Part II of the contract, which unambiguously set the demurrage rate $60,000 per day pro rata.

Totalmar also argues that the attachment award should not be reduced in the amount of the attorneys' fees and costs it estimated in connection with arbitration of disputes arising from the MV Go Star because Section 61 of the English Arbitration Act of 1996 provides that the prevailing party is entitled to its attorneys' fees and costs in arbitration. Opposition at 13. The English Arbitration Act quoted by Totalmar makes clear that the tribunal's award of costs is discretionary. Opposition at 13 n.1.

### C.    ATN Is Entitled To Counter-Security.

A principal purpose of Supplemental Rule E(7) is "to place the parties on an even footing; if one party is deprived of the use of its property during the litigation but the adverse party is not, despite the pendency of reciprocal claims, the party with the security may have an unfair leverage in the action." *Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, Case No. 05-6695, 2005 WL 283611, at *1 (S.D.N.Y. Oct. 25, 2005). This purpose would be served here.

Totalmar failed to show any cause for denying ATN's Motion for Counter-Security. Totalmar cites a number of cases for the erroneous proposition that ATN's counterclaims are too "speculative" or "contingent" to support a counter-security order. *See* Opposition at 15-17.[2]

---

[2]    Totalmar failed to accurately summarize the reasons why the courts in the cases it cited denied a request for counter-security. In *Ythan Limited v. Americas Bulk Transport Ltd.*, 336 F. Supp.2d 305, 309 (S.D.N.Y. 2004), the court denied the portion of a counter-security motion seeking security on a

ATN's counterclaims, however, are far from being speculative or contingent. ATN seeks recovery for cargo damages for which Totalmar contractually bore the risk of loss. ATN is not seeking lost profits as a result of the cargo damage or recovery on an indemnity claim. ATN's cargo damage claims are materially distinguishable from the cases Totalmar cited in its Opposition, such as *U.S. Maritime Services, Inc. v. Tradeventures, Inc.*, Case No. 98-0499, 1998 WL 388669, at *2 (E.D. La. July 8, 1998), where the court wrote: "[u]nlike plaintiff's claim which is based on past events reasonably able to be ascertained and quantified, defendants' losses due to a 'road not taken' cannot be so readily ascertained and quantified."

The record shows that ATN's cargo damage counterclaims are meritorious and that Totalmar's arguments in opposition to the counter-security motion are frivolous. Contrary to Totalmar's suggestion, ATN need not <u>prove</u> its claims for entitlement to counter-security. *Result Shipping*, 56 F.3d at 399. The court's role in deciding a counter-security motion requires the court to screen out frivolous claims and not to decide the merits of the case. *See Front Carriers Ltd. v. Transfield Er Cape Ltd.*, Case No. 07-6333, 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007); *Finecom.*, 2005 WL 283611, at *1 (S.D.N.Y. Oct. 25, 2005). Counter-security requests are evaluated at the early stages of a case and "courts should be reluctant to prejudge the merits

---

cargo indemnity claim because the claim was highly contingent and because the plaintiff already posted security for claims brought directly against it by the cargo owners. In its opposition memorandum, Totalmar failed to identify the type of claim for which the defendant sought counter-security and the other reasons the request was denied. Opposition at 15-16. In *Trinidad Foundry & Fabricating, Ltd. v. M/V Kas Camilla*, 776 F. Supp. 155, 1558 (S.D. Fla. 1991), the court denied a motion for counter-security where the defendant had filed a counterclaim for repairs performed in a defective and negligent manner and the defendant had executed a notice of repairs satisfactorily completed, which undermined the viability of defendant's counterclaim. The court wrote, nonetheless, that the preliminary determination about the merits of the counterclaim has "no res judicata or collateral estoppel effect." *Id.* In *Expert Diesel, Inc. v. Yacht "Fishin Fool,"* 627 F. Supp. 432, 432-34 (S.D. Fla. 1986), the court denied a motion for counter-security because plaintiff was "a one-man operation," security was not needed to equalize the position of the parties, and the defendant's counterclaim was general as opposed to being precisely detailed. Totalmar only cited the court's reason that the counterclaim was general. *See* Opposition at 16.

of claims based essentially on the pleadings and a sparse record . . . in advance of any discovery." *Finecom*, 2005 WL 283611, at *1 (S.D.N.Y. Oct. 25, 2005).

Contrary to Totalmar's representations, none of the charter party contracts shift the risk of loss for cargo damage caused by stowage and loading of the cargo on the vessel to ATN. Totalmar proffers an unsustainable interpretation of the charter party contracts that is contradicted by the very contracts themselves. Clause 2 of the charter party contracts sets forth Totalmar's responsibility for damage to cargo. Specifically, the charter parties provided:

> Owners are to be responsible for loss of or damage to the goods . . . caused by the improper or negligent stowage of the goods (unless stowage performed by shippers, Charterers or their stevedores or servants ) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

Counterclaim ¶¶ 12, 19, 26, 33 & 40. The charter party contracts are attached to the counterclaim as Exs. 1, 3, 5, 7, 9. Further, the charter party contracts provided that the stowage, lashing, securing, talleying, and fitting was to be done to the master's satisfaction. *See* Part II, Clause 33 of MV Skala, MV Rainbow, MV Go Star, MV Atlantica, and MV Majartta charter parties (attached to Counterclaim as Exs. 1, 3, 5, 7, 9). Specifically, the relevant portions of Clause 33 provide:

> CHARTER ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED SECURED, TALLYED, FITTING TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE. . . –STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL/DIRECTION/SATISFACTION.

Totalmar also argues that the pipes were damaged prior to being loaded. *See* Opposition at 18. While the cargo did sustain some damage prior to being loaded, ATN is not seeking recovery from Totalmar for pre-shipment damage. Gonzalez De La VEGA Dec. ¶ 12. Further, contrary to Totalmar's opposition, Totalmar did not wait four months to notify Totalmar of the

damage to its cargo. An ATN representative informed Totalmar's agents while the pipes were being unloaded that there was damage to the pipes caused during the carriage. *Id.* ¶¶ 10-11. In addition, Totalmar is wrong when it represents that ATN failed to inspect the cargo when the pipes were discharged. ATN had the pipes inspected at the discharge port, where the pipes are currently being warehoused. *Id.* ¶ 11.

Lastly, the Court should view skeptically Totalmar's claim of poverty. *See* Opposition at 20-21. In connection with five charter party contracts, ATN paid over $20 million to Totalmar between December 11, 2007 and January 31, 2008. Gonzalez De La VEGA Dec. ¶ 13. Notwithstanding, Totalmar claims it only has $36,787.17 in its bank account. Totalmar appears not to be disclosing the actual amount of funds it has on deposit. The bank account summary attached as Exhibit 12 to the Hernandez Declaration reflects a different account number than the account to which ATN wired funds to pay for the carriage of cargo. *Id.* ¶ 13 & Ex. E.

**D.     The Court Should Compel Totalmar To Arbitrate The Charter Party Disputes.**

Five months have passed since Totalmar obtained an *ex parte* order of maritime attachment, and Totalmar has made almost no effort to arbitrate its claims pursuant to the charter party contracts. Totalmar did not initiate arbitral proceedings until March 11, 2008, and then only with respect to its purported claims arising from the MV Skala and MV Rainbow charter parties, which both require the arbitration in New York. Declaration of Richard C. Lorenzo Dec. ¶ 3, filed concurrently herewith. Totalmar's arbitration demand is annexed to the Wanchoo Declaration in Opposition to Defendant's Motion to Vacate Maritime Attachment as Exhibit 9-1. On May 29, 2008, ATN demanded arbitration pursuant to the MV Skala, MV Rainbow, and MV Go Star charter party contracts and nominated its party-appointed arbitrator for those three proceedings. *Id.* ¶ 7. Although the parties agreed to a stay of the proceedings before this Court

9

pending settlement discussions that concluded after an unsuccessful mediation in May 2008, Totalmar has done nothing to pursue the arbitral proceedings. Now, Totalmar contends there is no reason to compel arbitration and that the arbitration proceedings should be consolidated. Opposition at 22-24. Totalmar's delay demonstrates two important points: (1) Totalmar obtained an *ex parte* order of maritime attachment for the sole purpose of pressuring ATN to settle and not to secure good faith claims; and (2) ATN's motion to compel arbitration is *not* mooted by the parties' initiation of arbitration, as Totalmar argues. Had Totalmar's intent been to arbitrate its claims, it would have submitted a request to one or more of the selected arbitration panels to decide whether all of the arbitral proceedings should be consolidated.

ATN does not object to having the panel for the MV Skala arbitration determine the issue of consolidation. That being said, Totalmar disingenuously argues that the parties had an agreement in principle to consolidate the arbitration proceedings that ATN breached. Totalmar failed to submit all of the correspondence between counsel pertaining to the negotiation of the procedures for the arbitration proceedings, leaving the Court with an incomplete picture of what had happened. Contrary to what Totalmar represented, the parties never reached an agreement to consolidate the different arbitration proceedings. Lorenzo Dec. ¶¶ 3-6. The "agreement in principle" to consolidate was predicated upon the parties first agreeing to the procedures for the arbitration. The parties, however, never agreed on the procedures for arbitration. *Id.* ¶ 6.

## CONCLUSION

ATN respectfully requests the Court to: (1) vacate the ex parte maritime attachment order or to reduce the attachment from $1,713,819.60 to no more than $515,415.18; (2) order Totalmar to post counter-security in the amount of $1,719517.00; and (3) stay the action and to compel arbitration.

10

\\\MI - 030598/000002 - 128914 v7

Dated: July 21, 2008

                            Respectfully submitted,

                            By_____/s/_____
                                George F. Hritz
                                Hogan & Hartson LLP
                                875 Third Avenue
                                New York, NY 10022
                                Tel: (212) 918-3000
                                Fax: (212) 918-3100
                                Email: gfhritz@hhlaw.com

                                John F. O'Sullivan
                                Hogan & Hartson LLP
                                Mellon Financial Center
                                1111 Brickell Avenue, Suite 1900
                                Miami, FL 33131
                                Tel: (305) 459-6500
                                Fax: (305) 459-6550
                                Email: jfosullivan@hhlaw.com

```
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
TOTALMAR NAVIGATION CORP.,              :
                                        :
                    Plaintiff,          :       Index No. 08-cv-1659 (HB)
                                        :       ECF Case
     -against-                          :
                                        :
ATN INDUSTRIES INC.,                    :
                                        :
                    Defendant.          :
------------------------------------------------------------- x
```

## AFFIRMATION OF SERVICE

George F. Hritz affirms under penalty of perjury:

I am an attorney admitted to practice in the State of New York and am a partner with the law firm of Hogan & Hartson LLP, attorneys for defendant in the above-captioned matter.

I certify that on July 21, 2008, I electronically filed Defendant's Consolidated Reply Memorandum and declarations of Vincente E. Gonzalez De La Vega and Richard C. Lorenzo with exhibits with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel authorized to receive Notices of Electronic Filing generated by CM/ECF, including counsel below:

Rahul Wanchoo, Esq.
Law Offices of Rahul Wanchoo
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
*Attorneys for plaintiff Totalmar Navigation Corp.*

Dated: July 21, 2008

_____/s/_____
George F. Hritz