**HOGAN & HARTSON LLP**
Attorneys for Defendant
875 Third Avenue
New York, NY 10022
Phone (212) 918-3000
Facsimile (212) 918-3100

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
                                                   :
TOTALMAR NAVIGATION CORP.,                         :
                                                   :
                        Plaintiff,                 :    Index No. 08-cv-1659 (HB)
        -against-                                  :    ECF Case
                                                   :
ATN INDUSTRIES INC.,                               :
                                                   :
                        Defendant.                 :
                                                   :
------------------------------------------------- x
```

### DECLARATION OF VICENTE E. GONZALEZ De La VEGA

I, VICENTE E. GONZALEZ De La VEGA, pursuant to 28 U.S.C. § 1746(b), hereby declare as follows:

1.      I am the legal representative of ATN Industries Inc. ("ATN"). I submit this declaration in support of ATN's reply memorandum in support of motion to vacate or reduce ex parte order of maritime attachment, motion for counter-security, and motion to stay proceedings and to compel arbitration. I have personal knowledge of the facts and proceedings had herein.

2.      To date, Totalmar has attached over $1,713,819.60 in ATN's funds in connection with an Ex Parte Order of Attachment entered by this Court on or about February 19, 2008.

3.      On or about November 23, 2007, ATN and Totalmar entered into a charter party contract for the vessel MV Skala to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela. The charter party initially required ATN to load a minimum of 480 to 500 pieces of pipes onto the vessel.

4.    On November 28, 2007, Reyes Hernandez of Totalmar Navigation Corp. ("Totalmar") advised ATN by email that "due to restrictions on the visibility for cargo loaded on deck the M/V Skala will only be able to load min 410 pieces or pipe" and "[t]he master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel." A true and correct copy of the November 28, 2007 email is annexed hereto as **Exhibit "A."**

5.    Subsequently, on or about December 30, 2007, ATN and Totalmar executed an addendum to the MV Skala charter party that reduced the minimum number of pipes ATN had to load onto MV Skala from 480 to 410. A true and correct copy of the December 30, 2007 addendum is attached hereto as Exhibit "B." ATN loaded on the MV Skala more pipes than the contractual minimum required.

6.    On or about December 8, 2007, ATN and Totalmar entered into a charter party for MV Go Star to carry polycarbonate pipes from Shanghai, China to Maracaibo, Venezuela. The MV Go Star charter party initially required ATN to load a minimum of 435 pieces of pipes onto MV Go Star with the pipes dimensions guaranteed by ATN.

7.    On December 20, 2007, ATN notified Totalmar that the pipe supplier in Shanghai, China only had pipes with a smaller diameter than what ATN had guaranteed in the MV Go Star charter party. On or about December 21, 2007, Totalmar confirmed, without objection, the receipt of this information by email. A true and correct copy of the December 20 and 21 email exchange between ATN and Totalmar is attached as **Exhibit "C."**

8.    On or about December 28, 2007, ATN and Totalmar entered into an addendum to the MV Go Star charter party that reduced the minimum number of pipes ATN had to load onto the vessel from 435 to 410. In addition, the addendum deleted the requirement that ATN

2

guarantee the pipe's dimensions. ATN loaded on the M/V Go Star in excess of the contractual minimum required.

9.      On or about January 29, 2008, an agent for Totalmar acknowledged by email that they mistakenly used the larger pipe diameter as opposed to the smaller diameter to book space on MV Go Star. A true and correct copy of this email exchange is attached as **Exhibit "D."**

10.     It is false that ATN delayed in providing Totalmar notice of the damages sustained to its pipes during carriage. At the time ATN's pipes carried on MV Skala, MV Go Star, MV Rainbow, MV Atlantica, and MV Majartta were discharged at the port in Maracaibo, Venezuela, a representative of ATN immediately notified Totalmar's Venezuelan agent, AGECOM, that certain of the pipes sustained damage during carriage. AGECOM's vice-president in Maraciabo, Venezuela, Mr. Armin Altarac was immediately made aware of the damage sustained and ATN's claims. In addition, in the discharge of certain of the cargo Reyes Hernandez of Totalmar was present and apprised of the cargo damage and ATN's claims.

11.     At the port of discharge in Maracaibo, Venezuela where the pipes are currently being warehoused, ATN inspected the pipes shipped on the MV Skala, MV Go Star, MV Rainbow, MV Atlantica and MV Majartta.

12.     ATN is not seeking recovery for damage the pipes may have sustained prior to the carriage on MV Skala, MV Go Star, MV Rainbow, MV Atlantica, and MV Majartta.

13.     ATN paid Totalmar over $20 million between December 11, 2007 and January 31, 2008 for the carriage of pipes from Shanghai, China to Maracaibo, Venezuela pursuant to charter party contracts for MV Skala, MV Go Star, MV Rainbow, MV Atlantica, and MV Majartta. True and correct copies of the wire transfer receipts are attached hereto as **Exhibit "E."**



3

I, VICENTE E. GONZALEZ De La VEGA, declare under penalty of perjury that the foregoing is true and correct.

This Declaration was executed by me this 18 day of July, 2008, in Miami, Florida.

_____
VICENTE E. GONZALEZ De La VEGA

4

# EXHIBIT A

**From:** Reyes Hernandez [mailto:totalmar@cantv.net]
**Sent:** Wednesday, November 28, 2007 5:48 PM
**To:** Mauricio Gross; jobenoudiz@yahoo.com
**Cc:** altarac@agecom.net; elormar@movistar.ve.blackberry.com
**Subject:** RV: Pipes Ex China to Maracaibo M/V Skala


Mauricio / Armin / Reyes

Attached and bellow please find message and the information received from Panama Agents Messrs. Wildford & McKay whom will be acting as vessel's agent through her passage by the Panama Canal, that due to restrictions on the visibility for cargo loaded on deck the M/V Skala will only be able to load min 410 pieces of pipes, The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel. Be guided accordingly.

For your guidance M/V Skala is given ETA to load port on December 3rd, 2007 consider this as 5 days notice of arrival to load port.

Best regards

Eng. Reyes Hernández
Totalmar Group
e-mail: totalmar@cantv.net
Ph: +58 212 2868686
Fax: +58 212 2870115
Mob: +58 414 3057475

Quote

7/15/2008

**De:** Wilford & McKay, S.A. [mailto:wilford@shipsagent.com]
**Enviado el:** Martes, 27 de Noviembre de 2007 11:56 a.m.
**Para:** 'Reyes Hernandez'
**Asunto:** RE: Pipes Ex China to Maracaibo

To: Reyes Hernandez
    Totalmar Group
    Venezuela

From: Jorge J. Corredoira
    Wilford & McKay, S.A.
    Cristobal

Dear Reyes Hernandez,

In response to your email, in regards to the cargo you wish to load on deck please refer to the attachments of this message. The attachment visib001 concerns regarding the minimum visibility requirements for on deck cargo. The visibility forward to the bridge should not exceed 1 ship's length. The attachment deck001 concerns regarding on deck stowage and safe passage.

Now, we cannot give you the information on how many tiers you can load, however, with the attached information you should be able to make the proper assessments with the Master of the vessel who will be able to provide a sketch and base the calculations according to the Panama Canal regulations.

Best regards,



WILFORD & MCKAY, S.A.

Jorge J. Corredoira
Operations

Wilford & McKay, S. A.
1110 Columbus Avenue
Cristobal
Panama

Tel: +507 4-33-8544
Fax: +507 4-33-8504
Mob: +507 6615-8170
Email: wilford@shipsagent.com
Web: www.wilfordmckay.com

As agents only

Unquote

7/15/2008



**FIGURE 3 -** Pilot Platforms and Shelters

## 4. Navigation Bridge Features Required of Transiting Vessels

a. *Authority* - The following vessel bridge design rules are issued under authority of the *ACP Navigation Regulations, articles 29, 50, and 61 to 64*. Vessels not meeting the requirements of these rules after January 1, 1980, may, at the discretion of the Canal Authority, be allowed to transit after execution of an undertaking and release form. This undertaking and release form is to be made on behalf of the owners, operators, master and all other persons having an interest in the vessel and shall provide that in case of damage of any sort proximately resulting from non-compliance with these rules, the Canal will be released from any liability and will be indemnified for any damage or expense incurred.

b. *Wheelhouse* - Wheelhouse windows shall be:

(1) Of sufficient size and number to provide a clear view.

(2) Of clear safety glass. Tinted windows must be removable.

(3) Arranged so as to include a center window.

16

(4) Equipped with an efficient, mechanically operated rain wiper blade on the window at the normal bridge Conning Position 1. In the case of vessels with a center crane or other type of obstruction, blade type wipers shall be located on the windows at normal bridge Conning Positions 2 and 3. In case of enclosed bridge wings, blade type wipers shall be located also on the forward and aft windows at Conning Positions 4 and 5.

c. *Bridge Wings* - Bridge wings shall be provided with a clear, unobstructed passageway of at least 3.93 feet (1.2 m) wide along their forward portions from the wheelhouse doors to the extreme ends of the bridge wings. Additionally, the bridge wings shall be extended to the maximum beam of the vessel. If it is not possible to extend the bridge wings the full breadth of the vessel, they shall extend as far as possible and swing-out or portable platforms shall be provided as follows:

(1) Extending to the maximum beam of the vessel.

(2) Of adequate size, strength and rigidity to hold two persons.

(3) Equipped with horizontal safety handrails and a toe board around the deck, 4-inches high minimum.

(4) Platforms shall be safe and secure and maintained in good condition.

d. *Normal Conning Positions* (see **Figure 4**)

(1) Conning Position 1 is located directly behind and next to the forward center wheelhouse window.

(2) Conning Position 2 is located to port of Conning Position 1 directly behind and next to the nearest window thereto that provides a clear unobstructed view ahead.

(3) Conning Position 3 is located to starboard of Conning Position 1, directly behind and next to the nearest window thereto that provides a clear unobstructed view ahead.

(4) Conning Position 4 is located at the extreme end of the port bridge wing and must provide a clear and unobstructed view fore and aft of the vessel's port side.

(5) Conning Position 5 is located at the extreme end of the starboard bridge wing and must provide a clear and unobstructed view fore and aft of the vessel's starboard side.

(6) No equipment or instrumentation shall block the close approach to the forward windows at Conning Positions 1, 2 and 3 and from the forward to after portions of the bridge wing ends at Conning Positions 4 and 5. A minimum of 3.28 feet (1 m) clearance from consoles or obstructions should be provided in these areas. Special requests for relaxation of this requirement may be considered on a case-by-case basis. Inset navigation lights fitted on the bridge wing ends are unacceptable, as they block the



**FIGURE 4 -** Normal Conning Positions

pilot's close approach to these areas.  Bridge wing controls shall be so positioned that neither the controls nor the operator interfere with the pilot's functions.

e.  *Panama Canal Minimum Visibility Requirements*

(1) All vessels transiting the Panama Canal must comply with the following navigation bridge minimum visibility requirements:

(a) If the vessel is laden, the view of the water surface from any conning position in the navigation bridge shall not be obscured by more than one (1) ship length forward of the bow, under all conditions of draft and trim.  **Note:** Vessels billed at the laden rate are considered laden for the purposes of this requirement.

18

(b) If the vessel is in ballast (not laden), the view of the water surface from any conning position in the navigation bridge shall not be obscured by more than one and one-half (1.5) ship lengths forward of the bow, under all conditions of draft and trim.

(c) If the visibility from normal conning positions is obscured by cargo gear or other permanent obstructions forward of the beam, the total arc of obstructed visibility from Conning Position 1 shall not exceed 15 degrees.

(d) The side hull plating at the vessel's waterline, fore and aft, shall be visible from bridge wing conning positions.

(e) Vessels shall be required to execute an Undertaking and Release if visibility from the bridge is considered by the Canal Authority to present a hazard.

(2) Under an ongoing test, which began January 30, 2000, container vessels may be allowed to transit while not in compliance with the visibility requirements in Subsection 4.e(1) above, provided they comply with all of the following requirements and conditions:

(a) Must be 700 feet (213.36m) or more in length.

(b) Must have clear visibility forward; therefore, should not be equipped with centerline cranes or cargo gear, which in any way obstruct forward visibility.

(c) The view of the water surface from conning position No.1 shall not be obscured by more than two (2) ship lengths, or 500 meters, whichever is less, forward of the bow to 10° on either side, under all conditions of draft, trim and deck cargo.

(d) Must have installed, prior to transit, the pilot shelter platforms as required in Article 64 of the Maritime Regulations for the Operation of the Panama Canal.

(e) Must be equipped with an operational bow thruster, otherwise it may, at pilot request, be assigned and charged for an additional tug through the Gaillard Cut.

(f) Must notify the ACP of their voluntary request to "Exceed ACP Visibility." This notification, which may be included in the remarks section of the ETA message, must be received at least 48 hours prior to arrival stating that they "Exceed ACP Visibility."

(g) Incur a service charge in the amount of $2,500 to cover the costs resulting from the assignment of additional resources provided adequate notification, as stated in paragraph f, has taken place. If notification is not received at least 48 hours prior to the vessel's **arrival,** the service charge will be $6,500.

(h) Vessels failing to meet ACP visibility requirements that nonetheless qualify for this test, but for which notification was not received as required in paragraph (f) above, may be subject to delays and additional charges as well as the $6,500 service charge.

(i) Requests to modify previous ETA messages, which would change the "Exceed ACP Visibility" status of the vessel, will only be allowed, with no service charge assessed, if notification is received 48 hours prior to arrival.

(3) All vessels that arrive for transit not in compliance with the Panama Canal visibility requirements as outlined above, are subject to the conditions outlined in paragraph 4.a of this Notice (page 27), as well as the conditions and service charges stated in Item 2 above. Any denial of transit or transit delays experienced due to non-compliance of the above or any other non-compliance, will not be considered as an acceptable justification for claims from vessels for delays in navigation, in accordance with Article 6 of the "Maritime Regulations for the Operations of the Panama Canal." Note: Vessel owners are encouraged to raise the height of the navigation bridge of their existing vessels and to have new vessels designed and built with higher navigation bridges so as to provide navigators the best possible visibility.

f.   *Indicators* - All vessels over 150 feet (45.72 m) in length shall be provided with:

(1) *Rudder angle indicators as follows:*

(a) On vessels less than 80 feet (24.38 m) in beam, at least one of such design and placement that it can be easily read by day or night from all normal conning positions and from the steering station.

(b) On vessels 80 feet (24.38 m) or more in beam, at least one inside the wheelhouse and one on each bridge wing, of such design and placement so that at least one can be easily read by day or night from each conning position and from the steering station.

(c) They shall show in degrees clearly and accurately the position and direction of the rudder or rudders. It shall be noted that indicators located aft of the conning positions will not be considered as meeting this requirement. Overhead rudder angle indicators located behind the pilot's conning positions are not acceptable. Rudder angle indicators mounted on overhead panels should be as close to the forward bulkhead as possible for most efficient viewing by the pilot.

(2) *Propeller revolution tachometer or variable pitch propeller indicators as follows:*

(a) On vessels less than 80 feet (24.38 m) in beam, at least one for each propeller, of such design as to be easily read by day or night from all normal conning positions.

(b) On vessels 80 feet (24.38 m) or more in beam, at least one for each propeller located inside the wheelhouse and one for each propeller located on each bridge wing, of such design and placement so that at least one can be easily read by day or night from each conning position.

(c) Indicators shall show revolutions per minute clearly and shall accurately indicate the direction of the propeller or propellers. It shall be noted that indicators located aft of the conning positions will not be considered as meeting this requirement.

(d) All vessels with variable pitch control indicators will have them so located as required in (a) and (b) of this subsection.

(1) From Buoys 1 and 2 in the Pacific entrance channel to Gamboa Reach, and vice versa.

(2) From the north end of Gatun Locks to Buoy 3 in the Atlantic entrance channel, and vice versa.

b. In cases where the overdraft is negligible, the assignment of one or more towboats may be waived at the discretion of the Canal Operations Captain or his designee.

c. The following conditions require that vessels be towed through the entire Canal, and the masters shall report these conditions and request the towing services:

(1) Vessels without mechanical motive power;

(2) Vessels with disabled machinery or bad steering; and

(3) Vessels liable to become unmanageable for any other reason.

d. In addition, ACP authorities may require vessels to make use of one or more towboats through Gaillard Cut, on the approaches to the locks, or in any other part of the Canal, when, in their judgment, such action is necessary to insure reasonable safety to the vessel and/or the Canal and its appurtenances.

e. The towing services in all of the above cases shall be chargeable to the vessel.


## 7. Deckload Cargo

a. As provided in the *ACP Navigation Regulations, articles 72 and 73,* a vessel carrying a deck load shall have it so stowed as to be sufficiently clear to provide safe working space around all chocks, bitts, and other gear used in transiting and so arranged as to not obstruct any direct lead from chock to bitts.

b. Deck cargo shall be so stowed to provide safe passage to and from necessary working areas. If access to working spaces is necessary over a deck load, as with lumber, a catwalk will normally be required, unless a leveled, continuous surface free of encumbrances such as lashings is already provided. When catwalks are required they shall be at least 3 feet (0.915 m) in width and provided with adequate guard rails. Where the deck cargo is sufficiently level for gangway purposes without a catwalk, the guard rails, or life lines, spaced not more than 12 inches (30.5 cm) apart vertically, must be provided on each side of the deck cargo to a height of at least 4 feet (1.20 m) above the cargo.

c. If deck access is provided on deck adjacent to deck cargo, a leveled continuous passage at least 3 feet (0.915 m) in width shall be provided. This access shall be unencumbered by shoring, lashings or other obstacles deemed hazardous to normal passage. Height over passageway may not be less than 7 feet (2.134 m).

d.   When personnel is required to traverse over deck cargo, ladders adequate for safe access must be provided between the deck and top of deck cargo. Such ladder must be provided with guardrails or safety lines as previously described for catwalks.

e.   Deck cargo shall be stowed securely to prevent any shifting or displacement during access to working spaces by personnel.

f.   Vessels may transit with deck cargo protruding over one side only, not to exceed 15 feet (4.572 m); but the maximum beam, including protrusions, must not exceed 85 feet (25.90 m).

g.   An adequate bulwark or railing shall be provided between deck cargo and the ship's side.

h.   All sharp edges and projections on deck cargo adjacent to normal accesses shall be adequately protected to prevent injury to personnel.

i.   Sufficient lighting shall be provided by the vessel to illuminate deck accesses and working spaces during hours of darkness.

j.   Figure 5 shows sketches of a catwalk and ladder acceptable to the Authority.



**FIGURE 5 -** Catwalk and Ladder Sketches

# EXHIBIT B



**ADDENDUM TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

It is this day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that due to the information received from Panama Agents Messrs. Wildford & McKay whom will be acting as vessel's agent through her passage by the Panama Canal, that due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala will only be able to load min 410 pieces of pipes instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Signed in Caracas on the 30th day of December 2007. Two originals have been drawn up one for each party.

Totalmar Navigation Corp.

**FOR OWNERS**                          **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.            **ATN INDUSTRIES INC**

# EXHIBIT C

**From:** Reyes Hernandez [mailto:totalmar@cantv.net]
**Sent:** Friday, December 21, 2007 9:16 AM
**To:** Mauricio Gross
**Cc:** elormar@cantv.net; altarac@agecom.net
**Subject:** RE: Producciones para 2008

Mauricio / Reyes

Confirmado

Cordiales Saludos

Eng. Reyes Hernández
Totalmar Group
e-mail: totalmar@cantv.net
Ph: +58 212 2868686
Fax: +58 212 2870115
Mob: +58 414 3057475

---

**De:** Mauricio Gross [mailto:Mauricio@atnindustries.com]
**Enviado el:** Jueves, 20 de Diciembre de 2007 07:08 p.m.
**Para:** altarac@agecom.net; elormar@cantv.net; Reyes Hernandez
**Asunto:** Producciones para 2008
**Importancia:** Alta

Para manejar datos reales y evitar confusiones por favor mantengan estas cifras presentes:

1.  Shanghai mid/end Enero 2008
    820 piezas únicamente (OD 2.4 x 12.192 mt x 14.50 mm / 10.3 TONS)

Las limitaciones en Shanghai para Loose el max es 5 tier y ya las cruces seran de 6 brazos.

2.  Ningbo ENE/FEB (y ojala no lleguemos a MAR)

    1666 piezas únicamente (OD 2.6 x 12 mt x 15.88 mm / 10.2 TONS)
    1666 piezas únicamente (OD 2.4 x 12 mt x 14.50 mm / 10.2 TONS)

Si se empacan "NESTED" solamente se considera volumen de los OD 2.6 metros, si fuera el caso, de no poder hacer el "NESTED" serán el total de todas las piezas.

Los términos para NINGBO son únicamente Liner Terms H / H

Las limitaciones en Ningbo para Nested es max 2 tier, si es Loose el max es 4 tier.
El  max es de 25.000 DWT

Favor confirmar este mensaje.

Slds

**Mauricio Gross**
**Commercial Manager**
ATN Industries INC.

11200 Westheimer Road, Suite 870
Houston, TX 77042
Phone  713 – 339.1358 x 14
Fax      713 – 334.7320
Mobile 713 – 429.3415
Mauricio@atnindustries.com

Global Roaming @ 58 - 412 - 327.0735

"The information contained in this Internet message is confidential and intended only for the use of the individual or entity identified. If the reader of this message is not the intended recipient, any dissemination, distribution or copying of the information contained in this Internet message is strictly prohibited. If you received this message in error, please notify the sender immediately"

# EXHIBIT D

-----Original Message-----
From: davjin [mailto:davjin@gmail.com]
Sent: Tuesday, January 29, 2008 3:30 PM
To: Reyes Hernandez; elormar@cantv.net
Cc: Mauricio Gross
Subject: Fw: Fw: MV GO STAR/ SHANGHAI/ DOCS ( 1)

REYES / DAVID

PLS FIND BELOW MESGS WHICH SELF-EXPLANATORY.

RGDS
DAVID

----- Original Message -----
From: "VIVI TAN/FEISA" <agency@feisa-sh.com>
To: "davjin" <davjin@gmail.com>
Sent: Tuesday, January 29, 2008 1:50 PM
Subject: Re: Fw: MV GO STAR/ SHANGHAI/ DOCS ( 1)


> TO:STA BREMEN
> FM:FEISA SHANGHAI
>
> Gd day,dear David
> Re your 2nd item below,pls find below explanation from shipper's forwarder fyr:
>
> //quote///
> Dear Tan,
> Please kindly issue your B/L according to our draft, the description of the goods is OD: 2400
millimeters. Because we made a mistake when we booked the space to you, it was shown the pipes
OD is 2600 millimeters on our shipping order and it was wrong.
> //unquote///
>
> The draft b/l have been sent to your good company,pls check if they are in good order,tks.
>
> B.RGDS/Vivi Tan
> SHANGHAI FAREAST INT'L SHIPPING AGENCY CO., LTD.
> 13F JAHWA FINANCIAL BLDG,NO.133,TIANTONG RD,SHANGHAI,P.R.CHINA
> TEL: 86-21-63647493/63647475
> FAX: 86-21-63566543/63647476
> E-MAIL: AGENCY@FEISA-SH.COM
> MP:+86-13564819264
>
>
> 收件人 · · davjin
> 发送时间 · · 2008-01-29  05:01:09
> 发件人 · · Feisa Shanghai
> 收件 · · Sta Bremen
> 主题 · · Fw: MV GO STAR/ SHANGHAI/ DOCS ( 1)
>
> FEISA SHANGHAI / STA BREMEN
>

> CC: MR. DANIEL TORBECK

>

> RE: MV GO STAR / ABS 1054 - SHANGHAI

> --

>

> TKS YRS.

>

> FOUND 2 MISTAKES:

>

> 1)   SOF WAS NOT PROPERLY MADE AS TIME OF COMPLETING LASHING/SECURING WAS

NOT MENTIONED ON IT. PLS CORRECT IT WITH EXPLANATION.

>

> 2)   IN MATES' RECEIPT THE SPECIFICATION OF 400 PCS OF PIPES IS WRONG. THEIR DIA

IS 2.4, NOT 2.6. PLS CHECK WITH THE SHIPPERS.

>

> BRGDS

> STA BREMEN

> DAVID JIN

>

>

>

> ----- Original Message -----

> From: "feisa"  <agency@feisa-sh.com >

> To: "'davjin'"  <davjin@gmail.com >

> Cc: "'feisa'"  <agency@feisa-sh.com >

> Sent: Saturday, January 26, 2008 4:31 PM

> Subject: MV GO STAR/ SHANGHAI/ DOCS ( 1)

>

>

>> David/ Ma LiZhong

>>

>> The vessel sailed from BaoShan wharf at 1615lt today.

>>

>> Tally Cert/ NOR- SOF/ P&I SURVEY REPORT/ STOWAGE PLAN/ MATES RECEIPT as

>> attached.

>>

>> Will send Departure Report to you moment later.

>>

>> B.rgds

>>

>

# EXHIBIT E

A  (39)



INTERNATIONAL MONEY TRANSFER(US DOLLARS)

TR: 005          INTERNATIONAL MONEY TRANSFER(US DOLLARS)      BUS: 016
12/11/07                        CITIBANK REFERENCE NUMBER      3450044653

ORIGINATOR INFORMATION        A. T. N. INDUSTRIES, INC
                              9401 NW 53RD TER
                              STE 209
                              MIAMI FL 331884564

BENEFICIARY INFORMATION       TOTAL NAVIGATION CORP
                              AV FRANCISCO MIRANDA CENTRO PL
                              TORRE C PISO 8 OFC F
                              CARACAS-VENEZUELA

                              ACCOUNT: 201389

BENEFICIARY BANK              EBNA BANK NV
                              AMACO BUILDING 38B
                              ZEELANDIA CURACAO
                              NETHERLAND ANTILLES

                              ACCOUNT: 0011990850

ENTER-MORE F2-RECALLS F3-SEL. SCRN F4-AMEND F5-MAIN MENU F6-REPRINT F9-RETURNED

A01 C001

☐ Select a solution

☐ Select a system

A

# 4,181,884.24



# Wire Transfer Authorization and Agreement    *12/18/07*    *B*    citibank (52)

Complete the information below to authorize a Wire Transfer. All fields in **BOLD** are required information.

## Originator (Sender) Information

| **Name/Title of Account** | **Account Number** | **Type of Account** |
|---|---|---|
| *ATM Industries Inc.* | *32 90100160* | *Business checking* |

**Street Address (No PO Box)**
*8401 NW 53 Terrace Suite 209*

| **City** | **State/Province** | **Zip** | **Country** |
|---|---|---|---|
| *Miami* | *FL* | *33166* | *USA* |

| **Telephone Number** | Wire Sent on Behalf of (If applicable): |
|---|---|
| *305.468.8600* | |

## Wire Transfer Currency Selections and Amounts

Check Destination:
☐ International (Outside US)
☐ Domestic (Inside US)

For international wires, funds will be sent in the currency of the destination country, where available. If you wish for the funds to be sent in US Dollars (Funds will be converted by local Bank, unless recipient has a US dollar account), please indicate by checking this box: ☒

| Currency Type if International (Name of Country and Unit) | Amount in Words *four million three hundred & fifty five thousand nine hundred and ninety two dolors* |
|---|---|
| **US Dollar Amount in Numbers:** *4,355,992.06*      **OR** | Foreign Currency Amount in Numbers: |

## Beneficiary (Receiver) Information

| **Name** *Total mar navigation corp.* | Telephone Number *58.212.286.8686* |
|---|---|

**Street Address** *Avda Francisco de miranda centro Plza Torre C Piso 18 oficina 18 oficina F*

| **City** *Los Palos Grandes* | **State/Province** *Caracas* | **Zip** | **Country** *Venezuela* |
|---|---|---|---|

**Account Number** *201389*

## Beneficiary Bank Information

**Bank Name** *EBNA Bank N.V.*

**Street Address** *AMACO Building 36-B Zeelandia curacao, Netherlands Antilles*

| **City** | **State/Province** | **Zip** | **Country** |
|---|---|---|---|

| Circle One – Bank: ABA    Sort Code    SWIFT    CHIPS UID | **Number:** *account 0011990850* |
|---|---|

## Intermediary Bank Information (if applicable)

| Bank Name *JP morgan chase New York* | Account Number |
|---|---|

**Address** *345 Park Avenue*

| **City** *New York* | **State/Province** *NY* | **Zip** *10154* | **Country** *USA* |
|---|---|---|---|

| Circle One - Bank: ABA    Sort Code    SWIFT    CHIPS UID | **Number:** *ABA: 021000021. Swift: chasus33* |
|---|---|

## Special Instructions

## Originator Authorization

By signing below, I authorize Citibank to execute the above instruction(s) and in accordance with the Terms and Conditions for Wire Transfers set forth in this agreement.

| **Authorized Signature and Date** *12/18/07* | 2nd Authorized Signature (if applicable) and Date |
|---|---|

## BANK USE ONLY

| Identification – Authorized Signer 1 | | Identification – Authorized Signer 2 (if applicable) | |
|---|---|---|---|
| Primary (if D/P/P/C with card or Signature card only forms required) | | Primary (if D/P/P/C with card or Signature card only forms required) | |
| Secondary | | Secondary | |
| International Wires | Trader's Contract # | Exchange Rate | Foreign Amount |
| US Dollar Equivalent | Wire Fee | Total Charge (add US dollar and fee) | |
| Bank Preparer (signature and stamp): | | Original Document = FC End of Day Wire File Copy to client | |



# TERMS AND CONDITIONS

By placing a funds transfer order with Citibank, you agree to the following:

**Reliance by Citibank.** Citibank may rely on the information on this form in making your funds transfer. Any errors in the information, including misidentification of beneficiary(ies) {recipient(s)}, incorrect or inconsistent account names and numbers, identifying numbers of the intermediary bank or beneficiary bank, and misspellings, are your responsibility. If you identify a beneficiary or other entity by name and account or any other number, payment may be made on the basis of the number and your payment will be final even if the number you provided does not correspond to your beneficiary or other entity that you have identified.

**Debit Authorization.** Citibank is authorized to debit your account for the amount of your funds transfer order. You further authorize Citibank to charge your account a service fee for each funds transfer order you place in accordance with our fee schedule in effect from time to time.

**Transfer of Beneficiary Bank.** When you place an order with Citibank for a funds transfer, you must select a financial institution as the beneficiary bank (recipient bank) for the transfer. For transfers within the United States, the beneficiary bank must be a member of the Federal Reserve System or a correspondent bank of such a member, or a Clearing House Interbank Payment System (CHIPS) member.

You may request that the funds either be deposited to a particular account at the beneficiary bank or that they be held at the beneficiary bank for your beneficiary. The beneficiary bank will be responsible for following your instructions and for notifying the beneficiary that the funds are available.

After the funds are transferred to the beneficiary bank, they become the property of the beneficiary bank. The beneficiary bank is responsible to locate, identify, and make payment to your beneficiary. If your beneficiary cannot be properly identified, the funds may be returned.

**Currency of Transfer.** Funds transfers to beneficiaries within the United States are made only in U.S. dollars.

For funds transfers to beneficiaries and beneficiary banks in other countries, unless you choose to send U.S. dollars, the transfer will be made in the currency of that country. For such funds transfers, we will convert your U.S. dollar payment to the local currency at Citibank's exchange rate in effect at that time. The exchange rate includes a commission to Citibank for exchanging the currency.

Because of the laws of some countries in which beneficiary banks are located, if you request a transfer in U.S. dollars we cannot guarantee that your beneficiary will be able to receive U.S. dollars. If your transfer must be converted to the local currency, the beneficiary bank may charge a fee for this exchange. Regardless of the currency transferred, the actual amount that your beneficiary receives may be reduced by charges imposed by the beneficiary bank, including those for exchanging currency.

**Means of Transfer.** Citibank uses a variety of banking channels and facilities to make funds transfers, but will ordinarily use electronic means. We may choose any conventional means that we consider suitable to transfer your funds to your beneficiary.

Because we do not maintain banking relations with every bank, we sometimes use one or more intermediary banks to transfer your funds to the beneficiary bank. After we transmit your order to an intermediary bank, that bank is responsible to complete your order.

**Recalls/Amendments.** You may recall or amend your funds transfer order *only* if we receive your request prior to our execution of the funds transfer order and at a time that provides us a reasonable opportunity to act upon that request. If your funds transfer order has been executed by Citibank, the order can be recalled and amended *only* if the beneficiary bank consents to such a request. Citibank will not be liable to you for any loss resulting from the failure of the beneficiary bank to recall or amend your funds transfer order.

If you decide you want to recall your funds transfer order and your order has already been executed by us, we will first have to check with the beneficiary bank to determine whether the beneficiary bank can return your funds. If the beneficiary bank confirms that the funds are returnable and the funds are returned to Citibank by the beneficiary bank, Citibank will return the funds to you.

The amount that is returned to you may be less than you originally transferred because of service charges of the beneficiary bank or Citibank. Your refund will be in U.S. dollars. If your funds transfer was in a foreign currency, your U.S. dollar refund will be at the exchange rate on the date of the refund.

**Rejection of an Order.** We reserve the right to reject your funds transfer order. We may reject your order if you have insufficient available funds in your account, if your order is incomplete or unclear, or if we are unable to fulfill your order for any other reason.

**Delays; Non-Execution of Funds Transfer Order.** While we will handle your funds transfer order as expeditiously as possible, you agree that Citibank will not be responsible for any delay, failure to execute, or misexecution of your order due to circumstances beyond Citibank's reasonable control — including without limitation any inaccuracy, interruption, delay in transmission, or failure in the means of transmission, whether caused by strikes, power failures, equipment malfunctions, or acts or omissions of any intermediary bank or beneficiary bank. CITIBANK MAKES NO WARRANTIES, EXPRESS OR IMPLIED — INCLUDING THE FAILURE OF ANY INTERMEDIARY BANK OR BENEFICIARY BANK TO CREDIT YOUR BENEFICIARY WITH THE AMOUNT OF THE FUNDS TRANSFER AFTER RECEIPT OF SAME WITH RESPECT TO ANY MATTER.

**Cut-Off Time For Executing Your Funds Transfer Order.** If your funds transfer order is received by Citibank at or after its established cut-off hour for receipt of funds transfer orders as communicated by the bank, your funds transfer order will not be executed until the next banking day.

**Claims.** You agree that within thirty days after you receive notification that your funds transfer order has been executed, you will tell us of any errors, delays, or other problems related to your order. If your funds transfer order is delayed or erroneously executed as a result of Citibank's error, Citibank's sole obligation to you is to pay or refund such amounts as may be required by applicable law. In no event shall Citibank be responsible for any consequential or incidental damages or expenses in connection with your order. Any claim for interest payable by Citibank shall be at Citibank's published savings account rate in effect within the state of execution of the funds transfer.

In any event, if you fail to notify us of any claim concerning your funds transfer order within one year from the date that you receive notification that your order has been executed, any claim by you will be barred under applicable law.

**Governing Law.** The Agreement will be governed by the laws of the state in which the branch through which you initiate this funds transfer is located and United States federal law as applicable.

**Indemnity.** In consideration of the agreement by Citibank to act upon funds transfer instructions in the manner provided in this Agreement, you agree to indemnify and hold Citibank harmless from and against any and all claims, suits, judgments, executions, liabilities, losses, damages, costs, and expenses — including reasonable attorney's fees — in connection with or arising out of Citibank acting upon those funds transfer instructions pursuant to this Agreement. This indemnity will not be effective to relieve and indemnify Citibank against its gross negligence, bad faith, or willful misconduct.

Authorized Customer's Signature: _____    Date: _12/18/07_

# Wire Transfer Authorization and Agreement

**CITIBANK**

Complete the information below to authorize a Wire Transfer. All fields in BOLD are required information.

## Originator (Sender) Information

| Name/Title of Account | Account Number | Type of Account |
|---|---|---|
| ATN INDUSTRIES, INC | 3290100160 | BUSINESS CHECKING |

| Street Address (No PO Box) |||
|---|---|---|
| 8401 NW 53RD Terr SUITE ||||

| City | State/Province | Zip | Country |
|---|---|---|---|
| MIAMI | FL | 33166 | USA |

| Telephone Number | Wire Sent on Behalf of (If applicable): |
|---|---|
| 305-468-8600 | |

## Wire Transfer Currency/Sole Destination

Check Destination:
- ☒ International (Outside US)
- ☐ Domestic (Inside US)

For international wires, funds will be sent in the currency of the destination country, where available. If you wish for the funds to be sent in US Dollars (Funds will be converted by local Bank, unless recipient has a US dollar account), please indicate by checking this box: ☒

| Currency Type if International (Name of Country and Unit) | Amount in Words |
|---|---|
| | THREE MILLION - FIVE HUNDRED SEVENTY FOUR THOUSAND AND NINE HUNDRED SEVENTEEN DOLLARS 62/00 |

| US Dollar Amount in Numbers: | OR | Foreign Currency Amount in Numbers: |
|---|---|---|
| $3,574,917.62 | | |

## Beneficiary (Receiver) Information

| Name | Telephone Number |
|---|---|
| TOTALMAR NAVIGATION GROUP | 58-212-286-8686 |

| Street Address |||
|---|---|---|
| Avda FRANCISCO de MIRANDA, CENTRO PLAZA TORRE C, PISO 18, OFICINA F |||

| City | State/Province | Zip | Country |
|---|---|---|---|
| CARACAS | | | VENEZUELA |

| Account Number ||||
|---|---|---|---|
| 201389 |||

## Beneficiary Bank Information

| Bank Name |||
|---|---|---|
| EBNA BANK N.V. |||

| Street Address |||
|---|---|---|
| AMACO BUILDING 36-B |||

| City | State/Province | Zip | Country |
|---|---|---|---|
| Zeelandia | | | CURACAO |

| Circle One – Bank:  ABA    Sort Code    SWIFT    CHIPS UID | Number: | Account # 0011990850 |
|---|---|---|

## Intermediary Bank Information

| Bank Name | Account Number |
|---|---|
| JP MORGAN CHASE NEW YORK | |

| Address |||
|---|---|---|
| 345 PARK AVENUE |||

| City | State/Province | Zip | Country |
|---|---|---|---|
| New York | NY | 10154 | USA |

| Circle One – Bank:  (ABA)    Sort Code    SWIFT    CHIPS UID | Number: | 021000021  swift: CHASUS 33 |
|---|---|---|

## Special Instructions

## Originator Authorization

By signing below, I agree to the terms and conditions of this Transfer as detailed in this agreement.

| Authorized Signature and Date | 2nd Authorized Signature (if applicable) and Date |
|---|---|
| [signature] | [signature] |

| Identification – Authorized Signer 1 | Identification – Authorized Signer 2 (if applicable) |
|---|---|
| Primary (if primary credit or 1 or 2 pictures and only (some required) | Primary (if primary credit card or ID picture card only (intro required) |
| Secondary | Secondary |

| International Wires: | Trader's Contract # | Exchange Rate | Foreign Amount |
|---|---|---|---|
| US Dollar Equivalent | Wire Fee | Total Charge (add US dollar and fee) ||

| Bank Preparer (signature and stamp) | Original Document: FC End of Day Wire File, Copy to client |
|---|---|

TOTAL P.03

# TERMS AND CONDITIONS

By placing a funds transfer order with Citibank, you agree to the following:

**Reliance by Citibank.** Citibank may rely on the information on this form in making your transfer. Any errors in the information, including misidentification of beneficiary(ies) (recipient(s)), incorrect or inconsistent account names and numbers, identifying numbers of the intermediary bank or beneficiary bank, and misspellings, are your responsibility. If you identify a beneficiary or other entity by name and account or any other number, payment may be made on the basis of the number and your payment will be final even if the number you provided does not correspond to your beneficiary or other entity that you have identified.

**Debit Authorization.** Citibank is authorized to debit your account for the amount of your funds transfer order. You further authorize Citibank to charge your account a service fee for each funds transfer order you place in accordance with our fee schedule in effect from time to time.

**Transfer of Beneficiary Bank.** When you place an order with Citibank for a funds transfer, you must select a financial institution as the beneficiary bank (recipient bank) for the transfer. For transfers within the United States, the beneficiary bank must be a member of the Federal Reserve System or a correspondent bank of such a member, or a Clearing House Interbank Payment System (CHIPS) member.

You may request that the funds either be deposited to a particular account at the beneficiary bank or that they be held at the beneficiary bank for your beneficiary. The beneficiary bank will be responsible for following your instructions and for notifying the beneficiary that the funds are available.

After the funds are transferred to the beneficiary bank, they become the property of the beneficiary bank. The beneficiary bank is responsible to locate, identify, and make payment to your beneficiary. If your beneficiary cannot be properly identified, the funds may be returned.

**Currency of Transfer.** Funds transfers to beneficiaries within the United States are made only in U.S. dollars.

For funds transfers to beneficiaries and beneficiary banks in other countries, unless you choose to send U.S. dollars, the transfer will be made, in the currency of that country. For such funds transfers, we will convert your U.S. dollar payment to the local currency at Citibank's exchange rate in effect at that time. The exchange rate includes a commission to Citibank for exchanging the currency.

Because of the laws of some countries in which beneficiary banks are located, if you request a transfer in U.S. dollars we cannot guarantee that your beneficiary will be able to receive U.S. dollars. If your transfer must be converted to the local currency, the beneficiary bank may charge a fee for this exchange. Regardless of the currency transferred, the actual amount that your beneficiary receives may be reduced by charges imposed by the beneficiary bank, including those for exchanging currency.

**Means of Transfer.** Citibank uses a variety of banking channels and facilities to make funds transfers, but will ordinarily use electronic means. We may choose any conventional means that we consider suitable to transfer your funds to your beneficiary.

Because we do not maintain banking relations with every bank, we sometimes use one or more intermediary banks to transfer your funds to the beneficiary bank. After we transmit your order to an intermediary bank, that bank is responsible to complete your order.

**Recalls/Amendments.** You may recall or amend your funds transfer order *only* if we receive your request prior to our execution of the funds transfer order and at a time that provides us a reasonable opportunity to act upon that request. If your funds transfer order has been executed by Citibank, the order can be recalled and amended *only* if the beneficiary bank consents to such a request. Citibank will not be liable to you for any loss resulting from the failure of the beneficiary bank to recall or amend your funds transfer order.

If you decide you want to recall your funds transfer order and your order has already been executed by us, we will first have to check with the beneficiary bank to determine whether the beneficiary bank can return your funds. If the beneficiary bank confirms that the funds are returnable and the funds are returned to Citibank by the beneficiary bank, Citibank will return the funds to you.

The amount that is returned to you may be less than you originally transferred because of service charges of the beneficiary bank or Citibank. Your refund will be in U.S. dollars. If your funds transfer was in a foreign currency, your U.S. dollar refund will be at the exchange rate on the date of the refund.

**Rejection of an Order.** We reserve the right to reject your funds transfer order. We may reject your order if your have insufficient available funds in your account, if your order is incomplete or unclear, or if we are unable to fulfill your order for any other reason.

**Delays, Non-Execution of Funds Transfer Order.** While we will handle your funds transfer order as expeditiously as possible, you agree that Citibank will not be responsible for any delay, failure to execute, or misexecution of your order due to circumstances beyond Citibank's reasonable control — including without limitation any inaccuracy, interruption, delay in transmission, or failure in the means of transmission, whether caused by strikes, power failures, equipment malfunctions, or acts or omissions of any intermediary bank or beneficiary bank. CITIBANK MAKES NO WARRANTIES, EXPRESS OR IMPLIED — INCLUDING THE FAILURE OF ANY INTERMEDIARY BANK OR BENEFICIARY BANK TO CREDIT YOUR BENEFICIARY WITH THE AMOUNT OF THE FUNDS TRANSFER AFTER RECEIPT OF SAME WITH RESPECT TO ANY MATTER.

**Cut-Off Time For Executing Your Funds Transfer Order.** If your funds transfer order is received by Citibank at or after its established cut-off hour for receipt of funds transfer orders as communicated by the bank, your funds transfer order will not be executed until the next banking day.

**Claims.** You agree that within thirty days after you receive notification that your funds transfer order has been executed, you will tell us of any errors, delays, or other problems related to your order. If your funds transfer order is delayed or erroneously executed as a result of Citibank's error, Citibank's sole obligation to you is to pay or refund such amounts as may be required by applicable law. In no event shall Citibank be responsible for any consequential or incidental damages or expenses in connection with your order. Any claim for interest payable by Citibank shall be at Citibank's published savings account rate in effect within the state of execution of the funds transfer.

In any event, if you fail to notify us of any claim concerning your funds transfer order within one year from the date that you receive notification that your order has been executed, any claim by you will be barred under applicable law.

**Governing Law.** The Agreement will be governed by the laws of the state in which the branch through which you initiate this funds transfer is located and United States federal law as applicable.

**Indemnity.** In consideration of the agreement by Citibank to act upon funds transfer instructions in the manner provided in this Agreement, you agree to indemnify and hold Citibank harmless from and against any and all claims, suits, judgments, executions, liabilities, losses, damages, costs, and expenses — including reasonable attorney's fees — in connection with or arising out of Citibank acting upon those funds transfer instructions pursuant to this Agreement. This indemnity will not be effective to relieve and indemnify Citibank against its gross negligence, bad faith, or willful misconduct.

Authorized Customer's Signature: _____    Date: _____

D

Main Menu > Transfers and Payments >

## DOMESTIC WIRE USING MODEL

**WIRE:** From Account: **3290100160**   Currency: **US Dollars**

Status: **Processed - Confirmation Number is 0100000304.**
Wire Fee: **$12.50**

| Beneficiary | Bank |
|---|---|
| **EBNA BANK N.V.**<br>Amaco Building 36B<br>Zeelandia Curacao, Netherlands Antilles<br><br>Phone: 582122868686 | Name: **JPMORGAN CHASE BANK, NA**<br>ABA: **021000021**<br>Address:<br>**NEW YORK**<br>**New York** |

Beneficiary's Account number: **0011990850**

Amount: **$4,975,609.83**

Date of transfer(s): **January 10, 2008**

Special Instructions:
For Final Credit To:
TotalMar Navigation Corp
Account 201389

[ Save as model ]   Model Name: EBNA BANK N.V.

[ Process another Wire ]

E

Help

Main Menu > Transfers and Payments >

## DOMESTIC WIRE USING MODEL

**WIRE:**     From Account: **ATN Checking**    Currency: **US Dollars**

Status:     **Processed** - Confirmation Number is **0310057056**.
            Wire Fee: **$12.50**
            Saved as Model

| Beneficiary | Bank |
|---|---|
| **EBNA BANK N.V.**<br>Amaco Building 36B<br>Zeelandia Curacao, Netherlands<br>Antilles<br><br>Phone: 582122868686 | Name: **JPMORGAN CHASE BANK, NA**<br>ABA: **021000021**<br>Address:<br>**NEW YORK**<br>**New York** |

Beneficiary's Account number: **0011990850**

Amount: **$3,692,761.54**

Date of transfer(s): **January 31, 2008**

Description: **Invoice TNC/01-005**

> Special Instructions:
> For Final Credit To:
> TotalMar Navigation Corp
> Account 201389

    [ Process another Wire ]