**HOGAN & HARTSON LLP**
Attorneys for Defendant
875 Third Avenue
New York, NY 10022
Phone (212) 918-3000
Facsimile (212) 918-3100

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------  x
                                                         :
TOTALMAR NAVIGATION CORP.,                               :
                                                         :
                        Plaintiff,                       :   Index No. 08-cv-1659 (HB)
                                                         :   ECF Case
        -against-                                        :
                                                         :
ATN INDUSTRIES INC.,                                     :
                                                         :
                        Defendant.                       :
-------------------------------------------------------  x
```

## DECLARATION OF RICHARD C. LORENZO

I, Richard C. Lorenzo, pursuant to 28 U.S.C. § 1746(b), hereby declare as follows:

1.      I am a member of the Florida Bar and a partner of the law firm of Hogan & Hartson LLP, counsel for defendant ATN Industries Inc. ("ATN") in this action.

2.      I submit this declaration in support of ATN's reply memorandum in support of motion to vacate or reduce ex parte order of maritime attachment, motion for counter-security, and motion to stay proceedings and to compel arbitration. I have personal knowledge of the facts and proceedings had herein.

3.      On or about March 11, 2008, Totalmar Navigation Corp. ("Totalmar") initiated two arbitral proceedings against ATN in accordance with the dispute resolution provisions of the relevant charter party contracts. Subsequently, ATN and Totalmar considered the possibility of consolidating the multiple charter party disputes and the separate arbitration proceedings into a single arbitration. A true and correct copy of an email dated March 20, 2008 from Hogan &

Hartson to Totalmar's counsel, Rahul Wanchoo, is annexed hereto as **Exhibit "A."**  The first numbered paragraph of the email provides: "The parties agreed in principle to **try** and consolidate all 4 COAs into a single, New York-based arbitration, **subject to mutual agreement on procedures**." *See* Exhibit A (emphasis added).

4.    Annexed as Exhibit 9-3 to the Declaration of Rahul Wanchoo in Opposition to Defendant's Motion to Vacate Maritime Attachment, is an email from me to Mr. Wanchoo dated April 18, 2008, transmitting a proposed draft consolidated arbitration agreement that would have modified the existing charter party arbitral provisions .

5.    Mr. Wanchoo made significant proposed modifications to the draft consolidated arbitration agreement and transmitted the proposed revisions to me by email on or about April 23, 2008.  A true and correct copy of the April 23, 2008 email from Mr. Wanchoo to me is annexed hereto as **Exhibit "B."**  Mr. Wanchoo failed to bring the April 23 email with his proposed edits to the attention of the court.

6.    ATN and Totalmar never reached an agreement on a consolidated arbitration procedure and as such, ATN never agreed to modify the existing arbitration provisions contained in the charter party contracts.

7.    Thus, on May 29, 2008, ATN proceeded to nominate its party appointed arbitrators for the M/V Skala and M/V Rainbow arbitrations and initiated the M/V Go Star arbitration.  In this correspondence ATN represented that "ATN does not agree to the consolidation of these disputes into a single arbitration."  A true and correct copy of the May 29, 2008 correspondence from Hogan & Hartson to Mr. Wanchoo is annexed hereto as **Exhibit "C."**

2

I, RICHARD C. LORENZO, declare under penalty of perjury that the foregoing is true and correct.

This Declaration was executed by me this 21st day of July, 2008, in Miami, Florida.

RICHARD C. LORENZO

# EXHIBIT A

**From:** Kornfeld, Mark A. [mailto:MAKornfeld@HHLAW.com]
**Sent:** Thursday, March 20, 2008 2:06 PM
**To:** Rahul Wanchoo
**Cc:** Lorenzo, Richard
**Subject:** RE: Totamar Navigation v ATN Industries Inc.

Mr. Wanchoo

Good afternoon.  It was a pleasure speaking with you this morning.

Confirming the items we discussed:

1.    The parties agreed in principle to try and consolidate all 4 COAs into a single, New York-based arbitration, subject to mutual agreement on procedures.

2.    ATN's time to select an arbitrator is extended until the parties agree on arbitration method/procedures, at which point ATN will select its arbitrator within one week of such agreement.

3.    You will speak with your client and consider ATN"s suggestion that the parties go forward with a 3-person tribunal (each side picks one arbitrator, the two party selects then mutually agree within a proscribed period of time as to a chairperson), which would proceed in accordance ICC arbitration rules, for the reasons expressed (fixed costs, incentive to resolve sooner rather than later, etc.).  ATN has no issue whatsoever with Totalmar's chosen arbitrator for an ICC arbitration, and also, would have no objection, should Totalmar wish to substitute arbitrators.

4.    ATN will get back to you in short order on whether it prefers to post a bond or enter into an escrow agreement with regards to the security issue.  You confirmed Totalmar's willingness to vacate the attachment and dismiss the Complaint upon such security being confirmed and completed.

5.    The parties agreed to stay ATN's time to "answer" the Complaint while this is all being finalized, and in any event, the parties agreed that if needed they would advise the Court, via stipulation or otherwise, that the parties shall be going into contractually-required arbitration.  For now, we agreed there is no reason for us to substitute as counsel, or otherwise appear.  That can and will be done when the security and process issues are finalized in the coming days/week etc.

6.    The total amount to be secured, assuming the arbitration shall be solely in New York will be re-calculated to reflect a slight reduction (associated with the estimates in the current attachment for compound interest, costs and fees associated with what have been London arbitrations, as well as the 2-year estimate of time to complete).  ATN agrees to secure the principal amount in controversy plus interest on a per annum basis for one year.  The parties shall, in advance, agree to the total amount to be secured.  In the event, the arbitration process takes longer than one year ATN agrees to work with Totalmar, as needed, should additional security issues occur.

I believe these are the materials items discussed.  If there is anything else that I may have missed, or you wish to further discuss/add, please do not hesitate.  Thank you for your continued attention to these matters.

Respectfully,

Mark A. Kornfeld
MARK A. KORNFELD, PARTNER
HOGAN & HARTSON LLP
875 Third Avenue, New York, NY 10022
direct +1.212.918.3604 | tel +1.212.918.3000 | fax +1.212.918.3100

makornfeld@hhlaw.com | http://www.hhlaw.com

7/15/2008

Lorenzo
enh B
part 1 & 2

# EXHIBIT B

---

**From:** Rahul Wanchoo [mailto:rwanchoo@wanchoolaw.com]
**Sent:** Wednesday, April 23, 2008 11:09 AM
**To:** Lorenzo, Richard
**Subject:** RE: ATN_Arbitration Clause.DOC

Dear Richard,

Please find below my response to the points we had discussed last Friday:

1. I have now identified a mediator whose bio-data is attached, and who I believe is well qualified to mediate the dispute between the parties. Mr. Jacobson is presently associated with the Miami law firm of Houck Anderson. Formerly, he worked for a P&I Club and has served as a maritime arbitrator as well as a mediator in a number of cases. I have spoken with Mr. Jacobson and he has confirmed that he has no conflicts and is available to serve as the mediator on Monday, May 12, 2008. If Mr. Jacobson is acceptable to your client, I propose that I book him and request that he provide us with his disclosure and estimated charges for the one-day mediation.

2. I have discussed with my client about a settlement figure. My client feels that as Totalmar has presented its claim which is summarized in its Verified Complaint filed in the New York action, a copy of which is attached for your convenience, the opening number should come from ATN. Accordingly, I look forward to receiving your client's offer of settlement.

3. Please find also attached the draft Arbitration Agreement with our proposed changes which are shown in redline. Naturally, please let me know if you have any questions concerning the proposed changes.

Best regards,

Rahul Wanchoo
Law Offices of Rahul Wanchoo
Phone:(646) 593-8866
Fax:    (212) 618-0213
Mobile:(201) 694-5235
E-mail: rwanchoo@wanchoolaw.com
Web site: www.wanchoolaw.com

CONFIDENTIALITY NOTICE

THE INFORMATION AND MATERIAL CONTAINED IN THIS E-MAIL MESSAGE ARE INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY BE PRIVILEGED AND CONFIDENTIAL ATTORNEY COMMUNICATION. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE INSTRUCTED NOT TO DISCLOSE, COPY OR DISTRIBUTE THIS COMMUNICATION AND ARE NOT AUTHORIZED TO TAKE ANY ACTION WITH RESPECT TO IT OTHER THAN TO ASSURE ITS PROPER DELIVERY TO THE PERSON TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE TO ARRANGE FOR ITS PROPER RETURN OR DESTRUCTION.

**From:** Lorenzo, Richard [mailto:RLorenzo@HHLAW.com]
**Sent:** Friday, April 18, 2008 4:07 PM
**To:** Rahul Wanchoo
**Subject:** ATN_Arbitration Clause.DOC

Rahul:  Following up on our telephone conference of yesterday afternoon, attached please find the proposed draft Arbitration Agreement, for your review and comments.

Regards,

Richard C. Lorenzo
Hogan & Hartson LLP
1111 Brickell Avenue
Suite 1900
Miami, Florida  33131
305.459.6652
305.459.6550 (Facsimile)
"EMF <HHLAW.COM>" made the following annotations.
---------------------------------------------------------------------------
This electronic message transmission contains information from this law firm which m
copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by tele

===========================================================================

7/20/2008

## Arbitration Agreement

(a)    The undersigned Parties agree to submit to binding arbitration any dispute, controversy or claim arising from, connected to or related in any manner with the following maritime charter party agreements: (i) Charter Party Contract concerning M.V. Skala, dated November 23, 2007, between Totalmar Navigation Corp. ("Totalmar") and ATN Industries, Inc. ("ATN") (Totalmar and ATN collectively referred to herein as the "Parties"); (ii) Charter Party Contract concerning the M.V. Golden Wish, which was later substituted by M.V. Atlantica, dated November 29, 2007, between Totalmar and ATN; (iii) Charter Party Contract concerning M.V. Rainbow, dated December 6, 2007, between Totalmar and ATN; and (iv) Charter Party Contract concerning the M.V. Mairouli, which was later substituted by M.V. Go Star, dated December 7, 2007, between Totalmar and ATN (all four charter party contracts collectively referred to herein as the "Agreements"), including, but not limited to, the Agreements' breach, termination, expiration, or invalidation. This will include all claims asserted by Totalmar and all of ATN's counterclaims, which will include, among other things, claims for damage to shipped materials.

(b)    Totalmar agrees  to stay the action currently pending before the United States District Court for the Southern District of New York styled *Totalmar Navigation Corp. v. ATN Industries Inc.*, Case No. 08-CV-1659 upon ATN posting a bond or other substitute security pursuant to Supplemental Rule E(5)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

(c)    The Agreements and arbitration proceeding shall be governed by and construed in accordance with the substantive laws of the State of New York without regard to its conflict of law rules.

(d)    The arbitration proceeding shall be conducted in the City of New York, in the English language, provided however, that any party may submit testimony or documentary evidence in a language other than English, but shall, upon the request of any other party to the arbitration proceeding, furnish a translation or interpretation into English of any such testimony or documentary evidence.

| Deleted: The Parties agree that this Dispute Resolution Clause shall cause a |
| Deleted: of |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Not Highlight |
| Deleted: |

(e)      There shall be a panel of three arbitrators during the arbitration proceeding. Totalmar has appointed Mr. A.J. Siciliano, Sentry Marine Services, Inc., P.O. Box 674, Smithtown, NY 11787, fax no. 631-360-3560, e-mail ajsmarine@aol.com, as its arbitrator. ATN shall appoint its arbitrator within seven (7) days of the execution of this Arbitration Agreement by the Parties, failing which Totalmar may appoint Mr. Siciliano to act as sole arbitrator in the reference and his award shall be binding on both parties as if he had been appointed by consent. Within fourteen (14) days of their appointment, the two arbitrators so appointed shall appoint a third arbitrator who shall preside over the arbitration panel. If the two arbitrators cannot agree on a third arbitrator within such fourteen (14) day period, the third arbitrator shall be appointed by the President of the Society of Maritime Arbitrators, Inc. in accordance with its Maritime Arbitration Rules.

(f)      At the sole discretion of the arbitration panel, discovery between the Parties may be allowed.

(g)      The Parties agree that there shall be a hearing of oral evidence and each Party to the arbitration proceeding or its legal counsel shall have the right to present and examine its witnesses and to cross-examine the witnesses of the other Party.

(h)      The Parties agree that the arbitrators' fees shall be borne equally by the Parties and that the arbitration panel is empowered to award reasonable attorneys' fees and expenses incurred by the Parties in the prosecution or defense of the case.

(i)      The arbitration panel may only award damages as provided for under the terms of the Agreements and in no event may punitive, consequential and special damages be awarded.

(j)      The Parties hereby agree that the dispute resolution procedures specified herein shall be the sole, exclusive procedures for the resolution of disputes between or among the Parties arising from or relating to the Agreements, including all documents made a part thereof, provided, however, that any Party may seek a preliminary injunction or other preliminary judicial relief if, in its reasonable, good-faith judgment, such action is necessary to avoid irreparable damage. Despite such action, the Parties shall continue to participate in good faith in the arbitration proceeding.

(k)      Any decision or award of the arbitration panel shall be reasoned and in writing, and shall be final and binding upon the Parties. The Parties hereby agree not to invoke or exercise any and all rights to appeal, review, vacate or impugn such decision or award by the arbitration panel. The Parties also agree that the arbitral decision or award may be enforced against the Parties to the arbitration proceeding or their assets wherever they may be found, and that a judgment upon the arbitral decision or award may be entered in any court having jurisdiction thereof.

(l)      The Parties hereby agree that if any Party to the arbitration proceeding fails or refuses to voluntarily comply with any arbitral decision or award within thirty (30) days after the date on which it receives notice of the decision or award, the other Party, the arbitration panel or their attorneys-in-fact may immediately proceed to request judicial approval

| Deleted: |
| Deleted: . |

**Deleted:** The Claimant Party shall appoint an arbitrator in the arbitration petition and the Respondent Party shall appoint an arbitrator in its response.

| **Deleted:** thirty |
| **Deleted:** 30 |
| **Deleted:** thirty |
| **Deleted:** 30 |
| **Deleted:** American Arbitration Association ("AAA") |
| **Deleted:** |
| **Deleted:** to its International Arbitration Rules. |
| **Deleted:** costs of the arbitration proceedings |

necessary for the execution of such decision or award, before a competent judge of the domicile of such refusing party or before any other court of competent jurisdiction.  Further, if any prevailing party is required to retain counsel to enforce the arbitral decision or award, the Party against whom the decision or award is made shall reimburse the prevailing party for all reasonable fees and expenses incurred and paid to said counsel for such service.

       (m)   The Parties agree that notifications of any proceedings, reports, communications, orders, arbitral decisions, arbitral awards, arbitral award enforcement petitions, and any other document shall be sent to each Parties' legal counsel of record.

Dated: _____          Dated: _____

By:_____           By: _____
    Totalmar Navigation Corp.              ATN Industries, Inc.



# HOUCK ANDERSON
### ATTORNEYS AT LAW



Overview    Areas of Practice    Representative Clients    Contact Us

Resources

Alphabetical Listing
Shareholders
Members
Associates
Para-Professionals



**Lawrence Jacobson**
**Associate**
200 S. Biscayne Blvd., Suite 300
Miami, FL 33131
**Telephone:** 305-372-9044
**Fax:** 305-372-5044

✉ ljacobson@houckanderson.com
Download vCard

**Practice Areas**

Admiralty and Maritime
Insurance

**Bar Admissions**
2004, Florida
1979, New York

**Court Admissions**
U.S. District Court, Southern and Middle Districts of Florida
United States District Court, Southern District of New York
New York Supreme Court

**Education**
1977, J.D., University of San Diego School of Law
1974, B.A., *magna cum laude*, State University of New York

**Professional Memberships and Activities**
Florida Licensed Property and Casualty Insurance Broker (1998)
Florida Supreme Court Mediator (2004)
Maritime Law Association of the United States (MLA), Committees: Arbitration and Mediation;
Maritime Torts; Passenger and Cruise Ship
Southeast Admiralty Law Institute
Society of Maritime Arbitrators, Member of Board of Governors (1991-1996)
Houston Maritime Arbitration Association
Association of Southeast Florida Mediators
London Maritime Arbitrators Association, Supporting Member

200 S. Biscayne Blvd., Suite 300, Miami, FL 33131 Phone: 305 372 9044 Fax: 305 372 5044
1500 Cordova Road, Suite 300, Fort Lauderdale, FL 33316 Phone: 954 522 0274 Fax: 954 463 8752
Email: info@houckanderson.com

Copyright © 2006 Houck Anderson P.A. All rights reserved.

http://www.houckanderson.com/jacobson.html

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (201) 882-0303
Fax:    (201) 299-2714
E-mail: rwanchoo@wanchoolaw.com

**08 CV 1659**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

TOTALMAR NAVIGATION CORP.



                                   Plaintiff,

            - against -                                    **VERIFIED COMPLAINT**

ATN INDUSTRIES INC.

                                   Defendant.

-------------------------------------------------------X

        Plaintiff, TOTALMAR NAVIGATION CORP. ("Plaintiff"), by its attorneys, LAW

OFFICES OF RAHUL WANCHOO, alleges on information and belief as follows:

                        **JURISDICTION AND VENUE**

        1.      This is a case of admiralty and maritime jurisdiction within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure, and within the admiralty and maritime jurisdiction of

the United States and of this Honorable Court. This case also falls under the Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. §1333. Finally, this Court also has jurisdiction over

this matter because the action also arises under the convention on the Recognition and

                                        1

Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et. seq.* and/or the Federal

Arbitration Act, 9 U.S.C. §1 *et. seq.*

## THE PARTIES

2.      At all material times, Plaintiff was and now is a foreign corporation organized

under and existing by virtue of the laws of the Republic of Panama, was the disponent Owner of

the M.V. SKALA, M.V. ATLANTICA, M.V. RAINBOW and M.V. GO STAR (the "Vessels"),

bulk carriers ranging from about 39,000 to 53,000 deadweight tons capacity engaged in the

carriage of bulk cargo by water.

3.      Upon information and belief, at all material times, Defendant, ATN INDUSTRIES

INC. ("Defendant") was and now is a foreign corporation organized under and existing by virtue

of the laws of the State of Florida, and was the Charterer of the Vessels.

4.      Plaintiff's claims arise out of and in connection with a contract of affreightment

involving four separate voyages performed for Defendant by the Vessels under four separate

maritime charter party contracts all involving the transportation of large dimensional

polycarbonate steel water pipes from Shanghai, China to Maracaibo, Venezuela.

## M.V. SKALA – Charter Party Dated November 23, 2007

5.      Pursuant to a charter party contract on the GENCON form dated November 23,

2007, Plaintiff, as disponent Owner, voyage chartered the M.V. SKALA to Defendant, as

Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe

berth Maracaibo. A copy of the charter party contract dated November 23, 2007 is annexed as

Exhibit 1 to the Verified Complaint.

2

6.    The charter party provided that the vessel was to load minimum 480 to 500 pieces of pipes up to vessel's maximum capacity at Owner's option, pipes' dimensions guaranteed by Charterer. The charter also provided that freight was payable at $118.00 per cubic meter, "free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that Charterer to guarantee that cubic capacity per piece of pipe is 82.4179 and that total cubic capacity for the minimum 480 pipes equals 39,560.592 cubic meters "on which freight to be paid for minimum quantity."

7.    Prior to the vessel's arrival at Shanghai the master notified the shippers/Charterer that the vessel would load 490 pipes. However, the Charterer only delivered 430 pipes, and hence the vessel loaded 60 pipes less than the quantity which had been requested by the master. The master issued a letter of protest to the shippers regarding the short shipment of the pipes and put the Charterer on notice regarding a claim for dead freight for the 60 pieces of steel pipes. A copy of the master's Letter of Protest dated December 8, 2007 is annexed as Exhibit 2 to the Verified Complaint.

8.    Pursuant to the terms of the charter 60 pieces of pipes occupies a volume of 4,945.074 cubic meters (60 x 82.4179 m$^3$), which equates to a dead freight claim of $583,518.73 (4,945.074 m$^3$ x $118 per m$^3$). A copy of Owner's freight and dead freight invoice dated December 10, 2007 is annexed as Exhibit 3 to the Verified Complaint.

9.    Pursuant to the terms of the charter party, Defendant should have paid the dead freight when it received the Owner's freight invoice dated December 10, 2007.  However, despite various reminders from Plaintiff to Defendant no dead freight has been received to date.

10.    By reasons of the premises, Plaintiff has sustained damages on the M.V. SKALA voyage in the amount of $583,518.73 as best as can presently be calculated.

3

**M.V. ATLANTICA – Charter Party Dated November 29, 2007**

11.    Pursuant to a charter party contract on the GENCON form dated November 29,

2007, Plaintiff, as disponent Owner, voyage chartered the M.V. ATLANTICA to Defendant, as

Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe

berth Maracaibo. A copy of the charter party contract for M.V. GOLDEN WISH, which was later

substituted by M.V. ATLANTICA, dated November 29, 2007 is annexed as Exhibit 4 to the

Verified Complaint.

12.    The charter party provided that the vessel was to load minimum 435 pieces of pipes

up to vessel's maximum capacity at Owner's option. The charter party also provided a total

laytime of 4 weather working days for loading, and 4 weather working days for discharging,

Sundays and holidays included.  Demurrage was payable by Defendant to Plaintiff at the rate of

$70,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime.

Any demurrage incurred at the loading port was to be paid by Defendant to Plaintiff along with the

freight payment.

13.    Pursuant to the charter, the ATLANTICA proceeded to and arrived at Shanghai at

0700 hours on December 10, 2007 and tendered her Notice of Readiness. The vessel completed

loading at 1230 hours on December 15, 2007, and sailed for Maracaibo at 1610 hours on the same

day.

14.    The vessel was delayed at her load port of Shanghai.  According to Plaintiff's

laytime calculations, the vessel was on demurrage at Shanghai for 1.229 days which amounts to

$86,030.00 (1.229 days x $70,000 per day).

15.    Plaintiff submitted its demurrage invoice together with all supporting documents to

Defendant on or about January 29, 2008 for demurrage in the amount of $86,030.00.  Pursuant to

4

the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. A copy of Plaintiff's demurrage invoice and laytime calculations dated January 29, 2008 are annexed as Exhibit 5 to the Verified Complaint.

16.     By reasons of the premises, Plaintiff has sustained damages on the M.V. ATLANTICA voyage in the amount of $86,030.00 as best as can presently be calculated.

### M.V. RAINBOW – Charter Party Dated December 6, 2007

17.     Pursuant to a charter party contract on the GENCON form dated December 6, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. RAINBOW to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. A copy of the charter party contract dated December 6, 2007 is annexed as Exhibit 6 to the Verified Complaint.

18.     The charter party provided that the vessel was to load about 350 pieces of steel water pipes dimensions guaranteed by Charterer. The charter party also provided a total laytime of 4 weather working days for loading, and 4 weather working days for discharging, Sundays and holidays included. Demurrage was payable by Defendant to Plaintiff at the rate of $70,000 per day or pro rata for all time that loading and discharging exceeded the allowed laytime. Any demurrage incurred at the loading port was to be paid by Defendant to Plaintiff along with the freight payment.

19.     Pursuant to the charter, the RAINBOW proceeded to and arrived at Shanghai at 0812 hours on December 16, 2007 and tendered her Notice of Readiness. The vessel completed

loading at 1100 hours on December 22, 2007, and sailed for Maracaibo at 2224 hours on the same day.

20.    The vessel was delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 2.113 days which amounts to $147,910.00 (2.113 days x $70,000 per day).

21.    Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $147,910.00. Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. A copy of Plaintiff's demurrage invoice and laytime calculations dated January 29, 2008 are annexed as Exhibit 7 to the Verified Complaint.

22.    By reasons of the premises, Plaintiff has sustained damages on the M.V. RAINBOW voyage in the amount of $147,910.00 as best as can presently be calculated.

### M.V. GO STAR – Charter Party Dated December 7, 2007

23.    Pursuant to a charter party contract on the GENCON form dated December 7, 2007, Plaintiff, as disponent Owner, voyage chartered the M.V. GO STAR to Defendant, as Charterer, to carry a cargo of steel pipes from one safe berth Shanghai for discharge at one safe berth Maracaibo. A copy of the charter party contract for M.V. MAIROULI, which was later substituted by M.V. GO STAR, dated December 7, 2007 along with the addendum to the charter party dated December 28, 2007 are annexed as Exhibit 8 to the Verified Complaint.

24.    The charter party provided that the vessel was to load minimum 435 pieces of pipes

up to vessel's "full" capacity at Owner's option, "pipes' dimensions guaranteed by Charterer."

(emphasis added). The charter also provided that freight was payable at $120.50 per cubic meter,

"free in stowed, trimmed, lashed/secured/dunnaged, liner out end of hook," and that Charterer to

guarantee that cubic capacity per piece of pipe is 82.4179 and that total cubic capacity for the

minimum 435 pieces equals 35,851.7865 cubic meters "on which freight to be paid for minimum

quantity." The steel pipes dimensions guaranteed by Charterer were 12.192 meters length and 2.60

meters outside diameter. Pursuant to an addendum to the charter party dated December 28, 2007 it

was agreed between the parties that "vessel will only load min 410 pieces of pipes upto vessel's

full capacity in Charterer option."

25.    Pursuant to the charter, the GO STAR proceeded to and arrived at Shanghai at 1000

hours on January 20, 2008 and tendered her Notice of Readiness. The vessel completed loading at

1200 hours on January 26, 2008. The Charterer loaded 31 pieces of pipes of outside diameter 2.60

meters; however, it loaded 400 pieces of pipes of outside diameter 2.40 meters or 0.2 meters less

than that guaranteed under the charter. The total volume of the 431 pieces of pipes loaded on the

vessel was 30,645.324 $m^3$ versus 33,791.35 $m^3$ (410 pieces x 82.4179 $m^3$), which had been

guaranteed by the Charterer, or a short shipment of 3,146.0232 $m^3$ (33,791.35 $m^3$ – 30,645.324

$m^3$). Thus, as per the terms of the charter party Charterer is liable for dead freight of $379,095.80

(3,146.0232 $m^3$ x $120.50 per $m^3$). A copy of Owner's dead freight invoice dated February 8, 2008

is annexed as Exhibit 9 to the Verified Complaint. Pursuant to the terms of the charter party,

Defendant should have paid the dead freight when it received the Owner's dead freight invoice

dated February 8, 2008.  However, despite various reminders from Plaintiff to Defendant no dead

freight has been received to date.

26.    The vessel was also delayed at her load port of Shanghai. According to Plaintiff's laytime calculations, the vessel was on demurrage at Shanghai for 2.104 days which amounts to $147,280.00 (2.104 days x $70,000 per day).

27.    Plaintiff submitted its demurrage invoice together with all supporting documents to Defendant on or about January 29, 2008 for demurrage in the amount of $147,280.00. Pursuant to the terms of the charter, Defendant should have paid the demurrage along with the freight payment or latest when it received the demurrage invoice. However, despite various reminders from Plaintiff to Defendant, no demurrage has been received to date. A copy of Plaintiff's demurrage invoice and laytime calculations dated January 29, 2008 are annexed as Exhibit 10 to the Verified Complaint.

28.    By reasons of the premises, Plaintiff has sustained damages on the M.V. GO STAR voyage in the amount of $526,375.80 as best as can presently be calculated.

## TOTAL PRINCIPAL AMOUNT DUE

29.    The total dead freight due and owing by Defendant under the SKALA and GO STAR charter parties is and continues to be $962,614.53 (paragraphs 10 and 23 of Verified Complaint). The total demurrage due and owing by Defendant under the ATLANTICA, RAINBOW and GO STAR charter parties is and continues to be $381,220.00 (paragraphs 15, 20 and 25 of Verified Complaint). Thus, the total amount due and owing by Defendant under the four charter party contracts is $1,343,834.50.

## TOTAL AMOUNT SOUGHT TO BE ATTACHED

30.    The SKALA and RAINBOW charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in New York while

the ATLANTICA and GO STAR charter party contracts provide that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London and English law to apply. In addition to the full principal amount of Plaintiff's claim outlined above, Plaintiff also seeks an attachment over an additional sum to cover interest as well as its anticipated attorneys' fees and costs which is recoverable in London arbitration. *(See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

31.     Plaintiff estimates, as best as can be presently calculated, these additional damages and costs to be $369,985.10, comprised of interest in the sum of $169,985.10 (computed on the principal amount of the dead freight and demurrage owed of $1,343,834.50 at a rate of 6% compounded quarterly for a period of 2 years – the estimated time frame within which the arbitration will be completed), and $200,000 estimated English counsel fees and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there.

32.     Plaintiff's total claim against Defendant for which it seeks security herein is $1,713,819.60 ($1,343,834.50 + $369,985.10).

33.     All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

34.     Plaintiff bring this action by seeking an order of seizure of Defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendant to proceed with arbitration of Plaintiff's claim against Defendant and to retain jurisdiction to enter a judgment upon the arbitration award in the New York and London arbitrations.

**WHEREFORE,** the Plaintiff prays the following:

1.      That process in due form of law according to the practice of this Court in causes of admiralty and maritime jurisdiction may issue against Defendant, ATN Industries Inc., that it be personally cited to appear and answer the matters set forth above;

2.      That if the Defendant cannot be found within this District, then that Defendant's goods and chattels, or credits and effects within the hands of garnishees within the jurisdiction of this Court be attached by process pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims and in an amount sufficient to answer Plaintiff's claims of $1,713,819.60, the sum sued for in this Complaint;

3.      That the action thereafter be stayed pending the arbitration award and that a judgment be entered upon the award of the aforesaid arbitration for the amount of any recovery by Plaintiff, together with interest, costs and disbursements of this action; and

4.      That this Court grants to Plaintiff such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
         February 19, 2008

                                        LAW OFFICES OF RAHUL WANCHOO
                                        Attorneys for Plaintiff
                                        Totalmar Navigation Corp.

                                        By: _Rahul Wanchoo_____
                                            Rahul Wanchoo (RW-8725)

STATE OF NEW JERSEY)

                    ss.

COUNTY OF BERGEN   )

      I,  Rahul Wanchoo, being duly sworn, deposes and says:

      I am an attorney at law and a member of the firm of Law Offices of Rahul

Wanchoo, attorneys for Plaintiff.

      I have read the foregoing Verified Complaint and know the contents thereof and

the same are true to the best of my knowledge, information and belief.

      The reason that this verification is made by me and not by Plaintiff is that Plaintiff

is a foreign corporation and is not within this District.

_Rahul Wanchoo_

Sworn to and subscribed to
before me this 19th day of
February, 2008

Notary Public

LILA CHIN
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 16, 2012

# EXHIBIT 1

ORIGINAL

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"

Part I

| 1. Shipbroker | 2. Place and date |
|---|---|
|  | Caracas, 23rd November 2007 |

| 3. Owners/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1) |
|---|---|
| Totalmar Navigation Corp/agecom<br>As Disponent Owner | ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |

| 5. Vessel's name (Cl. 1) | 6. GRT/NRT (Cl. 1) |
|---|---|
| MV Skala | 23,144 / 13384 |

| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
|---|---|
| 39,207 | Trading |

| 9. Expected ready to load (abt.) (Cl. 1) | |
|---|---|
| December 3rd 2007 | |

| 10. Loading port or place (Cl. 1) | 11. Discharging port or place (Cl. 1) |
|---|---|
| 1 good safe berth Shanghai, China<br>always accessible always afloat | 1 good safeberth Maracaibo, Venezue<br>la. Always accessible always afloat |

12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)

Min 480 to 500 pices of pipes upto vessl's maximu capacity at Owners
option of water pipes of policarbonate steel pipes dimensions Guaran-
tee by Charterers. See also clause 22

| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
|---|---|
| See clause 35 | See clause 35 |

| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only ) (Cl. 6) |
|---|---|
| See clause 33 | a) Laytime for loading  See Clause 26 |
| 17. Shippers (state name and address) (Cl. 6) | b) Laytime for discharging  See Clause 26 |
| Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shanghai, PRC At: Fletcher Xi | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>See Clause 27 | 19. Cancelling date (Cl. 10)<br>December 13th, 2007 |

20. Brokerage commission and to whom payable (Cl. 14)

21. Additional clauses covering special provisions, if agreed.

Additional clauses 22 to 42 both inclusive to form part of this Charter
Party.

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Totalmar Navigation Corp.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp. | ATN Industries Inc. |

Printed and sold by Wyt & Zonen B.V., Rotterdam, by authority of The Baltic and International Maritime Conference, Copenhagen

**Totalmar Navigation Corp.**

ORIGINAL

**PART II**

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would but for this clause be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight**     See Clause 35
The freight to be paid in cash without discount on delivery of the cargo at mean rate of exchange ruling on day of days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs**     See Clause 33
**(a). Gross Terms**
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work the vessel only heaving the cargo on board.
If the loading takes place by elevator cargo to be put free in vessel's holds, Owners only paying trimming expenses.
Any indirect loss or damage to cargo over two tons weight shall be loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

**(b). F.I.O. and free stowed trimmed**
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted if not the Charterers shall provide and pay for winchmen from shore and/or cranes if any. (This provision shall not apply if vessel is gearless and stated as such in Box 11.)

*Indicate alternative (a) or (b) as agreed in Box 16.*

**6. Laytime**     See Clause 26
**(a). Separate laytime for loading and discharging**
The cargo shall be loaded within the number of running days/hours as indicated in Box 16 weather permitting, Sundays and holidays excepted, unless used in which event time actually used to count.
The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used count.

**(b). Total laytime for loading and discharging**
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted unless used, in which event time actually used count.

**(c). Commencement of laytime (loading and discharging)**
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging time as the case may be.

*Indicate alternative (a) or (b) as agreed in Box 16.*

**7. Demurrage**     See Clause 27
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading, Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2)

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least ⅓ of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligation under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it when vessel is ready to proceed from her last port, or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such port to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at her original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1). In these clauses "War Risks" shall include any blockade of any port whatsoever or any action which is announced as a blockade by any Government or by any belligerent or by any organised body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2). If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel and/or Master and/or crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel the Charter.
(3). The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or all of the cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or

## PART II

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

last of the loading ports, it more than one, it appears that further
performance of the contract will subject the Vessel, her Master and
crew or her cargo, to war risks, the cargo shall be discharged, or if
the discharge has been commenced shall be completed, at any safe
port in vicinity of the port of discharge as may be ordered by the
Charterers. If no such orders shall be received from the Charterers
within 48 hours after the Owners have despatched a request by
telegram to the Charterers for the nomination of a substitute discharg-
ing port, the Owners shall be at liberty to discharge the cargo at
any safe port which they may, in their discretion, decide on and such
discharge shall be deemed to be due fulfilment of the contract of
affreightment. In the event of cargo being discharged at any such
other port, the Owners shall be entitled to freight as if the discharge
had been effected at the port or ports named in the Bill(s) of Lading
or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions
or recommendations as to departure, arrival, routes, ports of
call, stoppages, destination, zones, waters, discharge, delivery or
in any other wise whatsoever (including any direction or recom-
mendation not to go to the port of destination or to delay proceeding
thereto or to proceed to some other port) given by any Government or
by any belligerent or by any organized body engaged in civil war,
hostilities or warlike operations or by any person or body acting or
purporting to act as or with the authority of any Government or
belligerent or of any such organized body or by any committee or
person having under the terms of the war risks insurance on the
Vessel, the right to give any such directions or recommendations.
If by reason of or in compliance with any such direction or recom-
mendation, anything is done or is not done such shall not be deemed
a deviation.

(b) If, by reason of or in compliance with any such directions or re-
commendations, the Vessel does not proceed to the port or ports
named in the Bill(s) of Lading or to which she may have been
ordered pursuant thereto, the Vessel may proceed to any safe port
directed or recommended or to any safe port which the Owners in
their discretion may decide on and there discharge the cargo. Such
discharge shall be deemed to be due fulfilment of the contract of
affreightment and the Owners shall be entitled to freight as if
discharge had been effected at the port or ports named in the Bill(s)
of Lading or to which the Vessel may have been ordered pursuant
thereto.

(6) All extra expenses (including insurance costs) involved in discharg-
ing cargo at the loading port or any other substituted port (including
any extra expenses as provided in Clauses 4 and 5) hereof shall be paid
by the Charterers and/or cargo owners and the Owners shall have
a lien on the cargo for all moneys due under these Clauses.

## 17. GENERAL ICE CLAUSE

### Port of loading

(a) In the event of the loading port being inaccessible by reason of
ice when vessel is ready to proceed from her last port or at any
time during the voyage or on vessel's arrival or in case frost sets in
after vessel's arrival, the Captain for fear of being frozen in is at
liberty to leave without cargo, and this Charter shall be null and
void.

(b) If during loading the Captain, for fear of vessel being frozen in,
deems it advisable to leave, he has liberty to do so with what cargo
he has on board and to proceed to any other port with option of
completing cargo for Owners' benefit for any port or ports
including port of discharge. Any part cargo thus loaded under this
Charter to be forwarded to destination at vessel's expense but
against payment of freight, provided that no extra expenses be
thereby caused to the Receivers, freight being paid on quantity
delivered (in proportion if lumpsum), all other conditions as per
Charter.

(c) In case of more than one loading port, and if one or more of the
ports are closed by ice, the Captain or Owners to be at liberty
either to load the part cargo at the open port and fill up elsewhere
for their own account as under section (b) or to declare the Charter
null and void unless Charterers agree to load full cargo at the open
port.

(d) This Ice Clause not to apply in the Spring.

### Port of discharge

(a) Should ice (except in the Spring) prevent vessel from reaching
port of discharge Receivers shall have the option of keeping vessel
waiting until the reopening of navigation and paying demurrage, or
of ordering the vessel to a safe and immediately accessible port
where she can safely discharge without risk of detention by ice.
Such orders to be given within 48 hours after Captain or Owners
have given notice to Charterers of the impossibility of reaching port
of destination.

(b) If during discharging the Captain for fear of vessel being frozen
in deems it advisable to leave, he has liberty to do so with what
cargo he has on board and to proceed to the nearest accessible port
where he can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill
of Lading shall apply and vessel shall receive the same freight as
if she had discharged at the original port of destination, except that
if the distance of the substituted port exceeds 100 nautical miles, the
freight on the cargo delivered at the substituted port to be increased
in proportion.

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 480 TO 500 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 03 / 13 NOVEMBER 2007.

ETA TO LOAD PORT DECEMBER 03 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER, 2007 MV SKAI,
LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION
CORP, CHARTERERS ATN INDUSTRIES INC.

**ORIGINAL**

### CLAUSE 27: DEMURRAGE

ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR
DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT
THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS
ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS
INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH
SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

### CLAUSE 28: VESSEL'S GEAR

OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE
FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED,
FREE OF EXPENSES TO THE CHARTERERS.

### CLAUSE 29: OVERTIME

OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS
OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR
CHARTERERS ACCOUNT.

### CLAUSE 30: ARBITRATION

ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN
NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01)
ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH
AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH
PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF
ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW
ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF
SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY
HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT
WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN
ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE
REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN
APPOINTED BY CONSENT.

### CLAUSE 31: TAXES AND DUES

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR  OWNERSHIP TO BE FOR
CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS
INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR
CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

### CLAUSE 32: VESSEL COMPLIANCE

OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES
TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER
SHALL BE FOR OWNERS ACCOUNT.

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,

ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA
LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO,
VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION
CORP. CHARTERERS ATN INDUSTRIES INC.

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH
OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING
ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR
SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR
TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR
CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION /
SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO
BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND
EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER
HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS,
SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR
ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER
VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY
OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO
RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE
VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN
(15) DAYS OF OCCURANCE OF SAID DAMAGE.

CLAUSE 34: NEW JASON, BOTH TO BLAME ETC
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER
DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE
INCORPORATED IN THIS CHARTER PARTY.

CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 118 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED /
DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING
/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO
OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED)
CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL
CUBIC FOR MINIMUM 480 PIECES EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED
ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE
VESSEL A/O CARGO LOST OR NOT LOST.



ORIGINA

**RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:    **JPMORGAN CHASE NEW YORK**

Address Bank:            **345 PARK AVENUE**

                         **NEW YORK – NY 10154**

ABA:                     **021000021**
SWIFT:                   **CHASUS33**

BENEFICIARY BANK:        **EBNA BANK N.V.**
ADR-BENE-BANK:           **AMACO BUILDING 36-B**
                         **ZEELANDIA CURACAO, NETHERLANDS ANTILLES**
ACCOUNT BENE BANK:       **0011990850**

ULTIMATE BENEFICIARY:    **Totalmar Navigation Corp.**

Account Ultimate Beneficiary:    **201389**

CLAUSE 36 VESSEL´S DESCRIPTION
VESSEL'S IS DESCRIBED AS FOLLOWS:
NAME M/V SKALA, PREVIOUS NAME FASSA
  TYPE Well Decker/Log/Bulk carrier, H&M The New India Assurances Company Ltd, India
  P&I The Steamship Mutual, Bermuda, PORT OF REGISTRY Valletta, Malta, OFFICIAL No 6463
  IMO No 8223347, MMSI No 248478000, FLAG Maltese, BUILT Imabari Shipbuilding Co. Ltd.,
  Marugame - Japan. DELIVERED 24/10/1983, SHIP No T-4649 (S-1116). CLASSIFICATION No.
  NK 831303, CLASS / NOTATION NK/NS*(BC,SHC 2, 4 OR 1. 3, 5 E(ESP) / MNS. CHG. MPP.
  LSA, RCF
  L.O.A 189.98m
  L.B.P 180.00m
  BREADTH (MLD) 28.4m
  DEPTH (MLD) 15.30m
  TPC 43.5 Mt (Light), 46.7 (Loaded)
  FREEBOARD 4337 mm
  FWA 254 mm
  TONNAGE NRT GRT INT 13384 / 23144
  PANAMA 19281 24670, SUEZ 21309,77 23563,15
  DEADWEIGHT
  D/WEIGHT(MT) DRAFT (Meters) TROPICAL FRESH 39.207 11.499
  FRESH WATER 38,158 11.270, TROPICAL 39.228 11.245, SUMMER 38.156 11.016,
  WINTER 37.090 10.787
  CAPACITY
  HATCH DIMENSIONS Meters HOLD DIMENSIONS (L x W x H) Meters GRAIN / BALE
  NO 1 12.8 x 14,4 21,5 x 22,5 x 13,2 229.333,49 / 219.254,24
  NO 2 24,8 x 14,4 32,8 x 22,5 x 13,2 409.280,37 / 391.859.48
  NO 3 19,2 x 14,4 28,0 x 22,5 x 13,2 348.226.74 / 331.466.24
  NO 4 24,8 x 14,4 32,8 x 22,5 x 13,2 409.009.15 / 391.924.46
  NO 5 19,2 x 14,4 28,0 x 12.0 x 13,2 336.396.56 / 325.229.61
        1.732.246,31 / 1.659.734,03 ft3

  TANK CAPACITY (in m3)
  FRESH WATER 350.4
  BALLAST 12.487.90
  HFO(180 CST) 2.084.40
  MDO 238,4

  HEIGHT Keel to Top Mast - 45.83 Mts
  TYPE OF HATCHCOVERS McGregor Folding type. Watertight Steel Hatch Cover

ORIGINAL

## RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

Hinged. 4 Panels on each Hatch open 2 Forward & 2 Aft
WW/AUSSIE/CO2/GRAIN FITTED
STRENGHTENED FOR HEAVY CARGOES=HOLD 2+4 OR 1+3+5
VENTILATION SYSTEM: NATURAL VENTILATION
STRENGTH
STRENGHT OF WEATHER DECK 3.3 Meters/Square meters
STRENGHT OF HATCH COVERS 2,4 Meters/Square meters
STRENGHT OF TANK TOP No1-21.48. No2&4-20,97, No3-20,78,  No 5-20,50 Meters/Square meters
CARGO GEARS: ELECRTO HYDRAULIC- (Cranes 4 x 25 MT)
LOG DESCRIPTION
1) Fixed Stanchions on Deck P&S in the way of Mast house
2) Stanchions On Board - Permanent:  6 Twin Steel Stanchions Each Side
 - Removable:  64 Pieces. Wooden
Stanchions for Both Sides
3) Type of Stanchions:   Wooden Removable Stanchions
4) Height of Stanchions:  7,90 - 8.10 M Steel Permanent  Stanchions
5) Height of Stanchions:  7,80 M except No1-Hold which is 6,80 M - Wooden
6) Loading Height:       No.1 Hold up to 6,70 m, No.2-5 Holds up to  7,80 m
7) Distance between each Removable Stanchion: Varies from 2,4 to 3,0 M
8) Distance between Permanent Stanchions: No,1 = 11.9 Meters  No.2&4 = 29,8 Meters, No.5 = 20,1 Meters
9) Distance between Hatch cover to resting point of Cranes: 8 M

ENGINE TYPE: Mitsubishi-Sulzer, 7RLB56 (MCR-1)
SPEED & CONSUMPTION ALL ABOUT
LOADED 13.0 Kt & 28.5 Mt IFO 180 CST RME 25 & 1.5 Mt MDO
BALLAST 13.0 Kt & 28.0 Mt IFO 180 CST & 1.5 Mt MDO
PORT CONS IDLE - 1.5 Mt MDO, Gear Working - 3.0 Mt MDO
The above Speed & Consumption is basis good Weather condition. no adverse current,
no negative influence of Swells and not exceeding Beaufort Scale Force - 3
Vessel burns MDO: Maneuvering / Navigating in confined / restricted waters /
Canals / Rivers and in / out of Ports / Locks etc
¬ ALL DETAILS ABOUT +


### CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

### CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"


### CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

### CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.

### CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND
ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION
OF THE CARGO ONBOARD.

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV ~ORIGINAL~
SKALA LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT:
MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS.
TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**

MV M/V SKALA AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE,
 BANK REFERENCES, MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH
COVERS 480 TO 500 PIECES
POLICARBONATE STEEL PIPES(DIMENSIONS GUARANTEED BY CHRTS
12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT WEIGHT PER PIECE-
STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO MAX POSSIBLE
INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 3/13 DEC 2400HRS
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD
SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO
PAY DETENTION AT US$ 60,000 PER DAY.
-TIME NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS BY EMAIL/FAX/CABLE UPON
 ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD 118 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT END
OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER
PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL
CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK

-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH
FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL
ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF
CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY
CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY
SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS
REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS
APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR
OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND
FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING
DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL
TO BE PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME
EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P

END





ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

FOR CHARTERERS

ATN INDUSTRIES INC

FOR OWNERS

TOTALMAR NAVIGATION CORP.

~ORIGINAL

**ADDENDUM TO CHARTER PARTY DATED 23RD NOVEMBER 2007 MV SKALA LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

It is this day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that due to the information received from Panama Agents Messrs. Wildford & McKay whom will be acting as vessel's agent through her passage by the Panama Canal, that due to regulations and restrictions on the visibility for cargoes loaded on deck; the M/V Skala will only be able to load min 410 pieces of pipes instead of the minimum 480 pieces contracted for as shown on Charter Party dated 23/11/07 signed by the two parties, so as to comply with said regulations and visibility restrictions. The Master will do the utmost to load more considering restrictions at Panama Canal and the safety and stability of vessel.

Signed in Caracas on the 30th day of December 2007. Two originals have been drawn up one for each party.

Totalmar Navigation Corp.

**FOR OWNERS**                         **FOR CHARTERERS**

TOTALMAR NAVIGATION CORP.              ATN INDUSTRIES INC

# EXHIBIT 2

5/8

M.V. S KALA
DECEMBER 8, 2007

## LETTER OF PROTEST

THRU: PENAVICO SHANGHAI PUDONG CO., LTD.


TO: SHANGHAI JIFANG STEEL PIPE CO, LTD
CC: TELEDATA MARINE SOLUTIONS LTD
CC: COSMOS VENTURES HELLAS

SUBJECT: DEAD FREIGHT PROTEST FOR SHORT LOADED CARGO

DEAR SIR,

THIS IS TO BRING TO YOUR KIND NOTICE THAT ACCORDING TO THE
CHARTER PARTY THE FINAL QUANTITY TO BE LOADED IS IN MY OPTION.
ACCORDING TO MY STOWAGE PLAN SENT TO YOU REQUESTED 490
PIECES AND WHEREAS SUPPLIED ONLY 430 PIECES. THEREFORE OWNERS
ARE ENTITLED TO CLAIM DEAD FREIGHT.

OWNERS WILL HOLD SHIPPERS/CHARTERERS FULLY RESPONSIBLE FOR
CLAIM ARISING AGAINST DEAD FREIGHT DUE TO SHORT LOADED
CARGO OF 60 PIECES STEEL PIPES.


RESPECTFULLY YOURS,

CAPT. MERCANTES IRFASIN
MASTER, M.V. S KALA

RECEIVED ONLY
AS PENAVICO AGENT

# EXHIBIT 3

# TOTALMAR NAVIGATION CORP.

2/2

CARACAS, DECEMBER 10th  2007

INVOICE # TNC/12-034

MESSRS.
ATN INDUSTRIES INC.

REF:   FREIGHT INVOICE M/V SKALA CP 23/11/07

DEAR SIRS,

FIND HERE BELLOW THE FREIGHT INVOICE FOR REFERRED SHIPMENT

**FREIGHT INVOICE**

- TOTAL NUMBER OF PIPES LOADED UNDER / ON DECK: 430
- TOTAL CBM PER BILL OF LADING: 35,439.697

- FREIGHT: CBM 35,439.697 X US$ 118.00                = US$ 4,181,884.246
- DEAD FREIGHT 60 PIECES X 82.4179 X US$ 118.00       = US$  583,518.732

                                    TOTAL FREIGHT     = US$ 4,765,402.978

KINDLY REMIT THE AMOUNT OF US$ 4,765,402.978 BY TELEGRAPHIC TRANSFER TO
OWNERS BANKERS AT:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | 0011990850 |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

KINDLY ADVISE WHEN FUNDS HAVE BEEN REMITTED.

# EXHIBIT 4

Adopted by
the Documentary Committee of:    General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"                                    Part I

ORIGINAL 9-0

| 1. Shipbroker | |
|---|---|
| | **2. Place and date**<br>Caracas, December 29th 2007 |
| **3. Owners/Place of business (Cl. 1)**<br>Totalmar Navigation Corp./Agecom<br>As Disponent Owners | **4. Charterers/Place of business (Cl. 1)**<br>ATN Industries Inc.<br>CCCT Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
| **5. Vessel's name (Cl. 1)**<br>M/V Golden Wish or Sub | **6. GRT/NRT (Cl. 1)**<br>26,058 / 14,872 |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**<br>45,719 Deadweight | **8. Present position (Cl. 1)**<br>Trading |
| **9. Expected ready to load (abt.) (Cl. 1)**<br>December 8th, 2007 | |
| **10. Loading port or place (Cl. 1)**<br>1 good safe berth Shanghai, China<br>always accessible always afloat | **11. Discharging port or place (Cl. 1)**<br>1 good safe berth Maracaibo, Vene-<br>zuela. Always accessible always<br>afloat. |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**<br>Min 435 pieces of pipes upto vessel's maximum capacity at Owner's<br>ootion of water pipes of policarbonate steel pipes dimensions Gua-<br>rantee by Charterers. See also Clause 22 | |
| **13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**<br><br>See Clause 35 | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**<br><br>See Clause 35 |
| **15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)**<br>See clause 33 | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)** |
| | **a) Laytime for loading** See Clause 26 |
| **17. Shippers (state name and address) (Cl. 6)**<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd. Pudong New District<br>Shangahi, PRC At: Fletcher Xi | **b) Laytime for discharging** See Clause 26 |
| | **c) Total laytime for loading and discharging** |
| **18. Demurrage rate (loading and discharging) (Cl. 7)**<br>See Clause 27 | **19. Cancelling date (Cl. 10)**<br>December 15th, 2007 |
| **20. Brokerage commission and to whom payable (Cl. 14)** | |

**21. Additional clauses covering special provisions, if agreed.**

Additional clauses 22 to 42 both inclusive to form part of this
Charter Party

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Totalmar Navigation Corp.

| Signature (Owners)<br><br>Totalmar Navigation Corp. | Signature (Charterers)<br><br>ATN Industries Inc. |
|---|---|

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

# PART II

## "Gencon" Charter (As Revised 1922 and 1976)

### Including "F.I.O." Alternative, etc.

ORIGINAL

**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/nett Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property

**4. Payment of Freight**   *See clause 35*
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses

**5. Loading/Discharging Costs**   *Seclause 33*
*(a) Gross Terms:*
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board
If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses
Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense
*(b) F.i.o. and free stowed/trimmed:*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15)

**6. Laytime**   *See clause 26*
*(a) Separate laytime for loading and discharging:*
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
*(b) Total laytime for loading and discharging:*
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
*(c) Commencement of laytime (loading and discharging):*
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice is given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging time as the case may be.

**7. Demurrage**   *See clause 27*
...

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the total freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is (76 hours) delayed for more than 10 days after the day she is stated to be (77) expected ready to load, Charterers have the option of cancelling this (78) contract, unless a cancelling date has been agreed upon

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2)

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1) In these Clauses "War Risks" shall include any blockade of any port action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew to war risks at any stage of the voyage the adventure the Owners may cancel this Charter by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on or which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event (192) the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port or the...

# PART II

## "Gencon" Charter (As Revised 1922 and 1976)

### Including "F.I.O." Alternative, etc

last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have dispatched a request by telegraph to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, discharge, delivery or in any other wise whatsoever including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations. If, by reason of or in compliance with any such directions or recommendations anything is done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(c) All extra expenses (including insurance costs) involved in discharging the cargo at the loading port or discharging the cargo at any port as provided in Clauses 4 and 5 (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all such expenses due under these Clauses.

## 17. GENERAL ICE CLAUSE

### Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage, or on vessel's arrival, or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

### Port of discharge

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CUBIC PER PIECE 82.4179 AND THAT TOTAL CUBIC METER FOR MIN 435 PIECES EQUALS ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 08 / 15 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 11 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.

ORIGINAL

## RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 27: DEMURRAGE
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

DETENTION AT DISCHARGE PORT TO BE PAID AT THE RATE OF US$ 60,000 PER DAY PRORATA.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

### CLAUSE 28: VESSEL'S GEAR
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

### CLAUSE 29: OVERTIME
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

### CLAUSE 30: ARBITRATION
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

### CLAUSE 31: TAXES AND DUES

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

### CLAUSE 32: VESSEL COMPLIANCE
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

### CLAUSE 34: NEW JASON, BOTH TO BLAME ETC
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.
EXTRA WAR RISK PREMIUM IF ANY TO BE FOR CHARTERERS ACCOUNT BOTH ENDS.

### CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM 435 PIECES EQUALS 35.851,79 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.



**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

### CLAUSE 36 VESSEL'S DESCRIPTION

M/V GOLDEN WISH OR SUB, DESCRIPTION IN ATTACHMENT TO THIS CHARTER PARTY.

### CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

### CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"

### CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS WHENEVER CONTRADICTORY.

### CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE PARTIES CONCERNED.

### CLAUSE 41: CLEANING HOLDS
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL  MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

### CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS

acct ATN Industries Inc.
- A shipment min 435 pieces carriers option upto vsl full , under/on deck cap of polycarbonate pipes in loose, dims 12,192 m length x 2,6 m dia/12,3 mt uw each where as chrts grtee 82.4179 cbm per piece
- carriers performer vsl mv golden wish or sub - intake abt 438 pcs - however performing vsl to be grd si/bc, max 25 years, highest class lloyds or equivelant
- under/on deck , with max 5 tiers limits upto vessels capacity

ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 29TH NOVEMBER 2007 MV
GOLDEN WISH OR SUB LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT:
MARACAIBO, VENEZUELA; CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR
NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

- part cgo carriers option but last in first out
- cargo will be loaded under/on deck carriers option cgo on deck bs/l s to be
marked "shipped on deck, without any responsibility to owners for loss or
damage howsoever caused " same to be  for charters/shippers/receivers risk
and account
- loading 1spsb aaaa shanghai / discharging 1spsb aaaa maracaibo , where
8m sw drft
- laycan 8/15 dec 2007 –

-loading 4 days shinc / Liner out end of hook discharge
- demm usd 60.000 pdpr / fd bends, otherwise as per fixture Skala, cp
23/11/07
- frt usd 121,50 per cbm fiost lsd, Liner out end of hook.
- frt payment 100 pct as per cp M/V Skala
- any shifting required to be for acct and time of party ordering same
- nor via cable/radio/vhf w/w/w/w be

- if original bill(s) of lading is not available at discharging port upon  vsl's
arrival,the carriers/master to allow discharge of cgo into custody of the
port
  against chrts and recvrs "loi" as per ows pandi wording
- overtime, if any, to be paid by ordering party
- taxes and / or dues on cargo/frt if any for charter s account both ends
- taxes and / or dues on vessel's flag /crews /ownership for carriers
account both ends
- extra insurance due to vessel's age and/or flag, if any for charters
account bends
- carriers performing vsl must be fully certified (ism/doc/smc/isps/p&i,etc)
- carriers/master provide approvex 3/2/1 days eta notice both bends
- extra war risk premium if any to be for chrts acct bends
- arbitration if any in london and english law to apply
- Otherwise terms and conditions as per fixture Cp M/V Skala dd
23/11/07, logically amended as per main terms agreed.

end offer


**Totalmar Navigation Corp.**

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

**ATN INDUSTRIES INC**

ORIGINAL

**1475M/V "GOLDEN WISH"**

All figures / details are given in good faith and wog

**1.General**
1.1 Vessel's name: MV GOLDEN WISH
1.2 Vessel's previous name: KEN EXPLORER / BORON EXPLORER
1.3 Flag: PANAMA
1.4 Month /Year and Where Built: 1997/JAPAN
1.5 Yard name and number: TSUNEISHI SHIP BUILDING CO LTD
   YARD No. 1090
1.6 Official Class Register / IMO number:    /9146962
1.7 Class of Vessel: KOREAN REGISTER OF SHIPS
1.8 Port of Registry: PANAMA
1.9 Owners: GOLDEN WISH SHIPPING CO. PANAMA

**2.Particulars of Vessel**
2.1 Type of Vessel: BULK CARRIER FLUSH DECK WITH F'CASTLE

| 2.2 | Deadweight | Draft | TPI / TPC |
|---|---|---|---|
| Summer | 45,719 | 11.62 | 49.83 MT |
| Winter | 44,515 | 11.378 | 49.65 MT |
| Tropical | 46,928 | 11.862 | 49.95 MT |

2.3 Is Vessel fitted for Transit of:
   a) Panama Canal         YES
   b) Suez Canal          YES
   c) St. Lawrence Seaway   NO
   d) Not applicable
2.4 Not applicable
2.5 Not applicable
2.6 GT / NT:
2.7 International: 26.058 / 14,872
   Suez     : 26,808 / 24,202.34
   Panama   : 21,673
2.8 Length Overall: 185.74 M
2.9 Length between perpendiculars: 177.00 M
2.10 Extreme breadth and depth moulded: 30.4 M/ 16.50 M
2.11 Distance from waterline to top of hatch coaming (basis full bunkers)
      a. Fully laden conditions 6.32 M at even keel summer draft
      b. Full ballast condition (excl. ballast holds) No.1 13.08M No.5 11.25M
         Full ballast condition (incl. Ballast holds) No.1 9.94M No.5 9.29M
2.12 State Vessel's deballasting time in mt / hour: ABOUT 600 M3 / HOUR
2.13 Vessel can accept loading rate of (metric tons per hour): 2,300 MTS/HR
2.14 Distance from Keel to top of hatch coaming: 17.9 M
   No.1 17.9 M    No.2 to No.5 : 17.9 M
   Highest fixed point of Vessel: 45.11 M
2.15 State Capacity of :
   a. Ballast Tanks: 14,833 M3
   b. Hold Ballast Capacity:
   c. Constant excluding Fresh Water: ABOUT 220 MT
   Daily Fresh Water Consumption: ABOUT 12  MT
   Fresh Water Capacity: 389MT
   State Capacity and Daily Production of Evaporators: ABOUT 15.MT
   Normal Fresh Water Reserve: ABOUT 150 MT
2.16 Vessel is fitted with Shaft Generator: NO
2.17 State Vessel's onboard Electrical Supply: 450V/ 60Hz

ORIGINAL

3.1 Holds
    a. Number of Holds : FIVE (5)
    b. Are Vessels Holds clear and free of any obstructions:
    c. Grain / Bale Capacity in Holds excluding Wing / Topside Tanks:

| | Grain | Bale |
|---|---|---|
| No.1 | 9,932.8 | 9,586.3 |
| No.2 | 11,753.5 | 11,396.7 |
| No.3 | 11,285.2 | 10,946.1 |
| No.4 | 11,747.9 | 11,368.1 |
| No.5 | 10,276.6 | 10,033.3 |

    d. Grain / Bale Capacity in Holds including Hatchways:

| | Grain | Bale |
|---|---|---|
| No.1 | 10,361.6 | 10,015.1 |
| No.2 | 12,199.4 | 11,844.6 |
| No.3 | 11,731.1 | 11,392.0 |
| No.4 | 12,193.8 | 11,814.0 |
| No.5 | 10,722.5 | 10,499.2 |

    e. Is Vessel strengthened for the carriage of heavy cargoes: YES
        HO #2+4 MAYBE EMPTY
    f. Is Tanktops steel and suitable for grab discharge: YES
    g. State whether corrugations vertical or horizontal: VERTICAL
    h. Tanktop Strength:
        No.1 and No.5 : 13,73 MT / M2
        No.2 and No.4 : ......Mt / M2
        No.3 : 21,94 MT / M2
    i. Are Holds CO2 fitted: NO
    j. Are Holds fitted with smoke detection system: NO
    k. Is Vessel fitted with Australian approved Hold ladders: YES
    l. Has Vessel a loadmaster computer / loadicator or other type of mechanical
        stowage calculator: YES
    m. Are Holds hoppered at: Hold Side: YES
        Can Vessel's Holds be described as box shaped: NO
    n. Measurement of any Tank Slopes / Hoppering Height: 3,10.M
        Distance from Vessel's Side at Tanktop: 14,69M
    o. Flat floor measurement of cargo Holds at Tanktop:
        No.1 Hold: 27.00 M x (Fore)23.8 M / (Aft)10.90 M
        No.2 Hold: 26.90 M x 23.80 M
        No.3 Hold: 27.00 M x 23.80 M
        No.4 Hold: 26,90 M x 23,80M
        No.5 Hold: 27.00 M x 23.80M (Fore/Aft)
    p. Is Vessel electrical ventilated: NO
3.2 Hatches
    a. Number of Hatches: Five
    b. Make and Type of Hatch covers:  HAKATA MAC CORP/FOLDING TYPE
    c. Hatch sizes
        No.1    20.00 x 15.30M
        No.2/3/4/5  20.80 x 15.30M
    d. Hatch cover strength:NO 1 2.08 MT / M2 NO 2-5 1.75 MT/M2
    e. Distance from Ship's rail to edge of hatch covers / coaming each side:
        No.1 FWD 3.6 M  AFT 6.5 M
        No.2 to No.5 : 6.5 M
    f. Distance from bow to for of 1st hold opening:5.5  M
    g. Distance from stern to AFT of last hold opening:3.6 M
    h. Is vessel fitted with cement holes: Yes
11. Cargo Gear
11.1 State make and type: 4 Electro-hydraulic cranes MHI LTD JAPAN
11.2 Number and capacity of cranes and where situated: 4 x 25 T
        No.1 between holds 1 and 2
        No.2 between holds 2 and 3
        No.3 between holds 3 and 4
        No.4 between holds 4 and 5
11.3 Outreach of gear beyond ship's rail: 3M
11.4 Not applicable
11.5 Time needed for full cycle with maximum cargo lift on hook: about .... minutes
11.6 Slewing / luffing / hoisting speeds: .... RPM / ...SECS / ...M PER MIN
11.7 Is gear combinable for heavy lift: NO
11.8 Are winches electro-hydraulic: YES

# EXHIBIT 5

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-08

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V ATLANTICA AT SHANGHAI CP 29/11/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 5.229 DAYS
TOTAL DEMURRAGE AT SHANGHAI 1.229 DAYS

DEMURRAGE DUE BY CHARTERERS   1.229 DAYS x US$ 70,000/DAY = US$ 86,030.00

KINDLY REMIT THE AMOUNT OF US$ 86,030.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V ATLANTICA AT LOAD PORT SHANGHAI DECEMBER 10 2007

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|---|---|
| ARRIVED SHANGHAI | 10/12/07 AT 07:00 HRS |
| NOR TENDERED | 10/12/07 AT 07:00 HRS |
| LOADING OPERATION BEGAN | 13/12/07 AT 20:00 HRS |
| TIME START COUNTING | 10/12/07 AT 00:00 HRS |
| COMPLETED LOADING/LASHING | 15/12/07 AT 12:30 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 10/12/07 Mon 07:00 | Laytime commenced | | | |
| 10/12/07 Mon 24:00 | waiting berth | 0 - 17 - 00 | 0 - 17 - 00 | |
| 11/12/07 Tue 24:00 | waiting berth | 1 - 00 - 00 | 1 - 00 - 00 | |
| 12/12/07 Wed 24:00 | waiting berth | 1 - 00 - 00 | 1 - 00 - 00 | |
| 13/12/07 Thu 18:20 | Berthed | | | |
| 13/12/07 Thu 20:00 | Commenced loading | | | |
| 13/12/07 Thu 24:00 | | 1 - 00 - 00 | 1 - 00 - 00 | |
| 14/12/07 Fri 07:00 | On demurrage | | | |
| 14/12/07 Fri 24:00 | | 0 - 07 - 00 | 1 - 00 - 00 | 0 - 17 -00 |
| 15/12/07 Sun 06:00 | Completed loading | | | |
| 15/12/07 Sun 12:30 | Completed lashing | | | |
| 15/12/07 Sun | Laytime count ended | | 0 - 12 - 30 | 0 - 12 -30 |
| 15/12/07 Sun 16:10 sailed | | | | |
| | Total | 4 - 00 - 00 4.000 | 5 - 05 -30 | 1 - 05 -30 1.229 |

DEMURRAGE          : 1.229 DAYS x US$ 70,000/DAY
DEMURRAGE DUE      : US$ 86,030.00

Avda. Francisco de Miranda, Centro Plaza, Torre C, Piso 18, Oficina F, Los Palos Grandes.
Caracas – Venezuela, Tels: +58-212-2868686 - Fax: +58-212-2870115, e-mail: totalmar@cantv.net

# EXHIBIT 6

ANNEX I

ORIGINAL 19-0

RECOMMENDED
THE BALTIC AND
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON"    Part I

| | |
|---|---|
| 1. Shipbroker | 2. Place and date<br>Caracas, December 6th 2007 |
| 3. Owners/Place of business (Cl. 1)<br>Totalmar Navigation Corp/Agecom<br>As Disponent Owner | 4. Charterers/Place of business (Cl. 1)<br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela |
| 5. Vessel's name (Cl. 1)<br>M/V Rainbow Or Sub Owners option | 6. GRT/NRT (Cl. 1)<br>25,676 / 13,991 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br>42,529 | 8. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (abt.) (Cl. 1)<br>Laycan December 13/20, 2007 | |
| 10. Loading port or place (Cl. 1)<br>1 good safe berth Shanghai, China<br>always accessible always afloat | 11. Discharging port or place (Cl. 1)<br>1 good safe berth Maracaibo,Vene-<br>zuela, always accessible always<br>afloat |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>About 350 pieces of policarbonate steel water pipes dimensions guaran-<br>tee by Charterers. See also clause 22 | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>See clause 35 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>See clause 35 |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if Vessel is gearless)<br>See clause 33 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| | a) Laytime for loading<br>                    See clause 26 |
| 17. Shippers (state name and address) (Cl. 6)<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd., Pudong New Dis-<br>trict Shanghai. PRC At: Fletcher Xi | b) Laytime for discharging<br>                    See clause 26 |
| | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>See clause 27 | 19. Cancelling date (Cl. 10)<br>December 20th 2007 |
| 20. Brokerage commission and to whom payable (Cl. 14) | |
| 21. Additional clauses covering special provisions, if agreed<br><br>Additional clauses 22 to 42 both inclusive to form part of this<br>Charter Party | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp. | ATN Industries Inc. |

Totalmar Navigation Corp.

Printed and sold by Fr. G. Knudtzon Ltd., Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.



**See clause 35**

**See clause 33**

**See clause 26**

**See clause 27**





ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK ABT 357 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 13 / 20 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 15 2007 WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETERR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007. MV RAINBOW LOADING PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPE. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7 DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING ORDER, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN NEW YORK, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.





RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP, CHARTERERS ATN INDUSTRIES INC.

### CLAUSE 33: COST OF LOADING AND DISCHARGE

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL, STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL'HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL, IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

### CLAUSE 34: NEW JASON, BOTH TO BLAME ETC

NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

### CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 121.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR ABOUT 357 PIECES EQUALS 29,423.19 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.





**RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:       JPMORGAN CHASE NEW YORK

Address Bank:            345 PARK AVENUE

                         NEW YORK – NY 10154

ABA:                     021000021
SWIFT:                   CHASUS33

BENEFICIARY BANK:        EBNA BANK N.V.
ADR-BENE-BANK:           AMACO BUILDING 36-B
                         ZEELANDIA CURACAO, NETHERLANDS ANTILLES
ACCOUNT BENE BANK:       0011990850

ULTIMATE BENEFICIARY:    Totalmar Navigation Corp.

Account Ultimate Beneficiary:    201389

CLAUSE 36 VESSEL'S DESCRIPTION
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE

HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.50M 10.50M x 14.40M
ALL DETAILS "ABT".



RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 : MV RAINBOW LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO: WATER PIPES; OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

**CLAUSE 37: AGENCY**
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

**CLAUSE 38: MARKING BILL OF LADINGS**
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY"

**CLAUSE 39: LEGAL PRIORITY**
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS WHENEVER CONTRADICTORY.

**CLAUSE 40: CONFIDENTIALITY**
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE PARTIES CONCERNED.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHARTS & OWNERS**
VESSEL: MV RAINBOW OR SUB IN OWNERS OPTION
NORWAY/1994/N.K.
OPEN-HATCH BOX-SHAPED HOLD BULKER (EXCL NO.1/NO.8)
MAX 2.40 M OVER HANG (HATCH WAY/FORE AND AFT ONLY)
IS EXISTING THRU NO.2-NO.7 HOLD.
SMALL SLANT (HOPPER) IS EXISTING IN NO.7 HOLD
AFTER PART/BOTH SIDES).
DWT 42,529MT ON 11.535M SSW DRAFT
GRT 25,676 / NRT 13,991
LOA 184.93M / BEAM 30.50M / DEPTH 16.20M
4 SET X 30T JIB CRANE (4 GEARS SERVING ALL HATCHES
BUT ONLY 4 HATCHES SIMULTANEOUSLY AND EACH CRANE SET SERVING
ONLY IMMEDIATELY ADJACENT HATCHES
8 HOLDS / 8 HATCHES
GRAIN/BALE CAPA. 1,802,319CFT/1,759,341CFT
HATCH SIZE NO.1 8.80M X 12.96M
NO.2/6/7 14.40M X 25.92M
NO.3 13.60M X 25.92M
NO.4/5 12.80M X 25.92M
NO.8 8.80M X 16.20M
HATCH TYP :
NO.1/8 : FOLDING TYPE
NO.2/3, 4/5, 6/7 : PIGGY BACK TYPE
HOLD DIMS
(L) X (W) X (H)
Fore After
No.1 16.00M x 11.50M 22.50M x 14.40M
No.2 16.80M x 23.00M 25.92M x 14.40M
No.3 16.80M x 25.92M 25.92M x 14.40M
No.4 16.80M x 25.92M 25.92M x 14.40M
No.5 16.80M x 25.92M 25.92M x 14.40M
No.6 16.80M x 25.92M 25.92M x 14.40M
No.7 16.80M x 25.92M 19.20M x 14.40M
No.8 15.20M x 18.80M 10.50M x 14.40M
ALL DETAILS "ABT".



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 6TH DECEMBER 2007 MV
RAINBOW LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO,
VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION
CORP. CHARTERERS ATN INDUSTRIES INC.

LAY/CAN: 13TH DEC, 2007 / 20TH DEC, 2007
CARGO&QTY: ABT 357 PCS POLICARBONATE STEEL PIPES
FRT RATE: USD 121.50 PER CBM FREE IN, STWOED L/S/D / LINER OUT END OF HOOK
OTHER TERMS AND CONDITIONS AS PER CP SKALA DATED 23/11/07 AMENDED AS PER
MAIN TERMS AND LOGICAL ALTERATIONS TO RIDER CLAUSES.

STOWAGE:

NO WELDING ON HATCH COVERS POSSIBLE DUE TO TYPE OF HATCOVERS

OWNRS TECHNICAL DEPT CONFIRM CAN LOAD 20 PCS OF PIPES IN EACH HOLD NO.1
AND HOLD NO.8, I.E., TOTAL 40 PCS CAN BE LOADED ADDITIONAL.
HOLD NO.2/3/4/5/6 - 43PCS PER HOLD AND IN HOLD 7 - 42 PCS = TTL 257
ON DECK FOR NO.2/3/4/5/6/7 - 10PCS PER HATCH = TTL 60 PCS
TFORE LOADABLE QTTY IS 357 PCS.- REPEAT 357 PIPES TOTAL

FOR OWNERS                           FOR CHARTERERS

TOTALMAR NAVIGATION CORP.            ATN INDUSTRIES INC

        Totalmar Navigation Corp.

# EXHIBIT 7

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-07

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V RAINBOW AT SHANGHAI CP 06/12/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 6.113 DAYS
TOTAL DEMURRAGE AT SHANGHAI 2.113 DAYS

DEMURRAGE DUE BY CHARTERERS   2.113 DAYS x US$ 70,000/DAY = US$ 147,910.00

KINDLY REMIT THE AMOUNT OF US$ 147,910.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V RAINBOW AT LOAD PORT SHANGHAI DECEMBER 16 2008

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|---|---|
| ARRIVED SHANGHAI | 16/12/07 AT 08:12 HRS |
| NOR TENDERED | 16/01/08 AT 08:12 HRS |
| LOADING OPERATION BEGAN | 19/12/07 AT 12:00 HRS |
| TIME START COUNTING | 16/12/07 AT 08:12 HRS |
| COMPLETED LOADING | 22/12/07 AT 11:00 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 16/12/07 Sun 08:12 | Laytime commenced | | | |
| 16/12/07 Sun 24:00 | | 0 - 15 - 44 | 0 - 15 - 44 | |
| 17/12/07 Mon 24:00 | | 1 - 00 - 00 | 1 – 00 - 00 | |
| 18/12/07 Tue 24:00 | | 1 - 00 – 00 | 1 – 00 - 00 | |
| 19/12/07 Wed 10:12 | Berthed | | | |
| 19/12/07 Wed 12:00 | Commenced loading | | | |
| 19/12/07 Wed 24:00 | | 1 – 00 – 00 | 1 – 00 - 00 | |
| 20/12/07 Thu 08:12 | On demurrage | | | |
| 20/12/07 Thu 24:00 | | 0 – 08 - 12 | 1 – 00 - 00 | 0 -15 - 44 |
| 21/12/07 Fri 24:00 | | | 1 – 00 – 00 | 1 – 00 -00 |
| 22/12/07 Sat 01:00 | Completed loading | | | |
| 22/12/07 Sat 11:00 | Completed lashing | | | |
| 22/12/07 Sat Laytime count ended | | | 0 – 11 - 00 | 0 – 11 -00 |
| 22/12/07 Sat 22:24 sailed | | | | |
| | Total | 4 – 00 – 00 | 6 – 02 –00 | 2 – 02 - 44 |
| 4.00 | 2.113 | | | |

| DEMURRAGE | : 2.113 DAYS x US$ 70,000/DAY |
|---|---|
| DEMURRAGE DUE | : US$ 147,910.00 |

Avda. Francisco de Miranda, Centro Plaza, Torre C, Piso 18, Oficina F, Los Palos Grandes.
Caracas – Venezuela, Tels: +58-212-2868686 - Fax: +58-212-2870115, e-mail: totalmar@cantv.net

# EXHIBIT 8

ANNEX 2

19-0

Part I

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE

| | | |
|---|---|---|
| 1. Shipbroker | 2. Place and date | Caracas December 7th 2007 |
| 3. Owners/Place of business (Cl. 1)<br>Totalmar Navigation Corp/Agecom<br>As Disponent Owners | 4. Charterers/Place of business (Cl. 1)<br>ATN Industries Inc.<br>CCCT, Torre A, Piso 8, Oficina 802<br>Chuao, Caracas 1065, Venezuela | |
| 5. Vessel's name (Cl. 1)<br>M/V Mairouli or Sub in Owners option | 6. GRT/NRT (Cl. 1)<br>30,018 / 18,466 | |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br>53,206 mt deadweight | 8. Present position (Cl. 1)<br>Trading | |
| 9. Expected ready to load (abt.) (Cl. 1)<br>December 27th 2007 | | |
| 10. Loading port or place (Cl. 1)<br>1 good safe berth Shanghai, China<br>always accessible always afloat | 11. Discharging port or place (Cl. 1)<br>1 good safe berth Maracaibo, Vene-<br>zuela, always accessible always<br>afloat | |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>Min 435 pieces of pipes upto vessel's full capacity at Owners option<br>of policarbonate steel water pipes dimensions guarantes by Charterers.<br>See also clause 22 | | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>See clause 35 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>see clause 35 | |
| 15. Loading and discharging costs (state clause 5a) or 5b) or 5c) of Cl. 5; also indicate if vessel is gearless) (Cl. 5)<br><br>See clause 33 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>See Clause 26<br>b) Laytime for discharging<br>See Clause 26<br>c) Total laytime for loading and discharging | | |
| 17. Shippers (state name and address) (Cl. 6)<br>Jiafang Steel Pipes Co, Ltd.<br>818 Jianhang Rd, Pudong New District<br>Shangahi, PRC At Fletcher Xi | | |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>See clause 27 | 19. Cancelling date (Cl. 10)<br>December 31st 2007 | |
| 20. Brokerage commission and to whom payable (Cl. 15) | | |
| 21. Additional clauses covering special provisions, if agreed<br><br>Additional clauses 22 to 42 both inclusive to form part of this<br>Charter Party. | | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| Totalmar Navigation Corp.<br>Totalmar Navigation Corp. | ATN Industries Inc. |

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen



PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "P.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5 of the gross/net Register tons indicated in Box 5 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, that the party mentioned as Charterers in Box 4 that . . .

The said vessel shall proceed to the loading place or places named in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo . . .

2. Owners' Responsibility Clause

Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case . . .

3. Deviation Clause

The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight **See clause 35**

The freight to be paid in the manner prescribed in Box 14 in cash without discount . . .

5. Loading/Discharging Costs **See clause 33**

(a) Gross Terms

The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and/or pay the necessary men on shore or on board the lighters to do the work . . .

(b) F.I.O. and free in/out/stowed

The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken into the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners . . .

6. Laytime **See clause 26**

(a) Separate laytime for loading and discharging

The cargo shall be loaded within the number of running hours as indicated in Box 16 . . .

(b) Total laytime for loading and discharging

The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16 . . .

(c) Commencement of laytime (loading and discharging)

Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon . . .

7. Demurrage **See clause 27**

Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

1. Lien Clause

Owners shall have a lien on the cargo for freight, dead-freight and demurrage including costs and for recovering the same . . .

2. Bill of Lading

The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

3. Cancelling Clause

Should the vessel not be ready to load on or before the date indicated in Box 19 Charterers have the option of cancelling this contract . . .

11. General Average

General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same has been necessitated through neglect or default on the Owners' servants (see clause 2).

12. Indemnity

Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. Agency

In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

14. Brokerage

A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20 . . .

15. General Strike Clause

Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract . . .

16. War Risks ("Voywar 1950")

(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government . . .





ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT=MARACAIBO, VENEZUELA: CARGO: WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 22: CARGO DESCRIPTION**
POLICARBONATE STEEL PIPES DIMENSIONS GUARANTEED BY CHRTS 12.192 M LENGHT - 2.60 METER OUTER DIAMETER-12.3 METRIC TONES WEIGHT PER PIECE-STWOING MAX UPTO 5 TIERS HIGH, MIN PIECES OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH COVERS MIN 435 PIECES AND UPTO MAX POSSIBLE INTAKE IN OWNERS OPTION.

CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TOTAL CBM FOR MIN 435 PCS EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MIN QUANTITY.

**CLAUSE 23: LOADING & DISCHARGING PORTS**
LOADING PORT: 1 GSB AAAA PORT OF SHANGHAI, CHINA

DISCHARGE PORT: 1GSB AAAA MARACAIBO, VENEZUELA

**CLAUSE 24: PRE-ARRIVAL NOTICES**
OWNERS TO GIVE APPROXIMATE DATE AND TIME OF ARRIVAL TO LOADPORT AGENTS, SHIPPERS AND CHARTERERS WITH 72, 48 AND 24 HOURS PRIOR VESSEL'S ARRIVAL TO LOAD PORT.

ON SAILING LOADPORT MASTER TO ADVISE QUANTITY LOADED AND ETA TO DISCHARGE PORTS WITH 72, 48, 24 HOURS DEFINITE DATE AND TIME OF VESSEL'S ARRIVAL TO DISCHARGE PORT.

**CLAUSE 25: ETA & LAYCAN**
LAYCAN: 26 / 31 DECEMBER 2007.

ETA TO LOAD PORT DECEMBER 27TH WP/AGW.

**CLAUSE 26: LAYTIME**
UPON TENDERING NOTICE OF READINESS HOLDS TO BE CLEAN, AND FREE OF ANY OBSTACLES AS FAR AS A TWEEN/SHELTER DECKER CAN BE, AND IN EVERY WAY SUITABLE TO RECEIVE, LOAD, STOW THE CONTRACTED CARGO TO CHARTERERS / SHIPPER'S SATISFACTION.

LAYTIME FOR LOADING SHALL COMMENCE UPON VESSEL TENDERING NOTICE OF READINESS ANY TIME, DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED WHETER IN PORT OR NOT, WHETER IN BERTH OR NOT, WHETER IN FREE PRACTIQUE OR NOT, WHETEHR IN CUSTOM CLEAR OR NOT.
NOTICE OF READINESS MAY BE TENDERED ANY TIME DAY, NIGHT, SUNDAYS AND HOLIDAYS INCLUDED VIA, RADIO, FAX, PHONE, AND E-MAIL AT ANCHORAGE AREA AT LOAD AND DISCHARGE PORT.
TIME ACTUALLY USED BEFORE COMMENCEMENT OF LAYTIME TO COUNT.

IF BERTH OCCUPIED AT TIME OF VESSEL'S ARRIVAL AT LOADING & DISCHARGING PORTS, FULL LAYTIME TO COUNT AS PER CHARTER PARTY. ANY SHIFTING FROM LOAD/DISCH BERTH DUE TO CONGESTION OR OTHER UNFORSEEN MATTER, INCLUDING WAITING TIME, TO COUNT AS LAYTIME AND TO BE FOR CHARTERERS EXPENSE.

TOTAL LAYTIME FOR LOADING 4 WEATHER WORKING DAYS SUNDAYS AND HOLIDAYS INCLUDED.

LAYTIME NON REVERSIBLE

AT DISCHARGE PORT CARGO TO BE DISCHARGE BY VESSEL TO UNDER HOOK, AND CHARTERERS TO HAVE 4 WEATHER WORKING DAYS TO RECEIVE ALL CARGO FROM UNDER HOOK AT VESSEL'S MAXIMUM TAKE AWAY RATE POSSIBLE, SUNDAYS AND HOLIDAYS INCLUDED.



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**CLAUSE 27: DEMURRAGE**
ALL TIME USED LOAD/DISCHARGE/WAITING AFTER LAYTIME EXPIRES AT LOADPORT OR DISCHARGE PORT WILL COUNT AS DEMURRAGE AND WILL BE PAID BY CHARTERERS AT THE RATE OF USD 70,000.00 PER DAY PRO RATA FOR PART OF THE DAY.

ANY DEMURRAGE INCURRED AT LOAD PORT TO BE PAID BY CHARTERERS TO OWNERS ALONG WITH FREIGHT PAYMENT AND AT DISCHARGE PORT IF ANY DETENTION IS INCURRED SAME TO BE PAID UPON COMPLETION OF DISCHARGE OPERATION WITHIN 7

DAYS OF OWNERS PRESENTATION OF INVOICE AND CORRESPONDING LAYTIME WITH SUPPORTING DOCUMENTS.

MASTER TO SIGN NOTICE OF READINESS AND STATEMENT OF FACTS AT EACH PORT.

FREE DESPATCH ALL PORTS.

**CLAUSE 28: VESSEL'S GEAR**
OWNERS TO GUARANTEE VESSEL'S EQUIPMENT IN GOOD WORKING, VESSEL TO GIVE FREE USE OF ENERGY, SUPPLY LIGHTS AS ONBOARD FOR NIGHT WORK, IF REQUIRED, FREE OF EXPENSES TO THE CHARTERERS.

**CLAUSE 29: OVERTIME**
OVERTIME TO BE FOR THE PARTY ORDERING SAME, EXCEPT CREW'S AND OFFICERS OVERTIME WHICH IS ALWAYS FOR OWNERS ACCOUNT.

OVERTIME ORDERED BY PORT AUTHORITIES AT LOAD/DISCHARGE PORTS TO BE FOR CHARTERERS ACCOUNT.

**CLAUSE 30: ARBITRATION**
ANY DISPUTE ARISING UNDER THIS CHARTER PARTY TO BE REFERRED TO ARBITRATION IN LONDON, WITH ONE (01) ARBITRATOR NOMINATED BY OWNERS AND ONE (01) ARBITRATOR NOMINATED BY CHARTERERS, AND IN CASE THE ARBITRATORS FAIL TO REACH AN AGREEMENT THEN THE DECISION OF AN UMPIRE TO BE FINAL AND BINDING UPON BOTH PARTIES. IF EITHER OF THE APPOINTED ARBITRATORS REFUSE TO ACT, OR IS UNCAPABLE OF ACTING, OR DIES, THE PARTY WHICH APPOINTED SUCH ARBITRATOR MAY APPOINT A NEW ARBITRATOR IN HIS PLACE.
IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER ORIGINALLY, OR BY WAY OF SUBSTITUTION AS AFORESAID, FOR SEVEN (07) CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR, HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE THE APPOINTMENT, THE PARTY WHICH HAS APPOINTED AN ARBITRATOR MAY APPOINT THAT ARBITRATOR TO ACT AS SOLE ARBITRATOR IN THE REFERENCE AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

**CLAUSE 31: TAXES AND DUES**

EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR OWNERSHIP TO BE FOR CHARTERERS ACCOUNT.
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND FREIGHT BENDS INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING DUES IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACCOUNT.

ANY TAXES / DUES / DUTIES ON VESSEL TO BE FOR OWNERS ACCOUNT BENDS.

**CLAUSE 32: VESSEL COMPLIANCE**
OWNERS GUARANTEE VESSEL COMPLIES WITH NORMAL REGULATIONS/CERTIFICATES TO PERFORM SUCH VOYAGE AND ANY DELAYS OR EXPENSES RESULTING THEREAFTER SHALL BE FOR OWNERS ACCOUNT.

**CLAUSE 33: COST OF LOADING AND DISCHARGE**

CHARTERERS ARE TO LOAD CARGO ON BOARD VESSEL FREE OF EXPENSES TO VESSEL,



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI CHINA: DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO: WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

STOWED, LASHED, SECURED, TALLYED, FITTINGS TO MASTER SATISFACTION, SUCH OPERATION TO BE DONE BY SHORE LABOUR AT CHRTS TIME/EXPENSE.
ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCLUDING ADDITIONAL STANTIONS TO BE FITTED FOR THE SAFE LASHING/SECURING OF CARGO OR SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY CHARTERERS AT THEIR TIME / EXPENSE.
ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS REQUIRED TO BE FOR CHARTERERS ACCOUNT AND TIME.
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS APPROVAL / DIRECTION / SATISFACTION.

ANY ADDITONAL MATERIAL REQUIRED TO SAFELY SECURED AND STOWED CARGO TO BE SUPPLIED BY CHARTERERS FREE OF CHARGE TO VESSEL AND THEIR TIME AND EXPENSE.
ANY CARGO LOADED ON DECK TO BE AT CHARTERER'S TIME RISK AND EXPENSE.

AND DISCHARGE PORT THE CARGO TO BE DISCHARGE LINER OUT BY VESSEL TO UNDER HOOK AT OWNERS TIME AND EXPENSE BUT TO A MAXIMUM NUMBER OF 4 DAYS, SUNDAYS AND HOLIDAYS INCLUDED THERAFTER CHARTERERS ARE RESPONSIBLE FOR ANY TIME LOST DUE TO LACK OF TRUCK TO TAKE CARGO AWAY FROM UNDER VESSEL HOOK. IF VESSEL IS LONGER DETAINED THAN 4 DAYS; CHARTERERS TO PAY OWNERS FOR THE EXTRA DETENTION TIME AT THE RATE OF US$ 60,000 PER DAY PRO RATA.

CHARTERERS TO BE RESPONSIBLE FOR ANY STEVEDORES DAMAGE DONE TO THE VESSEL. IF ANY DAMAGE, SAME TO BE SETTLED /PAID BY CHARTERERS WITHIN FIFTEEN (15) DAYS OF OCCURANCE OF SAID DAMAGE.

CLAUSE 34: NEW JASON, BOTH TO BLAME ETC
NEW JASON CLAUSE, NEW BOTH TO BLAME COLLISION CLAUSE, P&I BUNKER DEVIATION CLAUSE AND GENERAL CLAUSE PARAMOUNT, WHEN APLICABLE, TO BE INCORPORATED IN THIS CHARTER PARTY.

CLAUSE 35: FREIGHT PAYMENT & BANKING DETAILS

FREIGHT USD 120.50 PER CUBIC METER FREE IN STOWED, TRIMMED, LASHED / SECURED / DUNNAGED, LINER OUT END OF HOOK.

FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING BEFORE SIGNING /REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" INTO OWNERS NOMINATED BANK ACCOUNT. (CONGEBILL FORM B/LS TO BE USED) CHARTERERS TO GUARANTEE THAT CUBIC PER PIECE IS 82.4179 AND THAT TOTAL CUBIC FOR MINIMUM MIN 435 PIECES EQUALS 35.851.7865 ON WHICH FREIGHT TO BE PAID FOR MINIMUM QUANTITY.
BILLS OF LADING TO BE ENDORSED ACCORDINGHLY FOR NUMBERR OF PIECES LOADED ON DECK

FREIGHT TO BE DEEMED EARNED UPON LOAD AND DISCOUNTLESS, NON-RETURNABLE VESSEL A/O CARGO LOST OR NOT LOST.



**ORIGINAL**

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO: WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

100 PERCENT TO BE REMITTED TO:

INTERMEDIARY BANK:    JPMORGAN CHASE NEW YORK

Address Bank:         345 PARK AVENUE

                      NEW YORK – NY 10154

ABA:                  021000021
SWIFT:                CHASUS33

BENEFICIARY BANK:     EBNA BANK N.V.
ADR-BENE-BANK:        AMACO BUILDING 36-B
                      ZEELANDIA CURACAO, NETHERLANDS ANTILLES
ACCOUNT BENE BANK:    0011990650

ULTIMATE BENEFICIARY: Totalmar Navigation Corp.

Account Ultimate Beneficiary:  201389

## CLAUSE 36 VESSEL´S DESCRIPTION

VESSEL: M/V MAIROULI.   EX SIBULK DEDICATION OR SUB IN OWNERS OPTION

DWT/DRAFT / TPC SUMMER  : 53,206 MT / 12.303 MTRS / 55.30 MT
BUILT JUNE 2005, IMABARI - JAPAN
FLAG/CLASS : PANAMA / N.K.K
GRT/NRT: 30,018 / 18,466
LOA/BREADTH/DEPTH :189.94 MTRS / 32.26 MTRS / 17.30 MTRS
HO / HA : 5 / 5
CARGO GEAR: 4 CRANES ELECTRO HYDRAULIC 30.5 MT SWL EACH
TOTAL GRAIN :   68,927.4 M3 / BALE : 65,526.1 M3
SPEED / CONSUMPTION :
IN GOOD WEATHER CONDITIONS I.E. UPTO BEAUFORT FORCE 4 AND DOUGLAS SEA
STATE 3 AND NO ADVERSE CURRENT.
AT SEA BALLAST : ABT 14.5 KNOTS ON ABT 37.0 MTS IFO AND
ABT 0.3 MTS MDO
AT SEA LADEN   : ABT 14.0 KNOTS ON ABT 37.0 MTS IFO
AND ABT  0.3 MTS MDO
IDLE : ABT 3.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/ DAY
IN PORT WORKING : ABT 6.0 MTS IFO / DAY AND ABT 0.3 MTS MDO/DAY
ALL DETAILS IN GOOD FAITH AND WOG

## CLAUSE 37: AGENCY
OWNERS TO APPOINT AGENTS AT BOTH LOAD AND DISCHARGE PORT.

## CLAUSE 38: MARKING BILL OF LADINGS
BILL OF LADING FIGURES TO BE USED AS PER SHIPPERS QUANTITY.
BILL OF LADING TO BE MARKED  "FREIGHT PAYABLE AS PER CHARTER PARTY"

## CLAUSE 39: LEGAL PRIORITY
CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILL OF LADING TERMS
WHENEVER CONTRADICTORY.

## CLAUSE 40: CONFIDENTIALITY
ALL CONDITIONS AND TERMS HEREIN STATED SHALL BE DEEMED STRICTLY PRIVATE
AND CONFIDENTIAL, AND NOT TO BE DISCLOSED OUTSIDE OF THE OFFICES OF THE
PARTIES CONCERNED.



ORIGINAL

RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO WATER PIPES, OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.

**CLAUSE 41: CLEANING HOLDS**
THE CHARTERERS SHALL PROVIDE AND PAY FOR ALL DUNNAGE AND SECURING AND ESPECIAL MATERIAL AS REQUIRED FOR THE PROPER STOWAGE AND PROTECTION OF THE CARGO ONBOARD.

**CLAUSE 42: MAINTERMS AS AGREED BETWEEN CHRTS & OWNERS**

MV M/V MAIROULI AS PREVIOUSLY DESCRIBED
FOR
-SUB CHRTS APPR BY OWNERS PLEASE SUPPLY CHARTERERS NAME, FULL STYLE,
 BANK REFERENCES,  MIC PHONE, E-MAIL ETC
-MIN PCS OWNERS GUARANTEE TO LOAD UNDER/ON DECK AND HATCH
COVERS MIN 435 PIECES POLICARBONATE STEEL PIPES(DIMENSIONS
GUARANTEED BY CHRTS  12.192 M LENGHT - 2.60 M OUTER DIAMETER-12.3MT
WEIGHT PER PIECE-STWOING MAX UPTO 6 TIERS MASTER'S OPTION) AND UPTO
MAX POSSIBLE INTAKE IN OWNERS OPTION
-SHANGHAI/MARACAIBO 1 SB AAAA BENDS
-L/C 26/31 DEC 2007
-LOAD 4 TTL WWD SAT/SUND/LOCAL/NATIONAL HOLIDAYS INCLUDED
-AT DISCHARGE PORT CHARTEERS WILL HAVE MAXIMUM D 4 TTL WWD
SAT/SUND/LOCAL/NATIONAL HOLYDAYS INCLUDED, ONCE EXPIRED VESSEL TO
PAY DETENTION AT US$ 60,000 PER DAY.
-TIME  NOR REVERSIBLE
-NOR BENDS TO BE TENDERED TO THE AGENTS  BY EMAIL/FAX/CABLE UPON
 ARRIVAL USUAL ANCGHORAGE/PILOT STATION SSHINC
-FREIGHT USD  120.50 PER CBM FREE IN STOWED, TRIMMED, L/S/D, LINER OUT
END OF HOOK.
FREIGHT 100 % PAYABLE UPON COMPLETION OF LOADING
BEFORE SIGNING/REALEASING B/LS MARKED "FREIGHT PAYABLE AS PER CHARTER
PARTY"(CONGEBILL FORM B/LS TO BE USED)
CHRTS TO GUARANTEE THAT CBC PER PIECE 82.4179 AND THAT TTL
CBM FOR MIN 480 PCS EQUALS 39.560.592 ON WHICH FREIGHT TO BE PAID FOR
MIN QUANT
-B/LS TO BE ENDORSED ACCORDINGHLY FOR NBR OF PCS LOADED ON DECK
-DECK CARGO ALWAYS AT CHRTS TIME/RISK AND EXPENSE
-DEM USD 70.000/FD. DEMURRAGE AT LOAD PORT TO BE PAID ALONG WITH
FREIGHT PAYMENT.
-ANY AND ALL ADDITIONAL LASHING MATERIALS REQUIRED INCL
ADDITIONAL STANTIONS TO BE  FITTED FOR THE SAFE LASHING/SECURING OF
CARGO OR  SPECIAL FITTINGS OTHER THAN ON BOARD TO BE SUPPLIED BY
CHRTS AT THEIR TIME/EXPENSE.
-LASHING/UMLASHING/SECURING/DUNNAGING/FITTING TO BE DONE BY
SHORE LABOUR AT CHRTS TIME/EXPENSE
-ANY AND ALL KIND OF DUNNAGE/SEPARATION MATERIALS/FITTINGS
REQUIRED TO BE FOR CHRTS ACC AND TIME
-STOWAGE AND LASHING TO BE ALWAYS TO MASTERS
APPROVAL/DIRECTION/SATISFACTION
-EXTRA INSURANCE IF ANY DUE TO VSL'S AGE /CLASS/FLAG OR
OWNERSHIP TO BE FOR CHRTS ACC
-ANY AND ALL KIND OF TAXES/DUES/WHARFAGES ETC ON CARGO AND
FREIGHT BENDS  INCL VENEZUELEAN TAXES OF ANY NATURE AND DREDGING
DUES.IF ANY TO BE FOR CHRTS/SHIPPERS/RECEIVERS ACC
COLLECTION OF DUNNAGE/SEPARATION/
WOODS AND LASHING MATERIALS OTHER THAN THOSE BELONGING TO THE VSL
TO BE PERFORMED AND TAKEN ASHORE BY CHRTS SREVEDORES AT CHRTS TIME
EXPENSE
-OWNERS AGENTS BENDS
-SUB FURTHER DETAILS OF GENCON C/P. END



ORIGINAL

**RIDER CLAUSES TO CHARTER PARTY DATED 7 DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA: CARGO WATER PIPES. OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

**FOR OWNERS**

TOTALMAR NAVIGATION CORP.

**FOR CHARTERERS**

ATN INDUSTRIES INC.



**ADDENDUM TO CHARTER PARTY DATED 7TH DECEMBER 2007 MV MAIROULI LOADING: PORT OF SHANGHAI, CHINA; DISCHARGE PORT: MARACAIBO, VENEZUELA; CARGO: WATER PIPES; OWNERS MESSRS. TOTALMAR NAVIGATION CORP. CHARTERERS ATN INDUSTRIES INC.**

It is day agreed between Owners Messrs. Totalmar Navigation Corp., and Messrs. ATN Industries Inc., as Charterers that the Laycan for the 5th shipment of pipes loading at Shanghai have been shifted from December 26/31, 2007 to January 26/31st 2008 and vessel will only load min 410 pieces of pipes upto vessel's full capacity in Charter option.

Signed in Caracas on the 28th day of December 2007. Two originals have been drawn up one for each party.


**FOR OWNERS**                    **FOR CHARTERERS**


**TOTALMAR NAVIGATION CORP.**          **ATN INDUSTRIES INC**


               Totalmar **Navigation Corp.**

# EXHIBIT 9

# TOTALMAR NAVIGATION CORP.

2/2

CARACAS, FEBRUARY 8th  2008

INVOICE # TNC/01-011

MESSRS.
ATN INDUSTRIES INC.

REF:   DEAD FREIGHT INVOICE M/V GO STAR CP 07/12/07 5TH SHIPMENT PIPES EX
SHANGHAI

DEAR SIRS,

FIND HERE BELLOW THE DEAD FREIGHT INVOICE FOR REFERRED SHIPMENT

**DEAD FREIGHT INVOICE**

VESSEL COMPLETED LOADING/LASHING AND SAILED ON JANUARY 26TH 19:30 HRS.

- TOTAL NUMBER OF PIPES LOADED UNDER / ON DECK:
  400 PIECES OF PIPES (DIA 2.40M) = 28,090.368 CBM
   31 PIECES OF PIPES (DIA 2.60 M) =  2,554.956 CBM
           TOTAL          =30,645.324 CBM

AS PER CHARTER PARTY CLAUSE 22 AND ADDENDUM DD 28/12/07 VESSEL SHOULD
HAVE LOADED 410 PIPES OF 2.6 M O.D. x 12.192 M; LE TOTAL CUBIC 33,791.35

-DEAD FREIGHT DUE TO OWNERS 3,146.0232 X US$ 120.50     = US$ 379,095.80

KINDLY REMIT THE AMOUNT OF US$ 379,095.80 BY TELEGRAPHIC TRANSFER TO
OWNERS BANKERS AT:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | 021000021 |
| SWIFT: | CHASUS33 |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | 0011990850 |
| ULTIMATE BENEFICIARY: | Totalmar Navigation Corp. |
| Account Ultimate Beneficiary: | 201389 |

KINDLY ADVISE WHEN FUNDS HAVE BEEN REMITTED.

# EXHIBIT 10

# TOTALMAR NAVIGATION CORP.

CARACAS, JANUARY 29Th 2008

INVOICE # TNC/01-08

MESSRS.
ATN INDUSTRIES INC.

REF:   DEMURRAGE INVOICE M/V GO STAR AT SHANGHAI CP 07/12/07

DEAR SIRS,

FIND HERE BELLOW OWNERS INVOICE FOR DEMURRAGE OCCURRED DURING
LOADING OPERATION AT SHANGHAI OF REFERRED VESSEL.

**DEMURRAGE INVOICE**

TOTAL NUMBER OF DAYS FOR LOADING 4 DAYS SHINC
TOTAL ACTUAL TIME USED FOR LOADING 6.104 DAYS
TOTAL DEMURRAGE AT SHANGHAI 2.104 DAYS

DEMURRAGE DUE BY CHARTERERS  2.104 DAYS x US$ 70,000/DAY = US$ 147,280.00

KINDLY REMIT THE AMOUNT OF US$ 147,280.00 BY TELEGRAPHIC TRANSFER TO:

| | |
|---|---|
| **INTERMEDIARY BANK:** | **JPMORGAN CHASE NEW YORK** |
| Address Bank: | **345 PARK AVENUE** |
| | **NEW YORK – NY 10154** |
| ABA: | **021000021** |
| SWIFT: | **CHASUS33** |
| BENEFICIARY BANK: | **EBNA BANK N.V.** |
| ADR-BENE-BANK: | **AMACO BUILDING 36-B** |
| | **ZEELANDIA CURACAO, NETHERLANDS ANTILLES** |
| ACCOUNT BENE BANK: | **0011990850** |
| ULTIMATE BENEFICIARY: | **Totalmar Navigation Corp.** |
| Account Ultimate Beneficiary: | **201389** |

# TOTALMAR NAVIGATION CORP.

LAYTIME CALCULATION M/V GO STAR AT LOAD PORT SHANGHAI JAN 20 2008

TOTAL TIME ALLOWED TO DISCHARGE 4 DAYS SHINC

| DATE | |
|---|---|
| ARRIVED SHANGHAI | 20/01/08 AT 10:00 HRS |
| NOR TENDERED | 20/01/08 AT 10:00 HRS |
| LOADING OPERATION BEGAN | 24/01/08 AT 20:00 HRS |
| TIME START COUNTING | 20/01/08 AT 10:00 HRS |
| COMPLETED LOADING | 26/01/08 AT 12:00 HRS |

| DATE | DESCRIPTION | ALLOWED D H M | USED D H M | LOST D H M |
|---|---|---|---|---|
| 20/01/08 Sun 10:00 | Laytime commenced | | | |
| 20/01/08 Sun 24:00 | | 0 - 14 - 00 | 0 - 14 - 00 | |
| 21/01/08 Mon 24:00 | Waiting for berth | 1 - 00 - 00 | 1 – 00 - 00 | |
| 22/01/08 Tue 24:00 | Waiting for berth | 1 - 00 – 00 | 1 – 00 - 00 | |
| 23/01/08 Wed 24:00 | Waiting for berth | 1 – 00 – 00 | 1 – 00 - 00 | |
| 24/01/08 Thu 10:00 | On demurrage | | | |
| 24/01/08 Thu 17:50 | Berthed | | | |
| 24/01/08 Thu 20:00 | Commenced loading | | | |
| 24/01/08 Thu 24:00 | | 0 – 10 – 00 | 1 – 00 – 00 | 0   14 - 00 |
| 25/01/08 Fri 24:00 | | | 1 – 00 – 00 | 1 – 00 - 00 |
| 26/01/08 Sat 12:00 | Completed loading | | | |
| 26/01/08 Sat 12:30 | Completed lashing | | | |
| 26/01/08 Sat 12:30 | Laytime count ended | | 0 – 12 - 30 | 0 –12 - 30 |
| 26/01/08 Sat 16:15 sailed | | | | |
| | Total | 4 – 00 – 00 4.00 | 6 – 02 –30 | 2 – 02 - 30 2.104 |

| | |
|---|---|
| DEMURRAGE | : 2.104 DAYS x US$ 70,000/DAY |
| DEMURRAGE DUE | : US$ 147,280.00 |

Avda. Francisco de Miranda, Centro Plaza, Torre C, Piso 18, Oficina F, Los Palos Grandes.
Caracas – Venezuela, Tels: +58-212-2868686 - Fax: +58-212-2870115, e-mail: totalmar@cantv.net

# EXHIBIT C

# HOGAN & HARTSON

Hogan & Hartson LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
+1.305.459.6500 Tel
+1.305.459.6550 Fax

www.hhlaw.com

**Via Facsimile &**
**Regular U.S. Mail**

May 29, 2008

Totalmar Navigation Corp.
Attn: Rahul Wanchoo, Esquire
Law Offices of Rahul Wanchoo
Empire State Building
350 Fifth Avenue
59th Floor
New York, New York 10118

Re:     **Notice of Arbitration**

Dear Mr. Wanchoo:

As you are aware, Hogan & Hartson LLP represents ATN Industries, Inc. ("ATN") with regard to certain disputes between ATN and Totalmar Navigation Corp. ("Totalmar").

ATN acknowledges receipt of your letter of 11 March 2008, wherein Totalmar purports to initiate the arbitration of two separate Charter Party disputes regarding the *M/V Skala* and the *M/V Rainbow*. ATN does not agree to the consolidation of these disputes into a single arbitration nor does ATN agree that these arbitrations be governed by the SMA Arbitration Rules.

## *M/V Skala* **Charter Party**

In accordance with the *M/V Skala* Charter Party, ATN demands arbitration of any and all disputes between ATN and Totalmar regarding the *M/V Skala* Charter Party, including ATN's claims for the recovery of any and all loss and/or damage to its cargo. ATN designates as its party-appointed arbitrator, Edward H. Davis, Jr., Esquire, of the law firm of Astigarraga Davis, 701 Brickell Avenue, 16th Floor, Miami, Florida 33131, 305.372.8282, 305.372.8202 (facsimile), edavis@astidavis.com.

Totalmar Navigation Corp.
Attn:  Rahul Wanchoo, Esquire
<u>Law Offices of Rahul Wanchoo</u>

### *M/V Rainbow* **Charter Party**

In accordance with the *M/V Rainbow* Charter Party, ATN demands arbitration of any and all disputes between ATN and Totalmar regarding the *M/V Rainbow* Charter Party, including ATN's claims for the recovery of any and all loss and/or damage to its cargo.  ATN designates as its party-appointed arbitrator, Luis S. Konski, Esquire, of the law firm of Ruden McClosky, LLP, 701 Brickell Avenue, Suite 1900, Miami, Florida 33131, 305.789.2700, 305.789.2727 (facsimile), <u>luis.konski@ruden.com</u>.

### *M/V Go Star* **Charter Party**

In accordance with the *M/V Go Star* Charter Party, ATN demands arbitration of any and all disputes between ATN and Totalmar regarding the *M/V Go Star* Charter Party, including ATN's claims for the recovery of any and all loss and/or damage to its cargo. ATN designates as its party-appointed arbitrator, Jorge A. Mestre, Esquire, of the law firm of Rivero Palmer & Mestre, LLP, 2525 Ponce de Leon Boulevard, 10th Floor, Coral Gables, Florida  33134, 305.445.2500, 305.445.2505 (facsimile), <u>jmestre@rpm-law.com</u>.

Please advise in which of the above arbitrations Mr. A.J. Siciliano will be designated as Totalmar's party-appointed arbitrator and with regard to the other two arbitral proceedings noted above, Totalmar has 7 days to appoint its party-appointed arbitrators.

We look forward to working with you and the parties' party-appointed arbitrators to define the procedures for each of these arbitral proceedings.

Best regards.

Sincerely,

Richard C. Lorenzo

cc:      ATN Industries, Inc.

2

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

TOTALMAR NAVIGATION CORP.,                              :
                                                        :
                        Plaintiff,                      :    Index No. 08-cv-1659 (HB)
                                                        :    ECF Case
        -against-                                       :
                                                        :
ATN INDUSTRIES INC.,                                    :
                                                        :
                        Defendant.                      :
-------------------------------------------------------- x

## AFFIRMATION OF SERVICE

George F. Hritz affirms under penalty of perjury:

I am an attorney admitted to practice in the State of New York and am a partner with the law firm of Hogan & Hartson LLP, attorneys for defendant in the above-captioned matter.

I certify that on July 21, 2008, I electronically filed Defendant's Consolidated Reply Memorandum and declarations of Vincente E. Gonzalez De La Vega and Richard C. Lorenzo with exhibits with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel authorized to receive Notices of Electronic Filing generated by CM/ECF, including counsel below:

Rahul Wanchoo, Esq.
Law Offices of Rahul Wanchoo
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
*Attorneys for plaintiff Totalmar Navigation Corp.*

Dated:  July 21, 2008

_____/s/_____
George F. Hritz